## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re: | Chapter 11 |
| FURIE OPERATING ALASKA, LLC, *et al.*,[1] | Case No. 19-11781 (___) |
| Debtors. | (Joint Administration Requested) |

**MOTION OF DEBTORS FOR ENTRY OF INTERIM AND FINAL
ORDERS (I) AUTHORIZING THE DEBTORS TO (A) OBTAIN POSTPETITION
FINANCING ON A SUPER-PRIORITY, SENIOR SECURED BASIS,
(B) USE CASH COLLATERAL, (II) GRANTING ADEQUATE PROTECTION TO
PREPETITION LENDERS, (III) MODIFYING THE AUTOMATIC STAY,
AND (IV) SCHEDULING A FINAL HEARING**

The above-captioned debtors and debtors in possession (the "**Debtors**") hereby move (the

"**Motion**") for entry of an order, substantially in the form annexed hereto as **Exhibit A** (the

"**Interim Order**") and a final order (the "**Final Order**," and together with the Interim Order, the

"**DIP Orders**"), pursuant to sections 105, 361, 362, 363, 364(c)(1), 364(c)(2), 364(c)(3), 364(d),

364(e), 503, and 507 of chapter 11 of title 11 of the United States Code (the "**Bankruptcy**

**Code**"), Rules 2002, 4001, 6003, 6004, and 9014 of the Federal Rules of Bankruptcy Procedure

(the "**Bankruptcy Rules**") and Rules 4001-2 and 9013-1(f) of the Local Bankruptcy Rules for

the United States Bankruptcy Court for the District of Delaware (the "**Local Rules**"), for the

relief set forth herein.  In support of the Motion, the Debtors rely upon the *Declaration of Scott*

*M. Pinsonnault in Support of the Debtors' Chapter 11 Petitions and First Day Pleadings*, filed

with the Court concurrently herewith (the "**First Day Declaration**").  In further support of the

Motion, the Debtors, by and through their undersigned counsel, respectfully represent as follows:

---

[1] The Debtors, together with the last four digits of each Debtor's federal tax identification number, are: Furie Operating Alaska, LLC (8721); Cornucopia Oil & Gas Company, LLC (9914); and Corsair Oil & Gas LLC (8012). The location of the Debtors' corporate headquarters and the service address for all Debtors is 188 W. Northern Lights Blvd. Suite 620, Anchorage, Alaska 99503.

## RELIEF REQUESTED

1.      By this Motion, the Debtors seek entry of the Interim Order and the Final Order:

(i)      authorizing the Debtors to obtain superpriority senior secured postpetition financing in the form of a multiple-draw term loan credit facility in an aggregate principal amount of up to $15 million (the "**DIP Facility**") consisting of:  (i) an initial draw in the aggregate principal amount of $7 million available upon entry of the Interim Order (the "**Initial Draw**"); and (ii) a delayed draw of up to $8 million within one business day after entry of the Final Order, pursuant to the terms and conditions of that certain superpriority senior secured *Debtor in Possession Credit Agreement* dated August [12], 2019 (as the same may be amended, restated, supplemented, waived or otherwise modified from time to time, the "**DIP Credit Agreement**," together with all agreements, documents, certificates, and instruments including the Approved Budget (as defined herein), delivered or executed from time to time in connection therewith, each as hereafter amended, restated, amended and restated, supplemented, or otherwise modified from time to time in accordance with the terms thereof and hereof, collectively, the "**DIP Documents**"),[2] by and among the Borrowers and Energy Capital Partners Mezzanine Opportunities Fund A, LP, as agent (the "**DIP Agent**"), Energy Capital Partners Mezzanine Opportunities Fund A, LP ("**ECP Fund A**"), Energy Capital Partners Mezzanine Opportunities Fund B, LP ("**ECP Fund B**"), and Energy Capital Partners Mezzanine Opportunities Fund, LP ("**ECP Fund**", and together with ECP Fund A and ECP Fund B, the "**ECP DIP Lenders**"), Melody Special Situations Offshore Credit Mini-Master Fund., L.P., Melody Capital Partners Offshore Credit Mini-Master Fund, L.P., Melody Capital Partners Onshore Credit Fund., L.P. and Melody Capital Partners FDB Credit Fund, L.P. and/or their respective affiliates (the "**Melody Lenders**"), and AFG Investments 1A, LLC (the "**McGinty Lender**" and, collectively with the ECP DIP Lenders and the Melody Lenders, the "**DIP Lenders**" and, together with the DIP Agent, the "**DIP Secured Parties**"), substantially in the form attached to the Interim Order as **Exhibit A**;

(ii)      authorizing the Debtors to (a) execute, deliver, and perform under the DIP Documents and (b) perform such other acts as may be necessary or desirable in connection with the DIP Documents, including ongoing adherence by the Debtors to their existing deposit account and cash management arrangements (as modified herein and by that certain *Interim Order Authorizing Debtors to Continue Using Existing Bank Accounts, Business Forms, and Cash Management System* [Docket No. [--]] (the "**Cash Management Order**"));

(iii)      authorizing the Debtors to use Cash Collateral (as such term is defined in section 363(a) of the Bankruptcy Code, the "**Cash Collateral**") as of

---

[2] Capitalized terms used but not otherwise defined herein shall have the meaning ascribed to such terms as set forth in the DIP Documents.

the Petition Date pursuant to and in accordance with the Approved Budget (as defined herein), the Workover Plan, the Cash Management Order and the DIP Orders;

(iv)    granting to the DIP Agent, for the benefit of the DIP Secured Parties, and any other parties referred to in the DIP Credit Agreement with respect to the DIP Obligations, of security interests in and liens on the DIP Collateral and a superpriority administrative expense claim, to the extent and as provided in the DIP Orders and the DIP Documents and subject and subordinate to the Carve-Out and Non-Primed Excepted Liens[3], effective and perfected immediately upon entry of the DIP Orders (collectively, the "**DIP Liens**") without the need for any further action or notice:

(a)    pursuant to section 364(c)(1) of the Bankruptcy Code, joint and several superpriority allowed administrative expense claim status, which claims shall be senior to all other administrative expense claims in these Chapter 11 Cases, including those specified in sections 105, 326, 328, 330, 331, 503(b), 506(c), 507(a), 507(b), 546(c), 552(b), 726, 1113, and 1114 of the Bankruptcy Code or any other provisions of the Bankruptcy Code;

(b)    pursuant to section 364(c)(2) of the Bankruptcy Code, a perfected first priority security interest in and lien on all DIP Collateral, now or hereafter acquired and all proceeds thereof, other than the Prepetition Tax Credit Priority Collateral (the "**DIP Priority Collateral**"), to the extent such DIP Priority Collateral is not subject to a Lien as of the Petition Date;

(c)    pursuant to section 364(c)(3) of the Bankruptcy Code, a perfected junior-priority security interest and lien on Prepetition Tax Credit Priority Collateral and DIP Priority Collateral, now or hereafter acquired and all proceeds thereof, but only to the extent the Prepetition Tax Credit Priority Collateral or DIP Priority Collateral is subject to Non-Primed Excepted Liens; and

(d)    pursuant to section 364(d)(1) of the Bankruptcy Code, a perfected first priority priming security interest in and lien on the DIP

---

[3] "**Non-Primed Excepted Liens**" means, other than the existing Prepetition Liens in favor of the Prepetition Term Loan Secured Parties created under the Prepetition Term Loan Documents, (x) valid, perfected and unavoidable liens in existence as of the Petition Date or (y) valid and unavoidable liens in existence for amounts outstanding as of the Petition Date that are perfected after the Petition Date as permitted by Section 546(b) of the Bankruptcy Code, but in each case under the foregoing clause (x) and (y), only to the extent such valid, perfected and unavoidable liens are senior by operation of law in priority to the Prepetition Secured Obligations, and only to the extent such liens were Liens on the Prepetition Collateral that were in effect prior to the Petition Date and expressly permitted under, and expressly permitted to be senior to the Prepetition Secured Parties' Liens under, the Prepetition Term Loan Documents and Prepetition Tax Credit Loan Documents as of the Petition Date. For the avoidance of doubt, the Shelf Claim of Lien is not a Non-Primed Excepted Lien.

Priority Collateral, subject to any existing Lien (other than any Collateral subject to Non-Primed Excepted Liens which are described in paragraph (c) above) and a perfected second priority priming security interest and lien on the Prepetition Tax Credit Priority Collateral (such security interests and liens, the "**Priming Lien**"), which Priming Lien: (i) shall be senior in all respects to the interests in such property of the Prepetition Term Loan Secured Parties under the Prepetition Term Loan Documents; (ii) shall be senior to the interests of the Prepetition Tax Credit Secured Parties in the ECP Priority Collateral (as defined in the Prepetition Intercreditor Agreement) and immediately junior to the interests of the Prepetition Tax Credit Secured Parties in the Prepetition Tax Credit Priority Collateral; (iii) shall be senior to any Adequate Protection Liens granted to the Prepetition Term Loan Administrative Agent; and (iv) shall be senior to the Adequate Protection Liens granted to the Prepetition Tax Credit Administrative Agent as it relates to the ECP Priority Collateral;

(v)     authorizing the Debtors to pay the principal, interest, fees, expenses, and other amounts payable under the DIP Documents as such become due, including, the reasonable and documented fees and disbursements of the DIP Agent's and the DIP Lenders' attorneys, advisers, accountants, and other consultants, all to the extent provided in and in accordance with the terms of the DIP Credit Agreement and DIP Documents;

(vi)     granting adequate protection on account of the Debtors' use of Cash Collateral and any diminution in value of the Prepetition Secured Parties' (as defined below) respective interests in the Prepetition Collateral, subject to and pursuant to the terms and conditions set forth in the DIP Orders, to the Prepetition Secured Parties;

(vii)     modifying the automatic stay imposed by section 362 of the Bankruptcy Code to the extent necessary to implement and effectuate the terms and provisions of the DIP Documents and the DIP Orders, as set forth herein;

(viii)     approving the Sale Milestones in accordance with the DIP Credit Agreement through the implementation of a bid, auction, and sale process whereby the DIP Agent and Prepetition Term Loan Administrative Agent shall have the right to credit bid up to the full amount of the DIP Obligations and the Prepetition Secured Obligations (as defined below), respectively, in all cases, subject to the Carve-Out, in accordance with the Sale Milestones;

(ix)     scheduling of a final hearing (the "**Final Hearing**") within thirty (30) calendar days of entry of the Interim Order to consider entry of the Final Order and approving the form of notice with respect to the Final Hearing; and

(x)     granting the Debtors such other and further relief as is just and proper.

## JURISDICTION AND VENUE

2.        This Court has jurisdiction to consider this Motion under 28 U.S.C. §§ 157 and 1334 and the *Amended Standing Order of Reference* from the United States District Court for the District of Delaware, dated as of February 29, 2012. This is a core proceeding under 28 U.S.C. § 157(b). Under Local Rule 9013-1(f), the Debtors consent to entry of a final order under Article III of the United States Constitution. Venue of these cases and the Motion in this district is proper under 28 U.S.C. §§ 1408 and 1409.

3.        The statutory predicates for the relief requested herein are Bankruptcy Code sections 105, 361, 362, 363, and 364, Bankruptcy Rules 2002, 4001, and 9014, and Local Rules 2002-1, 4001-1, 4001-2, and 6004-1.

## BACKGROUND

**A.      General Background**

4.        On the date hereof (the "**Petition Date**"), each of the Debtors filed a voluntary petition in this Court commencing a case for relief under chapter 11 of the Bankruptcy Code (the "**Chapter 11 Cases**"). The factual background regarding the Debtors, including their business operations, their capital and debt structures, and the events leading to the filing of the Chapter 11 Cases, is set forth in detail in the First Day Declaration and fully incorporated herein by reference.

5.        Concurrently with the filing of this Motion, the Debtors have requested procedural consolidation and joint administration of the Chapter 11 Cases pursuant to Bankruptcy Rule 1015(b). The Debtors continue to manage and operate their businesses as debtors in possession pursuant to Bankruptcy Code sections 1107 and 1108. No trustee or examiner has been requested in the Chapter 11 Cases and no committees have yet been appointed.

5

**B.      The Debtors' Need for Postpetition Financing and the Use of Cash Collateral**

6.      The Debtors must obtain additional liquidity to avoid immediate and irreparable harm to the Debtors, their estates, creditors, and other parties-in-interest.  Without access to the DIP Facility, the Debtors will not be able to continue their operations, maintain business relationships with their vendors, suppliers, and customers, or pay their employees.  In addition, without the ability to use Cash Collateral and access the Initial Draw, the Debtors, their estates and creditors would suffer immediate and irreparable harm.

7.      Given their current financial condition, financing arrangements, and capital structure, the Debtors are unable to obtain financing from sources other than the DIP Lenders on more favorable terms.  The Debtors have been unable to obtain financing on a junior-lien or *pari-passu*, nor any financing allowable under Section 503(b)(1) of the Bankruptcy Code as an administrative expense.  The Debtors have also been unable to obtain sufficient credit (a) having priority over that of administrative expenses of the kind specified in Sections 503(b), 507(a) and 507(b) of the Bankruptcy Code, (b) secured by a lien on property of the Debtors and their estates that is not otherwise subject to a lien, or (c) secured solely by a junior lien on property of the Debtors and their estates that is subject to a lien.  Financing on a post-petition basis is not otherwise available without granting the DIP Agent, for the benefit of the DIP Secured Parties, (1) perfected security interests in and liens on (each as provided herein) all of the Debtors' existing and after-acquired assets with the priorities set forth herein, (2) superpriority claims, and (3) the other protections set forth in this Interim Order.

6

## SUMMARY TERMS OF THE DIP CREDIT FACILITY[4]

8.      The following is a concise summary of the material terms of the proposed DIP

Documents:

| Provision | Description |
|---|---|
| **Borrowers** | Furie Operating Alaska, LLC, Cornucopia Oil & Gas Company, LLC, and Corsair Oil & Gas LLC |
| **DIP Lenders** | Energy Capital Partners Mezzanine Opportunities Fund A, LP, Energy Capital Partners Mezzanine Opportunities Fund B, LP, Energy Capital Partners Mezzanine Opportunities Fund, LP, Melody Special Situations Offshore Credit Mini-Master Fund., L.P., Melody Capital Partners Offshore Credit Mini-Master Fund, L.P., Melody Capital Partners Onshore Credit Fund., L.P. Melody Capital Partners FDB Credit Fund, L.P., and AFG Investments 1A, LLC, subject to the satisfaction of all conditions set forth in the DIP Credit Agreement and in the DIP Orders, are providing a commitment for 100% of the DIP Facility. |
| **DIP Agent** | Energy Capital Partners Mezzanine Opportunities Fund A, LP |
| **DIP Facility** | The DIP Facility is a superpriority senior secured postpetition financing in the principal amount of up to $15,000,000, which shall be made available subject to the terms and conditions set forth in the DIP Documents and the Interim Order; *provided that*, the aggregate amount of DIP Loans shall not exceed $7,000,000 at any one time prior to entry of the Final Order. The conditions precedent to funding under the DIP Facility are listed in the Section 3 of the DIP Credit Agreement and include the absence of an event of default and the delivery of an Approved Budget. |
| **Interest Rates and Fees** | Amounts borrowed under the DIP Facility will accrue interest at a fixed rate of 15.0% per annum.  Under Sections 3.1.12 and 9.4 of the DIP Credit Agreement and ¶ BB of the Interim Order, the Debtors are obligated to reimburse the reasonable and documented professionals' fees and expenses of the DIP Secured Parties; *provided that* fees and expenses incurred by the Melody Lenders and the McGinty Lender are subject to the Melody Fee Cap and the McGinty Fee Cap, as applicable. |

---

[4]  The following summary is included for convenience only and is qualified in its entirety by reference to the DIP Documents, which shall control in the event of any inconsistency.

| Maturity | The DIP Facility shall mature, and all unpaid principal, interest, fees and expenses shall be immediately due and payable, on the date that is the earliest of: |
|---|---|
|  | (i) the Interim Facility Maturity Date, if the Final Order has not been entered by the Bankruptcy Court on or prior to such date; |
|  | (ii) the date that is one hundred eighty (180) calendar days following the Petition Date (the "**Scheduled Maturity Date**"), *provided* that, if the Debtors request an extension of the Scheduled Maturity Date, the Required Lenders shall have the exclusive right to extend the Scheduled Maturity Date by ninety (90) calendar days (the "**DIP Loan Maturity Date Extension Option**"); *provided, further,* if all conditions for the Borrowers' emergence from the Bankruptcy Cases (whether through a Credit Bid Exit Financing Scenario or otherwise) have been satisfied (or are capable of being satisfied at such time) other than any conditions precedent in respect of required regulatory approvals, and if the applicable purchasers have requested and have continued to exercise commercially reasonable efforts to obtain regulatory approval, then the Maturity Date shall be extended until the date that falls one (1) Banking Day after the date such regulatory approval has been obtained; |
|  | (iii) the substantial consummation (as defined in section 1101(2)) of the Bankruptcy Code of a Plan, which has been confirmed by an order entered by the Bankruptcy Court; |
|  | (iv) the consummation of a Sale Transaction; |
|  | (v) the dismissal of any of these Chapter 11 Cases, the appointment of a chapter 11 trustee or any examiner with expanded powers, or the conversion of any of these Chapter 11 Cases into a proceeding under chapter 7 of the Bankruptcy Code; or |
|  | (vi) the date of the acceleration of the DIP Loans after the occurrence of an Event of Default under the DIP Credit Agreement. |
| **Purpose of Funding** | The proceeds of the DIP Facility and Cash Collateral will be used solely to provide for postpetition working capital (including any capital expenditures expressly provided for (including as to timing and amount) in the Approved Budget and Workover Plan) and other general corporate purposes of the Debtors.  *See* Interim Order, ¶ I. |
| **Entities with Interests in Cash Collateral** | The DIP Secured Parties and the Prepetition Secured Parties |

| Use of Cash Collateral | The Debtors' postpetition financing contemplates their continued use of Cash Collateral,[5] according to an Approved Budget on the terms and conditions set forth in the Interim Order. *See* Interim Order at ¶ K. |
|---|---|
| **Budget** | The Debtors' use of all cash (whether or not from advances under the DIP Facility or pursuant to the Prepetition Secured Parties' consent, *i.e.,* collections of accounts receivable generated by the Debtors' operations) shall be subject to a weekly budget for the 13-week period commencing on the Petition Date, in form and substance acceptable to, and approved in writing by, the Required Lenders acting reasonably (the "**Approved Budget**").[6] The Approved Budget is subject to amendment with the written consent of the Required Lenders acting reasonably. Moreover, the Debtors are allowed a 10% variance under certain reporting categories specified in the budget, as well as under their projected aggregate weekly cash receipts and cash disbursements. The Debtors are required, by the DIP Credit Agreement, to periodically deliver certain reports to the DIP Agent and Prepetition Secured Parties showing results and variances under the Approved Budget to date as well as daily cash receipts and disbursements, among other information. |
| **Restrictions on Use of Funds** | None of the advances under the DIP Facility and no Cash Collateral may be used in connection with the investigation (including discovery proceedings), initiation or prosecution of any claims, causes of action, adversary proceedings, contested matters or other litigation against the DIP Secured Parties (each in its capacity as such). None of the advances under the DIP Facility and no Cash Collateral may be used in connection with the investigation (including discovery proceedings), initiation or prosecution of any claims, causes of action, adversary proceedings, contested matters or other litigation against the Prepetition Secured Parties (each in its capacity as such), except up to the amount of $50,000 for an investigation (including any related discovery proceedings) by a committee or other parties in interest (other than the Debtors) in connection with the validity and perfection of the liens granted under the Prepetition Loan Documents, as set forth in the DIP |

---

[5] "**Cash Collateral**" means all "cash collateral" as defined in section 363 of the Bankruptcy Code, in or on which the DIP Agent and each Prepetition Secured Party holds a lien, security interest, or other interest (including, without limitation, any adequate protection liens or security interests) whether existing on the Petition Date or subsequently arising.

[6] The Debtors have provided a budget to the DIP Agent and Prepetition Agents setting forth in reasonable detail the projected receipts and disbursements of the Debtors on a weekly basis following the Petition Date. This budget has been approved by the DIP Agent as provided by the DIP Documents. A summary of the Approved Budget is attached to the Interim Order as Exhibit D. The Debtors believe that the Approved Budget is achievable and will enable it to operate their businesses without the accrual of unpaid administrative expenses.

| | |
|---|---|
| | Orders. |
| **Security and Superpriority** | The DIP Obligations shall (a) pursuant to section 364(c)(1) of the Bankruptcy Code, be entitled to superpriority administrative expense claim status in the Chapter 11 Case with priority over any and all administrative expenses, and (b) pursuant to sections 364(c)(2), (c)(3) and (d) of the Bankruptcy Code, be secured by liens on the DIP Collateral (as defined below), in all cases subject to the Carve-Out and the priorities set forth in the DIP Credit Agreement. |
| **DIP Collateral** | For purposes of this Motion, "**DIP Collateral**" means, collectively, all now owned or hereafter acquired assets and property of the Debtors and their chapter 11 estates, including, without limitation, all assets (whether tangible, intangible, real, personal or mixed) of the Debtors whether now owned or hereafter acquired and wherever located, including, without limitation, all cash, accounts, inventory, goods, contract rights, instruments, documents, chattel paper, patents, trademarks, copyrights, and licenses therefor, accounts receivable, receivables and receivables records, general intangibles, payment intangibles, tax or other refunds, insurance proceeds, letters of credit, contracts, owned real estate, real property leaseholds, vessels, charter-hire receipts, earnings, insurance policies and proceeds, fixtures, deposit accounts, commercial tort claims, securities accounts, instruments, investment property, letter-of-credit rights, supporting obligations, machinery and equipment, real property, leases (and proceeds from the disposition thereof), all of the issued and outstanding capital stock of each Debtor, other equity or ownership interests, including equity interests in subsidiaries and non-wholly-owned subsidiaries, money, investment property, choses in action, cash collateral, documents, vehicles, intellectual property, securities, partnership or membership interests in limited liability companies and capital stock, and the proceeds of causes of action (including, subject to entry of the Final Order, proceeds of causes of action arising under sections 502(d), 544, 545, 547, 548, 550, 551, or 553 of the Bankruptcy Code (collectively, subject to the stated exclusions, the "**Avoidance Actions**")), and all cash and non-cash proceeds, rents, products, substitutions, accessions, and profits of any of the collateral described above, including, without limitation, the products, proceeds, and supporting obligations thereof, in each case, whether in existence on the Petition Date or thereafter created, acquired, or arising and wherever located, and all Prepetition Collateral, as collateral security for the prompt and complete payment and performance when due (whether at the stated maturity, by acceleration, or otherwise) of the DIP Obligations. |

DM_US 159675270-5.091621.0012

| | |
|---|---|
| **Adequate Protection** | The Prepetition Secured Parties are each entitled to and shall each receive adequate protection in the form of replacement liens, superpriority diminution claims, payment of reasonable fees and expenses, and, in the case of certain Prepetition Term Loan Obligations, payment of postpetition interest, to protect from any diminution in value of their respective interests in the value of their respective prepetition collateral, including any Cash Collateral resulting from (a) the incurrence of the DIP Obligations, (b) the use of Cash Collateral, (c) the granting of the liens and the superpriority claim under the DIP Credit Agreement, (d) the acquiescence of the Prepetition Secured Parties in the Carve-Out, (e) any other diminution in the value of their respective prepetition collateral, and (f) the imposition of the automatic stay pursuant to section 362 of the Bankruptcy Code, by the granting of the following, all as more fully set forth in the DIP Orders. *See* Interim Order, ¶ M(i)-(xii). |
| **Carve-Out** | The DIP Facility, Prepetition Credit Facilities, the DIP Superpriority Claims, and Adequate Protection Liens are subject to a carve out (the "**Carve-Out**") for: (i) Allowed administrative expenses pursuant to 28 U.S.C. § 1930 for fees payable to the Office of the United States Trustee, as determined by agreement of the U.S. Trustee or by final order of this Court and 28 U.S.C. § 156(c) for fees required to be paid to the Clerk of this Court; (ii) All reasonable fees and expenses up to $50,000 incurred by a trustee under section 726(b) of the Bankruptcy Code; (iii) All accrued and unpaid fees (other than any "success," "restructuring," "transaction" or similar fees), disbursements, costs and expenses, allowed at any time by this Court and incurred by professionals retained by the Debtors or the Creditors' Committee (the "**Case Professionals**"), at any time prior to the delivery of the Carve-Out Trigger Notice; and (iv) All accrued and unpaid fees, disbursements and expenses incurred by the Case Professionals from and after the date of service of a Carve-Out Trigger Notice (as defined below), to the extent allowed at any time, in an aggregate amount not to exceed $500,000 (the "**Wind-Down Carve-Out Amount**"). The Carve-Out shall be senior to all claims and liens, including DIP Liens and liens granted to each of the Prepetition Secured Parties, on the DIP Priority Collateral as well as any adequate protection liens and claims described herein. |
| **Events of Default** | The DIP Credit Agreement specifies certain events of default under the Postpetition Financing (each an "**Event of Default**"), including, among others: (i) occurrence of any deviation from the Approved Budget that is greater than the Permitted Variances; (ii) failure by the Borrowers to be in compliance in all respects with any provision of the DIP Documents; (iii) reversal, modification, amendment, stay or vacation of the Interim Order or the Final Order, as entered by the Bankruptcy Court, without the prior written consent of each Lender; |

11

| | |
|---|---|
| | (iv) the filing with the Bankruptcy Court of a plan of reorganization or liquidation in these Cases that does not provide for indefeasible payment in full in cash to the DIP Secured Parties of the DIP Obligations; (vi) the appointment in these Cases, without the prior written consent of the Required Lenders acting reasonably of a trustee, receiver, examiner, or responsible officer with enlarged powers relating to the operation of the businesses of the Debtors (powers beyond those set forth in sections 1106(a)(3) and (a)(4) of the Bankruptcy Code); (vii) the filing of a motion by the Debtors seeking dismissal of these Cases or the conversion of these Cases to cases under chapter 7 of the Bankruptcy Code; (viii) the granting of relief from the automatic stay by the Bankruptcy Court as to any material assets of the Debtors to any other creditor or party in interest in these Cases; (ix) failure of all amounts due and owing to the DIP Secured Parties under, in respect of or in connection with the DIP Facility to be paid in full in cash on the Maturity Date; and (x) if any provision in the DIP Credit Agreement shall cease to be binding on or enforceable against the parties thereto. |
| **Indemnity** | The Borrowers have agreed to indemnify, pay and hold harmless the DIP Secured Parties (each in its capacity as such) (and its respective directors, officers, employees and agents) against any loss, liability, cost or expense incurred in respect of the financing contemplated by the DIP Facility or the proposed use of proceeds thereof (except to the extent resulting from the gross negligence or willful misconduct of the indemnified party, as determined by a final, non-appealable judgment of a court of competent jurisdiction). |
| **Releases** | The Borrowers have agreed to release and exculpate the Prepetition Secured Parties in respect of any matters arising prior to the Petition Date, subject to customary challenge rights in favor of creditors or any statutory committee.  The release and challenge rights are set forth in greater detail in the Interim Order attached hereto.  The Debtors' acknowledgments regarding the validity, enforceability and perfection of the claims and liens under Prepetition Loan Documents, are set forth at ¶¶ 19(a)-(h) of the Interim Order.  The Debtors' Stipulations are subject to the challenge rights and deadlines set forth at ¶ WW of the Interim Order. |

## PROVISIONS TO BE HIGHLIGHTED PURSUANT TO LOCAL RULE 4001-2

9.    Local Rule 4001-2(a)(i) requires that financing motions must highlight the following provisions (the "**Highlighted Provisions**"), identify the location of any such provision in the proposed order, and justify such inclusion:

12

| Highlighted Provision | Location/Justification |
|---|---|
| ***Grant of priority or a lien on property of the estates***. | Interim Order ¶ F. |
| ***(A) Provisions that grant cross-collateralization protection to prepetition secured creditors, and (B) provisions that deem prepetition secured debt to be postpetition debt.*** | N/A |
| ***Adequate protection or priority for a claim that arose before the commencement of the cases***. | Interim Order, ¶ M(i)-(xii) |
| ***Determination of validity, enforceability, priority or amount of a claim that arose before the commencement of the cases, or of any lien securing the claim***. | Interim Order, ¶¶ 19(a)-(h), but subject to challenge rights in ¶ WW consistent with the time periods contemplated by Local Rule 4001-2(a)(i)(B) |
| ***Waiver or modification of the automatic stay***. | Interim Order, ¶¶ M(xii), O. |
| ***Waiver or modification of authority to file a plan, seek an extension of time in which the debtor has the exclusive right to file a plan, request use of cash collateral or request authority to obtain credit***. | DIP Credit Agreement, §§ 6.29 (Actions Requiring Prior Required Lender Consent), 7.1.21 (Addition Post-Petition Financing or Non-Consensual Use of Cash Collateral), 7.1.24 (Chapter 11 Plan); Interim Order, ¶ Y. |
| ***Waiver or modification of the applicability of nonbankruptcy law relating to the perfection of a lien on property of the estates***. | DIP Liens are automatically perfected upon entry of Interim Order without necessity of further filing or recording.  Interim Order, ¶ E.<br><br>Adequate Protection Liens are automatically perfected upon entry of Interim Order without necessity of further filing or recording.  Interim Order, ¶ E. |
| ***Establishment of deadlines for filing a plan, for approval of a disclosure statement, for a hearing on confirmation, or for entry of a confirmation order***. | DIP Credit Agreement, §§ 5.28 (Sale Milestones); 7.1.2 (Violation of Covenants); Interim Order ¶ Y. |

13

| | |
|---|---|
| ***Waiver or modification of the applicability of nonbankruptcy law relating to the perfection of a lien on property of the estates, or on the foreclosure or other enforcement of the lien***. | DIP Liens are automatically perfected upon entry of Interim Order without necessity of further filing or recording. Interim Order, ¶ E.<br><br>Adequate Protection Liens are automatically perfected upon entry of Interim Order without necessity of further filing or recording. Interim Order, ¶ E. |
| ***Release, waiver or limitation on any claim or other cause of action belonging to the estates or the trustee.*** | The Interim Order contains releases and exculpations for the Prepetition Secured Parties in respect of any matters arising prior to the Petition Date, subject to customary challenge rights in favor of creditors or any statutory committee consistent with the time periods contemplated by Local Rule 4001-2(a)(i)(B). DIP Credit Agreement § 9.25 (Release); Interim Order, ¶ DD (Release), ¶ WW (challenge rights). |
| ***Indemnification of any entity***. | The Debtors have agreed to indemnify the DIP Secured Parties ((each in its capacity as such) (and their respective directors, officers, employees and agents) against any loss or liability incurred in connection with the DIP Facility or the use of the proceeds thereof, except to the extent resulting from the gross negligence or willful misconduct of the indemnified party, as determined by a final, non-appealable judgment of a court of competent jurisdiction. DIP Credit Agreement, §§ 5.19 (Indemnification), 9.25.2; Interim Order, ¶ CC. |
| ***Release, waiver or limitation on rights under Sections 506(c) and 552(b)***. | Upon entry of the Final Order, in light of the DIP Facility, the Prepetition Secured Parties' consent to use of Cash Collateral, and the agreements of the DIP Secured Parties and the Prepetition Secured Parties to subordinate their respective rights of payment, liens and superpriority/priority claims to the Carve-Out, the DIP Secured |

DM_US 159675270-5.091621.0012

| | Parties and Prepetition Secured Parties will receive (a) a waiver of any "equities of the case" claims under section 552(b) of the Bankruptcy Code, and (b) a waiver of the provisions of section 506(c) of the Bankruptcy Code. Interim Order, ¶¶ F, II. |
|---|---|
| ***Liens granted on claims arising under Chapter 5.*** | Upon entry of a Final Order, the DIP Collateral will include all avoidance actions and claims arising under chapter 5 of the Bankruptcy Code. Interim Order, ¶ D. |

10.     The provisions of the DIP Documents are all justified under the circumstances of the Chapter 11 Cases because the DIP Secured Parties and the Prepetition Secured Parties would not agree to the postpetition financing without the inclusion of such terms. As discussed *infra*, the funds provided by the DIP Facility are needed to allow the Debtors to operate and the DIP Facility presents the only available postpetition financing. The Debtors respectfully submit that the inclusion of the Highlighted Provisions are required and appropriate under the circumstances.

## BASIS FOR RELIEF

### A.     The Debtors Should be Authorized to Obtain Postpetition Financing

11.     The Debtors submit it is within their sound and prudent business judgment to obtain this postpetition financing. Bankruptcy Code section 364 permits debtors to obtain secured or superpriority postpetition financing when unsecured credit is not available. 11 U.S.C. § 364(c). Bankruptcy Courts, after notice and a hearing, may also authorize postpetition credit secured by a senior or equal lien on encumbered property if the debtor cannot obtain credit elsewhere and the interests of existing lienholders are adequately protected. 11 U.S.C. § 364(d).

12.     With regards to obtaining postpetition financing, debtors who utilize their sound business judgment are permitted considerable deference, so long as the postpetition financing

15

does not conflict with the policies underlying the Bankruptcy Code. *See, e.g.*, *Trans World Airlines, Inc. v. Travellers Int'l AG (In re Trans World Airlines, Inc.)*, 163 B.R. 964, 974 (Bankr. D. Del. 1994) (approving postpetition loan and receivable facility because they "reflect[ed] sound and prudent business judgment"); *In re Ames Dep't Stores, Inc.*, 115 B.R. 34, 40 (Bankr. S.D.N.Y. 1990) ("cases consistently reflect that the court's discretion under section 364 is to be utilized on grounds that permit reasonable business judgment to be exercised so long as the financing agreement does not contain terms that leverage the bankruptcy process and powers or its purpose is not so much to benefit the estate as it is to benefit parties in interest."); *see also Richmond Leasing Co. v. Capital Bank N.A.*, 762 F.2d 1303, 1311 (5th Cir. 1985) ("[m]ore exacting scrutiny [of the debtor's business decisions] would slow the administration of the debtors' estate and increase its cost, interfere with the Bankruptcy Code's provision for private control of administration of the estate and threaten the court's ability to control a case impartially."). Further, "courts will almost always defer to the business judgment of a debtor in the selection of a lender." *In re L.A. Dodgers LLC*, 457 B.R. 308, 313 (Bankr. D. Del. 2011).

13.     To determine whether a debtor has met the business judgment standard, a court need only "examine whether a reasonable business person would make a similar decision under similar circumstances." *In re Exide Techs.*, 340 B.R. 222, 239 (Bankr. D. Del. 2006), *rev'd on other grounds* 607 F.3d 957 (3d Cir. 2010); s*ee also In re Curlew Valley Assocs.*, 14 B.R. 506, 511-14 (Bankr. D. Utah 1981) (noting that courts generally will not second-guess a debtor in possession's business decisions when those decisions involve "a business judgment made in good faith, upon a reasonable basis, and within the scope of his authority under the Code."). This inquiry involves the consideration of whether the terms are fair when considering the terms in light of the relevant circumstances of the debtor and the potential lender. *In re Farmland Indus.,*

*Inc.*, 294 B.R. 855, 881 (Bankr. W.D. Mo. 2003). Courts may also look to noneconomic benefits of postpetition financing. *See, e.g.*, *In re Ion Media Networks, Inc.*, No. 09-13125, 2009 WL 2902568, at *4 (Bankr. S.D.N.Y. July 6, 2009) ("Although all parties, including the Debtors and the Committee, are naturally motivated to obtain financing on the best possible terms, a business decision to obtain credit from a particular lender is almost never based purely on economic terms. Relevant features of the financing must be evaluated, including non-economic elements such as the timing and certainty of closing, the impact on creditor constituencies and the likelihood of a successful reorganization. This is particularly true in a bankruptcy setting where cooperation and established allegiances with creditor groups can be a vital part of building support for a restructuring that ultimately may lead to a confirmable reorganization plan. That which helps foster consensus may be preferable to a notionally better transaction that carries the risk of promoting unwanted conflict.").

14.    Debtors are not obligated and have "no duty to seek credit from every possible lender before concluding that such credit is unavailable." *Bray v. Shenandoah Fed. Say. & Loan Assn. (In re Snowshoe Co.)*, 789 F.2d 1085, 1088 (4th Cir. 1986); *see also In re 495 Cent. Park Ave. Corp.*, 136 B.R. 626, 630 (Bankr. S.D.N.Y. 1992). When there are few lenders likely, able, or willing to extend the necessary credit to the debtor, "it would be unrealistic and unnecessary to require [the debtor] to conduct such an exhaustive search for financing." *In re Sky Valley, Inc.*, 100 B.R. 107, 113 (Bankr. N.D. Ga. 1988), *aff'd sub nom.*, *Anchor Say. Bank FSB v. Sky Valley, Inc.*, 99 B.R. 117,120 n.4 (N.D. Ga. 1989); s*ee also In re Mid-State Raceway, Inc.*, 323 B.R. 40, 58 (Bankr. N.D.N.Y. 2005); *Ames*, 115 B.R. at 37-39; *In re Stanley Hotel, Inc.*, 15 B.R. 660, 663 (D. Colo. 1981); *In re Garland Corp.*, 6 B.R. 456, 461

17

(B.A.P. 1st 1980); *In re Plabell Rubber Prods., Inc.*, 137 B.R. 897, 900 (Bankr. N.D. Ohio 1992).

15.    Here, entry into the DIP Facility constitutes sound business judgment by the Debtors. The Debtors negotiated the DIP Facilities and DIP Documents with the DIP Lenders in good faith, at arm's length, and with the assistance of their respective advisors.  While the Debtors are not required to seek credit from every possible source, the Debtors and their professionals nevertheless undertook a process to evaluate other potential sources of postpetition financing, finding none obtainable on better terms.  Only the DIP Secured Parties were able to provide a facility that was adequate, reasonable, and fair under the circumstances. Accordingly, the Debtors believe that they have obtained the best financing available under the circumstances and that the terms and conditions set forth the DIP Documents are fair and reasonable.

**B.     The Debtors' Use of Cash Collateral Should be Approved**

16.    Bankruptcy Code section 363(c)(2) does not allow a debtor to use a secured creditor's cash collateral without consent or court approval. Bankruptcy Code section 363(e) provides that "on request of an entity that has an interest in property . . . proposed to be used, sold or leased, by the trustee, the court, with or without a hearing, shall prohibit or condition such use, sale, or lease as is necessary to provide adequate protection of such interest."

17.    The Debtors request authority to use Cash Collateral on the terms set forth in the proposed Interim Order. The Prepetition Term Loan Lenders, through the Prepetition Term Loan Agent, has consented to the use of Cash Collateral, thus meeting the requirements of Bankruptcy Code section 362(c)(2).  However, the Debtors have agreed not to use any Prepetition Tax Credit Priority Collateral or any cash, funds, or other proceeds arising therefrom, and the Debtors have agreed to not to have any rights in, have access to, or use any cash in the Agent Account (as

18

defined in the Prepetition Tax Credit Agreement) for any reason without the prior written consent of the Prepetition Tax Credit Administrative Agent.

**C.      The Interests of the Prepetition Secured Parties are Adequately Protected**

18.      Debtors may only obtain postpetition financing "secured by a senior or equal lien on property of the estate that is subject to a lien only if" adequate protection is provided to parties whose liens are primed. 11 U.SC. § 364(d)(1)(B). Bankruptcy Code section 361 delineates the forms of adequate protection, which include periodic cash payments, additional liens, replacement liens, and other forms of relief. 11 U.S.C. § 361. Adequate protection is determined on a case-by-case basis and may take various forms. *See, e.g.*, *In re Continental Airlines, Inc.*, 154 B.R. 176, 180-81 (Bankr. D. Del. 1993); *MBank Dallas., N.A. v. O'Connor (In re O'Connor)*, 808 F.2d 1393, 1396-97 (10th Cir. 1987); *Martin v. U.S. (In re Martin)*, 761 F.2d 472, 474 (8th Cir. 1985); *In re Shaw Indus., Inc.*, 300 B.R. 861, 865 (Bankr. W.D. Pa. 2003). The focus of this requirement is to protect a secured creditor from diminution in the value of its interest in the particular collateral during the period of use. *See In re Swedeland Dev. Grp., Inc.*, 16 F.3d 552, 564 (3d Cir. 1994) ("The whole purpose of adequate protection for a creditor is to insure that the creditor receives the value for which he bargained prebankruptcy.").

19.      The concept of adequate protection is designed to shield a secured creditor from diminution in the value of its interest in collateral during the period of a debtor's use. *See In re Carbone Cos.*, 395 B.R. 631, 635 (Bankr. N.D. Ohio 2008) ("The test is whether the secured party's interest is protected from diminution or decrease as a result of the proposed use of cash collateral); *see also In re Cont'l Airlines, Inc.*, 154 B.R. 176, 180-81 (Bankr. D. Del. 1993) (holding that adequate protection for use of collateral under section 363 is limited to use-based decline in value).

20.      Here, the Adequate Protection offered to the Prepetition Secured Parties is fair and reasonable. The adequate protection proposed in the Interim Order is consistent with customary protections, including replacement liens and superpriority claims. The adequate protection properly protects the Prepetition Secured Parties from any diminution in value of its interests in the use of the cash collateral during the pendency of the Chapter 11 Cases. These provisions were negotiated in good faith and at arm's-length with the Prepetition Secured Parties. Without these protections, the Debtors would not be able to secure the postpetition financing.

**D.  Modification of the Automatic Stay is Warranted**

21.      The relief requested by this Motion contemplates a modification of the automatic stay. 11 U.S.C. § 362. The proposed Interim Order provides that the automatic stay provisions of section 362 of the Bankruptcy Code will be modified to allow the DIP Lenders to file any financing statements, security agreements, notices of liens, and other similar instruments and documents in order to validate and perfect the liens and security interests granted to them under the Interim Order. The proposed Interim Order further provides that the automatic stay is modified as necessary to permit the Debtors to grant liens to the DIP Lenders and to incur all liabilities and obligations set forth in the Interim Order. Finally, the proposed Interim Order provides that, the DIP Agent may exercise, upon the occurrence and during the continuation of an Event of Default, and to take other remedies relating to the Collateral without further order or application to the Court. The DIP Agent is required to provide three (3) business days written notice on the Notice Parties prior to any enforcement right or remedy under the DIP Documents.

22.      This type of modification of the automatic stay is ordinary and standard feature of postpetition debtor in possession financing facilities, and, in the Debtors' business judgment, reasonable and fair under the current circumstances. *See, e.g.*, *In re Z Gallerie, LLC*, No. 19-10488 (LSS) (Bankr. D. Del. Apr. 9, 2019) (modifying automatic stay as necessary to effectuate

the terms of the order); *ATD Corporation*, No. 18-12221 (KJC) (Bankr. D. Del. Oct. 26, 2018)

(same); *In re In re Charming Charlie, LLC*, No. 17-12906 (CSS) (Bankr. D. Del. Dec. 12, 2017)

(same); *In re Magnum Hunter Res. Corp.*, No. 15-12533 (KG) (Bankr. D. Del. Dec. 15, 2015)

(terminating automatic stay after event of default); *In re Peak Broad., LLC*, No. 12-10183 (PJW)

(Bankr. D. Del. Feb. 2, 2012) (terminating automatic stay after occurrence of termination event).

## E.    Interim Approval and Scheduling of a Final Hearing

23.    Interim relief may be granted on a motion to obtain financing and use cash
collateral pursuant to Bankruptcy Code sections 363(c) or 364 where relief "is necessary to avoid
immediate and irreparable harm to the estate pending a final hearing." Fed. R. Bankr. P.
4001(b)(2), (c)(2).

24.    The Debtors will face immediate and irreparable harm without the entry of the
Interim Order. Therefore, the Debtors respectfully request that the Court schedule a final hearing,
no sooner than 14 days after the date of this Motion and no later than 25 days after the Petition
Date, to consider entry of the Final Order.

## NOTICE

25.    Notice of this Motion will be given to: (a) the Office of the United States Trustee
for the District of Delaware; (b) the parties included on the Debtors' list of thirty (30) largest
unsecured creditors; (c) counsel to the DIP Agent; (d) counsel to the Prepetition Agents; (e)
counsel to the Melody Lenders; (f) counsel to the McGinty Lender; (f) any party that has
requested notice pursuant to Bankruptcy Rule 2002; and (h) all parties entitled to notice pursuant
to Local Rule 9013-1(m) (collectively, the "**Notice Parties**"). The Debtors submit that, under the
circumstances, no other or further notice is required.

26.     In addition, Interim Order will be served on the Notice Parties no later than one (1) business day after its entry by this Court. In light of the nature of the relief requested herein, the Debtors submit that no other or further notice is required.

## **NO PRIOR REQUEST**

27.     No prior request for the relief sought in this Motion has been made to this or any other court.

*[The remainder of this page intentionally left blank]*

DM_US 159675270-5.091621.0012

**WHEREFORE**, the Debtors respectfully request that this Court enter the Interim Order, the form of which is attached as **Exhibit A** hereto; and grant such other and further relief as is just and proper.

Dated: August 9, 2019
   Wilmington, Delaware

Respectfully submitted,

**WOMBLE BOND DICKINSON (US) LLP**

_/s/Matthew P. Ward_
Matthew P. Ward (DE Bar No. 4471)
Ericka F. Johnson (DE Bar No. 5024)
1313 North Market Street, Suite 1200
Wilmington, Delaware 19801
Telephone:(302) 252-4320
Facsimile:  (302) 252-4330
Email: matthew.ward@wbd-us.com
   ericka.johnson@wbd-us.com

-and-

**MCDERMOTT WILL & EMERY LLP**
Timothy W. Walsh (_pro hac vice_ pending)
Darren Azman (_pro hac vice_ pending)
Riley T. Orloff (_pro hac vice_ pending)
340 Madison Avenue
New York, New York 10173-1922
Telephone:(212) 547-5400
Facsimile:  (212) 547-5444
Email: twwalsh@mwe.com
   dazman@mwe.com
   rorloff@mwe.com

_Proposed Counsel to the Debtors and
Debtors in Possession_

23