## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re: | Chapter 11 |
| FURIE OPERATING ALASKA, LLC, *et al.*,[1] | Case No. 19-11781 (___) |
| Debtors. | (Joint Administration Requested) |

**MOTION OF DEBTORS FOR ENTRY OF ORDERS (I)(A) APPROVING BIDDING
PROCEDURES FOR THE SALE OF THE DEBTORS' ASSETS, (B) APPROVING
STALKING HORSE BID PROTECTIONS, (C) SCHEDULING AN AUCTION FOR,
AND HEARING TO APPROVE, THE SALE OF THE DEBTORS' ASSETS,
(D) APPROVING THE FORM AND MANNER OF NOTICE THEREOF,
(E) APPROVING CONTRACT ASSUMPTION AND ASSIGNMENT PROCEDURES
AND (F) GRANTING RELATED RELIEF AND (II)(A) APPROVING THE SALE
OF THE DEBTORS' ASSETS FREE AND CLEAR OF LIENS, CLAIMS, INTERESTS
AND ENCUMBRANCES, (B) AUTHORIZING THE ASSUMPTION AND
ASSIGNMENT OF EXECUTORY CONTRACTS AND UNEXPIRED LEASES
AND (C) GRANTING RELATED RELIEF**

The above-captioned debtors and debtors in possession (the "**Debtors**") hereby move this

Court for entry of (i) an order substantially in the form attached hereto as **Exhibit A** (the

"**Bidding Procedures Order**"), pursuant to sections 105(a), 363, and 365 of title 11 of the

United States Code (the "**Bankruptcy Code**"); Rules 2002, 6004, and 6006 of the Federal Rules

of Bankruptcy Procedure (as amended from time to time, the "**Bankruptcy Rules**"); and Rule

6004-1 of the Local Rules of Bankruptcy Practice and Procedures of the Bankruptcy Court for

the District of Delaware (the "**Local Rules**"), (a) approving the proposed bidding procedures as

set forth in Annex 1 to the Bidding Procedures Order (the "**Bidding Procedures**"), in connection

with the sale of all or substantially all of the Debtors' assets and/or equity interests free and clear

of all liens, claims, encumbrances, obligations, liabilities, contractual commitments or interests

---

[1] The Debtors, together with the last four digits of each Debtor's federal tax identification number, are: Furie
Operating Alaska, LLC (8721); Cornucopia Oil & Gas Company, LLC (9914); and Corsair Oil & Gas LLC (8012).
The location of the Debtors' corporate headquarters and the service address for all Debtors is 188 W. Northern
Lights Blvd. Suite 620, Anchorage, Alaska 99503.

of any kind or nature whatsoever, (b) approving certain stalking horse bid protections (the "**Bid Protections**") as set forth in the Bidding Procedures, (c) scheduling an auction for, and hearing to approve sale of the Debtors' assets and/or equity interests, (d) approving form and manner of notices of sale, auction and sale hearing, (e) approving procedures for the assumption and assignment of certain executory contracts and unexpired leases, and (f) granting related relief; and (ii) authorizing and approving (a) the sale of the Debtors' assets and/or equity interests free and clear of liens claims, interests and encumbrances, (b) the assumption and assignment of certain executory contracts and unexpired leases to the successful bidder, and (c) related relief. In support of the Motion, the Debtors rely upon the *Declaration of Scott M. Pinsonnault in Support of the Debtors' Chapter 11 Petitions and First Day Pleadings* (the "**First Day Declaration**"), filed contemporaneously herewith.   In further support of the motion (this "**Motion**"), the Debtors, by and through their undersigned counsel, respectfully state as follows:[2]

## JURISDICTION

1.      This Court has jurisdiction to consider this matter pursuant to 28 U.S.C. §§ 157 and 1334 and the *Amended Standing Order of Reference* from the United States District Court for the District of Delaware, dated as of February 29, 2012.  This is a core proceeding pursuant to 28 U.S.C. § 157(b).

2.      Venue is proper before this Court pursuant to 28 U.S.C. §§ 1408 and 1409.

3.      The statutory predicates for the relief requested in this Motion are Bankruptcy Code sections 105(a), 363, 365, 503(b), and 507(a)(2), Bankruptcy Rules 2002, 6004, and 6006(a), and Local Rules 2002-1, 6004-1, and 9013-1(m).

---

[2] Capitalized terms used but not defined herein shall have the meanings ascribed to such terms in the First Day Declaration or the DIP Documents.

4.      Pursuant to Local Rule 9013-1(f), the Debtors consent to the entry of a final judgment or order with respect to this Motion if it is determined that the Court would lack Article III jurisdiction to enter such final order or judgment absent consent of the parties.

## BACKGROUND

1.      On the date hereof (the "**Petition Date**"), each of the Debtors filed a voluntary petition for relief under chapter 11 of the Bankruptcy Code (the "**Chapter 11 Cases**").

2.      Concurrently with the filing of this Motion, the Debtors have requested procedural consolidation and joint administration of the Chapter 11 Cases pursuant to Bankruptcy Rule 1015(b).  The Debtors continue to operate their businesses and manage their properties as debtors in possession pursuant to Bankruptcy Code sections 1107(a) and 1108.

3.      No trustee, examiner, creditors' committee, or other official committee has been appointed in these Chapter 11 Cases.

4.      A description of the Debtors' business, capital structure, and the circumstances leading to these Chapter 11 Cases are set forth in the First Day Declaration filed contemporaneously herewith and incorporated herein by reference.

## PRELIMINARY STATEMENT

5.      The Debtors have commenced the Chapter 11 Cases in order to pursue the sale of all or substantially all of their assets pursuant to Bankruptcy Code section 363 to maximize the value of their estates and the recoveries of their stakeholders.  The Debtors are an independent energy company operating in the State of Alaska's Cook Inlet region (the "**Cook Inlet**") primarily focused on the acquisition, exploration, production, and development of offshore oil and gas properties (collectively, the "**Business**").

6.      The Debtors hold a majority working interest in thirty five (35) competitive oil and gas leases in Alaska's Cook Inlet (the "**Oil and Gas Leases**").  Additionally, the Debtors

3

wholly own and operate an offshore production platform in the middle of the Cook Inlet to extract natural gas under the Oil and Gas Leases. This facility, comprised of three decks, can accommodate a total of six wells and a production crew of up to 28 workers. As of the Petition Date, the Debtors are operating four wells on the production platform. The production platform is connected to a subsea pipeline that delivers natural gas directly to the Debtors' onshore processing facility. The pipeline rests on the bottom of the Cook Inlet and exits through a directionally drilled bore in the coastal bluff before connecting to the Debtors' 10-acre natural gas processing facility.

7.      The Debtors, in consultation with their advisors, explored various strategic alternatives and ultimately determined that a sale of all or substantially all of their assets and/or equity interests (collectively, the "**Assets**") would be the best way to maximize value for the benefit of their stakeholders.

8.      In April 2019, the Debtors' board of directors interviewed various investment bankers, including Seaport Global Securities LLC ("**Seaport**"), to run a traditional investment banking marketing process. On June 5, 2019, the Debtors formally retained Seaport and, with Seaport's support, started the work necessary to run a successful sale process.

9.      The Debtors have developed bidding and auction procedures (the "**Bidding Procedures**") to govern the sale of the Assets (the "**Sale**"). The Bidding Procedures allow interested parties to submit bids for any or all of the Debtors' assets, subject to the terms of the Bidding Procedures.

10.      The Bidding Procedures are reasonable and designed with the objective of generating the best value for the Assets, while affording the Debtors maximum flexibility to execute asset sales in a quick and efficient manner. The Debtors are confident that the Bidding

DM_US 159991341-12.091621.0012

Procedures and the other relief requested herein satisfy the requirements of Bankruptcy Code section 363 and will facilitate the sale of the Assets for the best value for the benefit of the Debtors and their stakeholders.

## RELIEF REQUESTED

11.    By this Motion, the Debtors request entry of the Bidding Procedures Order, substantially in the form attached hereto as **Exhibit A**:

    i.    authorizing and approving the Bidding Procedures, substantially in the form attached to the Bidding Procedures Order as **Exhibit 1**, in connection with the Sale;

    ii.    approving the Bid Protections for Stalking Horse Bidder(s), if any, in accordance with the terms and conditions set forth in the Bidding Procedures and in consultation with the Consultation Parties (as defined in the Bidding Procedures);

    iii.    scheduling an auction (if necessary) in connection with the sale of the Debtors' Assets (the "**Auction**") and a final hearing to consider approval of the proposed Sale (the "**Sale Hearing**");

    iv.    authorizing and approving the form of (A) notice of the Sale, Bidding Procedures, Auction, and the Sale Hearing, substantially in the form attached to the Bidding Procedures Order as **Exhibit 2** (the "**Sale Notice**"), and (B) notice to each relevant contract counterparty (each, a "**Contract Counterparty**") to an Assumed Contract (as defined below) regarding the Debtors' potential assumption and assignment of such contract and the amount necessary to cure any defaults thereunder (the "**Cure Claims**"), substantially in the form attached to the Bidding Procedures Order as **Exhibit 3** (the "**Potential Assumption and Assignment Notice**");

    v.    authorizing and approving procedures for the assumption and assignment of the certain executory contracts and unexpired leases and the determination of Cure Claims with respect thereto (collectively, the "**Assumption and Assignment Procedures**"); and

    vi.    granting related relief.

## MARKETING PROCESS

12.     As described in the First Day Declaration, prior to the Petition Date, the Debtors, with the assistance of their advisors, explored various strategic alternatives and ultimately determined that a sale of all or substantially all of their assets and/or equity interests would maximize the value of their estates for the benefit of all stakeholders.  Prior to the Petition Date, the Debtors, together with Seaport, engaged in preliminary discussions with certain interested parties regarding the purchase of the Debtors' Assets.

13.     Commencing on the Petition Date, the Debtors will continue to progress a robust marketing process for the sale of their Assets. Specifically, the Debtors, with the assistance of Seaport intend to market the Assets to potential buyers, including, without limitation, those potential buyers previously approached, by (a) engaging potential buyers and investors that may have an interest in bidding for the Assets, (b) delivering updated materials to such interested parties, (c) managing and providing access to a data room of confidential information on the Assets to interested parties and (d) providing customized information packets to potential purchasers as appropriate.

14.     The Debtors believe that the proposed Bidding Procedures will enable the Debtors to expeditiously complete their Chapter 11 Cases. In formulating the Bidding Procedures and time periods contained therein, the Debtors balanced the need to provide adequate and appropriate notice to parties in interest and to potential purchasers with the need to efficiently sell the Assets. The Debtors believe that the auction process and time periods set forth in the Bidding Procedures will provide parties with sufficient time and information to formulate competing bids to purchase the Assets. Thus, the Debtors have determined that pursuing the Sale in the manner and within the time periods described above and in the Bidding Procedures is in

6

the best interest of the Debtors' estates and will provide interested parties with sufficient opportunity to participate.

## BIDDING PROCEDURES

A.   Overview

15.   The Bidding Procedures are designed to promote a competitive and efficient sale process. If approved, the Bidding Procedures will allow the Debtors to solicit and identify bids from potential buyers that constitute the highest or otherwise best offer for the Assets on a schedule consistent with the deadlines under the Bidding Procedures and the Debtors' chapter 11 strategy.

16.   In accordance with Local Bankruptcy Rule 6004-1(c)(i), certain of the terms of the Bidding Procedures are highlighted in the chart below.[3]

- **Key Proposed Dates (subject to the Court's availability)**

| | |
|---|---|
| **5:00 p.m. (prevailing Eastern Time) on August 29, 2019** | • Bidding Procedures and Bidding Protections Objection Deadline |
| **10:00 a.m. (prevailing Eastern Time) on September 5, 2019** | • Hearing to consider entry of the Bidding Procedures Order |
| **No later than thirty-five (35) calendar days after the Petition Date** | • Deadline to Approve the Bidding Procedures Order |
| **Within five (5) Business Days after entry of the Bidding Procedures Order** | • Deadline for Debtors to file Potential Assumption and Assignment Notice |
| **Not later than seven (7) calendar days after service of a Stalking Horse Approval Notice (if any)** | • Stalking Horse Objection Deadline (if any) |
| **5:00 p.m. (prevailing Eastern Time) on October 2, 2019** | • Assumption and Assignment Objection Deadline |
| **5:00 p.m. (prevailing Eastern Time) on October 4, 2019** | • Bid Deadline<br>• Sale Objection Deadline |

---

[3] This summary is provided for the convenience of the Court and the parties in interest.  To the extent that there is any inconsistency between the terms of the Bidding Procedures and the summary of such terms in this Motion, the terms of the Bidding Procedures shall control. Capitalized terms used but not otherwise defined in this summary shall have the meanings ascribed to such terms in the Bidding Procedures.

DM_US 159991341-12.091621.0012

| 10:00 a.m. (prevailing Eastern Time) on October 7, 2019 | • Auction (if necessary), to be held at the offices of McDermott Will & Emery LLP, 340 Madison Avenue, New York, New York 10173 |
|---|---|
| 10:00 a.m. (prevailing Eastern Time) on October 25, 2019 | • Sale Hearing |
| The earlier of (i) 10:00 a.m. (prevailing Eastern Time) on October 25, 2019 or (ii) 5:00 p.m. (prevailing Eastern Time) on the day that is fourteen (14) days after service of the Notice of Auction Results | • Adequate Assurance Objection Deadline |
| Not later than one hundred fifty (150) calendar days after the Petition Date | • Sale Closing |

- **Key Terms of the Bidding Procedures**

| Provisions Governing Qualification of Bidders and Qualified Bids Local Bankruptcy Rule 6004-1(c)(i)(A)-(B) | **Part 2 of the Bidding Procedures sets forth the Qualified Bid and Qualified Bidder requirements.**<br>**A. Interested Parties**<br>    1. <u>Required Information</u>.  Interested Parties must deliver the following items (the "**Preliminary Bid Documents**") to Seaport if determined to be necessary by the Debtors in consultation with the Consultation Parties:<br>        i. an executed confidentiality agreement substantially in form and substance acceptable to the Debtors;<br>        ii. a statement and other factual support demonstrating, to the Debtors' satisfaction, that the Interested Party has a bona fide interest in purchasing any or all of the Assets;<br>        iii. a description of the nature and extent of any due diligence the Interested Party wishes to conduct and the date in advance of the Bid Deadline (as defined below) by which such due diligence will be completed; and<br>        iv. sufficient information to allow the Debtors, in their sole discretion, to determine that the Interested Party has the financial wherewithal and any required internal corporate, legal or other authorizations to close the sale transaction, including, but not limited to, current audited financial statements of the Interested Party (or such other form of financial disclosure acceptable to the Debtors in their sole discretion) or, if the Interested Party is an entity formed for the purpose of acquiring any or all of the Assets, (A) current audited financial statements of the equity holder(s) (the "**Equityholder(s)**") of the |

8

Interested Party (or such other form of financial disclosure acceptable to the Debtors in their discretion), (B) a written commitment acceptable to the Debtors in their sole discretion that the Equityholder(s) are responsible for the Interested Party's obligations in connection with the bidding process and (C) copies of any documents evidencing any financing commitments necessary to consummate the transaction.

If the Debtors determine in their sole discretion after receipt of the Preliminary Bid Documents that an Interested Party's desire to become a Potential Bidder is solely on account of a bona fide interest in purchasing any or all of the Assets, such Interested Party will be deemed a "**Potential Bidder**" and the Debtors will deliver to such Potential Bidder (a) a form of purchase agreement and (b) access to the Debtors' confidential electronic data room concerning the Assets (the "**Data Room**"), which access may be limited by the Debtors in their sole discretion.

**B.** **Due Diligence**. Until the Bid Deadline, in addition to granting access to the Data Room, the Debtors will provide Potential Bidders with reasonable due diligence access and additional information, as may be reasonably requested by a Potential Bidder. If any Potential Bidder is (or is affiliated with) a competitor of the Debtors, the Debtors may withhold any information or due diligence access from such Potential Bidder that the Debtors determine is sensitive, proprietary or otherwise not appropriate for disclosure.

**C.** **Bid Deadline** — October 4, 2019, at 5:00 p.m. (prevailing Eastern Time)

**D.** **Qualified Bid Requirements**. A Qualified Bid must be accompanied by the following documents:

i. Irrevocable. Each Bid must be accompanied by an executed letter stating that the bidder's offer is irrevocable until consummation of a transaction involving the Assets identified in such bid and that such bidder agrees to serve as an Alternate Bidder in accordance with the Bidding Procedures;

ii. Executed Agreement. Each Bid must be set forth in a duly authorized and executed (i) restructuring support agreement, which restructuring support agreement must be based on the form restructuring support agreement provided by Seaport, marked to show any revisions, including, among other things, the material terms of a plan of reorganization, with all exhibits and schedules or (ii) purchase agreement, which purchase agreement must be based on the form purchase agreement provided by

9

Seaport, marked to show any revisions, including, among other things, the purchase price for the Assets identified in such Bid, together with all exhibits and schedules;[4]

iii. <u>Financial Wherewithal</u>. Each Potential Bidder must provide written evidence of a firm commitment for financing to consummate the proposed transaction, or other evidence of ability to consummate the proposed transaction without financing, that is satisfactory to the Debtors (in their sole discretion). Such information should include, *inter alia*, the following;

1. contact names and numbers for verification of financing sources;

2. evidence of the Potential Bidder's internal resources and proof of unconditional debt funding commitments from a recognized banking institution;

3. The Potential Bidder's current financial statements (audited if they exist) or other similar financial information;

4. a description of the Potential Bidder's pro forma capital structure; and

5. any such other form of financial disclosure or credit-quality support information or enhancement reasonably acceptable to the Debtors, in consultation with the Consultation Parties, demonstrating that such Bidder has the ability to close the proposed transaction; and

iv. <u>Committed Financing</u>. Each Potential Bidder must provide written evidence acceptable to the Debtors (in their sole discretion) demonstrating financial wherewithal, operational ability and corporate authorization to consummate the proposed transaction.

v. <u>Additional Requirements</u>. A bid will be considered a Qualified Bid only if the bid:

1. identifies the legal name of the purchaser (including any Equityholder(s), if the purchaser is an entity formed for the purpose of consummating the proposed transaction), and full disclosure of any affiliates;

2. states that the Bid is for all of the Debtors' Assets (a "**Full Bid**") or, if the Bid is a "**Partial Bid**," identifies the Assets subject to such Bid;

3. is not materially more burdensome, less favorable or more conditional than the terms of the Stalking Horse Bid (as defined below), if any, as determined by the

---

[4] Form transaction documents will be circulated to Potential Bidders in advance of the Bid Deadline.

Debtors in their sole discretion;

4. identifies all executory contracts and unexpired leases of which the Potential Bidder seeks assignment from the Debtors, if any;

5. is not conditioned on (i) obtaining financing or (ii) the outcome of unperformed due diligence;

6. is not conditioned on the receipt of any third party approvals or consents, including without limitation board of director approval (excluding required Court approval and required governmental, licensing or regulatory approval or consent, if any);

7. with respect to any governmental, licensing or regulatory approvals or consents, includes a description of all such approvals or consents that are required to consummate the proposed transaction (including any antitrust approval or clearance related to the Hart-Scott-Rodino Antitrust Improvements Act of 1976, as amended), together with evidence satisfactory to the Debtors in their sole discretion of the ability of the bidder to obtain such approvals or consents in a timely manner, as well as a description of any material contingencies or other conditions that will be imposed upon, or that will otherwise apply to, the obtainment or effectiveness of any such approvals or consents;

8. is accompanied by a cash deposit by wire transfer to an escrow agent selected by the Debtors (the "**Deposit Agent**") in an amount equal to 10% of the cash purchase price set forth in connection with such Bid (any such deposit, a "**Good Faith Deposit**");

9. indicates that the bidder will not seek any transaction or break-up fee, expense reimbursement, or similar type of payment (other than if such bid is selected to be a Stalking Horse Bid and subject to the provisions of Part 3 of the Bidding Procedures);

10. provides for a commitment to close as soon as practicable, but in no event later than one hundred fifty (150) calendar days after the Petition Date;

11. sets forth the representatives that are authorized to appear and act on behalf of the bidder in connection with the proposed transaction;

12. fully discloses the identity of each entity that will be bidding for the Assets or otherwise financing such Bid (including through the issuance of debt in connection with such Bid), including full disclosure of any connections to or

agreements with the Debtors, affiliates of the Debtors, direct or indirect holders of equity interests of the Debtors, the Stalking Horse Bidder (if any) or any other known, potential, or prospective Potential Bidder, and a summary of any such financing;

13. indicates that the bidder agrees not to seek any substantial contribution administrative expense claims under section 503(b) of the Bankruptcy Code related to bidding for the Assets;

14. if the bid contemplates the assumption and assignment of any contracts or leases, includes evidence of the bidder's ability to comply with section 365 of the Bankruptcy Code (to the extent applicable), including providing adequate assurance of such bidder's ability to perform in the future the contracts and leases proposed in its bid to be assumed by the Debtors and assigned to the bidder, in a form that will permit the Debtors to disseminate immediately such evidence to the non-Debtor counterparties to such executory contracts and leases;

15. constitutes a good faith, bona fide offer to effectuate the proposed transaction; and

16. is received on or before the Bid Deadline (as such deadline may be extended in accordance with the Bidding Procedures).

**E.      Designation of Qualified Bids; Cure of Non-Qualifying Bids**.      The Debtors shall have the right, in their Permitted Discretion (as defined in the Bidding Procedures), to deem a bid a Qualified Bid even if such bid does not conform to one or more of the requirements above or does not include one or more Required Bid Documents. If the Debtors receive a bid prior to the Bid Deadline that is not a Qualified Bid, the Debtors may, in their sole discretion, provide the bidder with the opportunity to remedy any deficiencies following the Bid Deadline but not later than two days prior to the Auction. If any bid is determined by the Debtors not to be a Qualified Bid, and the applicable bidder fails to remedy such bid in accordance with the Bidding Procedures, the Debtors shall promptly instruct the Deposit Agent to return such bidder's Good Faith Deposit.

**F.      Credit Bid**. Each of the DIP Secured Parties shall be deemed Qualified Bidders and the DIP Agent (acting on the instructions of the DIP Lenders) shall have the right to credit bid the DIP Obligations, in accordance with the DIP Documents and subject to the Carve-Out, up to the full amount of the DIP Obligations owed to such party in any sale contemplated by the Bid Procedures pursuant to section 363(k) of the Bankruptcy Code;

provided, that if the DIP Agent (on behalf of the DIP Secured Parties) submits a bid for any of the Assets, the DIP Agent shall cease being a consultation party as set forth in the Bidding Procedures. Each of the Prepetition Secured Parties shall be deemed Qualified Bidders and the Prepetition Term Loan Agent (acting on the instructions of the Required Lenders under the Prepetition Term Loan Agreement) shall have the right to credit bid up to the full amount of the Prepetition Term Loan Obligations, in accordance with the Prepetition Term Loan Documents and subject to the Carve-Out in any sale contemplated by the Bid Procedures pursuant to section 363(k) of the Bankruptcy Code.

**G.    Deemed Acknowledgments and Representations**.  Each Qualified Bidder shall be deemed to acknowledge and represent that such bidder (i) has had an opportunity to conduct any and all due diligence regarding the Assets that are the subject of the Auction prior to making any such bids, (ii) has relied solely upon its own independent review, investigation and/or inspection of any documents and/or the Assets in making its bid, and (iii) did not rely upon any written or oral statements, representations, promises, warranties or guaranties whatsoever, whether express, implied, by operation of law or otherwise, regarding the Assets, or the completeness of any information provided in connection therewith, except as expressly stated in the Bidding Procedures or, as to the Successful Bidder(s), the restructuring support agreement(s) or asset purchase agreement(s) with such Successful Bidder(s).

Without the written consent of the Debtors, in their Permitted Discretion, a Qualified Bidder may not amend, modify or withdraw its Qualified Bid, except for proposed amendments to increase the amount or otherwise improve the terms of its Qualified Bid, during the period that such Qualified Bid is required to remain irrevocable.

| **Provisions Providing Bid Protections to Stalking Horse or Initial Bidder** <br> Local Bankruptcy Rule 6004-1(c)(i)(C) | **Part 3 of the Bidding Procedures outlines the terms of selecting a Stalking Horse Bidder and providing Bid Protections.** <br><br> **A.    Selection of the Stalking Horse Bidder**. Prior to the Bid Deadline, the Debtors shall be fully authorized, but not obligated, in an exercise of their business judgment (in consultation with the Consultation Parties) to agree with any Qualified Bidder that: <br><br> 1.  such Qualified Bidder's Qualified Bid shall serve as the minimum bid for the Assets or any lot thereof (such Qualified Bidder, a "**Stalking Horse Bidder**" and, such Qualified Bid, a "**Stalking Horse Bid**"); and <br><br> 2.  that the Debtors will enter into the transaction(s) contemplated in such Stalking Horse Bid unless a higher or otherwise better Qualified Bid or Subsequent Bid is submitted with respect to such Assets or lot thereof, as determined by the Debtors |

13

in accordance with these Bidding Procedures.

Promptly upon the designation of a Stalking Horse Bid, the Debtors shall file a notice (the "**Stalking Horse Approval Notice**") requesting entry of an order approving the Stalking Horse Bidder (the **"Stalking Horse Approval Order"**) and serve such notice on the Notice Parties. Parties in interest may object to the designation of a Stalking Horse Bidder or any of the terms of such Stalking Horse Bid (each, a "**Stalking Horse Objection**") within seven (7) calendar days after service of the Stalking Horse Approval Notice (the "**Stalking Horse Objection Deadline**"). If a timely Stalking Horse Objection is filed, the Debtors will schedule a hearing (the "**Stalking Horse Hearing**") regarding such Stalking Horse Objection as soon as reasonably practicable seeking approval of such Stalking Horse Bid on or before September 27, 2019. In the absence of a Stalking Horse Objection, upon the expiration of the Stalking Horse Objection Deadline, the Debtors will submit the Stalking Horse Approval Order to the Court, which may enter such order without a hearing.

**B.      Bid Protections.** In the event that the Debtors select one or more Stalking Horse Bidder(s) in accordance with the Bidding Procedures, the Debtors shall be fully authorized, but not obligated, in an exercise of their business judgment (in consultation with the Consultation Parties) to offer the following bid protections to such Stalking Horse Bidder(s), subject to entry of the Stalking Horse Approval Order, payable if the Debtors consummate a sale pursuant to a Qualified Bid other than the Stalking Horse Bid (if the assets subject to such sale are those to which such Stalking Horse Bid relates) paid out of the proceeds of the sale to which they relate:

1.   payment of a break-up fee in an amount not to exceed 3.0% of the cash purchase price set forth in the Stalking Horse Bid (the **"Break-Up Fee"**); and/or

2.   reimbursement of the reasonable and documented costs and expenses of the Stalking Horse Bidder (the "**Expense Reimbursement**" and, together with the Break-Up Fee, the "**Bid Protections**") in an amount not to exceed $250,000.00; *provided, however,* that

a.   the payment of such Break-Up Fee and/or Expense Reimbursement shall be subject to the terms and conditions of the definitive agreement(s) executed between the Debtors and such Stalking Horse Bidder(s);

b.   if the Stalking Horse Bidder is a parent or an affiliate of the Debtors (direct or indirect), such Stalking Horse Bidder shall not be entitled to the Bid Protections; and

c.   no Break-Up Fee shall be paid to a credit bidder.

14

| | |
|---|---|
| | **C.    Notice.**  Notice of the Bid Protections on the terms agreed to by the Debtors (in consultation with the Consultation Parties) and one or more Stalking Horse Bidders shall be provided concurrent with the notice of such Stalking Horse Bidder(s) in accordance with the Bidding Procedures Order. Until paid, any Break-Up Fee or Expense Reimbursement provided pursuant to the Bidding Procedures Order shall constitute allowed superpriority administrative expense claims arising in the Debtors' chapter 11 cases under sections 503(b), 507(a)(2), and 507(b) of the Bankruptcy Code; provided, however, that such superpriority claims shall be subject to and subordinate in all respects to (i) the liens and claims granted to the DIP Secured Parties and Prepetition Secured Parties in the DIP Orders (as defined in the DIP Credit Agreement); and (ii) the Carve-Out (as defined in the DIP Orders). |
| **Provisions Permitting the Modification of Bidding and Auction Procedures** Local Bankruptcy Rule 6004-1(c)(j)(D) | Part 10 of the Bidding Procedures authorizes the Debtors, except as otherwise provided in the Bidding Procedures or the Bidding Procedures Order, in consultation with the Consultation Parties, to modify the Bidding Procedures and implement additional procedural rules that the Debtors determine will better promote the goals of the bidding process and discharge the Debtors' fiduciary duties. |
| **Provisions Regarding Closing with Alternate Backup Bidders** Local Bankruptcy Rule 6004-1(c)(i)(E) | **Parts 5 and 6 of the Bidding Procedures set forth procedures by which the Debtors shall select the Successful Bids.** **A.    Selection of Successful Bids.** Prior to the conclusion of the Auction, the Debtors shall (in each case in their Permitted Discretion) (a) review and evaluate each bid made at the Auction on the basis of financial and contractual terms and other factors relevant to the sale process, including those factors affecting the speed and certainty of consummating the sale transaction, (b) determine and identify the highest or otherwise best offer or collection of offers (the "**Successful Bid(s)**")**,** (c) determine and identify the next highest or otherwise best offer or collection of offers (the "**Alternate Bid(s)**") and (d) notify all Qualified Bidders participating in the Auction, prior to its adjournment, of the identity of the party or parties that submitted the Successful Bid(s) (the "**Successful Bidder(s)**"), the amount and other material terms of the Successful Bid(s), the identity of the party or parties that submitted the Alternate Bid(s) (the "**Alternate Bidder(s)**") and the amount and other material terms of the Alternate Bid(s). No additional bids may be considered after the Auction is closed. **B.    Alternative Bid.** The Debtors' presentation to the Court of the Successful Bid(s) and Alternate Bid(s) will not constitute the Debtors' acceptance of such bid(s), which acceptance will only occur upon approval of such bid(s) by the Court.  Following the Court's entry of the Sale Order approving such bid(s), the Debtors |

15

and the Successful Bidder(s) shall proceed to consummate the transaction(s) contemplated by the Successful Bid(s), in all cases within the milestones set in the DIP Credit Agreement.  If the Debtors and the Successful Bidder(s) fail to consummate the proposed transaction(s), then the Debtors shall file a notice with the Court advising of such failure. Upon the filing of such notice with the Court, the Alternate Bid(s) will be deemed to be the Successful Bid(s) and the Debtors will be authorized but not directed, in their sole discretion, to effectuate the transaction(s) with the Alternate Bidder(s) subject to the terms of the Alternate Bid(s) of such Alternate Bidder(s) without further order of the Court. If such failure to consummate the sale is the result of a breach by the Successful Bidder(s) (such bidder(s), the "**Breaching Bidder(s)**") of its (their) purchase agreement(s), the Debtors reserve the right to seek all available remedies from the Breaching Bidder(s), subject to the terms of the applicable restructuring support agreement(s) or purchase agreement(s).

**C.     Execution of Definitive Documentation.** Within two Business Days after the completion of the Auction, the Successful Bidder(s) and the applicable Debtors shall complete and execute all agreements, instruments and other documents necessary to consummate the applicable sale transaction(s) or otherwise contemplated by the applicable Successful Bid(s).  Promptly following the selection of the Successful Bid(s) and Alternate Bid(s), the Debtors shall file a notice of the Successful Bid(s) and Alternate Bid(s) with the Court and cause such notice to be published on the Case Information Website, which shall constitute definitive proof that the Debtors have closed the Auction.

C.     Noticing Procedures

17.     The Bidding Procedures and the Bidding Procedures Order provide the following

noticing procedures (the "**Noticing Procedures**"):

   a.     Sale Notice. Within one (1) Business Day after entry of the Bidding Procedures Order, or as soon as reasonably practicable thereafter, the Debtors shall serve the Sale Notice by first-class mail upon the following parties or, in lieu thereof, their counsel, if known: (i) the Notice Parties (as defined below); (ii) counsel for any statutory committee appointed in the Chapter 11 Cases; (iii) all entities known to have expressed an interest in a transaction with respect to the purchase of the Assets; (iv) counsel to the DIP Agent; (v) the Internal Revenue Service; (vi) all known taxing authorities to which the Debtors are subject; (vii) all entities known or reasonably believed to have asserted a Lien on any of the Assets; (viii) counterparties to the Debtors' executory contracts and unexpired leases;

16

and (ix) those entities and individuals appearing on the Debtors' creditor matrix (collectively, the "**Sale Notice Parties**"). On or about the same date, the Debtors shall publish the Sale Notice on the Debtors' case information website (located at **https://cases.primeclerk.com/furieoperatingalaska** (the "**Case Information Website**")).

b.  Sale Objection Deadline.  The deadline to file an objection with the Court to the Sale, and all objections relating to the Stalking Horse Bidder (if any), the conduct of the Auction or the Sale (collectively, the "**Sale Objections**") is **5:00 p.m. (prevailing Eastern Time) on October 4, 2019** (the "**Sale Objection Deadline**").

c.  <u>Notice of Determination of Qualified Bids</u>. At least two (2) Business Days prior to the Auction, the Debtors will (A) notify each Qualified Bidder that has timely submitted a Qualified Bid that its bid is a Qualified Bid and (B) provide all Qualified Bidders with (1) copies of the Qualified Bid or combination of Qualified Bids that the Debtors believe is the highest or otherwise best offer (the "**Starting Bid(s)**"), (2) an explanation of how the Debtors value the Starting Bid(s) and (3) a list identifying all of the Qualified Bidders and their respective Qualified Bids.

d.  <u>Provisions Governing the Auction.</u> If the Debtors receive no more than one (1) Bid that is a Qualified Bid, the Debtors, in their sole discretion, shall (i) notify all Potential Bidders and the Bankruptcy Court in writing that (a) the Auction is cancelled and (b) such Qualified Bid is the Successful Bid, and (ii) if applicable, the Debtors shall seek authority at the Sale Hearing to consummate the Sale transactions with such Qualified Bidder contemplated by its Qualified Bidder Purchase Agreement. If the Debtors receive two (2) or more Qualified Bids, the Debtors will conduct an auction (the "**Auction**").

e.  <u>Notice of Auction Results.</u> Promptly following the selection of the Successful Bid(s) and Alternate Bid(s), the Debtors shall file a notice of the Successful Bid(s) and Alternate Bid(s) (the "**Notice of Auction Results**") with the Court and cause such notice to be published on the Case Information Website, which shall constitute definitive proof that the Debtors have closed the Auction.

18.  The Noticing Procedures constitute adequate and reasonable notice of the key dates and deadlines for the sale process, including, among other things, the applicable objection deadline, the Bid Deadline and the time and location of the Auction and Sale Hearing. Accordingly, the Debtors request that the Court find that the Noticing Procedures are adequate

and appropriate under the circumstances and comply with the requirements of Bankruptcy Rule 2002 and Local Bankruptcy Rule 2002-1.

## ASSUMPTION AND ASSIGNMENT PROCEDURES

19.    In connection with the Sale, the Debtors anticipate that they will assume and assign to the Successful Bidder (or its designated assignee(s)) all or certain of the Potentially Assumed Contracts pursuant to section 365(b) of the Bankruptcy Code. Accordingly, the Debtors hereby seek approval of the proposed Assumption and Assignment Procedures set forth herein, which, among other things, (a) outline the process by which the Debtors will serve notice to all Contract Counterparties regarding the proposed assumption and assignment, related Cure Claims, if any, and information regarding the Successful Bidder's adequate assurance of future performance and (b) establish objection and other relevant deadlines and the manner for resolving disputes relating to assumption and assignment of the Potentially Assumed Contracts. The proposed Assumption and Assignment Procedures are as follows:

a.    **Executory Contract List.**

i.    No later than five (5) Business Days after entry of the Bidding Procedures Order, the Debtors shall file with the Court a list of executory contracts and unexpired leases that may be assumed and assigned in connection with the Sale (each, an "**Assumed Contract**" and collectively, the "**Potentially Assumed Contracts**" and such list the "**Executory Contract List**").

ii.    If it is discovered that an executory contract or unexpired lease should have been included on the Executory Contract List but was not (such contract, a "**Previously Omitted Contract**"), or in the event that the Debtors seek to modify a Cure Claim, the Debtors will promptly file with the Court a revised Executory Contract List.

b.    **Potential Assumption and Assignment Notice.** Simultaneously with the filing of the Executory Contract List (or any revised Executory Contract List) or as soon as reasonably practicable thereafter, the Debtors will serve on each relevant Contract Counterparty the Potential Assumption and Assignment Notice.

c.      **Assumption and Assignment Objections.**

i.      <u>Objection Deadlines</u>. Any Contract Counterparty may object to the proposed assumption or assignment of its Assumed Contract, the Debtors' proposed Cure Claims, if any, or the ability of a Stalking Horse Bidder (if any) to provide adequate assurance of future performance (an "**Assumption and Assignment Objection**"). All Assumption and Assignment Objections must (A) be in writing, (B) comply with the Bankruptcy Code, Bankruptcy Rules and Local Bankruptcy Rules, (C) state, with specificity, the legal and factual bases thereof, including, if applicable, the Cure Claims the Contract Counterparty believes is required to cure defaults under the relevant Assumed Contract and supporting materials evidencing the same, (D) be filed by no later than **5:00 p.m. (prevailing Eastern Time on October 2, 2019** (the "**Assumption and Assignment Objection Deadline**") and (E) be served on (1) proposed counsel for the Debtors, Womble Bond Dickinson (US) LLP, 1313 North Market Street, Suite 1200, Wilmington, DE 19081 (Attn: Matthew P. Ward and Ericka F. Johnson) and McDermott Will & Emery LLP, 340 Madison Ave., New York, New York 10173 (Attn: Timothy W. Walsh, Darren Azman, and Riley T. Orloff), (2) counsel to the DIP Agent, Kirkland & Ellis LLP, 300 North LaSalle, Chicago, IL 60654 (Attn: Chad Husnick; chusnick@kirkland.com); Kirkland & Ellis LLP, 601 Lexington Avenue, New York, NY 10022 (Attn: George Klidonas; George.klidonas@kirkland.com), and (3) counsel to any statutory committee appointed in the Chapter 11 Cases, (4) the U.S. Trustee, 844 King Street, Suite 2207, Lockbox 35, Wilmington, Delaware, 19801, and (5) any other party that has requested notice pursuant to Bankruptcy Rule 2002 (collectively, the "**Assumption and Assignment Objection Notice Parties**").

ii.     <u>Resolution of Assumption and Assignment Objections</u>. The Court will hear and determine any properly and timely filed and served Assumption and Assignment Objection at the Sale Hearing or, if filed after the Sale Hearing, on an expedited basis, and in any event no later than closing of the Sale. If such objection has not been resolved prior to the closing of the Sale (whether by an order of the Court or by agreement with the Contract Counterparty), the Successful Bidder(s) shall pay as soon as reasonably practicable after the closing date any disputed Cure Claim pursuant to an order of the Court or mutual agreement between the Debtors, the Successful Bidder(s) and the applicable Contract Counterparty.

iii.    <u>Failure to File Timely Assumption and Assignment Objection</u>. If a Contract Counterparty fails to properly and timely file and serve an Assumption and Assignment Objection in accordance with these

19

Assumption Procedures, the Contract Counterparty shall be forever barred from asserting any objection with regard to the assumption or assignment of its Assumed Contract, and notwithstanding anything to the contrary in the Assumed Contract or any other document, the Cure Claims set forth in the Potential Assumption and Assignment Notice shall be the only amount necessary to cure outstanding defaults under the applicable Assumed Contract under section 365(b) of the Bankruptcy Code arising out of or related to any events occurring prior to the closing of the Sale, whether known or unknown, due or to become due, accrued, absolute, contingent or otherwise, and the Contract Counterparty shall be forever barred from asserting any additional cure or other amounts with respect to such Assumed Contract against the Debtors, the Successful Bidder or the property of any of them.

d.  **Post-Auction Adequate Assurance Objection.** Following the Auction, the Debtors shall serve the Notice of Auction Results on each Contract Counterparty that received a Potential Assumption and Assignment Notice at the same time as such Notice of Auction Results is filed with the Court and published on the Case Information Website. Objections of any Contract Counterparty related solely to the identity of and adequate assurance of future performance provided by the Successful Bidder (an "**Adequate Assurance Objection**") must (A) be in writing, (B) comply with the Bankruptcy Code, Bankruptcy Rules and Local Bankruptcy Rules, (C) state, with specificity, the legal and factual bases thereof, (D) be filed by **no later than the Sale Hearing or, if earlier, fourteen days following service of the Notice of Auction Results** (the "**Adequate Assurance Objection Deadline**") and (E) be served on the Assumption and Assignment Objection Notice Parties.

e.  **Reservation of Rights.** The inclusion of an Assumed Contract, or Cure Claims with respect thereto, on a Potential Assumption and Assignment Notice or the Executory Contract List shall not constitute or be deemed a determination or admission by the Debtors, the Successful Bidder(s) or any other party in interest that such contract or lease is an executory contract or unexpired lease within the meaning of the Bankruptcy Code. The Debtors reserve all of their rights, claims and causes of action with respect to each Assumed Contract listed on the Potential Assumption and Assignment Notice and Executory Contract List. The Debtors' inclusion of any Assumed Contract on the Potential Assumption and Assignment Notice and Executory Contract List shall not be a guarantee that such Assumed Contract ultimately will be assumed or assumed and assigned.

## APPROVAL OF THE RELIEF REQUESTED IS WARRANTED
## AND IN THE BEST INTERESTS OF THE DEBTORS AND THEIR STAKEHOLDERS

A.    The Bidding Procedures are Fair, Appropriate and Should Be Approved

20.    The Bidding Procedures are specifically designed to promote what courts have deemed to be the paramount goal of any proposed sale of property of a debtor's estate: maximizing the value of sale proceeds received by the estate. *See Burtch et al. v. Ganz, et al. (In re Mushroom Co.)*, 382 F.3d 325, 339 (3d Cir. 2004) (finding that a debtor had a fiduciary duty to maximize and protect the value of the estate's assets); *In re Food Barn Stores, Inc.*, 107 F.3d 558, 564-65 (8th Cir. 1997) (recognizing that main goal of any proposed sale of property of a debtor's estate is to maximize value). Courts uniformly recognize that procedures established for the purpose of enhancing competitive bidding are consistent with the fundamental goal of maximizing value of a debtor's estate. *See Calpine Corp. v. O'Brien Envtl. Energy, Inc. (In re O'Brien Envtl. Energy, Inc.)*, 181 F.3d 527, 537 (3d Cir. 1999) (noting that bidding procedures that promote competitive bidding provide a benefit to a debtor's estate); *Official Comm. of Subordinated Bondholders v. Integrated Res. Inc. (In re Integrated Res. Inc.)*, 147 B.R. 650, 659 (S.D.N.Y. 1992) (observing that Bidding Procedures "encourage bidding and . . . maximize the value of the debtor's assets").

21.    The Bidding Procedures provide for an orderly, uniform and appropriately competitive process through which interested parties may submit offers to purchase the Assets. The Debtors, with the assistance of their advisors, have structured the Bidding Procedures to promote active bidding by interested parties and to obtain the highest or otherwise best offer reasonably available for the Assets. Additionally, the Bidding Procedures will allow the Debtors to conduct the Auction in a fair and transparent manner that will encourage participation by financially capable bidders with demonstrated ability to consummate a timely Sale. Courts in this

district have approved procedures similar to the proposed Bidding Procedures in connection with chapter 11 asset sales. *See, e.g.*, *In re Z Gallerie, LLC, et al.* Case No. 19-10488 (LSS) (Bankr. D. Del. April 11, 2019; *In re Terra Via Holdings, Inc.*, *et al.,* Case No. 17-11655 (CSS) (Bankr. D. Del. Aug. 22, 2017); *In re BPS US Holdings Inc.*, Case No. 16-12373 (KJC) (Bankr. D. Del. Nov. 30, 2016); *In re SFX Entertainment, Inc.*, Case No. 16-10238 (MFW) (Bankr. D. Del. Mar. 23, 2016); *In re Sundevil Power Holdings, LLC*, Case No. 16-10369 (KJC) (Bankr. D. Del. Mar. 3, 2016). Accordingly, the Bidding Procedures should be approved because, under the circumstances, they are reasonable, appropriate and in the best interests of the Debtors, their estates and all parties in interest.

B.    The Bid Protections That May Be Granted to a Stalking Horse Bidder Have a Sound Business Purposes and Should Be Approved

22.    As noted above, the Bidding Procedures allow (but do not require) the Debtors, in the exercise of their business judgment (in consultation with the Consultation Parties), to, prior to the Bid Deadline, (a) agree with a Qualified Bidder that its Qualified Bid will serve as the minimum bid for the Assets, and constitute a Stalking Horse Bid[5] and (b) offer the Bid Protections to such Stalking Horse Bidder.  While the Debtors are not committed to offering the Bid Protections at this time, the Debtors ask the Court to authorize them to offer these Bid Protections because the Debtors believe that, in appropriate circumstances, the presence of a Stalking Horse Bidder will benefit all stakeholders. For the avoidance of doubt, however, the Bid Protections will (x) remain subject to the terms and conditions of the definitive agreement(s) executed between the Debtors and such Stalking Horse Bidder(s) and (y) not be paid to a credit bidder.

---

[5] In the case multiple bids for non-overlapping lots of the Assets, the Bidding Procedures allow the possibility of multiple Stalking Horse Bids.

23.    Courts have identified at least two instances in which bid protections in the form of break-up fees and expense reimbursements may benefit the estate. First, a break-up fee or expense reimbursement may be necessary to preserve the value of a debtor's estate if assurance of the fee "promote[s] more competitive bidding, such as by inducing a bid that otherwise would not have been made and without which bidding would have been limited." *In re O'Brien Envtl. Energy, Inc.,* 181 F.3d at 533. Second, if the availability of break-up fees and expense reimbursements were to induce a bidder to research the value of the debtor and convert the value to a dollar figure on which other bidders can rely, the bidder may have provided a benefit to the estate by increasing the likelihood that the price at which the debtor is sold will reflect its true worth. *See id.*; *see also In re Reliant Energy Channel View LP*, 594 F.3d 200, 206-08 (3d Cir. 2010) (reasoning that a break-up fee should be approved if it is necessary to entice a party to make the first bid or if it would induce a stalking horse bidder to remain committed to a purchase).

24.    In *O'Brien*, the Third Circuit reviewed the following nine factors set forth by the lower court as relevant in deciding whether to award break-up fees and expense reimbursements:

    a.  the presence of self-dealing or manipulation in negotiating the break-up fee or expense reimbursement;

    b.  whether the fee or reimbursement harms, rather than encourages, bidding;

    c.  the reasonableness of the break-up fee or expense reimbursement relative to the purchase price;

    d.  whether the unsuccessful bidder placed the estate property in a "sale configuration mode" to attract other bidders to the auction;

    e.  the ability of the request for a break-up fee or expense reimbursement to serve to attract or retain a potentially successful bid, establish a bid standard or minimum for other bidders or attract additional bidders;

f.   the correlation of the fee or reimbursement to a maximum value of the debtor's estate;

g.   the support of the principal secured creditors and creditors' committees of the break-up fee;

h.   the benefits of the safeguards to the debtor's estate; and

i.   the substantial adverse impact of the break-up fee on unsecured creditors, where such creditors are in opposition to the break-up fee or expense reimbursement.

See In re O'Brien Envtl. Energy, Inc., 181 F.3d at 536.

25.   Here, the Bid Protections contemplated by the Bidding Procedures squarely satisfy the O'Brien Factors. The Break-Up Fee would enable the Debtors to secure an adequate floor for the Assets and insist that competing bids be materially higher or otherwise better than the Stalking Horse Bid — a clear benefit to the Debtors' estates. Moreover, it is likely that a prospective Stalking Horse Bidder would not agree to act as a stalking horse without the Bid Protections. Without the Court authorizing the Debtors to offer the Bid Protections, the Debtors might lose the opportunity to obtain the highest or otherwise best offer for the Assets and would certainly lose the downside protection that could be afforded by the existence of a Stalking Horse Bidder. Id.

26.   The Break-Up Fee and Expense Reimbursement are reasonable and appropriate in light of the nature of the transaction and the efforts that will necessarily have been expended by a Stalking Horse Bidder (to the extent the Debtors' choose a Qualified Bid to be a Stalking Horse Bid). Moreover, the Bid Protections will only be offered to the extent that the Debtors believe, in the exercise of their business judgment (in consultation with the Consultation Parties), and consistent with their fiduciary duties, that offering these protections will enhance the ultimate recovery to be received by all stakeholders. The Bid Protections are also sized appropriately. The Break-Up Fee will not exceed 3.0% of the cash purchase price set forth in the Stalking Horse

Bid, an amount that is well within market for transactions of this type, and the Expense Reimbursement is not to exceed $250,000. Additionally, both the Break-Up Fee and the Expense Reimbursement will be subject to consultation with the DIP Agent and the negotiation and execution of a definitive agreement between the Debtors and the Stalking Horse Bidder. In sum, the Debtors' ability to offer the Bid Protections will enable them to ensure the sale of the Assets at a price they believe to be fair, while, at the same time, providing the Debtors with the potential to achieve an even greater benefit to the Debtors' estates in the form of a higher or otherwise better offer for the Assets.

27.     This Court has approved protections similar to, and in excess of, the proposed Bid Protections as reasonable and consistent with the type and range of bidding protections typically approved. *See, e.g.*, *In re Terra Via Holdings, Inc., et al.*, Case No. 17-11655 (CSS) (Bankr. D. Del. Aug. 22, 2017) (approving expense reimbursement up to an amount representing approximately 1.5% of the consideration in addition to a break-up fee); *In re CIBER, Inc.*, Case No. 17-10772 (BLS) (Bankr. D. Del. May 2, 2017) (approving a break-up fee and expense reimbursement that in the aggregate represented approximately 3.0% of the consideration); *In re American Apparel, LLC*, Case No. 16-12551 (BLS) (Bankr. D. Del. Dec. 5, 2016) (approving a break-up of 3.0% in connection with a $66 million sale of assets); *In re BPS US Holdings Inc.*, Case No. 16-12373 (KJC) (Bankr. D. Del. Nov. 30, 2016) (approving a break-up fee of 3.5% in connection with a $575 million sale of assets); *In re Nirvanix, Inc.*, Case No. 13-12595 (BLS) (Bankr. D. Del. Oct. 23, 2013), (approving total bid protections of 11%—comprising a $150,000 break-up fee and $150,000 expense reimbursement for a $2,800,000 stalking horse bid); *In re First Place Fin. Corp.,* Case No. 12- 12961 (BLS) (Bankr. D. Del. Nov. 26, 2012) (approving total bid protections of 6.6%— comprising a $3 million break-up fee and a $1 million expense

reimbursement on a transaction with $60 million in aggregate consideration.); *In re Hub Holding Corp., et al.*, Case No. 09- 11770 (PJW) (Bankr. D. Del. June 30, 2009) (approving total bid protections of 6.43%—comprising a $2,880,000 break-up fee and $1,750,000 expense reimbursement for a $72,000,000 stalking horse bid.); *In re Fluid Routing Solutions Intermediate Holding Corp., et al.*, Case No. 09-10384 (CSS) (Bankr. D. Del. Feb. 19, 2009), (approving total bid protections of 6.82%— comprising a $750,000 break-up for an $11,000,000 stalking horse bid).

28.     Accordingly, the Debtors submit that the Bid Protections have a sound business purpose, are fair and appropriate under the circumstances, and should be approved.

C.      The Proposed Sale Satisfies the Requirements of Section 363 of the Bankruptcy Code

29.     Ample authority exists for approval of the Sale contemplated by this Motion. Section 363 of the Bankruptcy Code provides, in relevant part, that "[t]he trustee, after notice and a hearing, may use, sell, or lease, other than in the ordinary course of business, property of the estate." 11 U.S.C. § 363(b)(1). Although section 363 of the Bankruptcy Code does not specify a standard for determining when it is appropriate for a court to authorize the use, sale or lease of property of a debtor's estate, courts have approved the authorization of a sale of a debtor's assets if such sale is based upon the sound business judgment of the debtor. *See, e.g.*, *Meyers v. Martin (In re Martin)*, 91 F.3d 389, 395 (3d Cir. 1996) (citing *In re Schipper*, 933 F.2d 513 (7th Cir. 1991)); *In re Chateaugay Corp.*, 973 F.2d 141, 143 (2d Cir. 1992); *Stephen Indus., Inc. v. McClung*, 789 F.2d 386 (6th Cir. 1986); *Committee of Equity Security Holders v. Lionel Corp. (In re Lionel Corp.)*, 722 F.2d 1063, 1071 (2d Cir. 1983).

30.     Courts typically consider the following factors in determining whether a proposed sale satisfies this standard:  (a) whether a sound business justification exists for the sale; (b) whether adequate and reasonable notice of the sale was provided to interested parties; (c)

whether the sale will produce a fair and reasonable price for the property; and (d) whether the parties have acted in good faith. *See In re Decora Indus., Inc.*, 2002 WL 32332749, at *2 (D. Del. May 20, 2002) (citing *In re Delaware & Hudson Ry. Co.*, 124 B.R. 169, 176 (D. Del. 1991)). Where a debtor demonstrates a valid business justification for a decision, it is presumed that "in making a business decision the directors of a corporation acted on an informed basis, in good faith and in the honest belief that the action taken was in the best interests of the company." *In re Integrated Res., Inc.*, 147 B.R. at 656 (quoting *Smith v. Van Gorkom,* 488 A.2d 858, 872 (De1.1985)).

*1.      The Debtors Have Demonstrated a Sound Business Justification for the Proposed Sale*

31.      A sound business purpose for the sale of a debtor's assets outside the ordinary course of business exists where such sale is necessary to preserve the value of the estate for the benefit of creditors and interest holders. *See, e.g., In re Abbotts Dairies of Pa., Inc.*, 788 F.2d 143 (3d Cir. 1986); *In re Lionel Corp.*, 722 F.2d at 1063; *In re Food Barn Stores, Inc.*, 107 F.3d at 564-65 (recognizing the paramount goal of any proposed sale of property of estate is to maximize value).

32.      As set forth above, a strong business justification exists for the sale of the Debtors' Assets. An expeditious sale of the Assets is required to maximize the value of the Debtors assets and recoveries for the Debtors' stakeholders.    Moreover, the timely consummation of the proposed Sale is required under the express terms of the Term Sheet.

*2.      The Noticing Procedures Are Reasonable and Appropriate*

33.      The Noticing Procedures described above are reasonably calculated to provide all of the Debtors' known creditors and all other parties in interest with adequate, timely notice of, among other things, the proposed Sale, Bidding Procedures, Auction and Sale Hearing.

3.      *The Proposed Bidding Procedures Will Produce a Fair and Reasonable Purchase Price for the Assets*

34.      As set forth above, the Debtors believe that the proposed Bidding Procedures will produce fair and reasonable purchase prices for the Assets.

35.      The Bidding Procedures, including the ability to designate a Stalking Horse Bidder prior to the Bid Deadline, were carefully designed to facilitate a robust and competitive bidding process. The Debtors are poised to commence a competitive bidding process to maximize the value of the Assets sold at the Auction. The Bidding Procedures provide an appropriate framework for the Debtors to review, analyze and compare all bids received to determine which bids are in the best interests of the Debtors' estates and their stakeholders, while allowing the Debtors appropriate degrees of discretion to determine the Successful Bidder. A Sale governed by the Bidding Procedures undoubtedly will serve the important objectives of obtaining not only a fair and reasonable purchase price for the Assets, but also the highest or otherwise best value for the Assets, which will inure to the benefit of all parties in interest in the Chapter 11 Cases.

4.      *The Successful Bidder Should Be Entitled to the Protections of Section 363(m) of the Bankruptcy Code*

36.      Section 363(m) of the Bankruptcy Code protects a good faith purchaser's interest in property purchased from a debtor notwithstanding that the sale conducted under section 363(b) is later reversed or modified on appeal. Specifically, section 363(m) of the Bankruptcy Code states the following:

> The reversal or modification on appeal of an authorization under [section 363(b) of the Bankruptcy Code] . . . does not affect the validity of a sale . . . . entity that purchased . . . such property in good faith, whether or not such entity knew of the pendency of the appeal, unless such authorization and such sale . . . were stayed pending appeal.

11 U.S.C. § 363(m). Section 363(m) of the Bankruptcy Code fosters the 'policy of not only affording finality to the judgment of the [B]ankruptcy [C]ourt, but particularly to give finality to those orders and judgments upon which third parties rely.' *Reloeb Co. v. LTV Corp (In re Chateaugay Corp.)*, No. 92 Civ. 7054 (PKL), 1993 U.S. Dist. Lexis 6130, at \*9 (S.D.N.Y. May 10, 1993) (quoting *In re Abbotts Dairies of Pa., Inc.*, 788 F.2d at 147); *see also Allstate Ins. Co. v. Hughes*, 174 B.R. 884, 888 (S.D.N.Y. 1994) ("Section 363(m) . . . provides that good faith transfers of property will not be affected by the reversal or modification on appeal of an unstayed order, whether or not the transferee knew of the pendency of the appeal").

37.     While the Bankruptcy Code does not define "good faith," the Third Circuit has held that "the phrase encompasses one who purchases in 'good faith' and for 'value.'" *In re Abbotts Diaries,* 788 F.2d at 147 (to constitute lack of good faith, a party's conduct in connection with the sale must usually amount to fraud, collusion between the purchaser and other bidders or the trustee or an attempt to take grossly unfair advantage of other bidders); *see also In re Bedford Springs Hotel, Inc.,* 99 B.R. 302, 305 (Bankr. W.D. Pa. 1989); *In re Perona Bros., Inc.,* 186 B.R. 833, 839 (D.N.J. 1995).

38.     In other words, a party would have to show fraud or collusion between the buyer and the debtor in possession, the trustee or other bidders to demonstrate a lack of good faith. *See Kabro Assocs. of West Islip, LLC v. Colony Hill Assocs. (In re Colony Hill Assocs.)*, 111 F.3d 269, 276 (2d Cir. 1997) ("[t]ypically, the misconduct that would destroy a [buyer]'s good faith status at a judicial sale involves fraud, collusion between the [buyer] and other bidders or the trustee, or an attempt to take grossly unfair advantage of other bidders"). Due to the absence of a bright-line test for good faith, the determination is based on the facts of each case, with a focus on the "integrity of [a bidder's] conduct in the course of the sale proceedings." *In re Pisces*

DM_US 159991341-12.091621.0012

*Leasing Corp.*, 66 B.R. 671, 673 (E.D.N.Y. 1986) (quoting *In re Rock Indus. Mach. Corp.*, 572 F.2d 1195, 1998 (7th Cir. 1978)).

39.     The Debtors submit that a Successful Bidder under the Bidding Procedures (whether or not a Stalking Horse Bidder), would be a "good faith purchaser" within the meaning of section 363(m) of the Bankruptcy Code. It is expected that, as is customary, Qualified Bidders will engage separate counsel and other professional advisors to represent their respective interests in determining the terms of their Qualified Bids and with respect to the sale process generally. To the best of the Debtors' knowledge, information, and belief, no party has engaged in any conduct that would cause or permit a Sale to be set aside under section 363(m) of the Bankruptcy Code.

40.     Further, as set forth above, the Bidding Procedures are designed to produce a fair and transparent competitive bidding process. Each Qualified Bidder participating in the Auction must confirm that it has not engaged in any collusion with respect to the bidding or the sale of any of the Assets. Any asset purchase agreement with a Successful Bidder executed by the Debtors will be negotiated at arm's length and in good faith. Accordingly, the Debtors seek a finding that any Successful Bidder (including the Stalking Horse Bidder) is a good faith purchaser and is entitled to the full protections afforded by section 363(m) of the Bankruptcy Code.

41.     Based on the foregoing, the Debtors submit that they have demonstrated that the proposed Sale is a sound exercise of the Debtors' business judgment and should be approved as a good faith transaction.

DM_US 159991341-12.091621.0012

D.    The Assets Should Be Sold Free and Clear of Liens, Claims, Interests and Encumbrances Under Section 363(f) of the Bankruptcy Code

42.    In the interest of attracting the best offers, the Assets should be sold free and clear of any and all liens, claims, interests and other encumbrances, in accordance with section 363(f) of the Bankruptcy Code, with any such liens, claims, interests and encumbrances attaching to the proceeds of the applicable sale. Section 363(f) of the Bankruptcy Code authorizes a debtor to sell assets free and clear of liens, claims, interests and encumbrances if any one of the following conditions is satisfied:

    a.    applicable non-bankruptcy law permits sale of such property free and clear of such interest;

    b.    such entity consents;

    c.    such interest is a lien and the price at which such property is to be sold is greater than the value of all liens on such property;

    d.    such interest is in bona fide dispute; or

    e.    such entity could be compelled, in legal or equitable proceeding, to accept a money satisfaction of such interest.

11 U.S.C. § 363(f); *see also In re Kellstrom Indus., Inc.*, 282 B.R. 787, 793 (Bankr. D. Del. 2002) ("Section 363(f) is written in the disjunctive, not the conjunctive, and if any of the five conditions are met, the debtor has the authority to conduct the sale free and clear of all liens."); *Citicorp Homeowners Servs., Inc. v. Elliot (In re Elliot)*, 94 B.R. 343, 345 (E.D. Pa. 1988) (same).

43.    Section 363(f) of the Bankruptcy Code is supplemented by section 105(a) of the Bankruptcy Code, which provides that "[t]he Court may issue any order, process or judgment that is necessary or appropriate to carry out the provisions of [the Bankruptcy Code]." 11 U.S.C. § 105(a); *see also Volvo White Truck Corp. v. Chambersburg Beverage, Inc. (In re White Motor Credit Corp.)*, 75 B.R. 944, 948 (Bankr. N.D. Ohio 1987) ("Authority to conduct such sales [free

and clear of claims] is within the court's equitable powers when necessary to carry out the provisions of [the Bankruptcy Code].").

44.    The Debtors submit that the sale of the Assets free and clear of liens, claims, interests and encumbrances will satisfy one or more of the requirements under section 363(f) of the Bankruptcy Code. To the extent a party objects to the Sale on the basis that it holds a prepetition lien or encumbrance on the Assets, the Debtors believe that any such party could be compelled to accept a monetary satisfaction of such claims, under section 363(f)(5) of the Bankruptcy Code, or that such lien is in bona fide dispute, under section 363(f)(4) of the Bankruptcy Code.

45.    Moreover, the Debtors will send the Sale Notice to any known purported prepetition lienholders. If such lienholders do not object to the proposed Sale, then their consent should reasonably be presumed. Accordingly, the Debtors request that, unless a party asserting a prepetition lien, claim or encumbrance on any of the Assets timely objects to this Motion, such party shall be deemed to consent to any Sale approved at the Sale Hearing. *See Hargave v. Twp. of Pemberton*, 175 B.R. 855, 858 (Bankr. D.N.J. 1994) (by not objecting to a sale motion, a creditor is deemed to consent to the relief requested therein).

46.    The purpose of a sale order authorizing the transfer of assets free and clear of all claims, liens and encumbrances would be defeated if claimants could thereafter use the transfer as a basis to assert claims against a purchaser arising from a seller's pre-sale conduct. Moreover, without such assurances, potential bidders may choose not to participate in the Auction, or may submit reduced bid amounts, to the detriment of the Debtors' stakeholders. Accordingly, the Debtors request that the Court authorize the sale of the Assets free and clear of any liens, claims, interests and encumbrances (with the exception of permitted encumbrances and assumed

liabilities), in accordance with section 363(f) of the Bankruptcy Code, subject to such liens, claims, interests and encumbrances attaching to the proceeds thereof in the same order of relative priority, with the same validity, force and effect as prior to such.

E.   Assumption and Assignment of Executory Contracts and Unexpired Leases Should Be Authorized

47.     Section 365(a) of the Bankruptcy Code provides that a debtor in possession "subject to the court's approval, may assume or reject any executory contract or unexpired lease of the debtor." 11 U.S.C. § 365(a). Courts employ the business judgment standard in determining whether to approve a debtor's decision to assume or reject an executory contract or unexpired lease. *See, e.g.*, *In re Market Square Inn, Inc.,* 978 F.2d 116, 121 (3d Cir. 1992) (assumption or rejection of lease "will be a matter of business judgment by the bankruptcy court"); *In re HQ Global Holdings, Inc.*, 290 B.R. 507, 511 (Bankr. D. Del. 2003) (finding that a debtor's decision to assume or reject executory contract is governed by business judgment standard and may only be overturned if decision is product of bad faith, whim, or caprice). The "business judgment" test in this context only requires that a debtor demonstrate that assumption or rejection of an executory contract or unexpired lease benefits the estate. *See Sharon Steel Corp. v. Nat'l Fuel Gas Distrib. Corp.*, 872 F.2d 36, 40 (3d Cir. 1989).

48.     Any assumption of the Potentially Assumed Contracts is an exercise of the Debtors' sound business judgment because the transfer of such Contracts is necessary to the Debtors' ability to obtain the best value for their Assets. The assumption and assignment of Potentially Assumed Contracts will be a critical component of the value of any Bid. Given that consummation of the Sale is critical to the Debtors' efforts to maximize value for their estates and stakeholders, the Debtors' assumption of Potentially Assumed Contracts is an exercise of sound business judgment and, therefore, should be approved.

49.    The consummation of any Sale involving the assignment of a Proposed Assumed Contract will be contingent upon the Debtors' compliance with the applicable requirements of section 365 of the Bankruptcy Code. Section 365(b)(1) of the Bankruptcy Code requires that any outstanding defaults under the Contracts to be assumed be cured or that the Debtors provide adequate assurance that such defaults will be promptly cured. The Debtors' assumption and assignment of Potentially Assumed Contracts will be contingent upon payment of the Cure Claims and effective only upon the closing of an applicable Sale. As set forth above, the Debtors propose to file with the Court and serve on each Contract Counterparty a Potential Assumption and Assignment Notice, which will set forth the Debtors' good faith calculations of Cure Claims, if any, with respect to each Contract listed. Contract Counterparties will have a meaningful opportunity to raise any objections to the proposed assumption of their respective Contracts prior to closing of the Sale.

50.    Pursuant to section 365(f)(2) of the Bankruptcy Code, a debtor may assign an executory contract if "adequate assurance of future performance by the assignee of such contract or lease is provided." The meaning of "adequate assurance of future performance" depends on the facts and circumstances of each case, but should be given "practical, pragmatic construction." *See Carlisle Homes, Inc. v. Azzari (In re Carlisle Homes, Inc.)*, 103 B.R. 524, 538 (Bankr. D.N.J. 1988) (citation omitted); *see also In re Natco Indus., Inc.*, 54 B.R. 436, 440 (Bankr. S.D.N.Y. 1985) (adequate assurance of future performance does not mean an absolute assurance that debtor will thrive and pay rent); *In re Bon Ton Rest. & Pastry Shop, Inc.*, 53 B.R. 789, 803 (Bankr. N.D. Ill. 1985) (finding that, "[a]lthough no single solution will satisfy every case, the required assurance will fall considerably short of an absolute guarantee of performance."). Among other things, adequate assurance may be provided by evidencing the assignee's financial

34

health and experience in managing the type of enterprise or property assigned. *See In re Bygaph, Inc.*, 56 B.R. 596, 605-06 (Bankr. S.D.N.Y. 1986) (adequate assurance of future performance is present when the prospective assignee of a lease has financial resources and has expressed willingness to devote sufficient funding to the business to give it a strong likelihood of succeeding).

51.    As set forth above and in the Bidding Procedures, for a bid to qualify as a Qualified Bid, a Potential Bidder must include with its bid information regarding its ability (and the ability of its designated assignee, if applicable) to perform under any Contracts proposed to be assumed. Each affected Contract Counterparty will have an opportunity to object to the ability of the Successful Bidder to provide adequate assurance as provided in the Bidding Procedures Order. To the extent necessary, the Debtors will present facts at the Sale Hearing or any subsequent hearing to hear an Assumption and Assignment Objection to show the financial wherewithal, willingness and ability of the Successful Bidder to perform under the Potentially Assumed Contracts.

52.    In addition, to facilitate the assumption and assignment of Potentially Assumed Contracts, the Debtors further request that the Court find that all anti-assignment provisions contained therein, whether such provisions expressly prohibit or have the effect of restricting or limiting assignment of such Assumed Contract, to be unenforceable and prohibited pursuant to section 365(f) of the Bankruptcy Code.[6]

---

[6] Section 365(f)(1) of the Bankruptcy Code provides in part that, "notwithstanding a provision in an executory contract or unexpired lease of the debtor, or in applicable law, that prohibits, restricts, or conditions the assignment of such contract or lease, the trustee may assign such contract or lease . . .." 11 U.S.C. § 365(f)(1). Section 365(f)(3) of the Bankruptcy Code further provides that "[n]otwithstanding a provision in an executory contract or unexpired lease of the debtor, or in applicable law that terminates or modifies, or permits a party other than the debtor to terminate or modify, such contract or lease or a right or obligation under such contract or lease on account of an assignment of such contract or lease, such contract, lease, right, or obligation may not be terminated or modified under such provision because of the assumption or assignment of such contract or lease by the trustee." 11 U.S.C. § 365(f)(3)

DM_US 159991341-12.091621.0012

## WAIVER OF BANKRUPTCY RULES 6004(a), 6004(h) AND 6006(d)

53.     The Debtors request that the Court (a) find that notice of the Motion is adequate under Bankruptcy Rule 6004(a) under the circumstances and (b) waive the fourteen-day stay requirements under Bankruptcy Rules 6004(h) and 6006(d). In light of the Debtors' current financial condition, the proposed Sale contemplated herein should be consummated as soon as practicable to allow the Debtors to maximize value for their estates and stakeholders. Accordingly, the Debtors request that the Bidding Procedures Order, the Sale Order and any order authorizing the assumption and assignment of a Proposed Assumed Contract in connection with a Sale be effective immediately upon entry and that the 14-day stay imposed by Bankruptcy Rules 6004(h) and 6006(d) be waived.

## NOTICE

54.     The Debtors have provided notice of this Motion to: (a) the Office of the United States Trustee for the District of Delaware; (b) the entities listed on the Consolidated List of Creditors Holding the 30 Largest Unsecured Claims filed pursuant to Bankruptcy Rule 1007(d); (c) counsel to the DIP Agent; (d) counsel to the Prepetition Agents; (e) counsel to the Melody Lenders; (f) the Internal Revenue Service; and (g) all parties entitled to notice pursuant to Bankruptcy Rule 2002 and Local Rule 9013-1 (m).   The Debtors submit that, under the circumstances, no other or further notice is required.

## NO PRIOR REQUEST

55.     No prior motion for the relief requested herein has been made to this or any other court.

DM_US 159991341-12.091621.0012

WHEREFORE, the Debtors respectfully request that this Court enter (i) the Bidding Procedures Order, substantially in the form attached hereto as **Exhibit A**, granting the relief requested herein, and granting such other and further relief as the Court may deem just and proper.

Dated: August 9, 2019
       Wilmington, Delaware

Respectfully submitted,

**WOMBLE BOND DICKINSON (US) LLP**

*/s/Matthew P. Ward*
Matthew P. Ward (DE Bar No. 4471)
Ericka F. Johnson (DE Bar No. 5024)
1313 North Market Street, Suite 1200
Wilmington, Delaware 19801
Telephone:(302) 252-4320
Facsimile: (302) 252-4330
Email:    matthew.ward@wbd-us.com
          ericka.johnson@wbd-us.com

-and-

MCDERMOTT WILL & EMERY LLP
Timothy W. Walsh (*pro hac vice* pending)
Darren Azman (*pro hac vice* pending)
Riley T. Orloff (*pro hac vice* pending)
340 Madison Avenue
New York, New York 10173-1922
Telephone:(212) 547-5400
Facsimile: (212) 547-5444
Email:    twwalsh@mwe.com
          dazman@mwe.com
          rorloff@mwe.com

*Proposed Counsel to the Debtors and*
*Debtors in Possession*

**EXHIBIT A**

<u>Bidding Procedures Order</u>

**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE DISTRICT OF DELAWARE**

| | |
|---|---|
| In re: | Chapter 11 |
| FURIE OPERATING ALASKA, LLC, *et al.*,[1] | Case No. 19-11781 (___) |
| Debtors. | (Jointly Administered) |
| | **Re: Docket No. ___** |

**ORDER (A) APPROVING BIDDING PROCEDURES FOR THE SALE OF THE
DEBTORS' ASSETS, (B) APPROVING STALKING HORSE BID PROTECTIONS,
(C) SCHEDULING AN AUCTION FOR, AND HEARING TO APPROVE, THE SALE OF
THE DEBTORS' ASSETS, (D) APPROVING THE FORM AND MANNER OF NOTICE
THEREOF, (E) APPROVING CONTRACT ASSUMPTION AND ASSIGNMENT
PROCEDURES AND (F) GRANTING RELATED RELIEF**

Upon consideration of the motion (the "**Motion**")[2] of the above-captioned debtors and

debtors in possession (the "**Debtors**") for the entry of an order (this "**Bidding Procedures**

**Order**"):  (i) authorizing and approving the Bidding Procedures, in connection with the sale of

the Assets, (ii) authorizing the Debtors to grant the Bid Protections in accordance with the terms

and conditions set forth in the Bidding Procedures, (iii) scheduling the Auction and the Sale

Hearing to consider approval of the proposed Sale, (iv) authorizing and approving the Noticing

Procedures, (v) approving the Assumption and Assignment Procedures, and (vi) granting related

relief, in each case, as more fully described in the Motion; and the Court having found that it has

jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334; and the Court having found

that this is a core proceeding pursuant to 28 U.S.C. § 157(b)(2); and the Court having found that

venue of the Chapter 11 Cases and the Motion in this district is proper pursuant to 28 U.S.C.

---

[1] The Debtors, together with the last four digits of each Debtor's federal tax identification number, are: Furie Operating Alaska, LLC (8721); Cornucopia Oil & Gas Company, LLC (9914); and Corsair Oil & Gas LLC (8012). The location of the Debtors' corporate headquarters and the service address for all Debtors is 188 W. Northern Lights Blvd. Suite 620, Anchorage, Alaska 99503.

[2] Capitalized terms used herein and not otherwise defined shall have the meanings ascribed to them in the Motion.

1

§§ 1408 and 1409; and the Court having found that the relief requested in the Motion is in the

best interests of the Debtors' estates, their creditors, and other parties in interest; and the Court

having found that the Debtors provided appropriate notice of the Motion and the opportunity for

a hearing on the Motion under the circumstances; and the Court having reviewed the Motion and

having heard the statements in support of the relief requested therein at a hearing before the

Court; and the Court having determined that the legal and factual bases set forth in the Motion

and at the hearing establish just cause for the relief granted herein; and upon all of the

proceedings had before the Court; and after due deliberation and sufficient cause appearing

therefor, **THE COURT HEREBY FINDS THAT**:

A.      The findings and conclusions set forth herein constitute the Court's findings of

fact and conclusions of law pursuant to Bankruptcy Rule 7052, made applicable to this

proceeding pursuant to Bankruptcy Rule 9014.  To the extent that any of the following findings

of fact constitute conclusions of law, and to the extent that any of the following conclusions of

law constitute findings of fact, they are adopted as such.

B.      The Court has jurisdiction to consider the Motion and the relief requested therein

in accordance with 28 U.S.C. §§ 157 and 1334 and the *Amended Standing Order of Reference*

*from the United States District Court for the District of Delaware*, dated February 29, 2012, and

this matter is a core proceeding pursuant to 28 U.S.C. § 157(b)(2)(A), (M), and (O).  Venue of

the Chapter 11 Cases and the Motion in this district is proper under 28 U.S.C. §§ 1408 and 1409.

C.      The Debtors' proposed notice of the Motion, the Bidding Procedures, the Bidding

Procedures Hearing and the proposed entry of this Order are (i) appropriate and reasonably

calculated to provide all interested parties with timely and proper notice, (ii) in compliance with

all applicable requirements of the Bankruptcy Code, the Bankruptcy Rules and the Local Rules

DM_US 159991341-12.091621.0012

and (iii) adequate and sufficient under the circumstances of the Chapter 11 Cases, and no other or further notice is required.  A reasonable opportunity to object or be heard regarding the relief requested in the Motion (including, without limitation, with respect to the Bidding Procedures and Bid Protections) has been afforded to all interested persons and entities, including, but not limited to, the Notice Parties.

D.      The Bidding Procedures in the form attached hereto as **Exhibit 1** are fair, reasonable and appropriate, are designed to maximize creditor recoveries from a sale of the Assets and permit the Debtors to comply with their obligations under the DIP Credit Agreement and the DIP Orders (as defined in the DIP Credit Agreement).

E.      The Debtors have demonstrated a compelling and sound business justification for the Court to enter this Order and thereby: (i) approve of the Bidding Procedures, (ii) authorize the Bid Protections, under the terms and conditions set forth in the Bidding Procedures, (iii) set the dates of the Bid Deadline, Auction (if needed), Sale Hearing and other deadlines set forth in the Bidding Procedures, (iv) approve the Noticing Procedures and the forms of notice and (v) approve the Assumption and Assignment Procedures and the forms of relevant notice.  Such compelling and sound business justification, which was set forth in the Motion, the First Day Declaration and on the record at the Bidding Procedures Hearing, are incorporated herein by reference and, among other things, form the basis for the findings of fact and conclusions of law set forth herein.

F.      The Bid Protections are fair and reasonable and provide a benefit to the Debtors' estates and stakeholders.

G.      If the Debtors do enter into a stalking horse purchase agreement with a Stalking Horse Bidder and grant to such Stalking Horse Bidder the Bid Protections (including the Break-

Up Fee and the Expense Reimbursement Amount) on the conditions set forth in the Bidding Procedures, such Bid Protections will be (i) an actual and necessary cost of preserving the Debtors' estates, within the meaning of sections 503(b) and 507(a) of the Bankruptcy Code, (ii) reasonably tailored to encourage, rather than hamper, bidding for the Assets, by providing a baseline of value, increasing the likelihood of competitive bidding at the Auction, and facilitating participation of other bidders in the sale process, thereby increasing the likelihood that the Debtors will receive the best possible price and terms for the Assets, (iii) of substantial benefit to the Debtors' estates and stakeholders and all parties in interest herein, (iv) reasonable and appropriate, (v) a material inducement for, and conditions necessary to, ensure that the Stalking Horse Bidder will continue to pursue its proposed agreement to purchase the Assets and (vi) reasonable in relation to the Stalking Horse Bidder's efforts and to the magnitude of the Sale and the Stalking Horse Bidder's lost opportunities resulting from the time spent pursuing such transaction.  Without the Bid Protections, the Stalking Horse Bidder would be unwilling to remain obligated to consummate the Sale or otherwise be bound under the Stalking Horse Purchase Agreement (including the obligation to maintain its committed offer while such offer is subject to higher or better offers as contemplated by the Bidding Procedures).

H.    The legal and factual bases set forth in the Motion establish just cause for the relief granted herein.  Entry of this Order is in the best interests of the Debtors and their estates, creditors, interest holders and all other parties in interest herein.

I.    The Bidding Procedures comply with the requirements of Local Rule 6004-(l)(c).

J.    The form and manner of notice to be delivered pursuant to the Noticing Procedures and the Assumption and Assignment Procedures (including the Sale Notice attached hereto as **Exhibit 2** and the Potential Assumption and Assignment Notice attached hereto as

4

**Exhibit 3**) are reasonably calculated to provide each Contract Counterparty to the Potentially Assumed Contracts with proper notice of the potential assumption and assignment of such Potentially Assumed Contracts by the Successful Bidder(s) or any of their known proposed assignees (if different from the Successful Bidder) and the requirement that each such Contract Counterparty assert any objection to the proposed Cure Claims prior to the Assumption and Assignment Objection Deadline or otherwise be barred from asserting claims arising from events occurring following assumption and assignment of such Potentially Assumed Contracts.

**ORDERED, ADJUDGED AND DECREED THAT:**

1.     The relief requested in the Motion is hereby granted as set forth herein.[3]

2.     All objections to the Motion solely as it relates to the relief requested therein that have not been adjourned, withdrawn or resolved are overruled in all respects on the merits.

3.     The Bidding Procedures, in substantially the form attached hereto as **Exhibit 1**, are approved and fully incorporated into this Order and the Debtors are authorized, but not directed, to act in accordance therewith.  The failure to specifically include a reference to any particular provision of the Bidding Procedures in this Order shall not diminish or impair the effectiveness of such provision.

4.     Subject to entry of the Stalking Horse Approval Order and final Court approval at the Sale Hearing, the Debtors are authorized to enter into a stalking horse purchase agreement with a Stalking Horse Bidder prior to the Bid Deadline.

---

[3] Notwithstanding anything to the contrary herein, the consummation of the Sale is subject to entry of a separate sale order.

DM_US 159991341-12.091621.0012

5.      The schedule of events set forth below relating to the Bidding Procedures is hereby approved in its entirety:

| | |
|---|---|
| **5:00 p.m. (prevailing Eastern Time) on August 29, 2019** | • Bidding Procedures and Bidding Protections Objection Deadline |
| **10:00 a.m. (prevailing Eastern Time) on September 5, 2019** | • Hearing to consider entry of the Bidding Procedures Order |
| **No later than thirty-five (35) calendar days after the Petition Date** | • Deadline to Approve the Bidding Procedures Order |
| **Within five (5) Business Days after entry of the Bidding Procedures Order** | • Deadline for Debtors to file Potential Assumption and Assignment Notice |
| **Not later than seven (7) calendar days after service of a Stalking Horse Approval Notice (if any)** | • Stalking Horse Objection Deadline (if any) |
| **5:00 p.m. (prevailing Eastern Time) on October 2, 2019** | • Assumption and Assignment Objection Deadline |
| **5:00 p.m. (prevailing Eastern Time) on October 4, 2019** | • Bid Deadline<br>• Sale Objection Deadline |
| **10:00 a.m. (prevailing Eastern Time) on October 7, 2019** | • Auction (if necessary), to be held at the offices of McDermott Will & Emery LLP, 340 Madison Avenue, New York, New York 10173 |
| **10:00 a.m. (prevailing Eastern Time) on October 25, 2019** | • Sale Hearing |
| **The earlier of (i) 10:00 a.m. (prevailing Eastern Time) on October 25, 2019 or (ii) 5:00 p.m. (prevailing Eastern Time) on the day that is fourteen (14) days after service of the Notice of Auction Results** | • Adequate Assurance Objection Deadline |
| **Not later than one hundred fifty (150) calendar days after the Petition Date** | • Sale Closing |

6.      _Noticing Procedures_.  The Noticing Procedures as set forth in this Order and the Motion, including the form of Sale Notice attached hereto as **Exhibit 2**, is hereby approved. Within one Business Day after entry of this Order, or as soon as reasonably practicable thereafter, the Debtors shall serve the Sale Notice by first-class mail upon the Sale Notice Parties.  On or about the same date, the Debtors will publish the Sale Notice on the Case

6

Information Website.  Service of the Sale Notice on the Sale Notice Parties in the manner described in the Order constitutes good and sufficient notice of the Auction and the Sale Hearing. No other or further notice is required.

7.    <u>Sale Objections</u>.  Objections to the Sale must (a) be in writing, (b) state, with specificity, the legal and factual bases thereof, (c) be filed with the Court by no later than **5:00 p.m. (prevailing Eastern Time) on October 4, 2019** and (d) be served on (1) proposed counsel for the Debtors, Womble Bond Dickinson (US) LLP, 1313 North Market Street, Suite 1200, Wilmington, DE 19081 (Attn: Matthew P. Ward and Ericka F. Johnson) and McDermott Will & Emery LLP, 340 Madison Ave., New York, New York 10173 (Attn: Timothy W. Walsh, Darren Azman, and Riley T. Orloff ), (2) counsel to the DIP Agent, Kirkland & Ellis LLP, 300 North LaSalle, Chicago, IL 60654, (3) counsel to any statutory committee appointed in the Chapter 11 Cases, (4) the U.S. Trustee, 844 King Street, Suite 2207, Lockbox 35, Wilmington, Delaware, 19801 and (5) those parties who have formally filed requests for notice in the Chapter 11 Cases pursuant to Bankruptcy Rule 2002 (collectively, the "**Objection Notice Parties**").

8.    <u>Bid Deadline</u>.  As further described in the Bidding Procedures, the Bid Deadline shall be at **5:00 p.m. (prevailing Eastern Time) on October 4, 2019.**

9.    <u>Auction</u>.  In the event the Debtors receive, on or before the Bid Deadline, one or more Qualified Bids, an Auction shall be conducted at the offices of McDermott Will & Emery LLP, 340 Madison Ave., New York, New York 10173 at **10:00 a.m. (prevailing Eastern Time) on October 7, 2019**, or such later time on such day or such other place as the Debtors shall notify all Qualified Bidders.  The Debtors are authorized to conduct the Auction in accordance with the Bidding Procedures.

7

10.    <u>Cancellation of Auction</u>.  If the Debtors receive no more than one (1) Qualified Bid, the Debtors, in their sole discretion, shall (i) notify all Potential Bidders and the Bankruptcy Court in writing that (a) the Auction is cancelled and (b) such Qualified Bid is the Successful Bid, and (ii) if applicable, seek authority at the Sale Hearing to consummate the Sale transactions with such Qualified Bidder contemplated by its Qualified Bidder Purchase Agreement.

11.    <u>Sale Hearing</u>.  The Sale Hearing shall be held in the United States Bankruptcy Court for the District of Delaware, Courtroom _____, 824 North Market Street, _____ Floor, Wilmington, Delaware 19801, at **10:00 a.m. (prevailing Eastern Time) on October 25, 2019** or such other date and time that the Court may later direct: *provided, however*, that the Sale Hearing may be adjourned, from time to time, without further notice to creditors or parties in interest other than by filing a notice on the Court's docket.

12.    <u>Stalking Horse Protections</u>.  Prior to the Bid Deadline, the Debtors are authorized (but not required) in their Permitted Discretion: (i) to agree to pay the Stalking Horse Bidder (if any) a break-up fee (the "**Break-Up Fee**") of up to three percent (3%) of the cash purchase price set forth in its Stalking Horse Bid and reimbursement of its reasonable and documented out-of-pocket expenses and disbursements not to exceed $250,000 (the "**Expense Reimbursement**" and, together with the Break-Up Fee, the "**Bid Protections**") if the Stalking Horse Bidder does not become the Successful Bidder at the Auction; *provided, however*, that if the Stalking Horse Bidder is a parent or an affiliate of the Debtors (direct or indirect), such Stalking Horse Bidder shall not be entitled to the Bid Protections, and (ii) to amend or modify these Bidding Procedures as it deems necessary, in its Permitted Discretion, to facilitate such Stalking Horse Bid.  Any such Bid Protections that are granted to a Stalking Horse Bidder within the parameters permitted by this Bidding Procedures Order shall be, subject to entry of the Stalking Horse Approval

8

Order, allowed as administrative expense claims in the Chapter 11 Cases under section 364(c)(l) of the Bankruptcy Code with priority over all expenses of the kind specified in sections 503(b) and 507(b) of the Bankruptcy Code and shall be paid to the Stalking Horse Bidder in cash from the proceeds of a Successful Bid (other than from the Stalking Horse Bidder ); *provided*, *however*, that such superpriority claims shall be subject to and subordinate in all respects to (x) the liens and claims granted to the DIP Secured Parties and Prepetition Secured Parties in the DIP Orders (as defined in the DIP Credit Agreement), and (y) the Carve-Out (as defined in the DIP Orders).

13.     Objections to the designation of a Stalking Horse Bidder or any of the terms of a Stalking Horse Bid shall (a) be in writing, (b) comply with the Bankruptcy Code, Bankruptcy Rules and Local Bankruptcy Rules, (c) state, with specificity, the legal and factual bases thereof and (d) be filed with the Court and served on the Objection Notice Parties within **seven (7) calendar days after the service of the notice of selection of the Stalking Horse Bidder**.

14.     If a timely Stalking Horse Objection is filed, the Debtors will schedule a hearing regarding such Stalking Horse Objection as soon as reasonably practicable seeking approval of such Stalking Horse Bid on or before September 27, 2019.   If no timely Stalking Horse Objection is filed and served with respect to the Stalking Horse Bid, upon the expiration of the objection deadline, the Debtors will submit the Stalking Horse Approval Order to the Court, which may enter such order without a hearing, including with respect to any Bid Protections consistent with this Order.

15.     Credit Bid.  The DIP Secured Parties shall be deemed Qualified Bidders and the DIP Agent (acting on the instructions of the DIP Lenders) shall have the right to credit bid the DIP Obligations, in accordance with the DIP Documents and subject to the Carve-Out, up to the

full amount of the DIP Obligations in any sale contemplated by the Bid Procedures pursuant to section 363(k) of the Bankruptcy Code; *provided*, that if the DIP Agent (on behalf of the DIP Secured Parties) submits a bid for any of the Assets, the DIP Agent shall cease being a consultation party as set forth in the Bidding Procedures.  Each of the Prepetition Secured Parties shall be deemed Qualified Bidders and the Prepetition Term Loan Agent (acting on instructions of the Required Lenders under the Prepetition Term Loan Agreement) shall have the right to credit bid up to the full amount of the applicable Prepetition Term Loan Obligations, in accordance with the Prepetition Term Loan Documents and subject to the Carve-Out in any sale contemplated by the Bid Procedures pursuant to section 363(k) of the Bankruptcy Code.

16.     <u>Assumption and Assignment Procedures</u>.   The assumption and assignment procedures set forth in the Motion and as modified by this Order (the "**Assumption and Assignment Procedures**"), including the form of Potential Assumption and Assignment Notice attached hereto as **<u>Exhibit 3</u>**, are hereby approved.

17.     Within five (5) Business Days of entry of this Order, or as soon a reasonably practicable thereafter, the Debtors shall file with the Court, and cause to be published on the Case Information Website, the Potential Assumption and Assignment Notice and the Executory Contract List.  If it is discovered that an Executory Contract should have been included on the Executory Contract List but was not, or in the event that the Debtors seek to modify a Cure Claim, the Debtors will promptly file with the Court a revised Executory Contract List.

18.     Simultaneously with the filing of the Executory Contract List (or any revised Executory Contract List) with the Court, the Debtors shall also serve the Potential Assumption and Assignment Notice and the Executory Contract List on each relevant Contract Counterparty and all other parties requesting notice pursuant to Bankruptcy Rule 2002, via first class mail or

10

electronic mail.  The Successful Bidder shall promptly provide Adequate Assurance Information to any Contract Counterparty that requests it from the contacts provided on the Potential Assumption and Assignment Notice.

19.    <u>Objection Deadlines</u>.  Any Contract Counterparty may file an objection to the calculation of Cure Claims with respect to the Contract Counterparty's Executory Contracts, or to the assumption and assignment to the Successful Bidder of the Contract Counterparty's Executory Contracts, including with respect to adequate assurance of future performance of the Successful Bidder (any such objection, an "**Assumption and Assignment Objection**").   All Assumption and Assignment Objections filed by Contract Counterparties listed on the Executory Contract List (or any revised Executory Contract List) filed with the Court must (a) be in writing, (b) comply with the Bankruptcy Code, Bankruptcy Rules and Local Bankruptcy Rules, (c) state, with specificity, the legal and factual bases thereof, including, if applicable, the Cure Claims the Contract Counterparty believes is required to cure defaults under the relevant Assumed Contract, (d) be filed by no later than **5:00 p.m. (prevailing Eastern Time on October 2, 2019** (the "**Assumption and Assignment Objection Deadline**") and (e) be served on the Assumption and Assignment Objection Notice Parties.

20.    <u>Resolution of Assumption and Assignment Objections</u>.   If a Contract Counterparty files a timely Assumption and Assignment Objection by the Assumption and Assignment Objection Deadline and such objection is not resolved among the parties prior to the Sale Hearing, the Court will hear and determine such objection at the Sale Hearing.

21.    <u>Failure to File Timely Assumption and Assignment Objection</u>.   If a Contract Counterparty fails to file with the Court and serve on the Assumption and Assignment Objection Notice Parties a timely Assumption and Assignment Objection, the Contract Counterparty shall

DM_US 159991341-12.091621.0012

be forever barred from asserting any such objection with regard to the assumption or assignment of its Assumed Contract, and notwithstanding anything to the contrary in the Assumed Contract, or any other document, the Cure Claims set forth in the Potential Assumption and Assignment Notice shall be controlling and will be the only amount necessary to cure outstanding defaults under the applicable Assumed Contract under section 365(b) of the Bankruptcy Code arising out of or related to any events occurring prior to the closing of the Sale, whether known or unknown, due or to become due, accrued, absolute, contingent or otherwise, and the Contract Counterparty shall be forever barred from asserting any additional cure or other amounts with respect to such Assumed Contract against the Debtors, the Successful Bidder or the property of any of them.

22.     Promptly following the selection of the Successful Bid(s) and Alternate Bid(s), the Debtors shall file the Notice of Auction Results with the Court (which shall include the list of assumed Executory Contracts submitted with the Successful Bidder(s) Qualified Bid), cause the Notice of Auction Results to be published on the Case Information Website and serve the Notice of Auction Results and, if the Successful Bidder is not the Stalking Horse Bidder, Adequate Assurance Information for the Successful Bidder on (i) each Contract Counterparty for a contract designated by the Successful Bidder for assumption and assignment, and (ii) each Contract Counterparty to any known Contract that may later be designated by the Successful Bidder for assumption and assignment, in each case by overnight mail or electronic mail.  Objections of any Contract Counterparty related solely to the adequate assurance of future performance provided by the Successful Bidder, if the Successful Bidder is not the Stalking Horse Bidder (any such objection, an "**Adequate Assurance Objection**"), must (a) be in writing, (b) comply with the Bankruptcy Code, Bankruptcy Rules and Local Bankruptcy Rules, (c) state, with specificity, the legal and factual bases thereof, (d) be filed by **no later than the Sale Hearing or, if earlier,**

12

**fourteen (14) days following service of the Notice of Auction Results** (the "**Adequate Assurance Objection Deadline**") and (e) be served on the Assumption and Assignment Objection Notice Parties.

23.     The Contract Counterparties shall not use any Adequate Assurance Information for any purpose other than to (i) evaluate whether adequate assurance requirements under Bankruptcy Code section 365(f)(2)(B) and, if applicable, Bankruptcy Code section 365(b)(3), have been satisfied, and (ii) to support any objection to adequate assurance filed by the Contract Counterparty.    The Debtors shall provide Adequate Assurance Information to applicable Contract Counterparties on a public basis with any confidential information redacted.    The Contract Counterparties wishing to receive confidential Adequate Assurance Information shall enter into a nondisclosure agreement in form and substance acceptable to (x) the Debtors and (y) the Successful Bidder(s), as applicable.

24.     The Debtors are authorized to take all such actions as are necessary or appropriate to implement the terms of this Order.

25.     Compliance with the notice provisions set forth herein shall constitute sufficient notice of the Debtors' proposed sale of the Debtors' assets free and clear of liens, claims, interests and encumbrances, pursuant to Bankruptcy Code section 363(f) and otherwise, and except as set forth in this Order, no other or further notice of the sale shall be required to be provided by the Debtors.

26.     The Sale Hearing may be continued, from time to time, without further notice to creditors or parties in interest other than by announcement of said continuance before the Court on the date scheduled for such hearing or in the hearing agenda for such hearing.

27.     No Qualified Bidder or any other person or entity, other than the Stalking Horse Bidder, if any, shall be entitled to any expense reimbursement, break-up fee, termination fee or other similar fee or payment in connection with the Sale or any other form of bid protections.

28.     Except as otherwise provided in this Order or the Bidding Procedures, the Debtors further reserve the right as they may reasonably determine to be in the best interests of their estates (in consultation with the Consultation Parties) to: (a) determine which bidders are Qualified Bidders; (b) determine which bid are Qualified Bids; (c) determine which Qualified Bid is the highest or otherwise best proposal and which is the next highest or otherwise best proposal; (d) reject any bid that is (i) inadequate or insufficient, (ii) not in conformity with the requirements of the Bidding Procedures or the Bankruptcy Code, or (iii) contrary to the best interests of the Debtors and their estates; (d) impose additional terms and conditions with respect to all potential bidders; (e) extend the deadlines set forth herein; and/or (f) continue or cancel the Auction and/or Sale Hearing in open court without further notice.

29.     All persons or entities that participate in the bidding process or the Auction shall be deemed to have knowingly and voluntarily submitted to the exclusive jurisdiction of this Court with respect to all matters related to the terms and conditions of the Assets, the Auction and any transaction contemplated herein.

30.     This Order shall be binding on the Debtors, including any chapter 7 or chapter 11 trustee or other fiduciary appointed for the estates of the Debtors.

31.     Any Bankruptcy Rule (including, but not limited to, Bankruptcy Rule 6004(h), 6006(d), 7062 or 9014) or Local Bankruptcy Rule that might otherwise delay the effectiveness of this Order is hereby waived, and the terms and conditions of this Order shall be effective and enforceable immediately upon its entry.

32.     All time periods set forth in this Order shall be calculated in accordance with Bankruptcy Rule 9006(a).

33.     Proper, timely, adequate and sufficient notice of the Motion has been provided in accordance with and satisfaction of the Bankruptcy Code, the Bankruptcy Rules and the Local Bankruptcy Rules and no other or further notice of the Motion or the entry of this Order shall be required.

34.     To the extent any provisions of this Order shall be inconsistent with the Motion or the Bidding Procedures, the terms of this Order shall control.

DM_US 159991341-12.091621.0012

35.     The Court shall retain jurisdiction over any matters related to or arising from the implementation or interpretation of this Order.   All matters arising from or related to the implementation of this Order may be brought before the Court as a contested matter, without the necessity of commencing an adversary proceeding.

Dated:   _____, 2019
            Wilmington, Delaware

_____
        UNITED STATES BANKRUPTCY JUDGE

DM_US 159991341-12.091621.0012

**EXHIBIT 1**

<u>Bidding Procedures</u>

**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE DISTRICT OF DELAWARE**

| | |
|---|---|
| In re: | Chapter 11 |
| FURIE OPERATING ALASKA, LLC, *et al.*,[1] | Case No. 19-11781 (___) |
| Debtors. | (Jointly Administered) |
| | **Re: Docket No. ___** |

## BIDDING PROCEDURES

The above captioned debtors and debtors-in-possession (collectively, the "**Debtors**") in the jointly administered chapter 11 cases (collectively, the "**Chapter 11 Cases**") currently pending in the United States Bankruptcy Court for the District of Delaware (the "**Court**") are authorized by the Court to conduct a sale of all or substantially all of the Debtors' assets. On **[September 5, 2019]**, the Court entered the *Order (A) Approving Bidding Procedures for the Sale of the Debtors' Assets, (B) Approving Stalking Horse Bid Protections, (C) Scheduling an Auction For, and Hearing to Approve, the Sale of the Debtors' Assets, (D) Approving the Form and Manner of Notice Thereof, (E) Approving Contract Assumption and Assignment Procedures and (F) Granting Related Relief* [Docket No. ___] (the "**Bidding Procedures Order**") pursuant to which the Court, among other things, approved these Bidding Procedures (these "**Bidding Procedures**") to be employed to solicit and evaluate bids for the purchase of all or substantially all of the Debtors' assets and/or equity interests (the "**Assets**").

These Bidding Procedures describe, among other things, (i) the Assets offered for sale, (ii) the manner in which bidders and bids may become Qualified Bidders and Qualified Bids (each as defined below), respectively, (iii) the procedures for conduct of the Auction (as defined below), if necessary, (iv) the procedures for selection of the Successful Bidder(s) and Alternate Bidder(s) (each as defined below) and (v) the procedures for approval of the sale of the Assets to the Successful Bidder(s) by the Court.

1.      **Submissions to the Debtors.**

All submissions to the Debtors required to be made under these Bidding Procedures must be directed to each of the following persons unless otherwise provided (collectively, the "**Bid Notice Parties**"):

a.      **Debtors**.  c/o Furie Operating Alaska, LLC, 188 W. Northern Lights Blvd. Suite 620, Anchorage, Alaska 99503 (Attn: d.elder@furiealaska.com).

---

[1] The Debtors, together with the last four digits of each Debtor's federal tax identification number, are: Furie Operating Alaska, LLC (8721); Cornucopia Oil & Gas Company, LLC (9914); and Corsair Oil & Gas LLC (8012). The location of the Debtors' corporate headquarters and the service address for all Debtors is 188 W. Northern Lights Blvd. Suite 620, Anchorage, Alaska 99503.

1

b.  **Debtors' Counsel**.  McDermott Will & Emery LLP, 340 Madison Avenue, New York, New York 10173 (Attn: Darren Azman and Riley T. Orloff; dazman@mwe.com, rorloff@mwe.com); and Womble Bond Dickinson (US) LLP, 1313 North Market Street, Suite 1200, Wilmington, Delaware 19801 (Attn: Matthew P. Ward and Ericka F. Johnson; matthew.ward@wbd-us.com, ericka.johnson@wbd-us.com).

c.  **Debtors' Chief Restructuring Officer**.  Ankura Consulting Group, LLC, 1775 Sherman Street, Suite 2775, Denver, CO 80203 (Attn: Scott M. Pinsonnault; scott.pinsonnault@ankura.com).

d.  **Debtors' Investment Banker**. Seaport Global Securities LLC, 400 Poydras Street, Suite 3100, New Orleans, LA 70130 (Attn: Michael Schmidt and Lucas Hohnstein: mschmidt@seaportglobal.com, lhohnstein@seaportglobal.com).

e.  **Counsel to the DIP Agent.**  Kirkland & Ellis LLP, 300 North LaSalle, Chicago, IL 60654 (Attn: Chad Husnick; chusnick@kirkland.com); Kirkland & Ellis LLP, 601 Lexington Avenue, New York, NY 10022 (Attn: George Klidonas; george.klidonas@kirkland.com).

f.  **The Office of the United States Trustee for the District of Delaware**.  844 King Street, Suite 2207, Lockbox 35, Wilmington, Delaware, 19801.

g.  **Counsel to the Melody Lenders**. Milbank LLP, 55 Hudson Yards, New York, New York 10001 (Attn: Abhilash M. Raval and Lauren C. Doyle; araval@milbank.com, ldoyle@milbank.com).

h.  **Counsel to the McGinty Road Lender**. Stinson LLP, 50 South Sixth Street, Suite 2600, Minneapolis, MN 55402 (Attn: Adam M. Nathe; adam.nathe@stinson.com).

## 2.    Participation Requirements

### A.    Interested Parties.

Unless otherwise ordered by the Court for cause shown, to participate in the bidding process described herein (the "**Bidding Process**"), each interested person or entity (each an "**Interested Party**") must deliver the following documents (the "**Preliminary Bid Documents**") (unless previously delivered) to the Debtors, if determined to be necessary by the Debtors in their discretion, following reasonable consultation with the DIP Agent and the Official Committee of Unsecured Creditors (if any) (the "**Committee**" and together with the DIP Agent, the "**Consultation Parties**") (such discretion, including consultation with the Consultation Parties, the "**Permitted Discretion**"); *provided that*, if either the DIP Agent (on behalf of the DIP Secured Parties) or the Prepetition Term Loan Agent (on behalf of the Prepetition Term Loan Secured Parties) submits a bid for any of the Assets, the DIP Agent shall cease being a consultation party as set forth in the Bidding Procedures:

      i.    an executed confidentiality agreement substantially in form and substance acceptable to the Debtors;

      ii.    a statement and other factual support demonstrating, to the Debtors' satisfaction, that the Interested Party has a bona fide interest in purchasing any or all of the Assets;

      iii.    a description of the nature and extent of any due diligence the Interested Party wishes to conduct and the date in advance of the Bid Deadline (as defined below) by which such due diligence will be completed; and

      iv.    sufficient information to allow the Debtors, in their sole discretion, to determine that the Interested Party has the financial wherewithal and any required internal corporate, legal or other authorizations to close the sale transaction.[2]

If the Debtors determine in their Permitted Discretion that an Interested Party's desire to become a Potential Bidder is solely on account of a *bona fide* interest in purchasing any or all of the Assets, such Interested Party will be deemed a "**Potential Bidder**" and  the Debtors will deliver to such Potential Bidder (a) a form of restructuring support agreement and/or purchase agreement and (b) access to the Debtors' confidential electronic data room concerning  the Assets (the "**Data Room**"),  which access may be limited by the Debtors in their Permitted Discretion.

---

[2] This information may include, but is not limited to, current audited financial statements of the Interested Party (or such other form of financial disclosure acceptable to the Debtors in their Permitted Discretion) or, if the Interested Party is an entity formed for the purpose of acquiring any or all of the Assets, (A) current audited financial statements of the equity holder(s) (the "**Equityholder(s)**") of the Interested Party (or such other form of financial disclosure acceptable to the Debtors in their Permitted Discretion), (B) a written commitment acceptable to the Debtors in their Permitted Discretion that the Equityholder(s) are responsible for the Interested Party' s obligations in connection with the Bidding Process and (C) copies of any documents evidencing any financing commitments necessary to consummate the transaction.

### B.    Due Diligence.

Until the Bid Deadline, in addition to granting access to the Data Room, the Debtors will provide Potential Bidders with reasonable  due diligence access  and additional information, as may be reasonably requested by a Potential Bidder.  If any Potential Bidder is (or is affiliated with) a competitor of the Debtors, the Debtors may withhold any information or due diligence access from such Potential Bidder that the Debtors determine is sensitive, proprietary or otherwise not appropriate for disclosure.  Only Potential Bidders will be eligible to receive due diligence information from the Debtors.

**All due diligence requests must be directed to:**

**Seaport Global Securities LLC, 400 Poydras Street, Suite 3100, New Orleans, LA 70130 (Attn: Michael Schmidt and Lucas Hohnstein: mschmidt@seaportglobal.com, lhohnstein@seaportglobal.com).**

Each Potential Bidder will comply with all reasonable requests for additional information and due diligence access by the Debtors or their advisors regarding such Potential Bidder and its contemplated transaction.  Failure by a Potential Bidder to comply with reasonable requests for additional information and due diligence access may be a basis for the Debtors to determine, in their Permitted Discretion, that a bid made by such Qualified Bidder is not a Qualified Bid.  Unless otherwise determined by the Debtors in their Permitted Discretion, in consultation with the Consultation Parties, the availability of due diligence, information and access to a Potential Bidder will cease immediately if (i) the Potential Bidder does not become, or the Debtors determine in their Permitted Discretion that the Potential Bidder is not likely to become, a Qualified Bidder, (ii) the Potential Bidder violates the terms of its confidentiality agreement, (iii) the Debtors become aware that the information set forth on the Preliminary Bid Documents is inaccurate or misleading or of any other reason to doubt such Potential Bidder's ability to close its contemplated transaction, or (iv) the Bidding Process is terminated in accordance with its terms.  After the Bid Deadline (as defined below), the Debtors shall have no obligation to furnish any additional information to, or otherwise facilitate any additional due diligence by, any Potential Bidder.

### C.    Bid Deadline

A Potential Bidder who desires to be deemed a Qualified Bidder (as defined below) must deliver the Required Bid Documents (as defined below) via email (in .pdf or similar format) so as to be ***actually received by*** the Bid Notice Parties on or before 5:00 p.m. (prevailing Eastern Time) on October 4, 2019 (the "**Bid Deadline**").

The Debtors, with the consent of the DIP Agent and without the need for further Court approval, may extend the Bid Deadline by a reasonable period of time once or successively if the Debtors believe (in their Permitted Discretion) that such extension would further the goal of attaining the highest or otherwise best offer for the Debtors' assets.  The Debtors shall promptly notify all Potential Bidders of any such extension.

4

D.      **Bid Requirements**

Each offer, solicitation or proposal by a Potential Bidder must satisfy each of the following conditions to be deemed a "**Qualified Bid**," and for the Potential Bidder to be deemed a "**Qualified Bidder**," unless any such conditions that are not satisfied are waived by the Debtors in their Permitted Discretion, all bids must include the following items (collectively, the "**Required Bid Documents**"):

       i.      <u>Irrevocable</u>.  Each bid must be accompanied by an executed letter stating that the bidder's offer is irrevocable until consummation of a transaction involving the Assets identified in such bid and that such bidder agrees to serve as an Alternate Bidder (as defined herein) in accordance with these Bidding Procedures.

      ii.      <u>Executed Agreement</u>.  Each bid must be set forth in a duly authorized and executed (i) restructuring support agreement, which restructuring support agreement must be based on the form restructuring support agreement provided by Seaport, marked to show any revisions, including, among other things, the material terms of a plan of reorganization, with all exhibits and schedules or (ii) purchase agreement, which purchase agreement must be based on the form purchase agreement provided by Seaport, marked to show any revisions, including, among other things, the purchase price for the Assets identified in such Bid, together with all exhibits and schedules.[3]

      iii.      <u>Financial Wherewithal</u>.  Each Potential Bidder must provide written evidence acceptable to the Debtors (in their Permitted Discretion) demonstrating financial wherewithal, operational ability and corporate authorization to consummate the proposed transaction.  Such information should include, *inter alia*, the following;

      1.      contact names and numbers for verification of financing sources;

      2.      evidence of the Potential Bidder's internal resources and proof of unconditional debt funding commitments from a recognized banking institution;

      3.      The Potential Bidder's current financial statements (audited if they exist) or other similar financial information;

      4.      a description of the Potential Bidder's pro forma capital structure; and

      5.      any such other form of financial disclosure or credit-quality support information or enhancement reasonably acceptable to the Debtors,

---

[3] Form transaction documents will be circulated to Potential Bidders in advance of the Bid Deadline.

in consultation with the Consultation Parties, demonstrating that such Bidder has the ability to close the proposed transaction.

    iv.    <u>Committed Financing</u>.  Each Potential Bidder must provide written evidence of a firm commitment for financing to consummate the proposed transaction, or other evidence of ability to consummate the proposed transaction without financing, that is satisfactory to the Debtors (in their Permitted Discretion).

    v.    <u>Additional Requirements</u>.  A bid will be considered a Qualified Bid only if the bid:

    1.    identifies the legal name of the purchaser (including any Equityholder(s), if the purchaser is an entity formed for the purpose of consummating the proposed transaction), and full disclosure of any affiliates;

    2.    states that the Bid is for all of the Debtors' Assets (a "**Full Bid**") or, if the Bid is a "**Partial Bid**", identifies the Assets subject to such Bid;

    3.    is not materially more burdensome, less favorable or more conditional than the terms of the Stalking Horse Bid (as defined below), if any,  as determined by the Debtors in their sole discretion;

    4.    identifies all executory contracts and unexpired leases of which the Potential Bidder seeks assignment from the Debtors, if any;

    5.    is not conditioned on (i) obtaining financing or (ii) the outcome of unperformed due diligence;

    6.    is not conditioned on the receipt of any third party approvals or consents (excluding required Court approval and required governmental, licensing or regulatory approval or consent, if any), including without limitation board of director approval;

    7.    with respect to any governmental, licensing or regulatory approvals or consents, includes a description of all such approvals or consents that are required to consummate the proposed transaction (including any antitrust approval or clearance related to the Hart-Scott-Rodino Antitrust Improvements Act of 1976, as amended), together with evidence satisfactory to the Debtors in their Permitted Discretion of the ability of the bidder to obtain such approvals or consents in a timely manner, as well as a description of any material contingencies or other conditions that will be imposed upon, or that will otherwise apply to, the obtainment or effectiveness of any such approvals or consents;

8.      is accompanied by a cash deposit by wire transfer to an escrow agent selected by the Debtors (the "**Deposit Agent**") in an amount equal to 10% of the cash purchase price set forth in connection with such Bid (any such deposit, a "**Good Faith Deposit**");

9.      indicates that the bidder will not seek any transaction or break- up fee, expense reimbursement, or similar type of payment (other than if such bid is selected to be a Stalking Horse Bid and subject to the provisions of Part 3 below);

10.     provides for a commitment to close as soon as practicable, but in no event later than one hundred fifty (150) calendar days after the Petition Date.

11.     sets forth the representatives that are authorized to appear and act on behalf of the bidder in connection with the proposed transaction;

12.     fully discloses the identity of each entity that will be bidding for the Assets or otherwise financing such Bid (including through the issuance of debt in connection with such Bid), including full disclosure of any connections to or agreements with the Debtors, affiliates of the Debtors, direct or indirect holders of equity interests of the Debtors, the Stalking Horse Bidder (if any) or any other known, potential, or prospective Potential Bidder, and a summary of any such financing;

13.     indicates that the bidder agrees not to seek any substantial contribution administrative expense claims under section 503(b) of the Bankruptcy Code related to bidding for the Assets;

14.     if the bid contemplates the assumption and assignment of any contracts or leases, includes evidence of the bidder's ability to comply with section 365 of the Bankruptcy Code (to the extent applicable), including providing adequate assurance of such bidder's ability to perform in the future the contracts and leases proposed in its bid to be assumed by the Debtors and assigned to the bidder, in a form that will permit the Debtors to disseminate immediately such evidence to the counterparties to such executory contracts and leases (the "**Adequate Assurance Information**");

15.     constitutes a good faith, *bona fide* offer to effectuate the proposed transaction; and

16.     is received on or before the Bid Deadline (as such deadline may be extended in accordance with these Bidding Procedures).

### E.    Non-Conforming Bids

The Debtors shall have the right, in their Permitted Discretion, to deem a bid a Qualified Bid even if such bid does not conform to one or more of the requirements above or does not include one or more Required Bid Documents.  If the Debtors receive a bid prior to the Bid Deadline that is not a Qualified Bid, the Debtors may, in their Permitted Discretion, provide the bidder with the opportunity to remedy any deficiencies following the Bid Deadline but not later than one Business Day prior to the Auction.  If any bid is determined by the Debtors not to be a Qualified Bid, and the applicable bidder fails to remedy such bid in accordance with these Bidding Procedures, the Debtors shall promptly instruct the Deposit Agent to return such bidder's Good Faith Deposit.

### F.    Credit Bid

Each of the DIP Secured Parties shall be deemed Qualified Bidders and the DIP Agent (acting on the instructions of the DIP Lenders) shall have the right to credit bid the DIP Obligations, in accordance with the DIP Documents and subject to the Carve-Out, up to the full amount of the DIP Obligations owed to such party in any sale contemplated by the Bid Procedures pursuant to section 363(k) of the Bankruptcy Code; provided, that if the DIP Agent (on behalf of the DIP Secured Parties) submits a bid for any of the Assets, the DIP Agent shall cease being a consultation party as set forth in the Bidding Procedures. Each of the Prepetition Secured Parties shall be deemed Qualified Bidders and the Prepetition Term Loan Agent (acting on the instructions of the Required Lenders under the Prepetition Term Loan Agreement) shall have the right to credit bid up to the full amount of the Prepetition Term Loan Obligations, in accordance with the Prepetition Term Loan Documents and subject to the Carve-Out in any sale contemplated by the Bid Procedures pursuant to section 363(k) of the Bankruptcy Code.

### G.    Deemed Acknowledgements and Representations

By submission of its bid, each Qualified Bidder shall be deemed to acknowledge and represent that it (i) has had an opportunity to conduct any and all due diligence regarding the Assets that are the subject of the Auction prior to making any such bids, (ii) has relied solely upon its own independent review, investigation and/or inspection of any documents and/or the Assets in making its bid and (iii) did not rely upon any written or oral statements, representations, promises, warranties or guaranties whatsoever, whether express, implied, by operation of law or otherwise, regarding the Assets, or the completeness of any information provided in connection therewith, except as expressly stated in these Bidding Procedures or, as to the Successful Bidder(s), the restructuring support agreement(s) or asset purchase agreement(s) with such Successful Bidder(s).

Without the written consent of the Debtors, in their Permitted Discretion, a Qualified Bidder may not amend, modify or withdraw its Qualified Bid, except for proposed amendments to increase the amount or otherwise improve the terms of its Qualified Bid, during the period that such Qualified Bid is required to remain irrevocable.

**H.        Distribution and Evaluation of Qualified Bids**

All Qualified Bids will be considered by the Debtors; bids other than Qualified Bids will not be considered.  The Debtors may in their Permitted Discretion evaluate bids on any grounds, including, but not limited to:

      i.        the amount of the purchase price, including non-cash consideration, set forth in the Bid;

      ii.        the value to be provided to the Debtors under the Bid, including the net economic effect upon the Debtors' estates;

      iii.        any benefit to the Debtors' bankruptcy estates from any assumption of liabilities or waiver of liabilities, including the release or replacement of letters of credit;

      iv.        the transaction structure and execution risk, including conditions to and certainty of closing; termination provisions; availability of financing and financial wherewithal to meet all commitments; and required governmental  or other approvals;

      v.        the anticipated timing to closing and whether such timing is consistent with the Debtors' adherence to the Approved Budget;

      vi.        the impact on employees and employee claims against the Debtors;

      vii.        the presence of any governmental, licensing, regulatory or other approvals or consents in a bid, and the anticipated timing or likelihood of obtaining such approvals or consents;

      viii.        the impact on trade and other creditors; and

      ix.        any other factors the Debtors may reasonably deem relevant consistent with their fiduciary duties.

For the avoidance of doubt, the presence of any governmental, licensing, regulatory or other approvals or consents in a bid, and the anticipated timing or likelihood of obtaining such approvals or consents, may be grounds for the Debtors, in their Permitted Discretion, to determine that such bid (i) is not a Qualified Bid or (ii) is not higher or otherwise better than any other Qualified Bid.

**3.        <u>Stalking Horse Bidder (if any) and Bid Protections</u>**

Prior to the Bid Deadline, the Debtors shall be fully authorized, but not obligated, in an exercise of their business judgment (in consultation with the Consultation Parties) to agree with any Qualified Bidder that such Qualified Bidder's Qualified Bid shall serve as the minimum bid for the Assets or any lot thereof (such Qualified Bidder, a "**Stalking Horse Bidder**" and, such Qualified Bid, a "**Stalking Horse Bid**"), and that the Debtors will enter into the transaction(s)

contemplated in such Stalking Horse Bid unless a higher or otherwise better Qualified Bid or Subsequent Bid (as defined below) is submitted with respect to such Assets or lot thereof, as determined by the Debtors in accordance with these Bidding Procedures. Promptly upon the designation of a Stalking Horse Bid, the Debtors shall file a notice (the "**Stalking Horse Approval Notice**") requesting entry of an order approving the Stalking Horse Bidder (the "**Stalking Horse Approval Order**") and serve such notice on the Notice Parties. Parties in interest may object to the designation of a Stalking Horse Bidder or any of the terms of such Stalking Horse Bid (each, a "**Stalking Horse Objection**") within seven (7) calendar days after service of the Stalking Horse Approval Notice (the "**Stalking Horse Objection Deadline**"). If a timely Stalking Horse Objection is filed, the Debtors will schedule a hearing (the "**Stalking Horse Hearing**") regarding such Stalking Horse Objection as soon as reasonably practicable seeking approval of such Stalking Horse Bid on or before September 27, 2019. In the absence of a Stalking Horse Objection, upon the expiration of the Stalking Horse Objection Deadline, the Debtors will submit the Stalking Horse Approval Order to the Court, which may enter such order without a hearing.

In the event that the Debtors select one or more Stalking Horse Bidder(s) in accordance with these Bidding Procedures, the Debtors shall be fully authorized, but not obligated, in an exercise of their business judgment (in consultation with the Consultation Parties) to offer the following bid protections to such Stalking Horse Bidder(s), payable if the Debtors consummate a sale pursuant to a Qualified Bid other than the Stalking Horse Bid (if the assets subject to such sale are those to which such Stalking Horse Bid relates): (a) payment of a break-up fee in an amount not to exceed 3.0% of the cash purchase price set forth in the Stalking Horse Bid (the "**Break-Up Fee**") and/or (b) reimbursement of the reasonable and documented costs and expenses of the Stalking Horse Bidder (the "**Expense Reimbursement**" and, together with the Break-Up Fee, the "**Bid Protections**") in an amount not to exceed $250,000; *provided, however,* that (i) the payment of such Break-Up Fee and/or Expense Reimbursement shall be subject to the terms and conditions of the definitive agreement(s) executed between the Debtors and such Stalking Horse Bidder(s) and entry of the Stalking Horse Approval Order; (ii) if the Stalking Horse Bidder is a parent or an affiliate of the Debtors (direct or indirect), such Stalking Horse Bidder shall not be entitled to the Bid Protections; and (iii) no Break-Up Fee shall be paid to a credit bidder. For the avoidance of doubt, the Debtors will provide Expense Reimbursement only to the Stalking Horse Bidder(s) and such expenses must be reasonable, documented, and subject to review by the Debtors. To the extent payable, any Bid Protections would be paid out of the proceeds of the sale to which they relate.

Notice of the Bid Protections on the terms agreed to by the Debtors (in consultation with the Consultation Parties) and one or more Stalking Horse Bidders shall be provided concurrent with the notice of such Stalking Horse Bidder(s) in accordance with the Bidding Procedures Order. Until paid, any Break-Up Fee or Expense Reimbursement provided pursuant to the Bidding Procedures Order shall constitute allowed superpriority administrative expense claims arising in the Debtors' chapter 11 cases under sections 503(b), 507(a)(2), and 507(b) of the Bankruptcy Code; *provided, however*, that such superpriority claims shall be subject to and subordinate in all respects to (i) the liens and claims granted to the DIP Secured Parties and Prepetition Secured Parties in the DIP Orders (as defined in the DIP Credit Agreement); and (ii) the Carve-Out (as defined in the DIP Order).

4.      **Auction**

A.      **Scheduled Time and Date of the Auction**

One or more auctions for the Assets (the "**Auction**") may be held in accordance with these Bidding Procedures and upon notice to all Qualified Bidders that have submitted Qualified Bids. The Auction, if held, is scheduled to be conducted at the offices of McDermott Will & Emery LLP, 340 Madison Ave., New York, New York 10173 at **10:00 a.m. (prevailing Eastern Time) on October 7, 2019**, or such later time or other location as designated by the Debtors in a notice filed on the docket of the Court and published on the Debtors' case information website (located at **https://cases.primeclerk.com/furieoperatingalaska** (the "**Case Information Website**").

If no more than one Qualified Bid is submitted by the Bid Deadline with respect to the Assets or any lot of assets, or if in the judgment of the Debtors an alternative transaction is in the best interest of the Estate, the Debtors may, in consultation with the Consultation Parties, elect to cancel the Auction with respect to such assets and, as applicable, seek approval of the transactions contemplated in the Bid at the Sale Hearing (as defined below).

If any Partial Bids shall be deemed a Successful Bid at the conclusion of the Auction, the collective bid composed of each such Partial Bid for the applicable assets (the "**Highest Collective Partial Bid**") shall be treated as a Full Bid. Any Qualified Bidder that submitted a Full Bid shall have the right to increase its bid so as to match or exceed the amount of the Highest Collective Partial Bid, including by making a collective bid with one or more Qualified Bids from Qualified Bidders that are not included in the Highest Collective Partial Bid after the conclusion of any Auction for the above referenced assets.

If any Qualified Bidders that submitted a Full Bid matches the Highest Collective Partial Bid, then the Debtors shall conduct an Auction for the Assets with such Qualified Bidders (including the Highest Collective Partial Bid). At the conclusion of the Auction for the Assets, if the bid submitted by a Stalking Horse Bidder (if any) or any other Qualified Bidders that submitted a Full Bid is equal to the amount of the Highest Collective Partial Bid, then such bid submitted by the Stalking Horse Bidder or any other Qualified Bidders that submitted a Full Bid may, in the Debtors' Permitted Discretion consistent with the Debtors' evaluation of Qualified Bids as set forth herein, be determined to be the Successful Bid.

B.      **Participants and Attendees**

Principals, representatives or agents of the Debtors, the DIP Agent, the Prepetition Agents, the Committee (if appointed), and any Qualified Bidder that has submitted a Qualified Bid (and the legal and financial advisors to each of the foregoing) will be entitled to attend the Auction. Any other creditor of the Debtors will be permitted to attend the Auction upon advance notice by such creditor of at least two (2) Business Days to the Debtors Notice Parties. Only Qualified Bidders will be entitled to make any subsequent bids at the Auction. Each Qualified Bidder participating in the Auction must confirm that it (a) has not engaged in any collusion with respect to the bidding or the sale of any of the Assets as described herein, (b) has reviewed, understands and accepts these Bidding Procedures, (c) has consented to the jurisdiction of the

11

Court and (d) intends to consummate its Qualified Bid if it is selected as the Successful Bid. Each Qualified Bidder participating in the Auction shall appear in person at the Auction or through a duly authorized representative.

C.    **Auction Procedures**

At least two (2) Business Days prior to the Auction, the Debtors will (a) notify each Qualified Bidder that has timely submitted a Qualified Bid that its bid is a Qualified Bid and (b) provide all Qualified Bidders, the Committee and the DIP Agent with (i) copies of the Qualified Bid or combination of Qualified Bids that the Debtors believe is the highest or otherwise best offer for each Bid Asset (the "**Starting Bid(s)**"), (ii) an explanation of how the Debtors value the Starting Bid(s) and (iii) a list identifying all of the Qualified Bidders and their respective Qualified Bids.

The Debtors, in their Permitted Discretion, may employ and announce at the Auction additional procedural rules for conducting such auction (e.g., the amount of time allotted to submit Subsequent Bids (as defined below)); *provided*, that such rules are (a) not inconsistent with the Bidding Procedures Order, the Bankruptcy Code or any order of the Court entered in connection herewith and (b) disclosed to all Qualified Bidders.

Bidding at the Auction will begin with the Starting Bid(s) and continue, in one or more rounds of bidding in the presence of all parties at the Auction, so long as during each round at least one subsequent bid (a "**Subsequent Bid**") is submitted by a Qualified Bidder that (a) improves upon such Qualified Bidder's immediately prior Qualified Bid and (b) the Debtors determine (in their Permitted Discretion) that such Subsequent Bid is (i) for the first round, a higher or otherwise better offer than the Starting Bid and (ii) for subsequent rounds, a higher or otherwise better offer than the Leading Bid (as defined below), in each case taking into account other Qualified Bids for other Assets.  The Debtors, in their Permitted Discretion, may determine appropriate minimum bid increments or requirements for each round of bidding.

After the first round of bidding and between each subsequent round of bidding, the Debtors will determine, in their Permitted Discretion, and announce the bid or bids that they believe to be the highest or otherwise best offer or combination of offers (the "**Leading Bid**").  A round of bidding will conclude after each participating Qualified Bidder has had the opportunity to submit a Subsequent Bid with full knowledge and confirmation of the Leading Bid.

For the purpose of evaluating Subsequent Bids, the Debtors may require, in their Permitted Discretion, a Qualified Bidder submitting a Subsequent Bid to submit, as part of its Subsequent Bid, additional evidence (in the form of financial disclosure or credit-quality support information or enhancement acceptable to the Debtors in their Permitted Discretion) demonstrating such Qualified Bidder's ability to close the proposed transaction.

The Debtors shall maintain a transcript of all bids made and announced at the Auction, including the Starting Bid(s), all Subsequent Bid(s), the Leading Bid(s), the Alternate Bid(s) (as defined below) and the Successful Bid(s).

5.    <u>**Selection of Successful Bid(s)**</u>

Prior to the conclusion of the Auction, the Debtors shall (in each case in their Permitted Discretion) (a) review and evaluate each bid made at the Auction on the basis of financial and contractual terms and other factors relevant to the sale process, including those factors affecting the speed and certainty of consummating the sale transaction, (b) determine and identify, in their Permitted Discretion, the highest or otherwise best offer or collection of offers (the "**Successful Bid(s)**"), (c) determine and identify, in their Permitted Discretion the next highest or otherwise best offer or collection of offers (the "**Alternate Bid(s)**'') and (d) notify all Qualified Bidders participating in the Auction, prior to its adjournment, of the identity of the party or parties that submitted the Successful Bid(s) (the "**Successful Bidder(s)**"), the amount and other material terms of the Successful Bid(s), the identity of the party or parties that submitted the Alternate Bid(s) (the "**Alternate Bidder(s)**") and the amount and other material terms of the Alternate Bid(s).  No additional bids may be considered after the Auction is closed.

Within two (2) Business Days after the completion of the Auction (or as soon as reasonably practicable thereafter), the Successful Bidder(s) and the applicable Debtors shall complete and execute all agreements, instruments and other documents necessary to consummate the applicable sale transaction(s) (subject to entry of the Sale Order) or otherwise contemplated by the applicable Successful Bid(s).  Promptly following the selection of the Successful Bid(s) and Alternate Bid(s), the Debtors shall file a notice of the Successful Bid(s) and Alternate Bid(s) with the Court and cause such notice to be published on the Case Information Website, which shall constitute definitive proof that the Debtors have closed the Auction.

## 6.    The Sale Hearing

The hearing to consider the proposed Sale Order (the "**Sale Hearing**") shall be held at **10:00 a.m. (prevailing Eastern Time) on October 25, 2019** before the Honorable _____ in the United States Bankruptcy Court for the District of Delaware, Courtroom ___, 824 North Market Street, ___ Floor, Wilmington, Delaware 19801.

The Sale Hearing may be adjourned by the Debtors by an announcement of the adjourned date at a hearing before the Court or by filing a notice on the Court's docket.  At the Sale Hearing, the Debtors will seek the Court's approval of the Successful Bid(s) and, in their Permitted Discretion, the Alternate Bid(s).

The Debtors' presentation to the Court of the Successful Bid(s) and Alternate Bid(s) will not constitute the Debtors' acceptance of such bid(s), which acceptance will only occur upon approval of such bid(s) by the Court.  Following the Court's entry of the Sale Order approving such bid(s), the Debtors and the Successful Bidder(s) shall proceed to consummate the transaction(s) contemplated by the Successful Bid(s), in all cases within the milestones set in the DIP Credit Agreement.  If the Debtors and the Successful Bidder(s) fail to consummate the proposed transaction(s), then the Debtors shall file a notice with the Court advising of such failure.  Upon the filing of such notice with the Court, the Alternate Bid(s) will be deemed to be the Successful Bid(s) and the Debtors will be authorized but not directed, in their Permitted Discretion, to effectuate the transaction(s) with the Alternate Bidder(s) subject to the terms of the Alternate Bid(s) of such Alternate Bidder(s) without further order of the Court.  If such failure to consummate the sale is the result of a breach by the Successful Bidder(s) (such bidder(s), the "**Breaching Bidder(s)**") of its (their) purchase agreement(s), the Debtors reserve the right to

13

seek all available remedies from the Breaching Bidder(s), subject to the terms of the applicable restructuring support agreement(s) or purchase agreement(s).

## 7.    Return of Good Faith Deposit

The Good Faith Deposits of all Qualified Bidders will be held in escrow by the Deposit Agent and will not become property of the Debtors' bankruptcy estates unless released from escrow pursuant to the terms of the applicable escrow agreement or pursuant to further order of the Court. The Deposit Agent will retain the Good Faith Deposits of the Successful Bidder(s) and the Alternate Bidder(s) until the closing of the transaction(s) contemplated by the Successful Bid(s) or the Alternate Bid(s), as applicable, in accordance with Section 6 above, except as otherwise ordered by the Court. The Good Faith Deposits (and all interest accrued thereon) of the other Qualified Bidders will be returned within four Business Days after the entry of the Sale Order. At the closing of the transaction contemplated by the Successful Bid(s), the Successful Bidder(s) will receive a credit in the amount of its Good Faith Deposit (plus all interest accrued thereon). All remaining Good Faith Deposits (and all interest accrued thereon) held by the Deposit Agent will be released by the Deposit Agent four (4) Business Days after the closing of the transaction(s) contemplated by the Successful Bid(s); *provided*, the Deposit Agent will retain the Good Faith Deposit of a Breaching Bidder pending a ruling by the Court as to the amount of damages owed, if any, by such Breaching Bidder to the Debtors.

## 8.    As Is, Where Is

The sale of the Assets shall be on an "as is, where is" basis and without representations or warranties of any kind, nature or description by the Debtors, their agents or their estates, except as provided in any agreement with respect to the transaction(s) approved by the Court.

## 9.    Free and Clear of Any and All Interests

All of the Debtors' right, title and interest in and to the Assets subject thereto shall be sold free and clear of any pledges, liens, security interests, encumbrances, claims, charges, options and interests thereon (collectively, the "**Interests**") to the maximum extent permitted by section 363 of the Bankruptcy Code, with such Interests to attach to the net proceeds of the sale of the Assets with the same validity and priority as such Interests applied against the Assets, without modification of the DIP Lenders' right to be repaid in cash from such proceeds pursuant to the DIP Orders and other DIP Documents.

## 10.    Reservation of Rights of the Debtors

Except as otherwise provided in these Bidding Procedures or the Bidding Procedures Order, the Debtors reserve the right, in their Permitted Discretion, to:

    i.      determine which Interested Party is a Potential Bidder;

    ii.      determine which bidder is a Qualified Bidder;

    iii.      determine which bid is a Qualified Bid;

      iv.        determine which Qualified Bid is a Starting Bid;

      v.        determine which Qualified Bid is the highest or otherwise best offer for the Assets and which is the next highest or otherwise best offer;

      vi.        reject any bid that the Debtors deem to be (a) inadequate or insufficient, (b) not in conformity with the requirements of these Bidding Procedures or the requirements of the Bankruptcy Code, the Bankruptcy Rules and the Local Rules or (c) contrary to the best interests of the Debtors and their estates;

      vii.        impose additional terms and conditions with respect to all Potential Bidders;

      viii.        cancel the Auction;

      ix.        extend the deadlines set forth herein; and

      x.        modify these Bidding Procedures and implement additional procedural rules that the Debtors determine will better promote the goals of the Bidding Process and discharge the Debtors' fiduciary duties.

Nothing in these Bidding Procedures shall require the Debtors' board of directors to take any action, or to refrain from taking any action, with respect to these Bidding Procedures, to the extent that the Debtors' board of directors determines, or based on the advice of counsel, that taking such action, or refraining from taking such action, as applicable, is required to comply with applicable law or its fiduciary duties under applicable law.

DM_US 159991341-12.091621.0012

## <u>Exhibit 2</u>

**Form of Sale Notice**

## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re: | Chapter 11 |
| FURIE OPERATING ALASKA, LLC, *et al.*,[1] | Case No. 19-11781 (___) |
| Debtors. | (Jointly Administered) |
| | **Re: Docket No. ___** |

## NOTICE OF SALE, BIDDING PROCEDURES, AUCTION AND SALE HEARING

**PLEASE TAKE NOTICE** that the above-captioned debtors and debtors in possession (collectively, the "**Debtors**") each filed a voluntary petition for relief under chapter 11 of title 11 of the United States Code in the United States Bankruptcy Court for the District of Delaware (the "**Court**") on August 9, 2019 (the "**Petition Date**").

**PLEASE TAKE FURTHER NOTICE** that, on August 9, 2019, the Debtors filed a motion (the "**Sale Motion**")[2] with the Court seeking entry of orders, among other things, approving (a) procedures for the solicitation of bids in connection with the proposed sale of substantially all of the Debtors' assets (the "**Sale**"), subject to the submission of higher or otherwise better offers in an auction process (the "**Auction**"), (b) the form and manner of notice related to the Sale and (c) procedures for the assumption and assignment of contracts and leases in connection with the Sale.

**PLEASE TAKE FURTHER NOTICE** that, on September [5], 2019, the Court entered an order (the "**Bidding Procedures Order**") approving, among other things, the Bidding Procedures, which establish the key dates and times related to the Sale and the Auction.  All interested bidders should carefully read the Bidding Procedures Order and the Bidding Procedures in their entirety.[3]

### Contact Persons for Parties Interested in Submitting a Bid

The Bidding Procedures set forth the requirements for submitting a Qualified Bid, and any person interested in making an offer to purchase the Assets must comply strictly with the Bidding Procedures.  Only Qualified Bids will be considered by the Debtors, in accordance with the Bidding Procedures.

---

[1] The Debtors, together with the last four digits of each Debtor's federal tax identification number, are: Furie Operating Alaska, LLC (8721); Cornucopia Oil & Gas Company, LLC (9914); and Corsair Oil & Gas LLC (8012). The location of the Debtors' corporate headquarters and the service address for all Debtors is 188 W. Northern Lights Blvd. Suite 620, Anchorage, Alaska 99503.

[2] Capitalized terms used but not otherwise defined herein shall have the meanings ascribed to them in the Sale Motion.

[3] To the extent of any inconsistencies between the Bidding Procedures and the summary descriptions of the Bidding Procedures in this notice, the terms of the Bidding Procedures shall control in all respects.

Any interested bidder should contact, as soon as practicable:

**Seaport Global Securities LLC, 400 Poydras Street, Suite 3100, New Orleans, LA 70130 (Attn: Michael Schmidt: mschmidt@seaportglobal.com).**

## Obtaining Additional Information

Copies of the Sale Motion, the Bidding Procedures and the Bidding Procedures Order, as well as all related exhibits, including all other documents filed with the Court, are available free of charge on the Debtors' case information website, located at **https://cases.primeclerk.com/furieoperatingalaska**.

## Important Dates and Deadlines[4]

(i)    **Bid Deadline**.  The deadline to submit a Qualified Bid is **5:00 p.m. (prevailing Eastern Time) on October 4, 2019.**

(ii)    **Auction**.  In the event that the Debtors timely receive a Qualified Bid in addition to the Qualified Bid of a Stalking Horse Bidder (if any) and subject to the satisfaction of any further conditions set forth in the Bidding Procedures, the Debtors intend to conduct an Auction for the Assets.  The Auction, if one is held, will commence at **10:00 a.m. (prevailing Eastern Time) on October 7, 2019** at the offices of McDermott Will & Emery LLP, 340 Madison Avenue, New York, New York 10173.

(iii)    **Auction and Sale Objections Deadline**.  The deadline to file an objection with the Court to the Sale, and all objections relating to the Stalking Horse Bidder (if any), the conduct of the Auction or the Sale (collectively, the "**Sale Objections**") is **5:00 p.m. (prevailing Eastern Time) on October 4, 2019** (the "**Sale Objection Deadline**").

(iv)    **Sale Hearing**.  A hearing (the "**Sale Hearing**") to consider the proposed Sale will be held before the Court at **10:00 a.m. (prevailing Eastern Time) on October 25, 2019**, or such other date as determined by the Court, at 824 North Market Street, Wilmington, Delaware 19801.

## Filing Objections

Sale Objections, if any, must (a) be in writing, (b) state, with specificity, the legal and factual bases thereof, (c) be filed with the Court by no later than **the Sale Objection Deadline** and (d) be served on be served on (1) proposed counsel for the Debtors, Womble Bond Dickinson (US) LLP, 1313 North Market Street, Suite 1200, Wilmington, DE 19081 (Attn: Matthew P. Ward and Ericka F. Johnson); and McDermott Will & Emery LLP, 340 Madison Ave., New York, New York 10173 (Attn: Timothy W. Walsh, Darren Azman, and Riley T.

---

[4] The following dates and deadlines may be extended by the Debtors or the Court pursuant to the terms of the Bidding Procedures and the Bidding Procedures Order.

Orloff), (2) counsel to the DIP Agent, Kirkland & Ellis LLP, 300 North LaSalle, Chicago, IL 60654, and (3) counsel to any statutory committee appointed in the Chapter 11 Cases, (4) the U.S. Trustee, 844 King Street, Suite 2207, Lockbox 35, Wilmington, Delaware, 19801, and (5) any other party that has requested notice pursuant to Bankruptcy Rule 2002.

## CONSEQUENCES OF FAILING TO TIMELY ASSERT AN OBJECTION

*Any party or entity who fails to timely make an objection to the Sale on or before the Sale Objection Deadline in accordance with the Bidding Procedures Order and this Notice shall be forever barred from asserting any objection to the Sale, including with respect to the transfer of the assets free and clear of all liens, claims, encumbrances and other interests.*

## NO SUCCESSOR LIABILITY

*For more information on the Debtors' business or their products, refer to the First Day Declaration.  Upon Court approval, the Sale will be free and clear of, among other things, any claim arising from any conduct of the Debtors prior to the closing of the Sale, whether known or unknown, whether due or to become due, whether accrued, absolute, contingent or otherwise, so long as such claim arises out of or relates to events occurring prior to the closing of the Sale.  Accordingly, as a result of the Sale, the Successful Bidder will not be a successor to any of the Debtors by reason of any theory of law or equity, and the Successful Bidder will have no liability, except as expressly provided in the Purchase Agreement, for any liens, claims, encumbrances and other interests against or in any of the Debtors under any theory of law, including successor liability theories.*

[Remainder of This Page Intentionally Left Blank]

19

Dated: _____, 2019          Respectfully submitted,

    Wilmington, Delaware

                                            **WOMBLE BOND DICKINSON (US) LLP**

                                          _____
Matthew P. Ward (DE Bar No. 4471)
Ericka F. Johnson (DE Bar No. 5024)
1313 North Market Street, Suite 1200
Wilmington, Delaware 19801
Telephone:(302) 252-4320
Facsimile: (302) 252-4330
Email:    matthew.ward@wbd-us.com
           ericka.johnson@wbd-us.com


-and-

MCDERMOTT WILL & EMERY LLP
Timothy W. Walsh (*pro hac vice* pending)
Darren Azman (*pro hac vice* pending)
Riley T. Orloff (*pro hac vice* pending)
340 Madison Avenue
New York, New York 10173-1922
Telephone:(212) 547-5400
Facsimile: (212) 547-5444
Email:    twwalsh@mwe.com
           dazman@mwe.com
           rorloff@mwe.com


*Proposed Counsel to the Debtors and*
*Debtors in Possession*

DM_US 159991341-12.091621.0012

**<u>Exhibit 3</u>**

**Form of Potential Assumption and Assignment Notice**

**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE**

| | |
|---|---|
| In re: | Chapter 11 |
| FURIE OPERATING ALASKA, LLC, *et al.*,[1] | Case No. 19-11781 (___) |
| Debtors. | (Jointly Administered) |
| | **Re: Docket No. ___** |

**NOTICE OF ASSUMPTION AND ASSIGNMENT OF EXECUTORY CONTRACTS OR
UNEXPIRED LEASES AND CURE AMOUNT**

      **PLEASE TAKE NOTICE** that the above-captioned debtors and debtors in possession (collectively, the "**Debtors**") each filed a voluntary petition for relief under chapter 11 of title 11 of the United States Code (the "**Bankruptcy Code**") in the United States Bankruptcy Court for the District of Delaware (the "**Court**") on August 9, 2019 (the "**Petition Date**").

      **PLEASE TAKE FURTHER NOTICE** that, on August 9, 2019, the Debtors filed a motion (the "**Sale Motion**")[2] with the Court seeking entry of orders, among other things, approving (a) procedures for the solicitation of bids in connection with the proposed sale of substantially all of the Debtors' assets (the "**Sale**"), subject to the submission of higher or otherwise better offers in an auction process (the "**Auction**"), (b) the form and manner of notice related to the Sale and (c) procedures for the assumption and assignment of contracts and leases in connection with the Sale (the "**Assumption and Assignment Procedures**").

      **PLEASE TAKE FURTHER NOTICE** that, on September [5], 2019, the Court entered an order (the "**Bidding Procedures Order**") approving, among other things, the Bidding Procedures, which establish the key dates and times related to the Sale, the Auction, and the Assumption and Assignment Procedures.

      **PLEASE TAKE FURTHER NOTICE** that, upon the closing of the Sale, the Debtors intend to assume and assign to the Successful Bidder the Potentially Assumed Contracts. A schedule listing the potential Potentially Assumed Contracts (the "**Executory Contract List**") is attached hereto and may also be accessed free of charge on the Debtors' case information website, located at **https://cases.primeclerk.com/furieoperatingalaska**. In addition, the "**Cure Claims**," if any, necessary for the assumption and assignment of the Potentially Assumed Contracts are set forth on the Executory Contract List. *Each Cure Claim listed on the Executory Contract List represents all liabilities of any nature that the Debtors believe they*

---

[1] The Debtors, together with the last four digits of each Debtor's federal tax identification number, are: Furie Operating Alaska, LLC (8721); Cornucopia Oil & Gas Company, LLC (9914); and Corsair Oil & Gas LLC (8012). The location of the Debtors' corporate headquarters and the service address for all Debtors is 188 W. Northern Lights Blvd. Suite 620, Anchorage, Alaska 99503.

[2] Capitalized terms used but not otherwise defined herein shall have the meanings ascribed to them in the Sale Motion.

*have arising under an Assumed Contract prior to the closing of the Sale, whether known or unknown, whether due or to become due, whether accrued, absolute, contingent or otherwise, so long as such liabilities arise out of or relate to events occurring prior to the closing of the Sale.  If you believe your Cure Claim is listed with an incorrect amount on the Executory Contract List, you must object in accordance with the procedures described in this Notice.*

**YOU ARE RECEIVING THIS NOTICE BECAUSE YOU HAVE BEEN IDENTIFIED AS A CONTRACT COUNTERPARTY TO A POTENTIAL ASSUMED CONTRACT**.  Subject to the terms of the Assumption and Assignment Procedures, the Debtors or the Successful Bidder may, at any time prior to the closing of the Sale, (a) designate a Contract on the attached Executory Contract List as an Assumed Contract or as a Contract that will not be assumed and assigned to the Successful Bidder (an "**Excluded Contract**"), (b) add a Contract to the Executory Contract List or (c) modify the previously-stated Cure Claims associated with any Proposed Assumed Contract.  The Assumption and Assignment Procedures further provide that any Contract Counterparty whose Contract is added to the Executory Contract List after the date hereof, or whose previously-stated Cure Claim is modified, will in each case receive notice thereof and an opportunity to file an Assumption and Assignment Objection.  **The assumption and assignment of the Contracts on the Executory Contract List is not guaranteed and is subject to approval by the Court and the Debtors' or the Successful Bidder's right to not designate a Contract on the Executory Contract List as an Assumed Contract.**

**Obtaining Additional Information**

Copies of the Sale Motion, the Bidding Procedures and the Bidding Procedures Order, as well as all related exhibits, including all other documents filed with the Court, are available free of charge on the Debtors' case information website, located at **https://cases.primeclerk.com/furieoperatingalaska**.

Upon request by a counterparty under any Contract, counsel to the Successful Bidder shall provide, by electronic mail, the Adequate Assurance Information (as defined in the Bidding Procedures).

**Important Dates and Deadlines[3]**

(i)    **Auction**.  In the event that the Debtors timely receive a Qualified Bid in addition to the Qualified Bid of a Stalking Horse Bidder (if any) and subject to the satisfaction of any further conditions set forth in the Bidding Procedures, the Debtors intend to conduct an Auction for the Assets.  The Auction, if one is held, will commence at **10:00 a.m. (prevailing Eastern Time) on October 7, 2019** at the offices of McDermott Will & Emery LLP, 340 Madison Avenue, New York, New York 10173.

---

[3] The following dates and deadlines may be extended by the Debtors or the Court pursuant to the terms of the Bidding Procedures and the Bid ding Procedures Order.

DM_US 159991341-12.091621.0012

(ii)    **Assumption and Assignment Objections Deadline**.  The deadline to file an objection with the Court to the proposed assumption and assignment of an Assumed Contract (an "**Assumption and Assignment Objection**"), including any objection relating to the Cure Claim or adequate assurance of the Stalking Horse Bidder's (if any) future ability to perform, is **5:00 p.m. (prevailing Eastern Time) on October 2, 2019** (the "**Assumption and Assignment Objection Deadline**").

(iii)   **Auction and Sale Objections Deadline**.  The deadline to file an objection with the Court to the Sale, and all objections relating to the Stalking Horse Bidder (if any), the conduct of the Auction or the Sale (collectively, the "**Sale Objections**") is **5:00 p.m. (prevailing Eastern Time) on October 4, 2019** (the "**Sale Objection Deadline**").

(iv)    **Sale Hearing**.  A hearing (the "**Sale Hearing**") to consider the proposed Sale will be held before the Court at **10:00 a.m. (prevailing Eastern Time) on October 25, 2019**, or such other date as determined by the Court, at 824 North Market Street, Wilmington, Delaware 19801.

<u>**Filing Assumption and Assignment Objections**</u>

Pursuant to the Assumption and Assignment Procedures, an Assumption and Assignment Objection must (a) be in writing, (b) comply with the Bankruptcy Code, Bankruptcy Rules and Local Bankruptcy Rules, (c) state, with specificity, the legal and factual bases thereof, including, if applicable, the Cure Claim that the Contract Counterparty believes is required to cure defaults under the relevant Assumed Contract, (d) be filed by no later than the **Assumption and Assignment Objection Deadline**, and (e) be served on (1) proposed counsel for the Debtors, Womble Bond Dickinson (US) LLP, 1313 North Market Street, Suite 1200, Wilmington, DE 19081 (Attn: Matthew P. Ward and Ericka F. Johnson) and McDermott Will & Emery LLP, 340 Madison Ave., New York, New York 10173 (Attn: Timothy W. Walsh, Darren Azman, and Riley T. Orloff), (2) counsel to the DIP Agent, Kirkland & Ellis LLP, 300 North LaSalle, Chicago, IL 60654, and (3) counsel to any statutory committee appointed in the Chapter 11 Cases, (4) the U.S. Trustee, 844 King Street, Suite 2207, Lockbox 35, Wilmington, Delaware, 19801, and (5) any other party that has requested notice pursuant to Bankruptcy Rule 2002 (collectively, the "**Objection Notice Parties**").

Sale Objections, if any, must (a) be in writing, (b) state, with specificity, the legal and factual bases thereof, (c) be filed with the Court by no later than the **Sale Objection Deadline** and (d) be served on the Objection Notice Parties.

<u>**CONSEQUENCES OF FAILING TO TIMELY ASSERT AN OBJECTION**</u>

*Any Contract Counterparty to an Assumed Contract who fails to timely make an objection to the proposed assumption and assignment of such contract or lease on or before the Assumption and Assignment Objection Deadline in accordance with the Assumption and Assignment Procedures, the Bidding Procedures Order and this Notice shall be deemed to have consented to the Cure Claims set forth in the Potential Assumption and Assignment*

3

*Notice and forever barred from asserting any objection or claims against the Debtors, the Successful Bidder(s), or the property of any such parties, relating to the assumption and assignment of such contract or lease, including asserting additional Cure Claims with respect to such contract or lease. Notwithstanding anything to the contrary in such contract or lease, or any other document, the Cure Claims set forth in the Potential Assumption and Assignment Notice shall be controlling and will be the only amount necessary to cure outstanding defaults under the applicable Assumed Contract under section 365(b) of the Bankruptcy Code arising out of or related to any events occurring prior to the closing of the Sale, whether known or unknown, whether due or to become due, whether accrued, absolute, contingent or otherwise.*

*Any party or entity who fails to timely make an objection to the Sale on or before the Sale Objection Deadline in accordance with the Bidding Procedures Order shall be forever barred from asserting any objection to the Sale, including with respect to the transfer of the assets free and clear of all liens, claims, encumbrances and other interests.*

[*Remainder of This Page Intentionally Left Blank*]

DM_US 159991341-12.091621.0012

Dated: _____, 2019          Respectfully submitted,
       Wilmington, Delaware

**WOMBLE BOND DICKINSON (US) LLP**

_____
Matthew P. Ward (DE Bar No. 4471)
Ericka F. Johnson (DE Bar No. 5024)
1313 North Market Street, Suite 1200
Wilmington, Delaware 19801
Telephone:(302) 252-4320
Facsimile: (302) 252-4330
Email:    matthew.ward@wbd-us.com
          ericka.johnson@wbd-us.com

-and-

MCDERMOTT WILL & EMERY LLP
Timothy W. Walsh (*pro hac vice* pending)
Darren Azman (*pro hac vice* pending)
Riley T. Orloff (*pro hac vice* pending)
340 Madison Avenue
New York, New York 10173-1922
Telephone:(212) 547-5400
Facsimile: (212) 547-5444
Email:    twwalsh@mwe.com
        dazman@mwe.com
        rorloff@mwe.com

*Proposed Counsel to the Debtors and
Debtors in Possession*

5