# IN THE UNITED STATES BANKRUPTCY COURT
# FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re: | Chapter 11 |
| FURIE OPERATING ALASKA, LLC, *et al.*,[1] | Case No. 19-11781 (LSS) |
| Debtors. | (Jointly Administered) |
| | Hearing Date: November 20, 2019 at 10:00 a.m. (ET) |
| | Obj. Deadline: November 13, 2019 at 4:00 p.m. (ET) |

## MOTION OF THE DEBTORS FOR ENTRY OF AN ORDER EXTENDING THE EXCLUSIVITY PERIODS FOR THE FILING OF A CHAPTER 11 PLAN AND SOLICITATION OF ACCEPTANCE THEREOF

The above-captioned debtors and debtors-in-possession (collectively, the "Debtors") hereby move (the "Motion") pursuant to section 1121(d) of title 11 of the United States Code (the "Bankruptcy Code"), for an entry of an order substantially in the form attached hereto as Exhibit A (the "Proposed Order") extending the periods during which the Debtors have the exclusive right to file a chapter 11 plan (the "Exclusivity Period") and to solicit acceptances thereof (the "Exclusive Solicitation Period") by ninety days, through and including March 9, 2020 and May 5, 2020, respectively.[2] In further support of the Motion, the Debtors, by and through their undersigned counsel, respectfully state as follows:

---

[1] The Debtors, together with the last four digits of each Debtor's federal tax identification number, are: Furie Operating Alaska, LLC (8721); Cornucopia Oil & Gas Company, LLC (9914); and Corsair Oil & Gas LLC (8012). The location of the Debtors' corporate headquarters and the service address for all Debtors is 188 W. Northern Lights Blvd. Suite 620, Anchorage, Alaska 99503.

[2] Pursuant to Local Rule 9006-2, the filing of this Motion prior to the expiration of the current Exclusivity Period and Exclusive Solicitation Period automatically extends such deadlines until such time as the Court rules on this Motion.

**JURISDICTION AND VENUE**

1. This Court has jurisdiction over this Motion pursuant to 28 U.S.C. §§ 157 and 1334 and the Amended Standing Order of Reference from the United States District Court for the District of Delaware, dated as of February 29, 2012.

2. Venue is proper before this Court pursuant to 28 U.S.C. §§ 1408 and 1409.

3. The statutory bases for the relief requested herein are Bankruptcy Code section 1121(d).

4. This is a core proceeding under 28 U.S.C. § 157(b). Pursuant to Rule 9013-1(f) of the Local Rules of Bankruptcy Practice and Procedure of the United States Bankruptcy Court for the District of Delaware (the "Local Rules"), the Debtors consent to the entry of a final judgment or order with respect to this Motion if it is determined that the Court would lack Article III jurisdiction to enter such final order or judgment absent consent of the parties.

**BACKGROUND**

5. On August 9, 2019 (the "Petition Date"), each of the Debtors filed a voluntary petition for relief in this Court under chapter 11 of the Bankruptcy Code (the "Chapter 11 Cases").

6. Additional information regarding the Debtors and these Chapter 11 Cases, including the Debtors' business operations, capital structure, financial condition, and the reasons for and objectives of these Chapter 11 Cases is set forth in detail in the *Declaration of Scott M. Pinsonnault in Support of the Debtors' Chapter 11 Petitions and First Day Pleadings* (the "First Day Declaration"), which is incorporated herein by reference. Capitalized terms used but not defined herein have the meanings ascribed to them in the First Day Declaration.

7. These Chapter 11 Cases are procedurally consolidated and jointly administered pursuant to Bankruptcy Rule 1015(b). The Debtors continue to operate their business and

manage their properties as debtors in possession pursuant to Bankruptcy Code sections 1107(a) and 1108.

8. No trustee, examiner, or other committee has been appointed in these Chapter 11 Cases.

9. On September 26, 2019, the Court entered that certain *Order (A) Approving Bidding Procedures for the Sale of the Debtors' Assets, (B) Approving Procedures for Stalking Horse Bid Protections, (C) Scheduling an Auction for, and Hearing to Approve, the Sale of the Debtors' Assets, (D) Approving the Form and Manner of Notice Thereof, (E) Approving Contract Assumption and Assignment Procedures and (F) Granting Related Relief* [Docket No. 185] (the "Bidding Procedures Order") pursuant to which the Court approved the Debtors' proposed bidding procedures (the "Bidding Procedures") for a sale of all or substantially all of the Debtors' assets.

10. Although the Debtors seek to sell all or substantially all of their assets pursuant to the Bidding Procedures, certain of the Debtors assets may not be sold under Bankruptcy Code section 363. Moreover, the Debtors may wish to consummate a sale to a purchaser identified under the Bidding Procedures through a chapter 11 plan and run a sales process to maximize the value of their assets for the benefit of all stakeholders. Accordingly, the Debtors have actively engaged in formulating, negotiating, and drafting a chapter 11 plan to maintain flexibility with such discussions continuing and ongoing.

**RELIEF REQUESTED**

11. The Debtors respectfully request, pursuant to Bankruptcy Code section 1121(d), a ninety day extension of (i) the Exclusivity Period through and including March 9, 2020, and (ii) the Exclusive Solicitation Period, through and including May 5, 2020, without prejudice to

any party in interest's rights to seek to reduce or increase such periods in accordance with Bankruptcy Code section 1121(d). The Debtors' initial Exclusivity Period and Exclusive Solicitation Period (collectively, hereinafter the "Exclusivity Periods") are currently set to expire on December 9, 2019 and February 5, 2020, respectively.

## BASIS FOR RELIEF

12. Pursuant to Bankruptcy Code section 1121(d), the Court may extend exclusive periods "for cause." *See* 11 U.S.C. § 1121(d) ("[O]n request of a party in interest made within the respective periods specified in subsections (b) and (c) of this section and after notice and a hearing, the court may for cause reduce or increase the 120-day period or the 180- day period referred to in this section."). However, the 120-day period "may not be extended beyond a date that is 18 months after the [petition] date" and the 180-day period "may not be extended beyond a date that is 20 months after the [petition] date." *Id*. §§ 1121(d)(2)(A), (B). The Bankruptcy Code neither defines "cause" for purposes of section 1121(d), nor establishes formal criteria for an extension of the exclusive periods. The legislative history of Bankruptcy Code section 1121 indicates, however, that "cause" is intended to be a flexible standard that balances the competing interests of a debtor and its creditors. *See* H.R. Rep. No. 95-595, at 231- 32 (1978), reprinted in 1978 U.S.C.C.A.N. 5787, 6191 (noting that Congress intended to give bankruptcy courts great flexibility to protect a debtor's interests by allowing a debtor an unimpeded opportunity to negotiate settlement of debts without interference from other parties in interest).

13. In exercising its broad discretion to determine whether "cause" exists, a bankruptcy court should be guided by a variety of factors. *See In re Borders Grp., Inc.*, 460 B.R. 818, 821−22 (Bankr. S.D.N.Y. 2011) ("The determination of cause under section 1121(d) is a fact-specific inquiry and the court has broad discretion in extending or terminating exclusivity."); *In re Adelphia Commc'ns Corp.*, 352 B.R. 578, 587 (Bankr. S.D.N.Y. 2006) (identifying

objective factors courts historically have considered in determining whether cause exists to extend or terminate exclusivity); *see also In re McLean Indus., Inc.*, 87 B.R. 830, 834 (Bankr. S.D.N.Y. 1987) (identifying factors used by courts to determine whether cause exists to extend exclusivity). These factors are not exhaustive and include, without limitation:

    i.    the size and complexity of the debtor's case;

    ii.    the necessity for sufficient time to permit the debtor to negotiate a chapter 11 plan and prepare adequate information;

    iii.    the existence of good faith progress towards reorganization;

    iv.    the fact that the debtor is paying its bills as they become due;

    v.    whether the debtor has demonstrated reasonable prospects for filing a viable plan;

    vi.    whether the debtor has made progress in negotiations with its creditors;

    vii.    the amount of time which has elapsed in the case;

    viii.    whether the debtor is seeking an extension of exclusivity in order to pressure creditors to submit to the debtor's reorganization demands; and

    ix.    whether an unresolved contingency exists.

*See, e.g., In re Cent. Jersey Airport Servs., LLC*, 282 B.R. 176, 183 (Bankr. D.N.J. 2002); *McLean Indus. Inc.*, 87 B.R. at 834; *Adelphia Commc'ns*, 352 B.R. at 587 (noting that the nine factors listed above are "objective factors which courts historically have considered in making determinations of this character"); see also *Borders*, 460 B.R. at 822 (evaluating the nine factors set forth in Adelphia to hold that debtor established cause to extend exclusivity); *accord In re Express One*, 194 B.R. 98, 100 (Bankr. E.D. Tex. 1996) (identifying all of the nine factors as relevant in determining whether cause exists to extend exclusivity); *In re United Press Int'l, Inc.*, 60 B.R. 265, 269 (Bankr. D.D.C. 1986) (holding that the debtor showed cause to extend exclusive period based upon certain of the nine factors). The above factors are not the exclusive

bases for the exercise of the Court's discretion to extend exclusive periods. *See Adelphia Commc'ns*, 352 B.R. at 586-87.

14. Not all factors are relevant in every case, and a finding that any one of these factors exists may justify extending a debtor's exclusive periods. *See Express One*, 194 B.R. at 100 (finding only some of the factors relevant in determining whether cause exists to extend exclusivity); *see also In re Dow Corning Corp.*, 208 B.R. 661, 670 (Bankr. E.D. Mich. 1997) ("When the Court is determining whether to terminate a debtor's exclusivity, the primary consideration should be whether or not doing so would facilitate moving the case forward. And that is a practical call that can override a mere toting up of the factors.").

15. Moreover, courts routinely grant a debtor's first request for an extension. *See In re Mirant Corp.*, 2004 WL 2250986, at *2 (N.D. Texas 2004) ("The debtor's burden gets heavier with each extension it seeks as well as the longer the period of exclusivity lasts."); *see also In re Apex Pharm., Inc.*, 203 B.R. 432, 441 (N.D. Ind. 1996) ("It is true that during the initial 120-day period in which debtors have an exclusive right to file a plan of reorganization . . . the bankruptcy courts apply a lesser standard in determining whether the burden of showing 'a reasonable possibility of a successful reorganization within a reasonable time' has been satisfied.") (citation omitted); *In re Borders Grp., Inc.*, 460 B.R. 818, 825 (Bankr. S.D.N.Y. 2011) (same); *In re MSR Resort Golf Course LLC*, No. 11-10372 (SHL) (Bankr. S.D.N.Y.), Hr'g Tr. June 29, 2011, 77:19–25 (same); *In re Cengage Learning, Inc.*, No. 13-44106 (ESS) (Bankr. E.D.N.Y.), Hr'g Tr. Oct. 25, 2013, 64:4–7 (emphasizing that it is "important to note" that "[t]his is the first request").

16. Congress incorporated these exclusivity periods into the Bankruptcy Code to afford a debtor a full and fair opportunity to propose a chapter 11 plan and enable solicitation of

acceptances of the plan without the deterioration and disruption of a debtor's business that might be caused by the filing of multiple competing plans. Indeed, the primary objective of a chapter 11 case is the formulation, confirmation, and consummation of a consensual chapter 11 plan. As detailed above, the Debtors have been working with their lenders to form a consensual chapter 11 plan. The Debtors have made substantial progress towards, and intend to file such plan and related disclosure statement in advance of expiration of the initial Exclusivity Period.

## CAUSE EXISTS TO EXTEND THE EXCLUSIVITY PERIODS

17. Cause exists to grant the Debtors' requested extensions of the exclusivity periods. The extensions are necessary and appropriate for the Debtors to have the opportunity contemplated by the Bankruptcy Code to implement a chapter 11 plan. As set forth below, the requested extensions are appropriate, in the best interest of the Debtors' stakeholders, and consistent with the intent and purpose of chapter 11.

**A.    The Chapter 11 Cases are Large and Complex**

18. The Debtors' Chapter 11 Cases are both sizeable and complex. The Debtors operate in a highly regulated industry. Through the Bidding Procedures, the Debtors' efforts to market and sell their operating assets are ongoing. The size and complexity of these Chapter 11 Cases provide sufficient cause for the Court to extend the Exclusivity Periods.

**B.    Substantial Good Faith Progress has been Made to Achieve the Objectives of Chapter 11**

19. The Debtors are administering the Chapter 11 Cases efficiently and economically. In the three and a half months following the Petition Date, the Debtors have made significant progress in negotiating with their stakeholders and administering these cases, which further warrants an extension of the Exclusivity Periods. The Debtors and their advisors have maintained regular contact with the major parties in interest on all material matters, including the following:

- *Obtaining First-Day Relief*. The Debtors stabilized their business operations through various operational first-day motions and orders. This allowed the Debtors to, among other things, pay employees, continue paying critical vendors and lienholders, maintain insurance programs, and continue using their cash management system.

- *Approval of the Debtors' DIP Financing Motion*. After the Petition Date, the Debtors and the DIP Lenders engaged in discussions with, and provided relevant information to, the U.S. Trustee and the estates' creditors regarding the terms of the DIP facility. These efforts ultimately resulted in, following a contested hearing, approval of the DIP facility.

- *Negotiations with Key Economic Stakeholders and Due Diligence Efforts*. The Debtors have engaged in negotiations with various creditors to discuss their individual claims and the overall direction of the chapter 11 cases. Additionally, the Debtors have expended significant effort in assisting its major stakeholders with conducting due diligence.

- *Independent Investigation*. The Debtors have worked with the certain unsecured creditors to prosecute their respective standing motions with respect to potential claims against the Debtors' lenders. The Debtors are also conducting an investigation into potential claims that the Debtors may have against third parties, including, but not limited to, the Debtors' former managers and officers.

- *Engaging in Constructive Negotiations with Key Stakeholders for Operational Relief*. The Debtors worked constructively with the U.S. Trustee to resolve all potential objections to the Debtors' second-day orders. The Debtors also engaged in productive discussions with the advisors to both the unsecured creditors, the DIP Agent, and other parties in interest regarding certain consensual modifications to proposed orders. The Debtors' productive collaboration with its key constituents has kept the Debtors' business enterprise operating smoothly.

- *Filing Schedules of Assets and Liabilities and Statements of Financial Affairs*. The Debtors filed their schedules and statements and established the claims bar date.

C. **The Debtors Need Sufficient Time to Negotiate and Finalize a Plan**

20. As detailed herein, since Petition Date, the Debtors and their professionals have smoothly transitioned into chapter 11 and are conducting an ongoing sale process. The Debtors have made substantial progress in their negotiations and finalization of a chapter 11 plan. Considering the progress made, coupled with the Debtors' willingness to work cooperatively with their lenders and other parties in interest, it is reasonable and appropriate for the Debtors to

be granted additional time to negotiate and finalize a chapter 11 plan. Allowing the expiration of the Exclusivity Periods would interfere with the progress of the Chapter 11 Cases and would introduce chaos. The Chapter 11 Cases will benefit from avoiding a situation where there is more than one plan being considered for confirmation.

**D.     The Debtors are Not Seeking to Use Exclusivity to Pressure Creditors to Submit to the Debtors' Demands**

21.     This is the Debtors' first request for an extension of the Exclusivity Periods. The Debtors' conduct in these Chapter 11 Cases, particularly in connection with the ongoing discussions with their stakeholders, demonstrates that the Debtors are acting in a transparent manner and are not seeking an extension of the Exclusivity Periods to delay artificially the administration of these Chapter 11 Cases. The Debtors and their secured lenders have worked together closely to try to reach consensus, which will be reflected in the forthcoming plan and disclosure statement.

**E.     The Debtors are Paying Their Debts as They Come Due and have the Ability to Continue to Do So**

22.     Bankruptcy courts considering an extension of exclusivity also may assess a debtor's liquidity and ability to pay costs and expenses of administration. *Adelphia Commc'ns*, 352 B.R. at 587. The Debtors have timely paid quarterly fees to the United States Trustee, and all other administrative obligations in the ordinary course of business. In addition, the Debtors have sufficient liquidity to continue paying administrative expenses as they become due and will continue to make such payments.

**F.     The Requested Extension is in the Best Interests of the Debtors' Estates and Will Not Prejudice Creditors**

23.     The Debtors' requested extension is intended to allow the Debtors to work cooperatively with their key constituents toward the goal of finalizing and implementing the

proposed consensual plan in the most cost-efficient manner possible manner. Given the limited extension requested and the circumstances described herein, the extension aligns with the intent and purpose of Bankruptcy Code section 1121 and should be granted.

## CONCLUSION

24. For the reasons stated herein, the requested extension of the Exclusivity Periods is warranted and necessary to afford the Debtors a meaningful opportunity to continue to pursue the chapter 11 process as contemplated by the Bankruptcy Code. Accordingly, the Debtors should be afforded a full, fair, and reasonable opportunity to continue to work towards confirmation of a consensual chapter 11 plan, and the Exclusivity Periods should be extended as requested.

## NOTICE

25. Notice of this Motion will be given to: (a) the Office of the United States Trustee for the District of Delaware; (b) counsel to the DIP Agent; (c) counsel to the Prepetition Agents; (d) counsel to the Melody Lenders; (e) counsel to the McGinty Lender; (f) counsel to the Contract counterparties; (g) the entities listed on the Consolidated List of Creditors Holding the 30 Largest Unsecured Claims filed pursuant to Bankruptcy Rule 1007(d); and (h) any party that has requested notice pursuant to Bankruptcy Rule 2002. The Debtors submit that, under the circumstances, no other or further notice is required.

## NO PRIOR REQUEST

26. No previous request for the relief sought herein has been made by the Debtors to this or any other court

WHEREFORE, the Debtors respectfully request that the Court enter the Proposed Order, substantially in the form attached hereto as Exhibit A, granting the relief requested herein and granting such other relief as the Court deems appropriate.

Dated: November 5, 2019
       Wilmington, Delaware

Respectfully submitted,

**WOMBLE BOND DICKINSON (US) LLP**

 /s/    Ericka F. Johnson
Matthew P. Ward (DE Bar No. 4471)
Ericka F. Johnson (DE Bar No. 5024)
1313 North Market Street, Suite 1200
Wilmington, Delaware 19801
Telephone:    (302) 252-4320
Facsimile:    (302) 252-4330
Email:        matthew.ward@wbd-us.com
              ericka.johnson@wbd-us.com

-and-

**MCDERMOTT WILL & EMERY LLP**

Timothy W. Walsh (admitted *pro hac vice*)
Darren Azman (admitted *pro hac vice*)
Riley T. Orloff (admitted *pro hac vice*)
340 Madison Avenue
New York, New York 10173-1922
Telephone:    (212) 547-5400
Facsimile:    (212) 547-5444
Email:        twwalsh@mwe.com
              dazman@mwe.com
              rorloff@mwe.com

*Counsel to the Debtors and Debtors in Possession*