## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re: | Chapter 11 |
| FURIE OPERATING ALASKA, LLC, *et al.*,[1] | Case No. 19-11781 (LSS) |
| Debtors. | (Jointly Administered) |

## THE DEBTORS' JOINT PLAN OF REORGANIZATION
## UNDER CHAPTER 11 OF THE BANKRUPTCY CODE

Dated: December 11, 2019

MCDERMOTT WILL & EMERY LLP
Timothy W. Walsh (admitted *pro hac vice*)
Riley T. Orloff (admitted *pro hac vice*)
340 Madison Avenue
New York, New York 10173-1922
Telephone: (212) 547-5400
Facsimile:  (212) 547-5444
Email: twwalsh@mwe.com
          rorloff@mwe.com

WOMBLE BOND DICKINSON (US) LLP
Matthew P. Ward (DE Bar No. 4471)
Ericka F. Johnson (DE Bar No. 5024)
1313 North Market Street, Suite 1200
Wilmington, Delaware 19801
Telephone: (302) 252-4320
Facsimile:  (302) 252-4330
Email: matthew.ward@wbd-us.com
          ericka.johnson@wbd-us.com

*Counsel to Debtors and Debtors in Possession*

THIS IS NOT A SOLICITATION OF AN ACCEPTANCE OR REJECTION OF THE PLAN.  ACCEPTANCES OR REJECTIONS MAY NOT BE SOLICITED UNTIL THE DISCLOSURE STATEMENT HAS BEEN APPROVED BY THE BANKRUPTCY COURT.  THE DISCLOSURE STATEMENT IS BEING SUBMITTED FOR APPROVAL BUT HAS NOT BEEN APPROVED BY THE BANKRUPTCY COURT.  THE INFORMATION IN THE DISCLOSURE STATEMENT AND THIS PLAN IS SUBJECT TO CHANGE.  THIS PLAN IS NOT AN OFFER TO SELL ANY SECURITIES AND IS NOT SOLICITING AN OFFER TO BUY ANY SECURITIES.

---

[1]    The Debtors, together with the last four digits of each Debtor's federal tax identification number, are: Furie Operating Alaska, LLC (8721); Cornucopia Oil & Gas Company, LLC (9914); and Corsair Oil & Gas LLC (8012). The location of the Debtors' corporate headquarters and the service address for all Debtors is 188 W. Northern Lights Blvd. Suite 620, Anchorage, Alaska 99503.

# TABLE OF CONTENTS

**ARTICLE I. DEFINED TERMS, RULES OF INTERPRETATION, COMPUTATION OF TIME, AND GOVERNING LAW** ...................................1
- A. Defined Terms ................................................................................1
- B. Rules of Interpretation ..................................................................16
- C. Computation of Time.....................................................................17
- D. Governing Law ..............................................................................17
- E. Reference to Monetary Figures......................................................17
- F. Controlling Document ...................................................................17

**ARTICLE II. ADMINISTRATIVE CLAIMS AND PRIORITY CLAIMS**...........................18
- A. Administrative Claims ...................................................................18
- B. DIP Claims.....................................................................................18
- C. Professional Compensation ...........................................................19
- D. Priority Tax Claims........................................................................20
- E. Statutory Fees................................................................................20

**ARTICLE III. CLASSIFICATION AND TREATMENT OF CLAIMS AND INTERESTS** .................................................................................21
- A. Summary of Classification.............................................................21
- B. Treatment of Claims and Interests ................................................22
- C. Special Provision Governing Unimpaired Claims .........................25
- D. Confirmation Pursuant to Sections 1129(a)(10) and 1129(b) of the Bankruptcy Code..........................................................................25
- E. Controversy Concerning Impairment ............................................25
- F. Elimination of Vacant Classes .......................................................25
- G. Voting Classes; Presumed Acceptance by Non-Voting Classes.........................25
- H. Presumed Acceptance and Rejection of the Plan...........................25
- I. Intercompany Interests ..................................................................26
- J. Subordinated Claims......................................................................26

**ARTICLE IV. MEANS FOR IMPLEMENTATION OF THE PLAN**....................................26
- A. General Settlement of Claims ........................................................26
- B. Restructuring Transactions ...........................................................26
- C. Sources of Consideration for Plan Distributions ...........................27
- D. Sale Transaction.............................................................................27
- E. Internal Corporate Reorganization................................................27
- F. Issuance of New Term Loan Debt and New Tax Credit Debt ...............................28
- G. Establishment of the Litigation Trust ...........................................29
- H. Corporate Existence.......................................................................31
- I. Vesting of Assets in the Reorganized Debtors ..............................31
- J. Release of Liens..............................................................................31
- K. Preservation of Causes of Action...................................................32
- L. Cancellation of Notes, Instruments, Certificates, and Other Documents .............33
- M. Corporate Action............................................................................33
- N. Effectuating Documents; Further Transactions .............................33

i

## TABLE OF CONTENTS

O.  Exemption from Certain Taxes and Fees ................................................................34
P.  Director and Officer Liability Insurance ...............................................................34
Q.  Closing the Chapter 11 Cases ...............................................................................34

**ARTICLE V. TREATMENT OF EXECUTORY CONTRACTS AND UNEXPIRED
LEASES ...........................................................................................................35**
A.  Assumption and Rejection of Executory Contracts and Unexpired Leases ..........35
B.  Claims Based on Rejection of Executory Contracts or Unexpired Leases ............35
C.  Cure of Defaults for Assumed Executory Contracts and Unexpired Leases ........36
D.  Preexisting Obligations to the Debtors Under Executory Contracts and
Unexpired Leases ..................................................................................................37
E.  Sale Transaction Documents; Assumed Contracts ...............................................37
F.  Modifications, Amendments, Supplements, Restatements, or Other
Agreements ............................................................................................................38
G.  Reservation of Rights ............................................................................................38
H.  Nonoccurrence of Effective Date .........................................................................38

**ARTICLE VI. PROVISIONS GOVERNING DISTRIBUTIONS ............................................38**
A.  Timing and Calculation of Amounts to Be Distributed ........................................38
B.  Distributions by the Litigation Trust ....................................................................39
C.  Distributions on Account of Claims Allowed After the Effective Date ...............39
D.  Delivery of Distributions and Undeliverable or Unclaimed Distributions ...........40
E.  Compliance with Tax Requirements ......................................................................42
F.  Allocations ............................................................................................................42
G.  No Postpetition Interest on Claims .......................................................................42
H.  Setoffs and Recoupment .......................................................................................43
I.  Claims Paid or Payable by Third Parties ..............................................................43
J.  Distributions on Account of Subordinated Claims ...............................................44

**ARTICLE VII. PROCEDURES FOR RESOLVING CONTINGENT,
UNLIQUIDATED, AND DISPUTED CLAIMS ............................................44**
A.  Allowance of Claims .............................................................................................44
B.  Claims and Interests Administration Responsibilities ..........................................44
C.  Estimation of Claims .............................................................................................45
D.  Adjustment to Claims Without Objection .............................................................45
E.  Time to File Objections to Claims ........................................................................45
F.  Disallowance of Claims .........................................................................................45
G.  Amendments to Claims ..........................................................................................46
H.  No Distributions Pending Allowance ....................................................................46
I.  Distributions After Allowance ..............................................................................46
J.  Single Satisfaction of Claims ................................................................................46

**ARTICLE VIII. SETTLEMENT, RELEASE, INJUNCTION, AND RELATED
PROVISIONS ..................................................................................................47**
A.  Settlement, Compromise, and Release of Claims and Interests ............................47
B.  **Debtor Release** ......................................................................................................47

## TABLE OF CONTENTS

C.    **Third Party Release** ...................................................................................49
D.    **Exculpation** ...............................................................................................50
E.    **Injunction** .................................................................................................50
F.    Recoupment ..........................................................................................51
G.    Reimbursement of Contribution ...........................................................51
H.    Special Provision Governing Fee Claims and Final Fee Applications ..................51

**ARTICLE IX. CONDITIONS PRECEDENT TO CONFIRMATION AND
CONSUMMATION OF THE PLAN** ...........................................................**51**
A.    Conditions Precedent to the Confirmation.............................................51
B.    Conditions Precedent to the Effective Date ..........................................52
C.    Waiver of Conditions.............................................................................53
D.    Substantial Consummation ....................................................................54
E.    Effect of Non-Occurrence of Conditions to the Effective Date............................54

**ARTICLE X. MODIFICATION, REVOCATION, OR WITHDRAWAL OF THE
PLAN**...............................................................................................................**54**
A.    Modification and Amendments...............................................................54
B.    Effect of Confirmation on Modifications ..............................................54
C.    Revocation or Withdrawal of the Plan ..................................................55

**ARTICLE XI. RETENTION OF JURISDICTION** ...................................................**55**

**ARTICLE XII. MISCELLANEOUS PROVISIONS** .............................................**57**
A.    Immediate Binding Effect......................................................................57
B.    Additional Documents ...........................................................................57
C.    Reservation of Rights.............................................................................57
D.    Successors and Assigns..........................................................................58
E.    Service of Documents ............................................................................58
F.    Term of Injunctions or Stays.................................................................59
G.    Entire Agreement ..................................................................................59
H.    Exhibits .................................................................................................59
I.    Nonseverability of Plan Provisions........................................................59
J.    Waiver or Estoppel ...............................................................................60
K.    Enforcement of the Confirmation Order................................................60
L.    Votes Solicited in Good Faith................................................................60

## INTRODUCTION

Furie Operating Alaska, LLC and its debtor affiliates, as debtors and debtors in possession in the above-captioned chapter 11 cases propose this joint plan pursuant to chapter 11 of the Bankruptcy Code (together with the documents comprising the Plan Supplement, the "*Plan*").[2] The chapter 11 cases have been consolidated for procedural purposes only and are being jointly administered pursuant to an order of the Bankruptcy Court.  This Plan constitutes a separate chapter 11 plan for each Debtor and, unless otherwise set forth herein, the classification and treatment of Claims and Interests apply to each individual Debtor.  Capitalized terms used and not otherwise defined shall have the meanings ascribed to such terms in **Article I.A** hereof.  Holders of Claims and Interests should refer to the Disclosure Statement for a discussion of the Debtors' history, businesses, assets, results of operations, and historical financial information, as well as a summary and description of the Plan.  Each Debtor is a proponent of the Plan within the meaning of section 1129 of the Bankruptcy Code.

ALL HOLDERS OF CLAIMS AND INTERESTS, TO THE EXTENT APPLICABLE, ARE ENCOURAGED TO READ THE PLAN AND THE DISCLOSURE STATEMENT IN THEIR ENTIRETY BEFORE VOTING TO ACCEPT OR REJECT THE PLAN.

## ARTICLE I.
## DEFINED TERMS, RULES OF INTERPRETATION,
## COMPUTATION OF TIME, AND GOVERNING LAW

A.    *Defined Terms*

As used in this Plan, capitalized terms have the meanings set forth below.

1.    "*Accrued Professional Compensation*" means, at any given moment, all Claims for accrued fees and expenses (including success fees when earned in accordance with any applicable agreements approved by the Bankruptcy Court) for services rendered by a Professional through and including the Effective Date, to the extent such fees and expenses have not been previously paid pursuant to the Interim Compensation Order or any other order of the Bankruptcy Court and regardless of whether a fee application has been Filed for such fees and expenses.  To the extent the Bankruptcy Court denies or reduces by a Final Order any amount of a Professional's fees or expenses, then the amount by which such fees or expenses are reduced or denied shall reduce the applicable Allowed Fee Claims.

2.    "*Adequate Protection Claims*" means any Claim for adequate protection, as such term is used in section 361 of the Bankruptcy Code, that the Prepetition Term Loan Administrative Agent, Term Loan Lenders, DIP Agent, or DIP Lenders may have, as set forth under the DIP Order.

3.    "*Administrative Claim*" means a Claim for costs and expenses of administration of the Debtors' Estates pursuant to sections 503(b) of the Bankruptcy Code and entitled to priority

---

[2]    The Plan remains subject to further review, comment, and revision by all parties in all respects.  The Plan has not been approved by the Debtors' lenders in its current form.

pursuant to sections 507(a)(2), 507(b), or 1114(e)(2) of the Bankruptcy Code, including, without limitation:  (a) the actual and necessary costs and expenses incurred after the Petition Date and through the Effective Date of preserving the Estates and operating the businesses of the Debtors; (b) Allowed Fee Claims; (c) Allowed DIP Claims; and (d) Allowed Adequate Protection Claims; *provided* that, notwithstanding anything to the contrary in this provision or the Plan, Allowed Fee Claims and DIP Claims shall be treated as provided, respectively in **Article II.B** and **Article II.C** below.

4.      "*Administrative Claims Bar Date*" means the deadline for Filing requests for payment of Administrative Claims, which shall be the first Business Day that is 30 days following the Effective Date.

5.      "*Administrative Claims Objection Bar Date*" means the first Business Day that is 90 days following the Effective Date, except as specifically set forth in the Plan or a Final Order, including any order establishing a Claims Bar Date; *provided* that the Administrative Claims Objection Bar Date may be extended by order of the Bankruptcy Court.

6.      "*Affiliate*" shall have the meaning set forth in section 101(2) of the Bankruptcy Code.

7.      "*Allowed*" means with respect to any Claim, except as otherwise provided in the Plan: (a) a Claim that is evidenced by a Proof of Claim Filed by the Claims Bar Date (or for which Claim under the Plan, the Bankruptcy Code, or a Final Order of the Bankruptcy Court a Proof of Claim is not or shall not be required to be Filed); (b) a Claim that is listed in the Schedules as not contingent, not unliquidated, and not disputed, and for which no Proof of Claim, as applicable, has been timely Filed; or (c) a Claim Allowed pursuant to the Plan or a Final Order of the Bankruptcy Court; *provided* that with respect to a Claim described in clauses (a) and (b) above, such Claim shall be considered Allowed only if and to the extent that with respect to such Claim no objection to the allowance thereof has been interposed within the applicable period of time fixed by the Plan, the Bankruptcy Code, the Bankruptcy Rules, or the Bankruptcy Court, or such an objection is so interposed and the Claim, as applicable, shall have been Allowed by a Final Order.  Any Claim that has been or is hereafter listed in the Schedules as contingent, unliquidated, or disputed, and for which no Proof of Claim is or has been timely Filed, is not considered Allowed and shall be expunged without further action by the Debtors and without further notice to any party or action, approval, or order of the Bankruptcy Court.

8.      "*Assumed Contracts and Leases List*" means the list of those Executory Contracts and Unexpired Leases to be assumed and/or assigned (as specified on such list) by one or more of the Debtors or the Reorganized Debtors (as specified on such list) pursuant to the Plan and the Sale Transaction Documents, as the same may be amended, modified, or supplemented from time to time by the Debtors or the Reorganized Debtors, as applicable, subject to the consent of the Prepetition Term Loan Administrative Agent, and in accordance with the Plan and the Sale Transaction Documents, which list will be included in the Plan Supplement.

9.      "*Avoidance Actions*" means any and all actual or potential avoidance, recovery, subordination, or other Causes of Action or remedies that may be brought by or on behalf of the Debtors or their Estates or other authorized parties in interest under the Bankruptcy Code or

applicable non-bankruptcy law, including Causes of Action or remedies under sections 502, 510, 542, 544, 545, 547–553, and 724(a) of the Bankruptcy Code or under other similar or related local, state, federal, foreign, or other applicable non-bankruptcy statutes and common law, including fraudulent transfer laws.

10.     "*Bankruptcy Code*" means title 11 of the United States Code, as amended and in effect during the pendency of the Chapter 11 Cases.

11.     "*Bankruptcy Court*" means the United States Bankruptcy Court for the District of Delaware having jurisdiction over the Chapter 11 Cases, and, to the extent of the withdrawal of any reference under 28 U.S.C. § 157 and/or the General Order of the District Court pursuant to section 151 of title 28 of the United States Code, the United States District Court for the District of Delaware.

12.     "*Bankruptcy Rules*" means the Federal Rules of Bankruptcy Procedure, as applicable to the Chapter 11 Cases, promulgated under section 2075 of the Judicial Code and the general, local, and chambers rules of the Bankruptcy Court.

13.     "*Business Day*" means any day, other than a Saturday, Sunday, or "legal holiday" (as defined in Bankruptcy Rule 9006(a)).

14.     "*Cash*" means the legal tender of the United States of America or the equivalent thereof.

15.     "*Causes of Action*" means any Claim, cause of action (including Avoidance Actions), controversy, right of setoff, cross claim, third-party claim, counterclaim, or recoupment and any claim on contracts or for breaches of duties imposed by law or in equity, demand, right, action, Lien, indemnity, interest, guaranty, suit, obligation, liability, debt, damage, remedy, judgment, account, defense, offset, power, privilege, license, or franchise of any kind or character whatsoever, known or unknown, foreseen or unforeseen, existing or hereinafter arising, fixed or contingent, matured or unmatured, suspected or unsuspected, liquidated or unliquidated, disputed or undisputed, secured or unsecured, assertable directly or derivatively, whether arising before, on, or after the Petition Date, in contract or in tort, at law or in equity, or pursuant to any other theory of law or otherwise.

16.     "*Chapter 11 Cases*" means the jointly administered chapter 11 cases of the Debtors pending before the Bankruptcy Court under the lead case of *Furie Operating Alaska, LLC, et al.*, Case No. 19-11781 (LSS) (Bankr. D. Del.).

17.     "*Claim*" shall have the meaning set forth in section 101(5) of the Bankruptcy Code.

18.     "*Claims Bar Date*" means the date by which holders of prepetition Claims (other than Governmental Units) must File Proofs of Claim, as established by an order of the Bankruptcy Court, including, without limitation, by that certain *Order (I) Establishing Deadlines for Filing Proofs of Claim; (II) Approving Procedures for Filing Proofs of Claim; And (III) Approving the Form, Manner, and Sufficiency of Providing Notice Thereof* [Docket No. 258].

19.     "*Claims Objection Deadline*" means, except as otherwise provided in an order of the Bankruptcy Court, for each Claim, the later of (a) 180 days after the Effective Date and (b) such other period of limitation as may be specifically fixed by an order of the Bankruptcy Court for objecting to such Claims, as the same may be modified or extended from time to time by the Bankruptcy Court or on motion of a party in interest approved by the Bankruptcy Court.

20.     "*Claims Register*" means the official register of Claims maintained by the Notice and Claims Agent.

21.     "*Class*" means a category of holders of Claims or Interests as set forth in **Article III** hereof pursuant to section 1122(a) of the Bankruptcy Code.

22.     "*Confirmation*" means the entry of the Confirmation Order on the docket of the Chapter 11 Cases.

23.     "*Confirmation Date*" means the date upon which the Bankruptcy Court enters the Confirmation Order on the docket of the Chapter 11 Cases, within the meaning of Bankruptcy Rules 5003 and 9021.

24.     "*Confirmation Hearing*" means the hearing held by the Bankruptcy Court to consider Confirmation of the Plan pursuant to section 1129 of the Bankruptcy Code.

25.     "*Confirmation Order*" means the order confirming the Plan pursuant to section 1129 of the Bankruptcy Code.

26.     "*Consummation*" means the occurrence of the Effective Date.

27.     "*Cornucopia*" means Cornucopia Oil & Gas Company, LLC, a Delaware limited liability company.

28.     "*Corsair*" means Corsair Oil & Gas LLC, a Delaware limited liability company.

29.     "*Cure Claim*" means all amounts (or such lesser amount as may be agreed upon by the parties under an Executory Contract or Unexpired Lease) required to cure any monetary defaults and other obligations required to cure any non-monetary defaults under any Executory Contract or Unexpired Lease that is to be assumed or assumed and assigned by the Debtors pursuant to sections 365 or 1123 of the Bankruptcy Code; *provided* that the definition of "*Cure Claim*" shall not include any amount or other obligation required to cure any default that is not required to be cured pursuant to section 365(b)(2) of the Bankruptcy Code.

30.     "*D&O Liability Insurance Policies*" means all insurance policies (including any runoff or "tail" policy) for directors', managers', officers', members', and trustees' liability maintained by any of the Debtors or any other Entity for the benefit of the Debtors' directors, managers, officers, members, and trustees, and including all agreements, documents, or instruments relating thereto.

31.     "*Debtors*" means, collectively:  Furie; Cornucopia; and Corsair, the debtors and debtors in possession in the Chapter 11 Cases.

32.     "*DIP Agent*" means Energy Capital Partners Mezzanine Opportunities Fund A, LP, in its capacity as collateral agent and administrative agent under or in connection with the DIP Credit Agreement, and any successor thereto.

33.     "*DIP Claims*" means any Claim held by the DIP Agent or the DIP Lenders arising under, in connection with, or related to the DIP Documents, including any and all DIP Obligations (as defined in the DIP Credit Agreement), including all principal, accrued and unpaid interest, fees, and expenses arising under the DIP Documents, in each case as authorized and approved by the DIP Order.

34.     "*DIP Credit Agreement*" means that certain Debtor-in-Possession Credit Agreement, dated August 14, 2019, as amended, modified, or supplemented from time to time in accordance with the terms therein, by and between the Debtors, the DIP Lenders, and the DIP Agent.

35.     "*DIP Documents*" means, collectively, the DIP Credit Agreement, the DIP Order, the New Side Letter, and all related agreements, documents, and instruments executed in connection with the DIP Credit Agreement and authorized or approved by the DIP Order, each as amended, modified, or supplemented from time to time in accordance with the terms therein.

36.     "*DIP Facility*" has the meaning set forth in the DIP Order.

37.     "*DIP Lenders*" the lenders party to the DIP Credit Agreement.

38.     "*DIP Order*" means the *Interim Order (I) Authorizing the Debtors to (A) Obtain Postpetition Financing on a Super-Priority, Senior Secured Basis, (B) Use Cash Collateral, (II) Granting Adequate Protection to Prepetition Lenders, (III) Modifying the Automatic Stay, and (IV) Scheduling a Final Hearing* entered by the Bankruptcy Court on August 14, 2019 [Docket No. 62] and the *Final Order (I) Authorizing the Debtors to (A) Obtain Postpetition Financing on a Super-Priority, Senior Secured Basis, (B) Use Cash Collateral, (II) Granting Adequate Protection to Prepetition Lenders, and (III) Modifying the Automatic Stay* entered by the Bankruptcy Court on September 26, 2019 [Docket No. 186].

39.     "*Disallowed*" means, with respect to any Claim, a Claim or any portion thereof that (a) has been disallowed by a Final Order, (b) is set forth on the applicable Schedule or Schedules as zero or as contingent, disputed, or unliquidated and as to which no Proof of Claim or request for payment of an Administrative Claim has been timely Filed or deemed timely Filed with the Bankruptcy Court pursuant to either the Bankruptcy Code or any Final Order of the Bankruptcy Court or otherwise deemed timely Filed under applicable law or this Plan, (c) is not set forth on the applicable Schedule or Schedules and as to which no Proof of Claim or request for payment of an Administrative Claim has been timely Filed or deemed timely Filed with the Court pursuant to either the Bankruptcy Code or any Final Order of the Bankruptcy Court or otherwise deemed timely Filed under applicable law or this Plan, (d) has been waived or withdrawn by agreement of the applicable Debtor and the holder thereof, or (e) has been waived or withdrawn by the holder thereof.

40.     "*Disclosure Statement*" means the *Disclosure Statement for the Debtors' Joint Plan of Reorganization Under Chapter 11 of the Bankruptcy Code*, dated as of December [__], 2019,

as may be amended, modified, or supplemented from time to time, including all exhibits and schedules thereto and references therein that relate to the Plan, that is prepared and distributed in accordance with the Bankruptcy Code, the Bankruptcy Rules, and any other applicable law.

41.    "*Disputed*" means a Claim that is not yet Allowed or Disallowed.

42.    "*Distribution Record Date*" means the date for determining which holders of Claims or Interests are eligible to receive distributions hereunder and shall be the Confirmation Date or such other date as designated in a Final Order of the Bankruptcy Court; *provided* that the distribution record date for (a) the Tax Credit Claims shall be a date agreed upon by the Debtors, counsel to the Tax Credit Administrative Agent, and the Tax Credit Administrative Agent and (b) the Term Loan Claims shall be a date agreed upon by the Debtors, counsel to the Term Loan Lenders, and the Prepetition Term Loan Administrative Agent.

43.    "*ECP Lenders*" means Energy Capital Partners Mezzanine Opportunities Fund A, LP, Energy Capital Partners Mezzanine Opportunities Fund, LP, Energy Capital Partners Mezzanine Opportunities Fund B, LP, Energy Capital Partners Mezzanine (Alaska Midstream Co-Invest), LP, and Energy Capital Partners Mezzanine (Alaska Midstream Co-Invest) II, LP.

44.    "*Effective Date*" means the date that is the first Business Day after the Confirmation Date on which (a) no stay of the Confirmation Order is in effect; (b) all conditions precedent specified in **Article IX** have been satisfied or waived (in accordance with **Article IX.C**); and (c) the Plan is declared effective.

45.    "*Entity*" shall have the meaning set forth in section 101(15) of the Bankruptcy Code.

46.    "*Estate*" means, as to each Debtor, the estate created for the Debtor in its Chapter 11 Case pursuant to section 541 of the Bankruptcy Code.

47.    "*Exculpated Parties*" means, collectively, and in each case in its capacity as such: (a) each of the Debtors; (b) each of the Reorganized Debtors; (c) the DIP Agent; (d) the DIP Lenders; (e) the Prepetition Agents; (f) the Prepetition Lenders; (g) the Litigation Trust; (h) the Purchaser; and (i) with respect to each of the foregoing in clauses (a) through (h), such Entity and its current and former Affiliates, and such Entities' and their current and former Affiliates' current and former directors, managers, officers, principals, equity holders (regardless of whether such interests are held directly or indirectly), predecessors, participants, successors and assigns, subsidiaries, Affiliates, and managed accounts or funds, and each of their respective current and former equity holders, officers, directors, managers, principals, shareholders, members, management companies, fund advisors, employees, agents, advisory board members, financial advisors, partners, attorneys, accountants, investment bankers, consultants, representatives, and other professionals, in each case in their capacity as such.  Notwithstanding anything to the contrary in this provision or the Plan, Exculpated Parties shall not include any Non-Exculpated Party.

48.    "*Executory Contract*" means a contract to which one or more of the Debtors is a party that is subject to assumption, assumption and assignment, or rejection under sections 365 or 1123 of the Bankruptcy Code.

49.     "*Federal Judgment Rate*" means the federal judgment rate in effect as of the Petition Date, compounded annually.

50.     "*Fee Claim*" means a Claim for Accrued Professional Compensation.

51.     "*File*," "*Filed*," or "*Filing*" means file, filed, or filing in the Chapter 11 Cases with the Bankruptcy Court or, with respect to the filing of a Proof of Claim or Proof of Interest, the Notice and Claims Agent.

52.     "*Final Order*" means, as applicable, an order or judgment of the Bankruptcy Court or other court of competent jurisdiction with respect to the relevant subject matter, which has not been reversed, stayed, modified, or amended, and as to which the time to appeal or seek certiorari has expired and no appeal or petition for certiorari has been timely taken, or as to which any appeal that has been taken or any petition for certiorari that has been or may be Filed has been resolved by the highest court to which the order or judgment was appealed or from which certiorari was sought; *provided* that the possibility that a motion under Rule 60 of the Federal Rules of Civil Procedure, or any analogous rule under the Bankruptcy Rules, may be Filed relating to such order, shall not cause an order not to be a Final Order.

53.     "*FIRPTA Amount*" means the amount, if any, required to be withheld under the Foreign Investment in Real Property Tax Act of 1980 in connection with the Sale Transaction; *provided* that for purposes of this definition the "FIRPTA Amount" shall not exceed $2,250,001.50.

54.     "*Furie*" means Furie Operating Alaska, LLC, a Delaware limited liability company.

55.     "*General Unsecured Claim*" means any Claim against the Debtors, including any Claim on account of liabilities arising under the Jones Act (including pursuant that certain *Settlement Agreement and Mutual Release of Claims* dated as of February 3, 2017 by and between Furie, the United States Department of Homeland Security, the Secretary of Homeland Security, Jeh Johnson, in his official capacity, the U.S. Customs and Border Protection, and Commission Gil Kerlikowski, in his official capacity entered into with respect to any such asserted liabilities), and any Claim related to that certain action styled as *Shelf Drilling Offshore Resources Limited II v. Cornucopia Oil & Gas Company LLC, Furie Operating Alaska, LLC, Corsair Oil & Gas LLC, and Energy Capital Partners Mezzanine Opportunities Fund, LP*, Adv. Pro. No. 19-90009-GS, currently pending in the United States Bankruptcy Court for the District of Alaska that is not otherwise paid in full during the Chapter 11 Cases pursuant to an order of the Bankruptcy Court and is not:  (a) an Administrative Claim; (b) a Priority Tax Claim; (c) an Other Priority Claim; (d) an Other Secured Claim; (e) a Tax Credit Claim; (f) a Term Loan Claim; or (g) an Intercompany Claim.

56. "*Governmental Bar Date*" means the date established by the Bankruptcy Court by which Proofs of Claim of Governmental Units must be Filed pursuant to that certain *Order (I) Establishing Deadlines for Filing Proofs of Claim; (II) Approving Procedures for Filing Proofs of Claim; And (III) Approving the Form, Manner, and Sufficiency of Providing Notice Thereof* [Docket No. 258].

57.     "*Governmental Unit*" shall have the meaning set forth in section 101(27) of the Bankruptcy Code.

58.     "*Impaired*" means, with respect to a Class of Claims or Interests, a Class of Claims or Interests that is not Unimpaired.

59.     "*Intercompany Claim*" means any Claim against a Debtor held by another Debtor.

60.     "*Intercompany Interest*" means any Interest in one Debtor held by another Debtor.

61.     "*Intercreditor Agreement*" means that certain Intercreditor Agreement, dated as of July 30, 2015, by and among the Tax Credit Administrative Agent and the Prepetition Term Loan Administrative Agent, as amended, restated, or otherwise supplemented from time to time.

62.     "*Interest*" means any equity security as such term is defined in section 101(16) of the Bankruptcy Code, including all issued, unissued, authorized, or outstanding shares of capital stock and any other common stock, preferred stock, limited liability company interests, and any other equity, ownership, or profit interests of an Entity, including all options, warrants, rights, stock appreciation rights, phantom stock rights, restricted stock units, redemption rights, repurchase rights, convertible, exercisable, or exchangeable securities, or other agreements, arrangements, or commitments of any character relating to, or whose value is related to, any such interest or other ownership interest in an Entity, whether or not arising under or in connection with an employment agreement and whether or not certificated, transferable, preferred, common, voting, or denominated "stock" or a similar security, including any Claim subject to subordination under section 510(b) of the Bankruptcy Code arising therefrom.

63.     "*Interim Compensation Order*" means that certain order entered by the Bankruptcy Court establishing procedures for the compensation of Professionals.

64.     "*Internal Corporate Reorganization*" shall mean the internal corporate reorganization to be implemented by the Debtors on or before the Effective Date, as described in **Article IV.E** and the Restructuring Transactions Memorandum.

65.     "*Jones Act*" means, collectively, the U.S. citizenship and cabotage laws principally contained in 46 U.S.C. § 50501(a), (b), and (d) and 46 U.S.C. Chapters 121 and 551 and any successor statutes thereto, together with the rules and regulations promulgated thereunder by the U.S. Coast Guard and the U.S. Maritime Administration and their practices enforcing, administering, and interpreting such laws, statutes, rules, and regulations, in each case as amended or supplemented from time to time, relating to the ownership and operation of U.S.-flag vessels in the U.S. coastwise trade.

66.     "*Judicial Code*" means title 28 of the United States Code, 28 U.S.C. §§ 1–4001.

67.     "*Lien*" shall have the meaning set forth in section 101(37) of the Bankruptcy Code.

68.     "*Litigation Trust*" means the trust established for the benefit of the Litigation Trust Beneficiaries on the Effective Date in accordance with the Plan and pursuant to the Litigation Trust Agreement which shall hold the Litigation Trust Assets and distributions made by the Litigation

Trust to holders of Allowed DIP Claims or holders of Term Loan Claims shall be made in accordance with the "Priority Waterfall" set forth in Section M(vi) of the DIP Order, after taking into account any other distributions already made to such holders prior thereto.

69.     "*Litigation Trust Agreement*" means the litigation trust agreement, as may be amended, supplemented, restated, or otherwise modified from time to time in accordance with the terms thereof, subject to the consent of the Prepetition Term Loan Administrative Agent, that, among other things, establishes the Litigation Trust and describes the powers, duties, and responsibilities of the Litigation Trustee, and otherwise in form and substance reasonably acceptable to the Prepetition Term Loan Administrative Agent and the Debtors.

70.     "*Litigation Trust Assets*" means (I) on the Effective Date, all assets of the Estates vested in the Litigation Trust, which shall include (a) all certificates of deposits, cash on hand, cash in banks or investment accounts, and restricted cash held by the Debtors on the Effective Date after the Professional Fee Escrow has been funded in full in cash, (b) any and all Claims and Causes of Action, including those listed on the Schedule of Retained Causes of Action, whether known or unknown, including any derivative claims, asserted on behalf of the Debtors, that the Debtors, the Reorganized Debtors, or their Estates would have been legally entitled to assert in their own right (whether individually or collectively) or on behalf of the holder of any Claim against, or Interest in, a Debtor or other Entity, against: (i) Deutsche Oel & Gas S.A.; (ii) Deutsche Oel & Gas AG; (iii) Brutus AG; (iv) Kay Rieck; (v) Theodor van Stephoudt; (vi) Reed Smith LLP; (vii) NSAI; (viii) SPRI; (ix) Bruce Ganer; (x) Tony Nunes; (xi) Bruce D. Webb; (xii) Tom Hord; (xiii) any Entity identified in a Plan Supplement as Non-Released Party; and (xiv) with respect to each of the foregoing Entities in clauses (i) through (xiii), such Entity and its current and former Affiliates, and such Affiliates' current and former Affiliates, directors, managers, officers, principals, equity holders, (regardless of whether such interests are held directly or indirectly), predecessors, participants, successors and assigns, subsidiaries, Affiliates, and managed accounts or funds, and each of their respective current and former equity holders, officers, directors, managers, principals, shareholders, members, management companies, fund advisors, employees, agents, advisory board members, financial advisors, partners, attorneys, accountants, investment bankers, consultants, representatives, and other professionals, in each case in their capacity as such; *provided that*, notwithstanding anything to the contrary in this provision or the Plan, the Litigation Trust Assets shall not include Claims or Causes of Action against the Released Parties, and (c) any and all Other Excluded Assets and (II) after the Effective Date, all assets held from time to time by the Litigation Trust.

71.     "*Litigation Trust Beneficiaries*" means the interest holders of Litigation Trust in accordance with the Plan and the Litigation Trust Agreement.

72.     "*Litigation Trust Documents*" means, collectively, the Litigation Trust Agreement and all related agreements, documents, and instruments executed in connection with the Litigation Trust Agreement, each as amended, modified, or supplemented from time to time in accordance with the terms therein, which shall be in form and substance reasonably acceptable to the Prepetition Term Loan Administrative Agent and the Debtors.

73.     "*Litigation Trustee*" means the trustee for the Litigation Trust, as appointed in accordance with the Litigation Trust Agreement.

74.     "*Melody Lenders*" means Melody Special Situations Offshore Credit Mini-Master Fund, L.P., Melody Capital Partners Offshore Credit Mini-Master Fund, L.P., Melody Capital Partners Onshore Credit Fund, L.P., and Melody Capital Partners FDB Credit Fund LLC.

75.     "*New Side Letter*" means that certain Side Letter Agreement Re Rights and Designations of Equityholders of Holdco; Enforcement of Remedies dated August 8, 2019 by and among the ECP Lenders and Melody Lenders.

76.     "*New Tax Credit Agreement*" means the new loan facility agreement, certain terms and conditions of which are set forth in the New Tax Credit Side Letter's description of the New Tax Credit Facility (as defined in the New Tax Credit Side Letter), and which shall otherwise by in form and substance acceptable to the Prepetition Term Loan Administrative Agent, the Tax Credit Administrative Agent, and the Debtors.

77.     "*New Tax Credit Debt*" means the new debt to be issued pursuant to the Plan and the New Tax Credit Documents.

78.     "*New Tax Credit Documents*" means, collectively, the New Tax Credit Agreement, and all other agreements, documents, and instruments evidencing or securing the New Tax Credit Debt, to be delivered or entered into in connection therewith (including any guarantee agreements, pledge and collateral agreements, intercreditor agreements, subordination agreements, fee letters, and other security documents), which shall be in form and substance reasonably acceptable to the Prepetition Term Loan Administrative Agent, the Tax Credit Administrative Agent, and the Debtors.

79.     "*New Tax Credit Side Letter*" means that certain Side Letter Agreement Re Terms of Post-Emergence Credit Facilities and Collateral Sharing Provisions, dated December 1, 2019, by and among ING Capital LLC and Energy Capital Partners Mezzanine Opportunities Fund A, LP, attached hereto as **Exhibit B**.

80.     "*New Term Loan Agreement*" means the new loan facility agreement, certain terms and conditions of which are set forth in the New Tax Credit Side Letter's description of the New Term Loan Facility (as defined in the New Tax Credit Side Letter), and which shall otherwise by in form and substance acceptable to the Prepetition Term Loan Administrative Agent, the Tax Credit Administrative Agent, and the Debtors.

81.     "*New Term Loan Debt*" means the new debt to be issued pursuant to the Plan and the New Term Loan Documents.

82.     "*New Term Loan Documents*" means, collectively, the New Term Loan Agreement, and all other agreements, documents, and instruments evidencing or securing the New Term Loan Debt, to be delivered or entered into in connection therewith (including any guarantee agreements, pledge and collateral agreements, intercreditor agreements, subordination agreements, fee letters, and other security documents), which shall be in form and substance reasonably acceptable to the Prepetition Term Loan Administrative Agent, the Tax Credit Administrative Agent, and the Debtors.  The New Term Loan Documents shall reflect the "Revised Waterfall" for distribution of the proceeds of the Tax Credit Priority Collateral as specified in the New Tax Credit Side Letter, as such waterfall shall be further modified under the Sale Transaction Documents.

83.    "*Non-Exculpated Parties*" means the following:  (i) Deutsche Oel & Gas S.A.; (ii) Deutsche Oel & Gas AG; (iii) Brutus AG; (iv) Kay Rieck; (v) Theodor van Stephoudt; (vi) Reed Smith LLP; (vii) NSAI; (viii) SPRI; (ix) Bruce Ganer; (x) Tony Nunes; (xi) Bruce D. Webb; (xii) Tom Hord; (xiii) any other Entity identified in a Plan Supplement as a Non-Exculpated Party; and (xiv) with respect to each of the foregoing Entities in clauses (i) through (xiii), such Entity and its current and former Affiliates (except for the Debtors), and such Affiliates' current and former Affiliates, directors, managers, officers, principals, equity holders, (regardless of whether such interests are held directly or indirectly), predecessors, participants, successors and assigns, subsidiaries (except for the Debtors), Affiliates (except for the Debtors), and managed accounts or funds, and each of their respective current and former equity holders, officers, directors, managers, principals, shareholders, members, management companies, fund advisors, employees, agents, advisory board members, financial advisors, partners, attorneys, accountants, investment bankers, consultants, representatives, and other professionals, in each case in their capacity as such.

84.    "*Non-Released Parties*" means the following:  (i) Deutsche Oel & Gas S.A.; (ii) Deutsche Oel & Gas AG; (iii) Brutus AG; (iv) Kay Rieck; (v) Theodor van Stephoudt; (vi) Reed Smith LLP; (vii) NSAI; (viii) SPRI; (ix) Bruce Ganer; (x) Tony Nunes; (xi) Bruce D. Webb; (xii) Tom Hord; (xiii) any other Entity identified in a Plan Supplement as a Non-Released Party; and (xiv) with respect to each of the foregoing Entities in clauses (i) through (xiii), such Entity and its current and former Affiliates (except for the Debtors), and such Affiliates' current and former Affiliates, directors, managers, officers, principals, equity holders, (regardless of whether such interests are held directly or indirectly), predecessors, participants, successors and assigns, subsidiaries (except for the Debtors), Affiliates (except for the Debtors), and managed accounts or funds, and each of their respective current and former equity holders, officers, directors, managers, principals, shareholders, members, management companies, fund advisors, employees, agents, advisory board members, financial advisors, partners, attorneys, accountants, investment bankers, consultants, representatives, and other professionals, in each case in their capacity as such.

85.    "*Notice and Claims Agent*" means Prime Clerk LLC.

86.    "*NSAI*" means Netherland Sewell & Associates, Inc.

87.    "*Order*" means an order of the Bankruptcy Court.

88.    "*Ordinary Course Professionals*" shall mean the various attorneys, accountants, auditors, and other professionals the Debtors employ in the ordinary course of their business and retained by the Debtors pursuant to the Ordinary Course Professionals Order.

89.    "*Ordinary Course Professionals Order*" shall mean that certain *Order Authorizing Debtors to Employ and Pay Professionals Utilized in the Ordinary Course of Business* [Docket No. 250] entered by the Bankruptcy Court establishing the procedures for retaining the Ordinary Course Professionals.

90.    "*Other Excluded Asset*" means:  (i) copies of all corporate, partnership, limited liability company, financial, income and franchise tax and legal records of the Debtors; (ii) all books, records, documents, instruments, and files that relate to the Litigation Trust Assets; and (iii) other such assets identified, with the consent of the Purchaser and Term Loan Administrative

Agent, as an Other Excluded Asset in a Plan Supplement, with all such assets described in clauses (i) through (iii) to be transferred by the Debtors to the Litigation Trust (and thereby constitute a Litigation Trust Asset) on the Effective Date.

91. "*Other Priority Claim*" means any allowed Claim against any Debtor entitled to priority in right of payment under section 507(a) of the Bankruptcy Code, other than: (a) an Administrative Claim; or (b) a Priority Tax Claim, to the extent such Claim has not already been paid during the Chapter 11 Cases.

92. "*Other Secured Claim*" means any Secured Claim against any Debtor that is not a DIP Claim, a Tax Credit Claim, or a Term Loan Claim.

93. "*Petition Date*" means August 9, 2019, the date on which the Debtors commenced the Chapter 11 Cases.

94. "*Plan*" shall have the meaning set forth in the preamble.

95. "*Plan Supplement*" means the compilation of documents and forms of documents, agreements, schedules, and exhibits to the Plan, to be Filed at least seven (7) calendar days prior to the Voting Deadline or such later date as may be approved by the Bankruptcy Court, as it may thereafter be amended, supplemented, or otherwise modified from time to time in accordance with the terms of the Plan, the Bankruptcy Code, the Bankruptcy Rules, and applicable law, which shall be in form and substance acceptable to the Prepetition Term Loan Administrative Agent and the Debtors.

96. "*Prepetition Agents*" shall mean Energy Capital Partners Mezzanine Opportunities Fund A, LP, as collateral agent and as administrative agent under the Term Loan Credit Agreement, and ING Capital, LLC as collateral agent and as administrative agent under the Prepetition Tax Credit Documents.

97. "*Prepetition Lenders*" shall mean the lenders under the Term Loan Credit Agreement and the Prepetition Tax Credit Documents.

98. "*Prepetition Obligors*" means Cornucopia and Furie.

99. "*Prepetition Tax Credit Agreement*" means that certain Credit Agreement, dated July 30, 2015, as amended, modified, or supplemented from time to time in accordance with the terms therein, by and between the Prepetition Obligors, the Tax Credit Lenders, and the Tax Credit Administrative Agent.

100. "*Prepetition Tax Credit Documents*" means, collectively, the Prepetition Tax Credit Agreement and all related agreements, documents, and instruments executed in connection with the Prepetition Tax Credit Agreement, each as amended, modified, or supplemented from time to time in accordance with the terms therein.

101. "*Prepetition Term Loan Administrative Agent*" means Energy Capital Partners Mezzanine Opportunities Fund A, LP, in its capacity as collateral agent and administrative agent under or in connection with the Term Loan Credit Agreement, and any successor thereto.

102.    "*Priority Claims*" means Priority Tax Claims and Other Priority Claims.

103.    "*Priority Tax Claim*" means any Claim of a Governmental Unit of the kind specified in section 507(a)(8) of the Bankruptcy Code.

104.    "*Pro Rata*" means the proportion that an Allowed Claim or Allowed Interest in a particular Class bears to the aggregate amount of Allowed Claims or Allowed Interests in that respective Class, or the proportion that Allowed Claims or Allowed Interests in a particular Class bear to the aggregate amount of Allowed Claims or Allowed Interests in a particular Class and other Classes entitled to share in the same recovery as such Allowed Claim or Allowed interests under the Plan.

105.    "*Professional*" means an Entity retained pursuant to a Bankruptcy Court order in accordance with sections 327 or 1103 of the Bankruptcy Code and to be compensated for services rendered before or on the Confirmation Date, pursuant to sections 327, 328, 329, 330, 331, or 363(b) of the Bankruptcy Code.

106.    "*Professional Fee Escrow*" [means an escrow account established and funded in accordance with **Article II.C** and the DIP Order and Approved Budget (as defined in the DIP Order) in all respects].

107.    "*Professional Fee Escrow Amount*" [means the aggregate unpaid Fee Claims through the Effective Date as estimated in accordance with **Article II.C** and the DIP Order and Approved Budget (as defined in the DIP Order).]

108.    "*Proof of Claim*" means a proof of Claim Filed against any of the Debtors in the Chapter 11 Cases.

109.    "*Proof of Interest*" means a proof of Interest Filed against any of the Debtors in the Chapter 11 Cases.

110.    "*Purchaser*" means HEX L.L.C., an Alaska limited liability company.

111.    "*Reinstated*" or "*Reinstatement*" means, with respect to Claims and Interests, the treatment provided for in section 1124 of the Bankruptcy Code.

112.    "*Released Party*" means, collectively, and in each case in its capacity as such: (a) each of the Debtors; (b) each of the Reorganized Debtors; (c) the DIP Agent; (d) the DIP Lenders; (e) the Prepetition Agents; (f) the Prepetition Lenders; (g) the Litigation Trust; (h) the Purchaser; and (i) with respect to each of the foregoing Entities in clauses (a) through (h), such Entity and its current and former Affiliates, and such Entities' and their current and former Affiliates' current and former directors, managers, officers, principals, equity holders, (regardless of whether such interests are held directly or indirectly, predecessors, participants, successors and assigns, subsidiaries, Affiliates, and managed accounts or funds, and each of their respective current and former equity holders, officers, directors, managers, principals, shareholders, members, management companies, fund advisors, employees, agents, advisory board members, financial advisors, partners, attorneys, accountants, investment bankers, consultants, representatives, and other professionals, in each case in their capacity as such; *provided* that any

holder of a Claim or Interest (other than the Litigation Trust) that is not a Releasing Party shall not be a "Released Party." Notwithstanding anything to the contrary in this provision or the Plan, Released Parties shall not include any Non-Released Party.

113.  "*Releasing Party*" means, collectively:  (a) each of the Debtors; (b) each of the Reorganized Debtors; (c) the DIP Agent; (d) the DIP Lenders; (e) the Prepetition Agents; (f) the Prepetition Lenders; (g) all holders of Claims or Interests; (h) the Purchaser; and (i) with respect to each of the foregoing Entities in clauses (a) through (h), such Entity and its current and former Affiliates , and such Entities' and their current and former Affiliates' current and former directors, managers, officers, principals, equity holders, (regardless of whether such interests are held directly or indirectly), predecessors, participants, successors and assigns, subsidiaries, Affiliates, and managed accounts or funds, and each of their respective current and former equity holders, officers, directors, managers, principals, shareholders, members, management companies, fund advisors, employees, agents, advisory board members, financial advisors, partners, attorneys, accountants, investment bankers, consultants, representatives, and other professionals, each in their capacity as such collectively; *provided* that any Entity that opts out of or otherwise objects to the releases in the Plan shall not be a "Releasing Party."

114.  "*Reorganized Cornucopia*" means Cornucopia, or any successor or assign thereto, by merger, amalgamation, arrangement, continuance, restructuring, conversion, spinoff, or otherwise, on and after the Effective Date.

115.  "*Reorganized Corsair*" means Corsair, or any successor or assign thereto, by merger, amalgamation, arrangement, continuance, restructuring, conversion, spinoff, or otherwise, on and after the Effective Date.

116.  "*Reorganized Debtors*" means, collectively:  Reorganized Furie; Reorganized Cornucopia; and Reorganized Corsair.

117.  "*Reorganized Furie*" means Furie, or any successor or assign thereto, by merger, amalgamation, arrangement, continuance, restructuring, conversion, spinoff, or otherwise, on and after the Effective Date.

118.  "*Restructuring Transactions*" shall have the meaning set forth in **Article IV.B**.

119.  "*Restructuring Transactions Memorandum*" means that certain memorandum describing the steps to be carried out to effectuate the Restructuring Transactions, the form of which shall be included in the Plan Supplement.

120.  "*Sale Agreement*" means that certain [Securities Purchase Agreement, dated as of December [__], 2019, between Purchaser, Cornucopia, and Corsair], together with all exhibits, schedules, and attachments thereto, as the same may be amended, supplemented, or modified in accordance with the terms therein, subject to the consent of the Prepetition Term Loan Administrative Agent, attached hereto as **Exhibit A**.

121.  "*Sale Transaction*" means, collectively, the sale of all of Reorganized Cornucopia's and Reorganized Corsair's equity interests pursuant to the Plan and the Sale Transaction Documents.

122.    "*Sale Transaction Documents*" means, collectively, the Sale Agreement and all related agreements, documents, and instruments executed in connection with the Sale Agreement, each as amended, modified, or supplemented from time to time in accordance with the terms therein, subject to the consent of the Prepetition Term Loan Administrative Agent.

123.    "*Sale Transaction Proceeds*" means any Cash, Cash equivalents, or securities that are proceeds from the Sale Transaction.

124.    "*Schedule of Retained Causes of Action*" means the schedule of certain Causes of Action of the Debtors that are not released, waived, or transferred pursuant to the Plan, as the same may be amended, modified, or supplemented from time to time by the Debtors, which shall be included in the Plan Supplement.

125.    "*Schedules*" means, collectively, the schedules of assets and liabilities, schedules of Executory Contracts and Unexpired Leases, and statements of financial affairs Filed by the Debtors pursuant to section 521 of the Bankruptcy Code and in substantial accordance with the Official Bankruptcy Forms, as the same may have been amended, modified, or supplemented from time to time.

126.    "*Secured*" means, when referring to a Claim, a Claim:  (a) secured by a Lien on property in which the applicable Estate has an interest, which Lien is valid, perfected, and enforceable pursuant to applicable law or by reason of a Bankruptcy Court order, or that is subject to valid right of setoff pursuant to section 553 of the Bankruptcy Code, to the extent of the value of the creditor's interest in such Estate's interest in such property or to the extent of the amount subject to setoff, as applicable, as determined pursuant to section 506(a) of the Bankruptcy Code; or (b) otherwise Allowed pursuant to the Plan as a Secured Claim.

127.    "*Secured Tax Claims*" means any Secured Claim against any Debtor that, absent its secured status, would be entitled to priority in right of payment under section 507(a)(8) of the Bankruptcy Code (determined irrespective of time limitations), including any related Secured Claim for penalties.

128.    "*Security*" shall have the meaning set forth in section 101(49) of the Bankruptcy Code.

129.    "*SPRI*" means Sierra Pine Resources International.

130.    "*Tax Credit Administrative Agent*" means ING Capital, LLC, in its capacity as collateral agent and administrative agent under or in connection with the Prepetition Tax Credit Agreement, and any successor thereto.

131.    "*Tax Credit Claims*" means any Claim held by the Tax Credit Administrative Agent or the Tax Credit Lenders arising under, in connection with, or related to the Prepetition Tax Credit Documents, including any and all obligations set forth in the Prepetition Tax Credit Agreement, including all principal, accrued and unpaid interest, fees, and expenses arising under the Prepetition Tax Credit Documents.

132.    "*Tax Credit Lenders*" the lenders party to the Prepetition Tax Credit Agreement.

133.    "*Tax Credit Priority Collateral*" has the meaning ascribed to such term in the Intercreditor Agreement.

134.    "*Term Loan Claims*" means any Claim held by the Prepetition Term Loan Administrative Agent or the Term Loan Lenders arising under, in connection with, or related to the Term Loan Documents, including any and all obligations set forth in the Term Loan Credit Agreement, including all principal, accrued and unpaid interest, fees, and expenses arising under the Term Loan Documents.

135.    "*Term Loan Credit Agreement*" means that certain Second Amended and Restated Credit Agreement, dated April 12, 2018, as amended, modified, or supplemented from time to time, by and between the Prepetition Obligors, the Term Loan Lenders, and the Prepetition Term Loan Administrative Agent.

136.    "*Term Loan Documents*" means the Term Loan Credit Agreement, the DIP Order, and all related agreements, documents, and instruments executed in connection with Term Loan Credit Agreement, each as amended, modified, or supplemented from time to time in accordance with the terms therein.

137.    "*Term Loan Lenders*" the lenders party to the Term Loan Credit Agreement.

138.    "*U.S. Trustee*" means the Office of the United States Trustee for the District of Delaware.

139.    "*Unexpired Lease*" means a lease of nonresidential real property to which one or more of the Debtors is a party that is subject to assumption, assumption and assignment, or rejection under sections 365 or 1123 of the Bankruptcy Code.

140.    "*Unimpaired*" means, with respect to a Class of Claims or Interests, a Claim or an Interest that is unimpaired within the meaning of section 1124 of the Bankruptcy Code.

141.    "*Voting Deadline*" means [                    , 2020] at 4:00 p.m., prevailing Eastern Time.

B.    *Rules of Interpretation*

For purposes herein:  (1) in the appropriate context, each term, whether stated in the singular or the plural, shall include both the singular and the plural, and pronouns stated in the masculine, feminine, or neuter gender shall include the masculine, feminine, and the neuter gender; (2) except as otherwise provided, any reference herein to a contract, lease, instrument, release, indenture, or other agreement or document being in a particular form or on particular terms and conditions means that the referenced document shall be substantially in that form or substantially on those terms and conditions; (3) except as otherwise provided, any reference herein to an existing document or exhibit having been Filed or to be Filed shall mean that document or exhibit, as it may thereafter be amended, restated, supplemented, or otherwise modified in accordance with the terms of the Plan; (4) unless otherwise specified, all references herein to "Articles" are references to Articles of the Plan; (5) unless otherwise stated, the words "herein," "hereof," and ''hereto'' refer to the Plan in its entirety rather than to a particular portion of the Plan; (6) captions and headings to Articles are inserted for convenience of reference only and are not intended to be a

part of or to affect the interpretation hereof; (7) the words "include" and "including," and variations thereof, shall not be deemed to be terms of limitation, and shall be deemed to be followed by the words "without limitation;" (8) the rules of construction set forth in section 102 of the Bankruptcy Code shall apply; (9) any term used in capitalized form herein that is not otherwise defined but that is used in the Bankruptcy Code or the Bankruptcy Rules shall have the meaning assigned to that term in the Bankruptcy Code or the Bankruptcy Rules, as the case may be; (10) any docket number references in the Plan shall refer to the docket number of any document Filed with the Bankruptcy Court in the Chapter 11 Cases; (11) references to "Proofs of Claim," "Holders of Claims," "Disputed Claims," and the like shall include "Proofs of Interest," "Holders of Interests," "Disputed Interests," and the like, as applicable; (12) references to "shareholders," "directors," and/or "officers" shall also include "members" and/or "managers," as applicable, as such terms are defined under the applicable state limited liability company laws; (13) any effectuating provisions may be interpreted by the Debtors in such a manner that is consistent with the overall purpose and intent of the Plan all without further notice to or action, Order, or approval of the Bankruptcy Court or any other Entity; (14) except as otherwise provided, any references to the Effective Date shall mean the Effective Date or as soon as reasonably practicable thereafter; and (15) references to docket numbers are references to the docket numbers of documents Filed in the Chapter 11 Cases under the Bankruptcy Court's CM/ECF system.

C.      *Computation of Time*

Unless otherwise specifically stated herein, the provisions of Bankruptcy Rule 9006(a) shall apply in computing any period of time prescribed or allowed herein.  If the date on which a transaction may occur pursuant to the Plan shall occur on a day that is not a Business Day, then such transaction shall instead occur on the next succeeding Business Day.

D.      *Governing Law*

Unless a rule of law or procedure is supplied by federal law (including the Bankruptcy Code and Bankruptcy Rules) or unless otherwise specifically stated herein, the laws of the State of Delaware, without giving effect to the principles of conflict of laws, shall govern the rights, obligations, construction, and implementation of the Plan, any agreements, documents, instruments, or contracts executed or entered into in connection with the Plan (except as otherwise set forth in those agreements, in which case the governing law of such agreement shall control).

E.      *Reference to Monetary Figures*

All references in the Plan to monetary figures shall refer to currency of the United States of America, unless otherwise expressly provided herein.

F.      *Controlling Document*

In the event of an inconsistency between the Plan and the Disclosure Statement, the terms of the Plan shall control in all respects.  Except as otherwise expressly provided herein, in the event of an inconsistency between the Plan and the Plan Supplement, the terms of the Plan shall control. In the event of an inconsistency between the Confirmation Order and the Plan, the Confirmation Order shall control.

17

**ARTICLE II.**
**ADMINISTRATIVE CLAIMS AND PRIORITY CLAIMS**

In accordance with section 1123(a)(1) of the Bankruptcy Code, Administrative Claims (including DIP Claims and Fee Claims) and Priority Tax Claims have not been classified and, thus, are excluded from the Classes of Claims and Interests set forth in **Article III** hereof.

A.    *Administrative Claims*

Except with respect to Administrative Claims that are DIP Claims or Fee Claims, and except to the extent that an Administrative Claim has already been paid during the Chapter 11 Cases or a holder of an Allowed Administrative Claim and the applicable Debtor(s) agree to less favorable treatment, each holder of an Allowed Administrative Claim shall be paid in full in Cash on the unpaid portion of its Allowed Administrative Claim on the latest of:  (a) on or as soon as reasonably practicable after the Effective Date if such Administrative Claim is Allowed as of the Effective Date; (b) on or as soon as reasonably practicable after the date such Administrative Claim is Allowed; and (c) the date such Allowed Administrative Claim becomes due and payable, or as soon thereafter as is reasonably practicable; *provided* that Allowed Administrative Claims that arise in the ordinary course of the Debtors' businesses, including Claims held by Governmental Units for taxes incurred by the Debtors following the Petition Date (in accordance with section 503(b)(1)(D) of the Bankruptcy Code), shall be paid in the ordinary course of business in accordance with applicable law and the terms and subject to the conditions of any agreements governing, instruments evidencing, or other documents relating to such transactions. Notwithstanding the foregoing, no request for payment of an Administrative Claim need be Filed with respect to an Administrative Claim previously Allowed by Final Order.

Except as otherwise provided in this **Article II.A** (and except with respect to Administrative Claims that are (1) Fee Claims, (2) DIP Claims, and (3) fees payable pursuant to 28 U.S.C. § 1930), requests for payment of Allowed Administrative Claims must be Filed and served on the Debtors pursuant to the procedures specified in the Confirmation Order and the notice of entry of the Confirmation Order no later than the Administrative Claims Bar Date. Holders of Administrative Claims that are required to, but do not, File and serve a request for payment of such Administrative Claims by such date shall be forever barred, estopped, and enjoined from asserting such Administrative Claims against the Debtors or their property and such Administrative Claims shall be deemed discharged as of the Effective Date.  Objections to such requests, if any, must be Filed and served on the requesting party by the Administrative Claims Objection Bar Date.

B.    *DIP Claims*

The DIP Claims shall be deemed Allowed as of the Effective Date in an amount not less than (1) the principal amount outstanding under the DIP Credit Agreement on such date, (2) all accrued and unpaid interest thereon to the date of payment, and (3) all accrued and unpaid fees, expenses, premiums, noncontingent indemnification, and other obligations of any kind, in each case as and to the extent payable under the DIP Documents. The Allowed DIP Claims shall not be subject to any avoidance, reductions, set off, offset, recharacterization, subordination (whether

18

equitable, contractual, or otherwise), counterclaims, cross-claims, defenses, disallowance, impairment, or any other challenges under any applicable law or regulation by any Entity.

In full and final satisfaction, settlement, release, and discharge of, and in exchange for each Allowed DIP Claim, each holder of an Allowed DIP Claim shall be repaid in full, in Cash (including directly from the Sale Transaction Proceeds) in accordance with the "Priority Waterfall" set forth in Section M(vi) of the DIP Order; *provided* that to the extent the FIRPTA Amount is greater than zero, then holders of an amount of Allowed DIP Claims equal to the FIRPTA Amount shall receive a portion of the New Term Loan Debt, in principal amount equal to the FIRPTA Amount, in full and final satisfaction, settlement, release, and discharge of, and in exchange for such Allowed DIP Claims. The New Term Loan Debt shall be secured by the Tax Credit Priority Collateral in accordance with the waterfall described in **Article IV.F**. As used in this paragraph "repaid in full in Cash" shall mean the indefeasible payment in full in Cash of all DIP Claims, the cancelation, backing, or cash collateralization of letters of credit under the DIP Facility in accordance with the terms of the DIP Documents, and the termination of the DIP Agent's and DIP Lenders' obligation to extend credit under the DIP Facility.

C.    *Professional Compensation*

1.    Professional Fee Escrow

As soon as reasonably practicable after the Confirmation Date and no later than the Effective Date, the Debtors shall establish the Professional Fee Escrow with Cash equal to the Professional Fee Escrow Amount. The Professional Fee Escrow shall be funded no later than the Effective Date and maintained in trust for the Professionals and shall not be considered property of the Debtors' Estates; *provided* that the holders of Term Loan Claims shall have a reversionary interest in the excess amount, if any, remaining in the Professional Fee Escrow Account when all such Allowed amounts owing to Professionals have been paid in full, and any remaining amount in the Professional Fee Escrow Account shall promptly be distributed to holders of Term Loan Claims without any further action or order of the Bankruptcy Court.

[Notwithstanding anything to the contrary herein, the Professional Fee Escrow shall be established and funded subject to the DIP Order and Approved Budget (as defined in the DIP Order) in all respects.]

2.    Final Fee Applications and Payment of Fee Claims

All final requests for payment of Fee Claims incurred during the period from the Petition Date through the Confirmation Date, shall be Filed no later than the first Business Day that is 30 days following the Effective Date. All Entities' respective rights (if any) to object to allowance or payment of all or any portion of any Fee Claims shall be preserved. After notice and a hearing in accordance with the procedures established by the Bankruptcy Code, Bankruptcy Rules and prior Bankruptcy Court orders, the Allowed amounts of such Fee Claims shall be determined by the Bankruptcy Court. The amount of Fee Claims owing to the Professionals shall be paid in Cash to such Professionals from funds held in the Professional Fee Escrow when such Claims are Allowed by a Final Order. To the extent that funds held in the Professional Fee Escrow are unable to satisfy the Allowed amount of Fee Claims owing to the Professionals, such Professionals shall have an

Allowed Administrative Claim for any such deficiency, which shall be satisfied in accordance with **Article II.A** of the Plan.

3.    Estimation of Fees and Expenses

To receive payment for unbilled fees and expenses incurred through the Effective Date, the Professionals shall provide a reasonable good faith estimate of their Fee Claims before and as of the Effective Date and shall deliver such estimate to the Debtors and the DIP Agent no later than ten (10) calendar days prior to the Effective Date; *provided* that such estimate shall not be considered an admission with respect to the fees and expenses of such Professional and such Professionals are not bound to any extent by the estimates.  If a Professional does not provide an estimate, the Debtors may reasonably estimate the unbilled fees and expenses of such Professional. The total amount so estimated shall be utilized by the Debtors to determine the Professional Fee Escrow Amount [; *provided* that the Professional Fee Escrow shall be established and funded subject to the DIP Order and Approved Budget (as defined in the DIP Order) in all respects.]

4.    Post-Effective Date Fees and Expenses

Upon the Effective Date, any requirement that Professionals comply with sections 327 through 331 and 1103 of the Bankruptcy Code or the Interim Compensation Order in seeking retention or compensation for services rendered after such date shall terminate, and the Reorganized Debtors and the Litigation Trust may employ and pay any Professional or Ordinary Course Professional in the ordinary course of business without any further notice to or action, order, or approval of the Bankruptcy Court.

D.    *Priority Tax Claims*

Except to the extent that a holder of an Allowed Priority Tax Claim agrees to a less favorable treatment, in full and final satisfaction, settlement, release, and discharge of and in exchange for each Allowed Priority Tax Claim, each holder of such Allowed Priority Tax Claim shall be treated in accordance with the terms set forth in section 1129(a)(9)(C) of the Bankruptcy Code.  In the event an Allowed Priority Tax Claim is also a Secured Tax Claim, such Claim shall, to the extent it is Allowed, be treated as an Other Secured Claim if such Claim is not otherwise paid in full. Notwithstanding anything herein to the contrary, to the extent an Allowed Priority Tax Claim has not been satisfied prior to the Effective Date, no Cash payment shall be made on such Allowed Priority Tax Claim until the Allowed DIP Claims have either been paid in full or received such other treatment as specified in **Article II.B**.

E.    *Statutory Fees*

All fees due and payable pursuant to section 1930 of Title 28 of the U.S. Code prior to the Effective Date shall be paid by the Debtors.  From and after the Effective Date, the Debtors and the Litigation Trust shall be jointly liable for and shall pay the fees assessed against the Estates under 28 U.S.C. § 1930 until the Chapter 11 Cases are converted, dismissed, or closed, whichever occurs first.  In addition, the Debtors and/or the Litigation Trust shall file any pre-confirmation monthly operating reports not Filed as of the Confirmation Hearing, in conformity with the U.S. Trustee guidelines.  The U.S. Trustee shall not be required to file a request for payment of its

quarterly fees, which shall be deemed an Administrative Claim against the Debtors and their Estates.

# ARTICLE III.
## CLASSIFICATION AND TREATMENT OF CLAIMS AND INTERESTS

A.    *Summary of Classification*

      Claims and Interests, except for Administrative Claims, DIP Claims, Fee Claims, and Priority Tax Claims, are classified in the Classes set forth in this **Article III**. A Claim or Interest is classified in a particular Class only to the extent that the Claim or Interest qualifies within the description of that Class and is classified in other Classes to the extent that any portion of the Claim or Interest qualifies within the description of such other Classes. A Claim is also classified in a particular Class for the purpose of receiving distributions pursuant to the Plan only to the extent that such Claim is an Allowed Claim in that Class and has not been paid, released, or otherwise satisfied prior to the Effective Date. In accordance with section 1123(a)(1) of the Bankruptcy Code, Administrative Claims, DIP Claims, Fee Claims, and Priority Tax Claims have not been classified and, thus, are excluded from the Classes of Claims and Interests set forth in this **Article III**.

      1.    <u>Class Identification</u>

      The classification of Claims and Interests against each Debtor (as applicable) pursuant to the Plan is as follows:

| Class | Claim | Status | Voting Rights |
|-------|-------|--------|---------------|
| 1 | Other Priority Claims | Unimpaired | Not Entitled to Vote (Presumed to Accept) |
| 2 | Other Secured Claims | Unimpaired | Not Entitled to Vote (Presumed to Accept) |
| 3 | Tax Credit Claims | Impaired | Entitled to Vote |
| 4 | Term Loan Claims | Impaired | Entitled to Vote |
| 5 | General Unsecured Claims | Impaired | Not Entitled to Vote (Deemed to Reject) |
| 6 | Intercompany Claims | Unimpaired/Impaired | Not Entitled to Vote (Presumed to Accept/Deemed to Reject) |
| 7 | Intercompany Interests | Unimpaired/Impaired | Not Entitled to Vote (Presumed to Accept/Deemed to Reject) |
| 8 | Interests in Cornucopia and Corsair | Impaired | Not Entitled to Vote (Deemed to Reject) |

B.    *Treatment of Claims and Interests*

1.    Class 1 – Other Priority Claims

    a.    *Classification*:  Class 1 consists of all Allowed Other Priority Claims.

    b.    *Treatment*:  Except to the extent that a holder of an Allowed Other Priority Claim agrees to a less favorable treatment, in full and final satisfaction, compromise, settlement, release, and discharge of and in exchange for each Allowed Other Priority Claim, each such holder shall receive (i) payment in full, in Cash, of the unpaid portion of its Allowed Other Priority Claim (A) on the Effective Date or (B) as soon thereafter as reasonably practicable (or, if payment is not then due, shall be paid in accordance with its terms) or (ii) such other treatment, the terms of which may be agreed to by the holder of an Allowed Other Priority Claim and the Debtors, subject to the consent of the Prepetition Term Loan Administrative Agent or otherwise permitted by section 1129(a)(4) of the Bankruptcy Code. Notwithstanding anything herein to the contrary, to the extent an Allowed Other Priority Claim has not been satisfied prior to the Effective Date, no Cash payment shall be made on such Allowed Other Priority Claim until the DIP Claims have either been paid in full or received such other treatment as specified in **Article II.B**.

    c.    *Voting*:  Class 1 is Unimpaired under the Plan.  Each holder of an Allowed Other Priority Claim will be conclusively presumed to have accepted the Plan pursuant to section 1126(f) of the Bankruptcy Code.  Therefore, each holder of an Allowed Other Priority Claim will not be entitled to vote to accept or reject the Plan.

2.    Class 2 – Other Secured Claims

    a.    *Classification*:  Class 2 consists of all Allowed Other Secured Claims.

    b.    *Treatment*:  On the Effective Date, except to the extent that a holder of an Allowed Other Secured Claim agrees to a less favorable treatment, in full and final satisfaction, compromise, settlement, release, and discharge of and in exchange for each Allowed Other Secured Claim, each such holder shall receive either (i) payment in full in Cash of the unpaid portion of its Allowed Other Secured Claim on the Effective Date or as soon thereafter as reasonably practicable (or if payment is not then due, shall be paid in accordance with its terms), (ii) reinstatement of such holder's Allowed Other Secured Claim pursuant to section 1124 of the Bankruptcy Code, (iii) delivery of the collateral securing such holder's Allowed Other Secured claim and payment of any interest required under section 506(b) of the bankruptcy code, or (iv) such other treatment necessary to satisfy section 1129 of the Bankruptcy Code.

      c.      *Voting*: Class 2 is Unimpaired under the Plan. Each holder of an Allowed Other Secured Claim will be conclusively presumed to have accepted the Plan pursuant to section 1126(f) of the Bankruptcy Code. Therefore, each holder of an Allowed Other Secured Claim will not be entitled to vote to accept or reject the Plan.

3.      Class 3 – Tax Credit Claims

      a.      *Classification*: Class 3 consists of all Allowed Tax Credit Claims.

      b.      *Treatment*: On the Effective Date, except to the extent that a holder of an Allowed Tax Credit Claim agrees to a less favorable treatment, in full and final satisfaction, compromise, settlement, release, and discharge of and in exchange for each Allowed Tax Credit Claim, each such holder shall receive its Pro Rata share of the New Tax Credit Debt.

      c.      *Voting*: Class 3 is Impaired under the Plan. Each holder of an Allowed Tax Credit Claim will be entitled to vote to accept or reject the Plan.

4.      Class 4 – Term Loan Claims

      a.      *Allowance*: All Term Loan Claims shall be deemed Allowed as of the Effective Date in an amount not less than $[_____].

      b.      *Classification*: Class 4 consists of all Allowed Term Loan Claims.

      c.      *Treatment*: On the Effective Date, or as soon thereafter as reasonably practicable, except to the extent that a holder of an Allowed Term Loan Claim agrees to less favorable treatment, in full and final satisfaction, compromise, settlement, release, and discharge of and in exchange for each Allowed Term Loan Claim, each holder of an Allowed Term Loan Claim shall receive (i) its share of a portion of the New Term Loan Debt, in principal amount equal to $[_____], which shall be distributed to holders of Allowed Term Loan Claims in accordance with the "Priority Waterfall" set forth in Section M(vi) of the DIP Order and (ii) its Pro Rata share of 100 percent of the Interests in the Litigation Trust.

      d.      *Voting*: Class 4 is Impaired under the Plan. Each holder of a Term Loan Claim will be entitled to vote to accept or reject the Plan.

5.      Class 5 – General Unsecured Claims

      a.      *Classification*: Class 5 consists of all Allowed General Unsecured Claims.

      b.      *Treatment*: On the Effective Date, each General Unsecured Claim shall be cancelled without any distribution and such holders of General Unsecured Claims will receive no recovery.

c. *Voting*: Class 5 is Impaired under the Plan. Each holder of a General Unsecured Claim is deemed to have rejected the Plan pursuant to section 1126(g) of the Bankruptcy Code. Holders of General Unsecured Claims are not entitled to vote to accept or reject the Plan.

6. Class 6 – Intercompany Claims

a. *Classification*: Class 6 consists of all Intercompany Claims.

b. *Treatment*: Allowed Intercompany Claims shall be, at the option of the Reorganized Debtors, subject to the consent of the Prepetition Term Loan Administrative Agent, either (i) Reinstated as of the Effective Date or (ii) cancelled, and no distribution shall be made on account of such Claims.

c. *Voting*: Holders of Intercompany Claims are either Unimpaired, and such holders of Intercompany Claims conclusively are presumed to have accepted the Plan pursuant to section 1126(f) of the Bankruptcy Code, or Impaired, and such holders of Intercompany Claims are deemed to have rejected the Plan pursuant to section 1126(g) of the Bankruptcy Code. Therefore, each holder of an Intercompany Claim will not be entitled to vote to accept or reject the Plan.

7. Class 7 – Intercompany Interests

a. *Classification*: Class 7 consists of all Intercompany Interests.

b. *Treatment*:  Intercompany Interests shall be, at the option of the Reorganized Debtors, subject to the consent of the Prepetition Term Loan Administrative Agent, either: (i) Reinstated as of the Effective Date or (ii) cancelled, and no distribution shall be made on account of such Interests.

c. *Voting*: Holders of Intercompany Interests are either Unimpaired, and such holders of Intercompany Interests conclusively are presumed to have accepted the Plan pursuant to section 1126(f) of the Bankruptcy Code, or Impaired, and such holders of Intercompany Interests are deemed to have rejected the Plan pursuant to section 1126(g) of the Bankruptcy Code. Therefore, each holder of an Intercompany Interest will not be entitled to vote to accept or reject the Plan.

8. Class 8 – Interests in Cornucopia and Corsair

a. *Classification*: Class 8 consists of all Interests in Cornucopia and Corsair.

b. *Treatment*: On the Effective Date, existing Interests in Cornucopia and Corsair shall be deemed canceled and extinguished, and shall be of no further force and effect, whether surrendered for cancelation or otherwise, and there shall be no distribution to holders of Interests in Cornucopia and Corsair on account of such Interests.

      c.      *Voting*: Class 8 is Impaired under the Plan. Each holder of an Interest in Cornucopia and Corsair will be conclusively deemed to have rejected the Plan pursuant to section 1126(g) of the Bankruptcy Code. Therefore, each holder of an Interest in Cornucopia and Corsair will not be entitled to vote to accept or reject the Plan.

**C.**     *Special Provision Governing Unimpaired Claims*

Nothing under the Plan shall affect the Debtors' rights in respect of any Unimpaired Claims, including all rights in respect of legal and equitable defenses to or setoffs or recoupment against any such Unimpaired Claims.

**D.**     *Confirmation Pursuant to Sections 1129(a)(10) and 1129(b) of the Bankruptcy Code*

The Debtors reserve the right to seek Confirmation of the Plan pursuant to section 1129(b) of the Bankruptcy Code with respect to any rejecting Class of Claims or Interests.

**E.**     *Controversy Concerning Impairment*

If a controversy arises as to whether any Claim or Interests, or any Class of Claims or Interests, are Impaired, the Bankruptcy Court shall, after notice and a hearing, determine such controversy on or before the Confirmation Date.

**F.**     *Elimination of Vacant Classes*

Any Class of Claims or Interests that does not have a holder of an Allowed Claim or Allowed Interest or a Claim or Interest temporarily Allowed by the Bankruptcy Court as of the date of the Confirmation Hearing shall be deemed eliminated from the Plan for purposes of voting to accept or reject the Plan and for purposes of determining acceptance or rejection of the Plan by such Class pursuant to section 1129(a)(8) of the Bankruptcy Code.

**G.**     *Voting Classes; Presumed Acceptance by Non-Voting Classes*

If a Class contains Claims eligible to vote and no holders of Claims eligible to vote in such Class vote to accept or reject the Plan, the Plan shall be presumed accepted by the holders of such Claims in such Class.

**H.**     *Presumed Acceptance and Rejection of the Plan*

To the extent the Class of Intercompany Interests is cancelled, each holder of an Interest in such Class is deemed to have rejected the Plan pursuant to section 1126(g) of the Bankruptcy Code and is not entitled to vote to accept or reject the Plan. The Class of Intercompany Claims and, to the extent it is Reinstated, the Class of Intercompany Interests, each holder of a Claim or Interest in such Classes is presumed to have accepted the Plan pursuant to section 1126(f) of the Bankruptcy Code and is not entitled to vote to accept or reject the Plan.

I.      *Intercompany Interests*

To the extent Reinstated under the Plan, distributions on account of Intercompany Interests are not being received by holders of such Intercompany Interests on account of their Intercompany Interests but for the purposes of administrative convenience.

J.      *Subordinated Claims*

The allowance, classification, and treatment of all Allowed Claims and Allowed Interests and the respective distributions and treatments under the Plan take into account and conform to the relative priority and rights of the Claims and Interests in each Class in connection with any contractual, legal, and equitable subordination rights relating thereto, whether arising under general principles of equitable subordination, section 510(b) of the Bankruptcy Code, or otherwise, including, without limitation, the Intercreditor Agreement.  Pursuant to section 510 of the Bankruptcy Code, the Debtors reserve the right to re-classify any Allowed Claim or Interest in accordance with any contractual, legal, or equitable subordination relating thereto.

## ARTICLE IV.
## MEANS FOR IMPLEMENTATION OF THE PLAN

A.      *General Settlement of Claims*

As discussed further in the Disclosure Statement and as otherwise provided herein, pursuant to section 1123 of the Bankruptcy Code and Bankruptcy Rule 9019, and in consideration for the classification, distributions, releases, and other benefits provided under the Plan, upon the Effective Date, the provisions of the Plan shall constitute a good-faith compromise and settlement of all Claims, Interests, Causes of Action, and controversies released, settled, compromised, discharged, or otherwise resolved pursuant to the Plan. The Plan shall be deemed a motion to approve the good-faith compromise and settlement of all such Claims, Interests, Causes of Action, and controversies pursuant to Bankruptcy Rule 9019, and the entry of the Confirmation Order shall constitute the Bankruptcy Court's approval of such compromise and settlement under section 1123 of the Bankruptcy Code and Bankruptcy Rule 9019, as well as a finding by the Bankruptcy Court that such settlement and compromise is fair, equitable, reasonable, and in the best interests of the Debtors and their Estates. Distributions made to holders of Allowed Claims in any Class are intended to be final.

B.      *Restructuring Transactions*

On or before the Effective Date, or as soon as reasonably practicable thereafter, the applicable Debtors, Reorganized Debtors, or Litigation Trust may take all actions as may be necessary or appropriate to effect any transaction described in, approved by, contemplated by, or necessary to effectuate the Plan (the "*Restructuring Transactions*"), including those transactions set forth in the Restructuring Transactions Memorandum.   The actions to implement the Restructuring Transactions may include:   (1) the execution and delivery of any appropriate agreements or other documents of merger, consolidation, amalgamation, arrangement, continuance, restructuring, conversion, disposition, transfer, dissolution, liquidation, spinoff, sale, or purchase containing terms that are consistent with the terms of the Plan, and that satisfy the

requirements of applicable law and any other terms to which the applicable Entities may agree; (2) the execution and delivery of appropriate instruments of transfer, assignment, assumption, or delegation of any asset, property, right, liability, debt, or obligation on terms consistent with the terms of the Plan and having other terms for which the applicable parties agree; (3) rejection, assumption, or assumption and assignment, as applicable, of Executory Contracts and Unexpired Leases; (4) the filing of appropriate certificates or articles of incorporation, reincorporation, formation, merger, consolidation, conversion, amalgamation, arrangement, continuance, dissolution, or other organizational documents pursuant to applicable law; (5) subject to the occurrence of the Effective Date, the consummation of the transactions contemplated by the Sale Transaction Documents; (6) implementation of the Internal Corporate Reorganization, the execution and delivery of any documents related thereto, and any filing related thereto; (7) the execution and delivery of the New Term Loan Debt Documents, and any filing related thereto; (8) the execution and delivery of the New Tax Credit Documents, and any filing related thereto; and (9) execution and delivery of the Litigation Trust Documents, and all other actions as may be necessary or appropriate to establish the Litigation Trust pursuant to the Litigation Trust Documents.

C.      *Sources of Consideration for Plan Distributions*

The Debtors' Cash on hand, the Sale Transaction Proceeds, and any other Cash received or generated by the Debtors or the Litigation Trust shall be used to fund the distributions to holders of Allowed Claims against the Debtors in accordance with the treatment of such Claims and the DIP Order and subject to the terms provided herein.

D.      *Sale Transaction*

On the Effective Date, the Debtors shall consummate the Sale Transaction pursuant to the terms of the Sale Transaction Documents, the Plan, and the Confirmation Order.  To the extent provided by **Article II.B**, the Sale Transaction Proceeds shall be directly paid by the Purchaser to the DIP Agent on the Effective Date for the benefit of each holder of an Allowed DIP Claim, which Claims will be repaid in accordance with the "Priority Waterfall" set forth in Section M(vi) of the DIP Order.

E.      *Internal Corporate Reorganization*

On the Effective Date, the Debtors shall implement the Internal Corporate Reorganization in accordance with the Restructuring Transactions Memorandum.  Among other things, the Internal Corporate Reorganization shall include:  (1) the Purchaser or a new limited liability company established by (or on behalf of) the Purchaser (for purposes of this paragraph, either such entity shall be referred to as "*HoldCo*") shall be organized to directly own 100 percent of the new Interests issued by Reorganized Cornucopia, Reorganized Furie, and Reorganized Corsair pursuant to the terms of the Plan and (2) Cornucopia will transfer all of its assets, other than the Tax Credit Priority Collateral and the Litigation Trust Assets, to Furie, and thereafter Reorganized Cornucopia will distribute its equity in Reorganized Furie to HoldCo.  Notwithstanding anything herein to the contrary, this description of the Internal Corporate Reorganization shall be subject in all respects to the Restructuring Transactions Memorandum, and in the event of any inconsistency

between this description and the Restructuring Transactions Memorandum, the Restructuring Transactions Memorandum shall control.

The Confirmation Order shall constitute the Bankruptcy Court's approval of the Internal Corporate Reorganization and all documents and filings related thereto, and the Internal Corporate Reorganization shall be authorized without the need for any further action by holders of any Claims or Interests.

F.    *Issuance of New Term Loan Debt and New Tax Credit Debt*

On the Effective Date, Cornucopia will execute the New Term Loan Documents, pursuant to which Cornucopia will issue the New Term Loan Debt to:  (1) solely in the event that the FIRPTA Amount is greater than zero, to applicable holders of Allowed DIP Claims, in principal amount equal to the FIRPTA Amount, in partial exchange for such holders' respective DIP Claims as set forth in **Article II.B** of the Plan and (2) to holders of Allowed Term Loan Claims, in principal amount equal to $[____], in partial exchange for such holders' respective Allowed Term Loan Claims as set forth in **Article III.B.4**.  The issuance of the New Term Loan Debt is authorized without the need for any further corporate action and without the need for any further action by holders of any Claims or Interests. All holders of Allowed DIP Claims (if applicable) and Allowed Term Loan Claims entitled to distributions of New Term Loan Debt hereunder shall be deemed to be a party to, and bound by, the applicable New Term Loan Documents, regardless of whether such holder has executed a signature page.  On the Effective Date, all of the Liens and security interests to be granted in accordance with the New Term Loan Documents (1) shall be deemed to be granted, (2) shall be legal, binding, and enforceable Liens on, and security interests in, the collateral granted thereunder in accordance with the terms of the New Term Loan Documents, (3) shall be deemed perfected on the Effective Date and (4) shall not be subject to recharacterization or equitable subordination for any purposes whatsoever and shall not constitute preferential transfers or fraudulent conveyances under the Bankruptcy Code or any applicable nonbankruptcy law.

Pursuant to the Sale Transaction Documents, the "Revised Waterfall" for distribution of the proceeds of the Tax Credit Priority Collateral as specified in the New Tax Credit Side Letter, shall be further modified as follows:  (1) the fourth level of such waterfall, providing for proceeds sufficient to pay the New Term Loan Debt in an amount equal to $8 million in the aggregate, shall instead be provided to the Purchaser; *provided* that, solely in the event that the FIRPTA Amount is greater than zero, then such $8 million of proceeds shall first be used to pay in full in Cash the New Term Loan Debt (and such portion of the New Term Loan Debt shall have and shall be deemed to have a Lien on such $8 million of proceeds), with any remainder then being paid to the Purchaser and (2) the portion of the fifth level of such waterfall (providing that the remainder of any proceeds from the Tax Credit Priority Collateral will be shared equally on a 50/50 basis to pay the New Term Loan Debt and the New Tax Credit Debt) that would otherwise be paid on account of the New Term Loan Debt shall instead be provided to the Purchaser.  The New Term Loan Documents will require (1) that any New Term Loan Debt distributed to any holder of an Allowed DIP Claim shall be paid on a "first out" basis before any payment on account of any New Term Loan Debt distributed to any holder of an Allowed Term Loan Claim and (2) to the extent any portion of the Allowed DIP Claims remain outstanding, any further amounts to be paid on account of any New Term Loan Debt distributed to any holder of an Allowed Term Loan Claim shall

instead be paid to holders of such Allowed DIP Claims (in accordance with the "Priority Waterfall" set forth in Section M(vi) of the DIP Order) in exchange for such holders' Allowed DIP Claims.

On the Effective Date, Cornucopia will execute the New Tax Credit Documents, pursuant to which Cornucopia will issue the New Tax Credit Debt to holders of Allowed Tax Credit Claims, in principal amount equal to $[75,000,000], in exchange for such holders' Tax Credit Claims as set forth in **Article III.B.3** of the Plan. The issuance of the New Tax Credit Debt is authorized without the need for any further corporate action and without the need for any further action by holders of any Claims or Interests. All holders of Allowed Tax Credit Claims entitled to distributions of the New Tax Credit Debt hereunder shall be deemed to be a party to, and bound by, the applicable New Tax Credit Documents, regardless of whether such holder has executed a signature page. On the Effective Date, all of the Liens and security interests to be granted in accordance with the New Tax Credit Documents (1) shall be deemed to be granted, (2) shall be legal, binding, and enforceable Liens on, and security interests in, the collateral granted thereunder in accordance with the terms of the New Tax Credit Documents, (3) shall be deemed perfected on the Effective Date and (4) shall not be subject to recharacterization or equitable subordination for any purposes whatsoever and shall not constitute preferential transfers or fraudulent conveyances under the Bankruptcy Code or any applicable nonbankruptcy law.

Subject to the occurrence of the Effective Date, the New Term Loan Documents and New Tax Credit Documents shall constitute legal, valid, and binding obligations of Cornucopia and shall be enforceable in accordance with their respective terms. Each distribution and issuance of the New Term Loan Debt and/or New Tax Credit Debt under the Plan shall be governed by the terms and conditions set forth in the Plan applicable to such distribution or issuance and by the terms and conditions of the instruments evidencing or relating to such distribution or issuance, which terms and conditions shall bind each Entity receiving such distribution or issuance. For the avoidance of doubt, the acceptance of New Term Loan Debt and/or New Tax Credit Debt by any holder of any Claim shall be deemed as such holder's agreement to the New Term Loan Documents and/or New Tax Credit Documents, as each may be amended or modified from time to time following the Effective Date in accordance with its terms.

The Reorganized Debtors and the holders that are granted such Liens and security interests in connection with the New Term Loan Debt and/or the New Tax Credit Debt shall be authorized to make all filings and recordings, and to obtain all governmental approvals and consents necessary to establish and perfect such Liens and security interests under the provisions of the applicable state, federal, or other law that would be applicable in the absence of the Plan and the Confirmation Order (it being understood that perfection shall occur automatically by virtue of entry of the Confirmation Order, and any such filings, recordings, approvals, and consents shall not be required), and the Reorganized Debtors shall thereafter cooperate to make all other filings and recordings that otherwise would be necessary under applicable law to give notice of such Liens and security interests to third parties.

G.    *Establishment of the Litigation Trust*

Notwithstanding anything in this **Article IV.G** to the contrary, the following description, including the description of the Litigation Trust, the Litigation Trust Assets, and the Litigation Trust's rights and powers, shall be subject in all respects to the Litigation Trust Documents, and

in the event of any inconsistency between the following description and the Litigation Trust Documents, the Litigation Trust Documents shall control.

1. <u>Rights and Powers of the Litigation Trust and Litigation Trustee</u>

On or prior to the Effective Date, the Debtors, on behalf of the Litigation Trust Beneficiaries, will execute the Litigation Trust Documents and will take all other actions as may be necessary or appropriate to form and establish the Litigation Trust pursuant to the Litigation Trust Documents.  On the Effective Date, the Prepetition Term Loan Administrative Agent will appoint the Litigation Trustee in accordance with the Litigation Trust Documents and, thereafter, any successor Litigation Trustee shall be appointed and serve in accordance with the Litigation Trust Documents.  The Litigation Trust shall act for the Estates in the same fiduciary capacity as applicable to a board of directors and officers, subject to the provisions hereof.

The Litigation Trustee or any successor thereto will administer the Litigation Trust in accordance with the Plan and the Litigation Trust Documents.  Among other things, the Litigation Trust shall be responsible for:  (a) resolving Disputed Claims; (b) making all distributions to holders of Allowed Claims not otherwise assumed by the Purchaser in accordance with the Plan; (c) pursuing, commencing, litigating, prosecuting, compromising, or otherwise settling any Causes of Action constituting Litigation Trust Assets without supervision or approval by the Bankruptcy Court and free of any restrictions of the Bankruptcy Code or Bankruptcy Rules; (d) filing appropriate tax returns; and (e) administering the Plan in an efficient manner.  The Litigation Trust shall be deemed to be substituted as the party-in-lieu of the Debtors and the Estates in all matters, including (i) motions, contested matters, and adversary proceedings pending in the Bankruptcy Court and (ii) all matters pending in any courts, tribunals, forums, or administrative proceedings outside of the Bankruptcy Court, in each case without the need or requirement for the Litigation Trust to file motions or substitutions of parties or counsel in each such matter.

2. <u>Litigation Trust Assets</u>

On the Effective Date, the Litigation Trust Assets shall automatically vest in the Litigation Trust, and the Debtors shall transfer, and shall be deemed to have transferred, all of their rights, title, and interests in all of the Litigation Trust Assets to the Litigation Trust, in each case, free and clear of all Liens, Claims, charges, encumbrances, and other interests.  The Plan shall be considered a motion pursuant to sections 105, 363, and 365 of the Bankruptcy Code for such relief.  The transfer of the Litigation Trust Assets to the Litigation Trust shall be made for the benefit and on behalf of the Litigation Trust Beneficiaries receiving a distribution from proceeds of the Litigation Trust Assets. The Litigation Trust shall not be deemed a successor in interest of the Debtors for any purpose other than as specifically set forth herein.  In connection with the transfer of the Litigation Trust Assets, any attorney-client privilege, work product privilege, or other privilege or immunity attaching to any documents or communications (whether written or oral) transferred to the Litigation Trust will vest in the Litigation Trust and its representatives, and the Debtors and the Litigation Trust are authorized to take all necessary actions to effectuate the transfer of such privileges to the Litigation Trust.

3.    Fees of the Litigation Trust and Expenses Incurred on or After the Effective Date

The fees and expenses incurred by the Litigation Trust on or after the Effective Date (including taxes) and any reasonable compensation and expense reimbursement Claims (including attorney fees and expenses) made by the Litigation Trust in connection with the Litigation Trust's duties shall be paid on a monthly basis without any further notice to or action, Order, or approval of the Bankruptcy Court, in Cash, if such amounts relate to any actions taken hereunder.

H.    *Corporate Existence*

Except as otherwise provided in the Plan, each Debtor shall continue to exist after the Effective Date as a separate corporate entity, limited liability company, partnership, or other form, as the case may be, with all the powers of a corporation, limited liability company, partnership, or other form, as the case may be, pursuant to the applicable law in the jurisdiction in which each applicable Debtor is incorporated or formed and pursuant to the respective certificate of incorporation and bylaws (or other formation documents) in effect prior to the Effective Date, except to the extent such certificate of incorporation and bylaws (or other formation documents) are amended pursuant to the Plan or otherwise (including as may be specified in the Restructuring Transactions Memorandum), and to the extent such documents are amended, such documents are deemed to be amended pursuant to the Plan and require no further action or approval.

I.    *Vesting of Assets in the Reorganized Debtors*

Except as otherwise provided in the Plan (including, for the avoidance of doubt, the Restructuring Transactions), or in any agreement, instrument, or other document incorporated in the Plan, notwithstanding any prohibition of assignability under applicable non-bankruptcy law and in accordance with section 1141 of the Bankruptcy Code, on the Effective Date, all property in each Debtor's Estate (unless such property constitutes Litigation Trust Assets), all Causes of Action of the Debtors (unless such Causes of Action constitute Litigation Trust Assets or are released or discharged pursuant to the Plan), and any property acquired by any of the Debtors under the Plan (unless such property constitutes Litigation Trust Assets) shall vest in each respective Reorganized Debtor, free and clear of all Liens, Claims, charges, encumbrances, and other interests (except for Liens securing obligations under the New Term Loan Documents, the New Tax Credit Documents, and Liens securing obligations on account of any Other Secured Claims that are Reinstated pursuant to the Plan).  On and after the Effective Date, except as otherwise provided herein, each Reorganized Debtor may operate its business and may use, acquire, or dispose of property and compromise or settle any Claims, Interests, or Causes of Action (unless such Causes of Action constitute Litigation Trust Assets or are released or discharged pursuant to the Plan) without supervision or approval by the Bankruptcy Court and free of any restrictions of the Bankruptcy Code or Bankruptcy Rules.

J.    *Release of Liens*

Except as otherwise provided herein or in any contract, instrument, release, or other agreement or document created pursuant to the Plan, on the Effective Date and concurrently with the applicable distributions made pursuant to the Plan and, in the case of an Allowed Secured Claim, satisfaction in full of the Allowed Secured Claim, all mortgages, deeds of trust, Liens,

pledges, or other security interests against any property of the Estates shall be fully released, settled, and compromised, and the holder of such mortgages, deeds of trust, Liens, pledges, or other security interest shall be authorized to take such actions as may be reasonably requested by the Debtors to evidence such releases.

K.    *Preservation of Causes of Action*

Unless any Cause of Action against an Entity is expressly waived, relinquished, exculpated, released, compromised, or settled in the Plan or a Final Order, in accordance with section 1123(b) of the Bankruptcy Code, the Plan, and the Litigation Trust Documents, the Debtors shall convey to the Litigation Trust on the Effective Date all Causes of Action constituting Litigation Trust Assets and the Reorganized Debtors shall retain any other remaining Causes of Action. The Litigation Trust and the Reorganized Debtors (as applicable) may enforce all rights to pursue, commence, litigate, prosecute, compromise, or otherwise settle, as appropriate, any and all such Causes of Action, whether arising before or after the Petition Date, which shall vest in the Litigation Trust or the Reorganized Debtors (as applicable) pursuant to the terms of the Plan.

The Litigation Trust or the Reorganized Debtors (as applicable) may enforce all rights to pursue, commence, litigate, prosecute, compromise, or settle, as appropriate, any and all such Causes of Action, whether arising before or after the Petition Date, and the Litigation Trust's and the Reorganized Debtors' rights (as applicable) to pursue, commence, litigate, prosecute, compromise, or settle such Causes of Action shall be preserved notwithstanding the occurrence of the Effective Date. **No Entity may rely on the absence of a specific reference in the Plan, the Plan Supplement, or the Disclosure Statement to any Cause of Action against it as any indication that the Debtors, the Litigation Trust, or the Reorganized Debtors will not pursue any and all available Causes of Action against it. The Debtors, the Litigation Trust, and the Reorganized Debtors expressly reserve all rights to pursue, commence, litigate, prosecute, compromise, or settle any and all Causes of Action against any Entity, except as otherwise expressly provided in the Plan.** Unless any Cause of Action against an Entity is expressly waived, relinquished, exculpated, released, compromised, or settled in the Plan or a Final Order, the Litigation Trust and the Reorganized Debtors (as applicable) expressly reserves all Causes of Action for later adjudication, and, therefore, no preclusion doctrine, including the doctrines of res judicata, collateral estoppel, issue preclusion, claim preclusion, estoppel (judicial, equitable or otherwise), or laches, shall apply to such Causes of Action upon, after, or as a consequence of Confirmation or Consummation.

The Litigation Trust and the Reorganized Debtors (as applicable) each reserves and shall retain the foregoing Causes of Action (as applicable) notwithstanding the rejection or repudiation of any Executory Contract or Unexpired Lease during the Chapter 11 Cases or pursuant to the Plan. The Litigation Trust and Reorganized Debtors (as applicable) shall have the exclusive right, authority, and discretion to determine and to initiate, file, prosecute, enforce, abandon, settle, compromise, release, withdraw, or litigate to judgment any such Causes of Action, or to decline to do any of the foregoing, without the consent or approval of any third party or any further notice to or action, order, or approval of the Bankruptcy Court. For the avoidance of doubt, the Litigation Trust's rights, authority, and discretion set forth herein shall be limited to those Causes of Action constituting Litigation Trust Assets and the Reorganized Debtors' rights, authority, and discretion

set forth herein shall be limited to those Causes of Action that do not constitute Litigation Trust Assets.

L.    *Cancellation of Notes, Instruments, Certificates, and Other Documents*

On the Effective Date, except as otherwise specifically provided for in the Plan and, in the case of a Secured Claim, upon satisfaction in full of the portion of the Secured Claim that is Allowed as of the Effective Date: (1) the obligations of any Debtor under any certificate, share, note, bond, indenture, purchase right, or other instrument or document, directly or indirectly evidencing or creating any indebtedness or obligation of or ownership interest, equity, or portfolio interest in the Debtors or any warrants, options, or other securities exercisable or exchangeable for, or convertible into, debt, equity, ownership, or profits interests in the Debtors giving rise to any Claim or Interest shall be cancelled and deemed surrendered as to the Debtors and shall not have any continuing obligations thereunder; and (2) the obligations of the Debtors pursuant, relating, or pertaining to any agreements, indentures, certificates of designation, bylaws, or certificates or articles of incorporation or similar documents governing the shares, certificates, notes, bonds, indenture, purchase rights, options, warrants, or other instruments or documents evidencing or creating any indebtedness or obligation of the Debtors shall be fully released, settled, and compromised.

M.    *Corporate Action*

Upon the Effective Date, by virtue of the solicitation of votes in favor of the Plan and entry of the Confirmation Order, all actions contemplated by the Plan or Plan Supplement (including any action to be undertaken by the Litigation Trust) shall be deemed authorized, approved, and, to the extent taken prior to the Effective Date, ratified without any requirement for further action by holders of Claims or Interests, the Debtors, or any other Entity.  All matters provided for in the Plan or Plan Supplement involving the corporate structure of the Debtors, and any corporate action required by the Debtors in connection therewith, shall be deemed to have occurred and shall be in effect, without any requirement of further action by the Debtors or the Debtors' Estates.

On the Effective Date, the terms of all directors, managers, and officers of all Debtors shall be deemed to have expired, all such directors, managers, and officers shall be released of their duties, and all actions solely in furtherance of the Plan shall be deemed authorized, approved, and, to the extent taken prior to the Effective Date, ratified without any requirement for further action by the Debtors, holders of Claims or Interests, directors, managers, or officers of the Debtors, or any other Entity, including the transfer of assets of the Debtors to the Litigation Trust.  The directors, managers, and officers of the Debtors, as applicable, shall be authorized to execute, deliver, file, or record such contracts, instruments, release, and other agreements or documents and take such other actions as they may deem necessary or appropriate to effectuate and implement the provisions of the Plan.  The authorizations and approvals contemplated by this **Article IV.MArticle IV.M** shall be effective notwithstanding any requirements under non-bankruptcy law.

N.    *Effectuating Documents; Further Transactions*

Prior to the Effective Date, the Debtors are, and on and after the Effective Date, the Litigation Trust, and the officers, members, and Litigation Trustee thereof, are authorized to and

may issue, execute, deliver, file, or record such contracts, securities, instruments, releases, and other agreements or documents and take such actions as may be necessary or appropriate to effectuate, implement, and further evidence the terms and conditions of the Plan, without the need for any approvals, authorization, or consents except for those expressly required pursuant to the Plan.

O.    *Exemption from Certain Taxes and Fees*

Any post-Confirmation transfer from any Entity pursuant to, in contemplation of, or in connection with the Plan or pursuant to: (1) the issuance, distribution, transfer, or exchange of any debt, equity security, or other interest in the Debtors; (2) the Restructuring Transactions; (3) the creation, modification, consolidation, termination, refinancing, and/or recording of any mortgage, deed of trust, or other security interest; (4) the making, assignment, or recording of any lease or sublease; or (5) the making, delivery, or recording of any deed or other instrument of transfer under, in furtherance of, or in connection with, the Plan or Sale Transaction Documents, including any deeds, bills of sale, assignments, or other instruments of transfer executed in connection with any transaction arising out of, contemplated by, or in any way related to the Plan, shall not be subject to any document recording tax, stamp tax, conveyance fee, intangibles or similar tax, mortgage tax, real estate transfer tax, personal property transfer tax, sales or use tax, mortgage recording tax, Uniform Commercial Code filing or recording fee, regulatory filing or recording fee, or other similar tax or governmental assessment, in each case to the extent permitted by applicable bankruptcy law, and the appropriate state or local government officials or agents shall forgo collection of any such tax or governmental assessment and accept for filing and recordation any of the foregoing instruments or other documents without the payment of any such tax or governmental assessment.

P.    *Director and Officer Liability Insurance*

The Debtors shall be deemed to have assumed all of the Debtors' D&O Liability Insurance Policies pursuant to section 365(a) of the Bankruptcy Code effective as of the Effective Date, and coverage for defense and indemnity under any of the D&O Liability Insurance Policies shall remain available to all individuals within the definition of "Insured" (or any similar definition) in any of the D&O Liability Insurance Policies. Entry of the Confirmation Order will constitute the Bankruptcy Court's approval of the Debtors' foregoing assumption of each of the unexpired D&O Liability Insurance Policies. Notwithstanding anything to the contrary contained in the Plan, and except as otherwise may be provided in an Order from the Bankruptcy Court, Confirmation of the Plan shall not discharge, impair, or otherwise modify any indemnity obligations assumed by the foregoing assumption of the D&O Liability Insurance Policies, and each such indemnity obligation will be deemed and treated as an Executory Contract that has been assumed by the Debtors under the Plan as to which no Proof of Claim need be Filed. Provided, however, that the holder(s) of a Claim for an indemnity obligation will look only to the D&O Liability Insurance Policies for recovery and not the Estates, the Reorganized Debtors, or the Litigation Trust.

Q.    *Closing the Chapter 11 Cases*

Upon the occurrence of the Effective Date, the Litigation Trust shall be permitted to close all of the Chapter 11 Cases except for the Chapter 11 Case of Furie, and all contested matters

relating to each of the Debtors, including objections to Claims, shall be administered and heard in the Chapter 11 Case of Furie.

The Litigation Trust shall, promptly after the full administration of the Chapter 11 Cases, File all documents required by Bankruptcy Rule 3022 and any applicable order of the Bankruptcy Court to close the Chapter 11 Case of Furie.

## ARTICLE V.
## TREATMENT OF EXECUTORY CONTRACTS AND UNEXPIRED LEASES

A.    *Assumption and Rejection of Executory Contracts and Unexpired Leases*

On the Effective Date, except as otherwise provided herein, each Executory Contract and Unexpired Lease not previously rejected, assumed, or assumed and assigned, including, without limitation, any employee benefit plans, severance plans, and other Executory Contracts under which employee obligations arise, shall be deemed automatically rejected pursuant to sections 365 and 1123 of the Bankruptcy Code, unless such Executory Contract or Unexpired Lease:  (1) is specifically described in the Plan as to be assumed or assumed and assigned in connection with confirmation of the Plan, or is specifically scheduled on the Assumed Contracts and Leases List to be assumed or assumed and assigned (as specified on such list) pursuant to the Plan or the Plan Supplement; (2) is subject to a pending motion to assume such Unexpired Lease or Executory Contract as of the Effective Date; (3) is a contract, instrument, release, indenture, or other agreement or document entered into in connection with the Plan; or (4) is a D&O Liability Insurance Policy.  Entry of the Confirmation Order by the Bankruptcy Court shall constitute approval of such assumptions, assumptions and assignments, and rejections, including the assumptions and assumptions and assignments of the Executory Contracts or Unexpired Leases specifically scheduled on the Assumed Contracts and Leases List, pursuant to sections 365(a) and 1123 of the Bankruptcy Code. Unless otherwise indicated, assumptions or rejections of Executory Contracts and Unexpired Leases pursuant to the Plan or the Sale Transaction Documents are effective as of the Effective Date.  Any motions to assume Executory Contracts or Unexpired Leases pending on the Effective Date shall be subject to approval by a Final Order of the Bankruptcy Court on or after the Effective Date.  Notwithstanding anything to the contrary in the Plan, the Debtors or the Reorganized Debtors, as applicable, shall have the right, subject to the consent of the Prepetition Term Loan Administrative Agent, to alter, amend, modify, or supplement the Assumed Contracts and Leases List identified in this **Article V.A** of the Plan and in the Plan Supplement at any time through and including 45 days after the Effective Date.

B.    *Claims Based on Rejection of Executory Contracts or Unexpired Leases*

Proofs of Claim with respect to Claims arising from the rejection of Executory Contracts or Unexpired Leases, if any, must be Filed with the Bankruptcy Court by the later of:  (1) the Claims Bar Date, Administrative Claims Bar Date, or the Governmental Bar Date, as applicable; and (2) 4:00 p.m., prevailing Eastern Time, on the date that is thirty (30) days following the entry of an Order of the Bankruptcy Court (including the Confirmation Order) approving such rejection. Any Claims arising from the rejection of an Executory Contract or Unexpired Lease not Filed within such time shall be automatically Disallowed, forever barred from assertion, and shall not be enforceable against, as applicable, the Debtors, the Reorganized Debtors, their Estates, the

Litigation Trust, or property of the foregoing parties, without the need for any objection by the Debtors, the Reorganized Debtors, their Estates, or the Litigation Trust and without the need for any further notice to, or action, order, or approval of the Bankruptcy Court. Claims arising from the rejection of the Debtors' Executory Contracts or Unexpired Leases shall be classified as General Unsecured Claims and shall be treated in accordance with **Article III** of the Plan, as applicable.

C.      *Cure of Defaults for Assumed Executory Contracts and Unexpired Leases*

Any Cure Claims under each Executory Contract and Unexpired Lease to be assumed or assumed and assigned pursuant to the Plan shall be satisfied, pursuant to section 365(b)(1) of the Bankruptcy Code, by payment of the Cure Claim in Cash on the Effective Date or as soon as reasonably practicable thereafter, subject to the limitations described below, by the Debtors as an Administrative Claim or by the Purchaser in accordance with the Sale Transaction Documents, as applicable, or on such other terms as the parties to such Executory Contracts or Unexpired Leases may otherwise agree. In the event of a dispute regarding (1) the amount of the Cure Claim, (2) the ability of the Debtors' Estates or any assignee to provide "adequate assurance of future performance" (within the meaning of section 365 of the Bankruptcy Code) under the Executory Contract or Unexpired Lease to be assumed, or (3) any other matter pertaining to assumption, the Cure Claims required by section 365(b)(1) of the Bankruptcy Code shall be satisfied following the entry of a Final Order or Orders resolving the dispute and approving the assumption.

Unless otherwise provided by an Order of the Bankruptcy Court, at least seven (7) calendar days before the Voting Deadline, the Debtors shall cause notice of proposed assumption and proposed Cure Claims to be sent to applicable counterparties. Any objection by such counterparty must be Filed, served, and actually received by the Debtors not later than seven days after service of notice of the Debtors' proposed assumption and associated Cure Claims. Any counterparty to an Executory Contract or Unexpired Lease that fails to object timely to the proposed assumption or cure amount will be deemed to have assented to such assumption or Cure Claim.

For the avoidance of doubt, the Debtors sent that certain *Notice of Assumption and Assignment of Executory Contracts or Unexpired Leases and Cure Amount* [Docket No. 206] to applicable counterparties to the Executory Contracts and Unexpired Leases listed on Exhibit A attached thereto. Pursuant to such notice, the deadline to file an objection with the Court to the proposed assumption any Executory Contract or Unexpired Lease, including any objection relating to a Cure Claim, other than an objection based solely on the adequate assurance of future performance under such Executory Contract or Unexpired Lease was 4:00 p.m. (prevailing Eastern Time) on October 23, 2019. Prior to the expiration of the objection deadline, the Debtors received two timely objections asserting Cure Claims, one Filed by Giza Holdings, LLC, Taylor Minerals, LLC, Allen Lawrence Berry, the 2007 Allen Lawrence Berry Trust, and Danny Davis [Docket No. 229] and another Filed by Alaska Pipeline Company [Docket No. 297].[3]  With respect to

---

[3]      The Debtors also received that certain *Qualified Non Opposition to Cure Amounts* [Docket No. 228] Filed by the State of Alaska advising prospective parties in interest of the State of Alaska's position that any prospective assignee of the Debtors' oil and gas leases issued by the State of Alaska would be subject to certain regulatory consents as set forth in greater detail in the State of Alaska's *Notice to Prospective Bidders re: State of Alaska Bonding and Regulatory Requirements* [Docket No. 112]. The State of Alaska's *Qualified Non-Opposition to Cure Amounts* states

Executory Contracts or Unexpired Leases for which no objection was Filed, the amount of the Cure Claims is now binding. The Debtors also sent that certain *Second Amended Notice of Assumption and Assignment of Executory Contracts or Unexpired Leases and Cure Amount* [Docket No. 253] to applicable counterparties to the Executory Contracts and Unexpired Leases listed on Exhibit A attached thereto. Pursuant to such notice, the deadline to file an objection with the Court to the proposed assumption any Executory Contract or Unexpired Lease, based solely on the adequate assurance of future performance under such Executory Contract or Unexpired Lease was 12:00 p.m. (prevailing Eastern Time) on December 10, 2019. Prior to expiration of the objection deadline, the Debtors extended such deadline until 4:00 p.m. (prevailing Eastern Time) on December 16, 2019 for Giza Holdings, LLC, Taylor Minerals, LLC, Allen Lawrence Berry, the 2007 Allen Lawrence Berry Trust, Danny Davis, and Alaska Pipeline Company. No other objections based on the adequate assurance of future performance under an Executory Contract or Unexpired Lease was Filed prior to the expiration of such deadline. With respect to Executory Contracts or Unexpired Leases for which no objection was Filed, the applicable counterparties have waived any right to object to the assumption of such Executory Contract or Unexpired Lease based upon failure to provide adequate assurance of future performance.

Assumption (or assumption and assignment) of any Executory Contract or Unexpired Lease pursuant to the Plan or otherwise shall result in the full release and satisfaction of any Claims or defaults, subject to satisfaction of the Cure Claims by the Entity assuming such Executory Contract or Unexpired Lease, whether monetary or nonmonetary, including defaults of provisions restricting the change in control or ownership interest composition or other bankruptcy-related defaults, arising under any assumed Executory Contract or Unexpired Lease at any time before the effective date of assumption and/or assignment. **Any liabilities reflected in the Schedules and any Proofs of Claim Filed with respect to an Executory Contract or Unexpired Lease that has been assumed and assigned shall be deemed Disallowed and expunged, without further notice to or action, order, or approval of the Bankruptcy Court or any other Entity.**

D.      *Preexisting Obligations to the Debtors Under Executory Contracts and Unexpired Leases*

Rejection or repudiation of any Executory Contract or Unexpired Lease pursuant to the Plan or otherwise shall not constitute a termination of preexisting obligations owed to the Debtors under such contracts or leases as modified, amended, supplemented, or restated. In particular, notwithstanding any non-bankruptcy law to the contrary, the Litigation Trust expressly reserves and does not waive any right to receive, or any continuing obligation of a counterparty to provide, warranties or continued maintenance obligations on goods previously purchased, or services previously received, by the contracting Debtors from counterparties to rejected or repudiated Executory Contracts or Unexpired Leases.

E.      *Sale Transaction Documents; Assumed Contracts*

The Debtors' assumption, assumption and assignment, or rejection of any Executory Contract or Unexpired Lease pursuant to the Plan shall be subject in all respects to the Purchaser's rights and obligations, including regarding any Cure Claims assumed by the Purchaser in accordance with the Sale Transaction Documentation, with respect to any such Executory

---

that the State of Alaska does not dispute that the Debtors did not owe any cure amounts relating to the Debtors' oil and gas leases as of such date.

Contracts or Unexpired Leases that are assumed or assumed and assigned by the Purchaser pursuant Sale Transaction Documents.

F.      *Modifications, Amendments, Supplements, Restatements, or Other Agreements*

Unless otherwise provided in the Plan, each Executory Contract or Unexpired Lease that is assumed shall include all modifications, amendments, supplements, restatements, or other agreements that in any manner affect such Executory Contract or Unexpired Lease, and Executory Contracts and Unexpired Leases related thereto, if any, including easements, licenses, permits, rights, privileges, immunities, options, rights of first refusal, and any other interests, unless any of the foregoing agreements has been previously rejected or repudiated or is rejected or repudiated under the Plan.

Modifications, amendments, supplements, and restatements to prepetition Executory Contracts and Unexpired Leases that have been executed by the Debtors during the Chapter 11 Cases shall not be deemed to alter the prepetition nature of the Executory Contract or Unexpired Lease, or the validity, priority, or amount of any Claims that may arise in connection therewith, absent a Bankruptcy Court order to the contrary.

G.      *Reservation of Rights*

Neither the exclusion nor inclusion of any Executory Contract or Unexpired Lease on the Assumed Contracts and Leases List, nor anything else in the Plan or the Sale Transaction Documents, shall constitute an admission by the Debtors or any other Entity, as applicable, that any such contract or lease is in fact an Executory Contract or Unexpired Lease or that either any Debtor or any other Entity, as applicable, has any liability thereunder.

H.      *Nonoccurrence of Effective Date*

In the event that the Effective Date does not occur, the Bankruptcy Court shall retain jurisdiction with respect to any request to extend the deadline for assuming or rejecting Unexpired Leases pursuant to section 365(d)(4) of the Bankruptcy Code.

## ARTICLE VI.
## PROVISIONS GOVERNING DISTRIBUTIONS

A.      *Timing and Calculation of Amounts to Be Distributed*

Except as otherwise provided in the Plan, on the Effective Date (or if a Claim or Interest is not an Allowed Claim or Allowed Interest on the Effective Date, on the date that such a Claim or Interest becomes an Allowed Claim or Allowed Interest, or as soon as reasonably practicable thereafter), each holder of an Allowed Claim against or Allowed Interest in the Debtors shall receive the full amount of the distributions that the Plan provides for Allowed Claims or Allowed Interests in the applicable Class from the Litigation Trust, on behalf of the Debtors, as applicable. In the event that any payment or act under the Plan is required to be made or performed on a date that is not a Business Day, then the making of such payment or the performance of such act may be completed on the next succeeding Business Day, but shall be deemed to have been completed as of the required date. If and to the extent that there are Disputed Claims or Disputed Interests,

distributions on account of any such Disputed Claims or Disputed Interests shall be made pursuant to the provisions set forth in **Article VII** of the Plan.  Except as otherwise provided in the Plan, holders of Claims or Interests shall not be entitled to interest, dividends, or accruals on the distributions provided for in the Plan, regardless of whether such distributions are delivered on or at any time after the Effective Date.  Notwithstanding anything to the contrary herein, no holder of an Allowed Claim or Allowed Interest shall, on account of such Allowed Claim or Allowed Interest, receive a distribution in excess of the Allowed amount of such Claim or Interest plus any postpetition interest on such Claim or Interest payable in accordance with the Plan or other Final Order of the Bankruptcy Court, including the DIP Order.  For the avoidance of doubt unless expressly provided to the contrary in this Plan or the Confirmation Order, postpetition interest shall be paid on account of the DIP Claims and Tax Credit Claims, as contemplated in the DIP Order, and the Term Loan Claims shall be entitled to postpetition interest only to the extent the Allowed Term Loan Claims are secured by collateral in excess of the amount of such Allowed Term Loan Claims on the Effective Date.

B.      *Distributions by the Litigation Trust*

All distributions under the Plan shall be made by the Litigation Trust.  The Litigation Trust shall not be required to give any bond or surety or other security for the performance of its duties unless otherwise ordered by the Bankruptcy Court.  Additionally, in the event that the Litigation Trust is so otherwise ordered, all costs and expenses of procuring any such bond or surety shall be borne by the Litigation Trust.

Subject to the terms of the Plan, the Litigation Trust shall be empowered to:  (1) effect all actions and execute all agreements, instruments, and other documents necessary to perform its duties under the Plan; (2) make all distributions contemplated under the Plan; (3) employ professionals to represent it with respect to its responsibilities; (4) object to, Allow, or otherwise resolve any General Unsecured Claim, Priority Claim, or Other Secured Claim, subject to the terms hereof; and (5) exercise such other powers as may be vested in the Litigation Trust by order of the Bankruptcy Court, pursuant to the Plan or Litigation Trust Documents, or as deemed by the Litigation Trust to be necessary and proper to implement the provisions of the Plan.

C.      *Distributions on Account of Claims Allowed After the Effective Date*

1.      Payments and Distributions on Disputed Claims

Distributions made after the Effective Date to holders of Disputed Claims that are not Allowed Claims as of the Effective Date but which later become Allowed Claims shall be deemed to have been made on the Effective Date.

2.      Special Rules for Distributions to Holders of Disputed Claims

Notwithstanding any provision otherwise in the Plan and except as may be agreed to by the Debtors or the Litigation Trust, subject to the consent of the Prepetition Term Loan Administrative Agent, on the one hand, and the holder of a Disputed Claim, on the other hand, no partial payments and no partial distributions shall be made with respect to any Disputed Claim

until all Disputed Claims held by the holder of such Disputed Claim have become Allowed Claims or have otherwise been resolved by settlement or Final Order.

D.     *Delivery of Distributions and Undeliverable or Unclaimed Distributions*

   1.     Record Date for Distribution

On the Distribution Record Date, the Claims Register shall be closed and the Debtors, the Litigation Trust, or any other party responsible for making distributions shall instead be authorized and entitled to recognize only those record holders listed on the Claims Register as of the close of business on the Distribution Record Date.

   2.     Delivery of Distributions

      a.     Delivery of Distributions to the DIP Agent

Except as otherwise provided in the Plan or reasonably requested by the DIP Agent, all distributions to holders of DIP Claims shall be deemed completed when made to (or at the direction of) the DIP Agent, which shall be deemed to be the holder of all DIP Claims for purposes of distributions to be made hereunder.  The DIP Agent shall hold or direct such distributions for the benefit of the holders of Allowed DIP Claims, as applicable.  As soon as practicable in accordance with the requirements set forth in this **Article VI**, the DIP Agent shall arrange to deliver such distributions to or on behalf of such holders of Allowed DIP Claims in accordance with section 8.11 of the DIP Credit Agreement and subject to the rights of the DIP Agent to assert its charging lien.  If the DIP Agent is unable to make, or consents to the Litigation Trust making such distributions, the Litigation Trust, with the DIP Agent's cooperation, shall promptly make such distributions (provided that until such distributions are made, the DIP Agent's charging lien shall attach to the property to be distributed in the same manner as if such distributions were made through the DIP Agent).  For the avoidance of doubt, all distributions to holders of DIP Claims shall be made in accordance with the priority waterfall set forth in Section M(vi) of the DIP Order.

      b.     Delivery of Distributions to the Tax Credit Administrative Agent

Except as otherwise provided in the Plan or reasonably requested by the Tax Credit Administrative Agent, all distributions to holders of Tax Credit Claims shall be deemed completed when made to (or at the direction of) the Tax Credit Administrative Agent, which shall be deemed to be the holder of all Tax Credit Claims for purposes of distributions to be made hereunder.  The Tax Credit Administrative Agent shall hold or direct such distributions for the benefit of the holders of Allowed Tax Credit Claims, as applicable.  As soon as practicable in accordance with the requirements set forth in this **Article VI**, the Tax Credit Administrative Agent shall arrange to deliver such distributions to or on behalf of such holders of Allowed Tax Credit Claims in accordance with section 8.11 of the Prepetition Tax Credit Agreement and subject to the rights of the Tax Credit Administrative Agent to assert its charging lien.  If the Tax Credit Administrative Agent is unable to make, or consents to the Litigation Trust making such distributions, the Litigation Trust, with the Tax Credit Administrative Agent's cooperation, shall promptly make such distributions (provided that until such distributions are made, the Tax Credit Administrative Agent's charging lien shall attach to the property to be distributed in the same manner as if such

distributions were made through the Tax Credit Administrative Agent). For the avoidance of doubt, all distributions to holders of Tax Credit Claims shall be made in accordance with the priority waterfall set forth in Section M(vi) of the DIP Order.

        c.        Delivery of Distributions to the Prepetition Term Loan Administrative Agent

Except as otherwise provided in the Plan or reasonably requested by the Prepetition Term Loan Administrative Agent, all distributions to holders of Term Loan Claims shall be deemed completed when made to (or at the direction of) the Prepetition Term Loan Administrative Agent, which shall be deemed to be the holder of all Term Loan Claims for purposes of distributions to be made hereunder.  The Prepetition Term Loan Administrative Agent shall hold or direct such distributions for the benefit of the holders of Allowed Term Loan Claims, as applicable.  As soon as practicable in accordance with the requirements set forth in this **Article VI**, the Prepetition Term Loan Administrative Agent shall arrange to deliver such distributions to or on behalf of such holders of Allowed Term Loan Claims in accordance with the Term Loan Credit Agreement, Intercreditor Agreement, and New Side Letter, and subject to the rights of the Prepetition Term Loan Administrative Agent to assert its charging lien.  If the Prepetition Term Loan Administrative Agent is unable to make, or consents to the Litigation Trust making such distributions, the Litigation Trust, with the Prepetition Term Loan Administrative Agent's cooperation, shall make such distributions to the extent practicable to do so (provided that until such distributions are made, the Prepetition Term Loan Administrative Agent's charging lien shall attach to the property to be distributed in the same manner as if such distributions were made through the Prepetition Term Loan Administrative Agent). For the avoidance of doubt, all distributions to holders of Term Loan Claims shall be made in accordance with the priority waterfall set forth in Section M(vi) of the DIP Order.

        d.        Delivery of Distributions in General

Except as otherwise provided herein, the Debtors or the Litigation Trust, as applicable, shall make distributions to holders of Allowed Claims at the address set forth in any Proof of Claim Filed by that holder; *provided* that the manner of such distributions shall be determined at the reasonable discretion of the Debtors or the Litigation Trust, as applicable.  If a holder holds more than one Claim in any one Class, all Claims of the holder will be aggregated into one Claim and one distribution will be made with respect to the aggregated Claim.

    3.      <u>Minimum Distributions</u>

Notwithstanding anything herein to the contrary, neither the Debtors nor the Litigation Trust, as applicable, shall be required to make distributions or payments of less than $250.00; *provided* that the Litigation Trust may establish an alternative minimum in its reasonable discretion and upon notice to the Bankruptcy Court.

    4.      <u>Undeliverable Distributions and Unclaimed Property</u>

In the event that any notice or distribution to any holder is returned as undeliverable, no such notice of distribution to such holder shall be made unless and until the Litigation Trust has

determined the then current address of such holder, at which time such notice or distribution shall be made to such holder without interest; *provided* that such notice or distribution shall be deemed unclaimed property under section 347(b) of the Bankruptcy Code at the expiration of six (6) months from the date of the attempted distribution to the holder at the address reasonably determined by the Litigation Trust to be the then current address of such holder.  After such date, all unclaimed property or interests in property shall revert to the Litigation Trust for the benefit of other Allowed Claims in accordance with the terms of the Plan, and the Claim of any holder to such property or interest in property shall be released, settled, compromised, and forever barred.

     5.    <u>Manner of Payment</u>

Any payment in Cash to be made pursuant to the Plan shall be made at the election of the Litigation Trust by check or by wire transfer, at the sole and exclusive discretion of the Litigation Trust.

E.    *Compliance with Tax Requirements*

In connection with the Plan, to the extent applicable, the Litigation Trust shall comply with all tax withholding and reporting requirements imposed on them by any Governmental Unit, and all distributions pursuant hereto shall be subject to such withholding and reporting requirements. Notwithstanding any provision in the Plan to the contrary, with the prior approval of the Bankruptcy Court, the Litigation Trust shall be authorized to take all actions necessary or appropriate to comply with such withholding and reporting requirements, including liquidating a portion of the distribution to be made under the Plan to generate sufficient funds to pay applicable withholding taxes, withholding distributions pending receipt of information necessary to facilitate such distributions, or establishing any other mechanisms they believe are reasonable and appropriate.

F.    *Allocations*

Distributions in respect of Allowed Claims shall be distributed to the DIP Agent for allocations to lenders under the DIP Credit Agreement, the Tax Credit Administrative Agent for allocations to lenders under the Tax Credit Agreement, and the Prepetition Term Loan Agent for allocations to lenders under the Term Loan Credit Agreement.  All distributions to lenders shall be allocated in accordance with the DIP Documents (as applicable), Prepetition Tax Credit Documents (as applicable), or the Term Loan Documents (as applicable).

G.    *No Postpetition Interest on Claims*

Unless otherwise specifically provided for in an order of the Bankruptcy Court (including the DIP Order), the Plan, the Confirmation Order, or documents executed as required by this Plan, or required by applicable bankruptcy law, postpetition interest shall not accrue or be paid on any Claims or Interests and no holder of a Claim or Interest shall be entitled to interest accruing on or after the Petition Date on any such Claim.

H.    *Setoffs and Recoupment*

Except as otherwise expressly provided herein (including with respect to the DIP Claims), the Debtors may, but shall not be required to, setoff against or recoup from any Claims of any nature whatsoever that the Debtors may have against the claimant, but neither the failure to do so nor the allowance of any Claim hereunder shall constitute a waiver or release by the Debtors of any such Claim it may have against the holder of such Claim.

I.    *Claims Paid or Payable by Third Parties*

1.    Claims Paid by Third Parties

The Debtors or the Litigation Trust, as applicable, shall be authorized to reduce in full a Claim, and such Claim shall be Disallowed without a Claims objection having to be Filed and without any further notice to or action, Order, or approval of the Bankruptcy Court, to the extent that the holder of such Claim receives payment in full on account of such Claim from a party that is not a Debtor, as applicable, including on account of recourse to collateral held by third parties that secure such Claim.  To the extent a holder of a Claim receives a distribution on account of such Claim and receives payment from a party that is not a Debtor or the Litigation Trust on account of such Claim, such holder shall, within 14 days of receipt thereof, repay or return the distribution to the applicable Debtor or the Litigation Trust (or such other entity designated by the Litigation Trust), to the extent the holder's total recovery on account of such Claim from the third party and under the Plan exceeds the amount of such Claim as of the date of any such distribution under the Plan.  The failure of such holder to timely repay or return such distribution shall result in the holder owing the applicable Debtor annualized interest at the Federal Judgment Rate on such amount owed for each Business Day after the 14-day grace period specified above until the amount is repaid.

2.    Claims Payable by Third Parties

No distributions under the Plan shall be made on account of an Allowed Claim that is payable pursuant to one of the Debtors' insurance policies, surety agreements, letter of credits, other non-Debtor payment agreements, or collateral held by a third party, until the holder of such Allowed Claim has exhausted all remedies with respect to such insurance policy, surety agreement, letter of credit, other non-Debtor payment agreement, or collateral, as applicable.  To the extent that one or more of the Debtors' insurers, sureties, or non-Debtor payors pays or satisfies a Claim in full or in part (if and to the extent adjudicated by a court of competent jurisdiction), or such collateral or proceeds from such collateral is used to satisfy such Claim, then immediately upon such payment, the applicable portion of such Claim shall be expunged without a Claim objection having to be Filed and without any further notice to or action, Order, or approval of the Bankruptcy Court.

3.    Applicability of Insurance Contracts

Except as otherwise provided in the Plan, distributions to holders of Allowed Claims shall be in accordance with the provisions of any applicable insurance policy.  Nothing contained in the Plan shall constitute or be deemed a waiver of any Cause of Action that the Debtors, the Litigation

Trust, or any Entity may hold against any other Entity, including insurers under any insurance policy, nor shall anything contained herein constitute or be deemed a waiver by such insurers of any defenses, including coverage defenses, held by such insurers.

J.      *Distributions on Account of Subordinated Claims*

The allowance, classification, and treatment of all Allowed Claims and Allowed Interests and the respective distributions on account thereof take into account and conform to the relative priority and rights of the Claims and Interests in each Class in connection with any contractual, legal, and equitable subordination rights relating thereto, whether arising under general principles of equitable subordination, section 510(b) of the Bankruptcy Code, or otherwise.  Pursuant to section 510 of the Bankruptcy Code, the Debtors reserve the right to re-classify any Allowed Claim (other than with respect to any DIP Claim, Tax Credit Claim, or Term Loan Claim) in accordance with any contractual, legal, or equitable subordination relating thereto.  Notwithstanding the foregoing, the Plan shall be without prejudice to the contractual, legal, or equitable subordination rights (if any) in favor of any holder of any Allowed Claim (other than with respect to any DIP Claim, Tax Credit Claim, or Term Loan Claim), and any holder of any such Allowed Claim (if any) subject to any such contractual, legal, or equitable subordination shall remit any distribution on account of such Claim to which such holder's Claim is subordinated in accordance with and to the extent required under any applicable contractual, legal, or equitable subordination obligation.

## ARTICLE VII.
## PROCEDURES FOR RESOLVING CONTINGENT,
## UNLIQUIDATED, AND DISPUTED CLAIMS

A.      *Allowance of Claims*

The Debtors and the Litigation Trust, as applicable, shall have and shall retain any and all rights and defenses that the Debtors had with respect to any Claim immediately before the Effective Date.  Except as expressly provided in the Plan or in any Order entered in the Chapter 11 Cases prior to the Effective Date (including the Confirmation Order), no Claim or Interest shall become an Allowed Claim or Allowed Interest unless and until such Claim or Interest is deemed Allowed pursuant to the Plan or a Final Order, including the Confirmation Order (when it becomes a Final Order), allowing such Claim.

B.      *Claims and Interests Administration Responsibilities*

Except as otherwise specifically provided in the Plan and notwithstanding any requirements that may be imposed pursuant to Bankruptcy Rule 9019, on and after the Effective Date, the Litigation Trust shall have the authority subject to the consent of the Prepetition Term Loan Administrative Agent: (1) to File, withdraw, or litigate to judgment objections to Claims or Interests; (2) to settle or compromise any Disputed Claim or Disputed Interest without any further notice to or action, Order, or approval by the Bankruptcy Court; and (3) to administer and adjust the Claims Register to reflect any such settlements or compromises without any further notice to or action, Order, or approval by the Bankruptcy Court.

C.      *Estimation of Claims*

Prior to and on the Effective Date, the Debtors, and, after the Effective Date, the Litigation Trust, may, at any time, request that the Bankruptcy Court estimate: (1) any Disputed Claim or Disputed Interest pursuant to applicable law; and (2) any contingent or unliquidated Claim pursuant to applicable law, including, without limitation, section 502(c) of the Bankruptcy Code, regardless of whether any party previously has objected to such Claim or Interest, or whether the Bankruptcy Court has ruled on any such objection, the Bankruptcy Court shall retain jurisdiction to estimate any such Claim or Interest, including during the litigation of any objection to any Claim or Interest or during the appeal relating to such objection. Notwithstanding any provision otherwise in the Plan, a Claim that has been expunged from the Claims Register but that is subject to appeal or has not been the subject of a Final Order, shall be deemed to be estimated at zero dollars, unless otherwise ordered by the Bankruptcy Court. In the event that the Bankruptcy Court estimates any Claim or Interest, that estimated amount shall constitute either the Allowed amount of such Claim or Interest or a maximum limitation on such Claim or Interest for all purposes under the Plan, including for purposes of distributions, and the Debtors or the Litigation Trust, as applicable, may elect to pursue additional objections to the ultimate distribution on such Claim or Interest. If the estimated amount constitutes a maximum limitation on such Claim or Interest, the Debtors or the Litigation Trust, as applicable, may elect to pursue any supplemental proceedings to object to any ultimate distribution on account of such Claim or Interest. Notwithstanding section 502(j) of the Bankruptcy Code, in no event shall any holder of a Claim that has been estimated pursuant to section 502(c) of the Bankruptcy Code or otherwise be entitled to seek reconsideration of such estimation unless such holder has Filed a motion requesting the right to seek such reconsideration on or before seven (7) days after the date on which such Claim is estimated. All of the aforementioned Claims and Interests and objection, estimation, and resolution procedures are cumulative and not exclusive of one another. Claims and Interests may be estimated and subsequently compromised, settled, withdrawn, or resolved by any mechanism approved by the Bankruptcy Court.

D.      *Adjustment to Claims Without Objection*

Any Claim or Interest that has been paid or satisfied, or any Claim or Interest that has been amended or superseded, may be adjusted or expunged on the Claims Register by the Litigation Trust without a Claims objection having to be Filed and without any further notice to or action, Order, or approval of the Bankruptcy Court.

E.      *Time to File Objections to Claims*

Any objections to Claims or Interests shall be Filed on or before the Claims Objection Deadline, as such date may be extended pursuant to the Plan.

F.      *Disallowance of Claims*

Any Claims or Interests held by Entities from which property is recoverable under sections 542, 543, 550, or 553 of the Bankruptcy Code, or that are a transferee of a transfer avoidable under sections 522(f), 522(h), 544, 545, 547, 548, 549, or 724(a) of the Bankruptcy Code, shall be deemed disallowed pursuant to section 502(d) of the Bankruptcy Code, and holders of such Claims

or Interests may not receive any distributions on account of such Claims or Interests until such time as such Causes of Action against that Entity have been settled or a Bankruptcy Court Order with respect thereto has been entered and all sums due, if any, to the Debtors or the Litigation Trust as applicable, by that Entity have been turned over or paid to the Debtors or the Litigation Trust as applicable.

**Except as provided herein or otherwise agreed, any and all Proofs of Claim Filed after the Claims Bar Date shall be deemed disallowed and expunged as of the Effective Date without any further notice to or action, order, or approval of the Bankruptcy Court, and holders of such Claims may not receive any distributions on account of such Claims, unless on or before the Confirmation Hearing such late Claim has been deemed timely Filed by a Final Order.**

G.    *Amendments to Claims*

On or after the Effective Date, except as otherwise provided herein, a Claim or Interest may not be Filed or amended without the prior authorization of the Debtors or the Litigation Trust, as applicable, and any such new or amended Claim or Interest Filed shall be deemed disallowed and expunged without any further notice to or action, Order, or approval of the Bankruptcy Court.

H.    *No Distributions Pending Allowance*

If an objection to a Claim or Interest or portion thereof is Filed as set forth in **Article VII** of the Plan, or if such Claim or Interest is scheduled as Disputed, no payment or distribution provided under the Plan shall be made on account of such Claim or Interest or portion thereof unless and until such Disputed Claim or Disputed Interest becomes an Allowed Claim or Allowed Interest; however, at the sole discretion of the Debtors or the Litigation Trust, as applicable, payment may be made on any undisputed portion of such Claim or Interest.

I.    *Distributions After Allowance*

To the extent that a Disputed Claim or Disputed Interest ultimately becomes an Allowed Claim or Allowed Interest, distributions (if any) shall be made to the holder of such Allowed Claim or Allowed Interest in accordance with the provisions of the Plan.  As soon as practicable after the date that the Order of the Bankruptcy Court allowing any Disputed Claim or Disputed Interest becomes a Final Order, the Litigation Trust shall provide to the holder of such Claim or Interest the distribution (if any) to which such holder is entitled under the Plan as of the Effective Date, less any previous distribution (if any) that was made on account of the undisputed portion of such Claim or Interest, without any interest, dividends, or accruals to be paid on account of such Claim or Interest unless required under applicable bankruptcy law or as otherwise provided in **Article III.B** of the Plan.

J.    *Single Satisfaction of Claims*

Holders of Allowed Claims and Allowed Interests may assert such Claims against or Interests in the Debtor(s) obligated with respect to such Claims or Interests, and such Claims or Interests shall be entitled to share in the recovery provided for the applicable Class of Claims or Interests against the Debtors based upon the full Allowed amount of such Claims or Interests.

Notwithstanding the foregoing, in no case shall the aggregate value of all property received or retained under the Plan on account of any Allowed Claim or Allowed Interest exceed 100 percent (100%) of the underlying Allowed Claim or Allowed Interest plus applicable interest, if any.

# ARTICLE VIII.
## SETTLEMENT, RELEASE, INJUNCTION, AND RELATED PROVISIONS

A.    *Settlement, Compromise, and Release of Claims and Interests*

In consideration for the distributions and other benefits provided pursuant to the Plan, and except as otherwise specifically provided in the Plan or in any contract, instrument, or other agreement or document created pursuant to the Plan, the distribution, rights, and treatment that are provided in the Plan shall be in complete settlement, compromise, and release, effective as of the Effective Date, of Claims (including any Intercompany Claims resolved or compromised after the Effective Date by the Debtors), Interests, and Causes of Action of any nature whatsoever, including any interest accrued on Claims or Interests from and after the Petition Date, whether known or unknown, against, liabilities, of Liens on, obligations of, rights against, and Interests in, the Debtors or any of their assets or properties, regardless of whether any property shall have been distributed or retained pursuant to the Plan on account of such Claims and Interests, including demands, liabilities, and Causes of Action that arose before the Effective Date, any liability (including withdrawal liability) to the extent such Claims or Interests related to service performed by employees of the Debtors before the Effective Date and that arise from a termination of employment, any contingent or non-contingent liability on account of representation or warranties issued on or before the Effective Date, and all debts of the kind specified in sections 502(g), 502(h), or 502(i) of the Bankruptcy Code, in each case whether or not: (1) a Proof of Claim or Proof of Interest based upon such debt, right, or Interest is Filed or deemed Filed pursuant to section 501 of the Bankruptcy Code; (2) a Claim or Interest based upon such debt, right, or Interest is Allowed pursuant to section 502 of the Bankruptcy Code; or (3) the holder of such Claim or Interest has accepted or rejected the Plan.  Any default by the Debtors or their Affiliates with respect to any Claim or Interest that existed immediately before or on account of the filing of the Chapter 11 Cases shall be deemed cured on the Effective Date.  The Confirmation Order shall be a judicial determination of the settlement, compromise, and release of all Claims and Interests subject to the Effective Date occurring.

B.    ***Debtor Release***

**Notwithstanding anything contained in the Plan to the contrary, pursuant to section 1123(b) of the Bankruptcy Code, for good and valuable consideration, on and after the Effective Date, each Released Party is deemed conclusively, absolutely, unconditionally, irrevocably, and forever released and discharged by each and all of the Debtors, the Reorganized Debtors, and their Estates, in each case on behalf of themselves and their respective successors, assigns, and representatives, and any and all other entities who may purport to assert any Claim or Cause of Action, directly or derivatively, by, through, for, or because of the foregoing Entities who may purport to assert any Claim or Cause of Action, from any and all Claims and Causes of Action, whether known or unknown, including any derivative claims, asserted on behalf of the Debtors, that any of the Debtors, the Reorganized Debtors, or their Estates would have been legally entitled to assert in its own right (whether**

individually or collectively) or on behalf of the holder of any Claim against, or Interest in, a Debtor or other Entity, based on or relating to, or in any manner arising from, in whole or in part, the Debtors (including the management, ownership, or operation thereof), the Debtors' capital structure, the assertion or enforcement of rights and remedies against a Debtor or other Entity, the purchase, sale, or rescission of the purchase or sale of any Security issued by the Debtors or the Reorganized Debtors or the ownership thereof, the Debtors' in- or out-of-court restructuring efforts, any Avoidance Actions (but excluding Avoidance Actions brought as counterclaims or defenses to Claims asserted against the Debtors), intercompany transactions between or among the Debtors and/or their Affiliates, the subject matter of, or the transactions or events giving rise to, and Claim or Interest that is treated in the Plan, the DIP Documents, the Prepetition Tax Credit Documents, the Term Loan Documents, the Chapter 11 Cases and any related adversary proceedings, the formulation, preparation, dissemination, negotiation, filing, or consummation of the Disclosure Statement, the DIP Documents, the Plan, the Plan Supplement, the Sale Transaction Documents, the New Term Loan Documents, the New Tax Credit Documents, the Litigation Trust Documents, or any Restructuring Transaction, contract, instrument, release, or other agreement or document created or entered into in connection with the Disclosure Statement, the DIP Documents, the Plan, the Plan Supplement, the Sale Transaction Documents, the New Term Loan Documents, the New Tax Credit Documents, the Litigation Trust Documents, or the Chapter 11 Cases, the filing of the Chapter 11 Cases, the pursuit of Confirmation, the pursuit of Consummation, the administration and implementation of the Plan, including the issuance or distribution of securities pursuant to the Plan, or the distribution of property under the Plan or any other related agreement, or upon any other related act or omission, transaction, agreement, event, or other occurrence taking place on or before the Effective Date.  Notwithstanding anything to the contrary in the foregoing, the releases set forth above do not release (a) any post-Effective Date obligations of any party or Entity under the Plan, any Restructuring Transaction, or any document, instrument, or agreement (including those set forth in the Plan Supplement) executed to implement the Plan, including the Sale Transaction Documents.

Entry of the Confirmation Order shall constitute the Bankruptcy Court's approval, pursuant to section 1123(b) and Bankruptcy Rule 9019, of the releases described in this Article VIII.B, which includes by reference each of the related provisions and definitions contained in the Plan, and further, shall constitute the Bankruptcy Court's finding that each release described in this Article VIII.B is:  (a) in exchange for the good and valuable consideration provided by the Released Parties, including, without limitation, the Released Parties' contributions to facilitating the restructuring and implementing the Plan; (b) a good-faith settlement and compromise of the Claims and Causes of Action released by the Debtors; (c) in the best interests of the Debtors and all holders of Claims and Interests; (d) fair, equitable, and reasonable; (e) given and made after due notice and opportunity for hearing; (f) a sound exercise of the Debtors' business judgment; and (g) a bar to any of the Debtors, the Reorganized Debtors, or the Debtors' Estates asserting any Claim or Cause of Action released by the Debtors, of any kind, against any of the Released Parties or their property.

C.    *Third Party Release*

Notwithstanding anything contained in the Plan to the contrary, for good and valuable consideration, on and after the Effective Date, each Releasing Party is deemed to have conclusively, absolutely, unconditionally, irrevocably, and forever released and discharged each Debtor, Reorganized Debtor, and Released Party from any and all Claims and Causes of Action, whether known or unknown, including any derivative claims, asserted or assertable on behalf of the Debtors, the Reorganized Debtors, or their Estates or Affiliates, as applicable, that such Entity would have been legally entitled to assert in its own right (whether individually or collectively) or on behalf of any holder of any Claim against, or Interest in, a Debtor or other Entity, based on or relating to, or in any manner arising from, in whole or in part, the Debtors (including the management, ownership or operation thereof), the Debtors' capital structure, the assertion or enforcement of rights and remedies against a Debtor or other Entity, the purchase, sale, or rescission of the purchase or sale of any Security issued by the Debtors or the Reorganized Debtors or the ownership thereof, the Debtors' in- or out-of-court restructuring efforts, any Avoidance Actions (but excluding Avoidance Actions brought as counterclaims or defenses to Claims asserted against the Debtors), intercompany transactions between or among the Debtors and/or their Affiliates, the subject matter of, or the transactions or events giving rise to, and Claim or Interest that is treated in the Plan, the DIP Documents, the Prepetition Tax Credit Documents, the Term Loan Documents, the Chapter 11 Cases and any related adversary proceedings, the formulation, preparation, dissemination, negotiation, filing, or consummation of the Disclosure Statement, the DIP Documents, the Plan, the Plan Supplement, the Sale Transaction Documents, the New Term Loan Documents, the New Tax Credit Documents, the Litigation Trust Documents, or any Restructuring Transaction, contract, instrument, release, or other agreement or document created or entered into in connection with the Disclosure Statement, the DIP Documents, the Plan, the Plan Supplement, the Sale Transaction Documents, the New Term Loan Documents, the New Tax Credit Documents, the Litigation Trust Documents, or the Chapter 11 Cases, the filing of the Chapter 11 Cases, the pursuit of Confirmation, the pursuit of Consummation, the administration and implementation of the Plan, including the issuance or distribution of securities pursuant to the Plan, or the distribution of property under the Plan or any other related agreement, or upon any other related act or omission, transaction, agreement, event, or other occurrence taking place on or before the Effective Date.  Notwithstanding anything to the contrary in the foregoing, the releases set forth above do not release (a) any post-Effective Date obligations of any party or Entity under the Plan, any Restructuring Transaction, or any document, instrument, or agreement (including those set forth in the Plan Supplement) executed to implement the Plan, including the Sale Transaction Documents.

Entry of the Confirmation Order shall constitute the Bankruptcy Court's approval, pursuant to Bankruptcy Rule 9019, of the releases described in this Article VIII.C, which includes by reference each of the related provisions and definitions contained herein, and, further, shall constitute the Bankruptcy Court's finding that each release described in this Article VIII.C is:  (a) consensual; (b) essential to the confirmation of the Plan; (c) given in exchange for the good and valuable consideration provided by the Released Parties; (d) a good-faith settlement and compromise of the Claims and Causes of Action released by the Releasing Parties; (e) in the best interests of the Debtors and their Estates; (f) fair, equitable,

**and reasonable; (g) given and made after due notice and opportunity for hearing; and (h) a bar to any of the Releasing Parties asserting any Claim or Cause of Action released by the Releasing Parties, of any kind, against any of the Released Parties or their property.**

D.    *Exculpation*

**Except as otherwise specifically provided in the Plan, no Exculpated Party shall have or incur liability for and each Exculpated Party is released and exculpated from any liability to any holder of Cause of Action, Claim, or Interest for or related to any act or omission in connection with, relating to, or arising out of, the Chapter 11 Cases, the formulation, preparation, dissemination, negotiation, filing, or consummation of the DIP Documents, the Disclosure Statement, the Plan, the Plan Supplement, the Sale Transaction Documents, the New Term Loan Documents, the New Tax Credit Documents, the Litigation Trust Documents, or any Restructuring Transaction, contract, instrument, release, or other agreement or document created or entered into in connection with the DIP Documents, the Disclosure Statement, the Plan, the Plan Supplement, the Sale Transaction Documents, the New Term Loan Documents, the New Tax Credit Documents, the Litigation Trust Documents, or the Chapter 11 Cases, the filing of the Chapter 11 Cases, the pursuit of Confirmation, the pursuit of Consummation, the administration and implementation of the Plan, including the issuance or distribution of securities pursuant to the Plan, or the distribution of property under the Plan or any other related agreement, or upon any other related act or omission, transaction, agreement, event, or other occurrence taking place on or before the Effective Date, except for Causes of Action related to any act or omission that is determined by Final Order by a court of competent jurisdiction to have constituted actual fraud, willful misconduct, or gross negligence, but in all respects such Entities shall be entitled to reasonably rely upon the advice of counsel with respect to their duties and responsibilities pursuant to the Plan. The Exculpated Parties and other parties set forth above have, and upon Consummation of the Plan shall be deemed to have, participated in good faith and in compliance with the applicable laws with regard to the solicitation of votes and distribution of consideration pursuant to the Plan and, therefore, are not, and on account of such distributions shall not be, liable at any time for the violation of any applicable law, rule, or regulation governing the solicitation of acceptances or rejections of the Plan or such distributions made pursuant to the Plan.**

E.    *Injunction*

**Except as otherwise expressly provided in the Plan, all Entities that have held, hold, or may hold Claims, Interests, or Causes of Action that have been released pursuant to the Plan, discharged pursuant to the Plan, or are subject to exculpation pursuant to the Plan, are permanently enjoined, from and after the Effective Date, from taking any of the following actions against, as applicable, the Debtors, Reorganized Debtors, the Estates, the Released Parties, or the Exculpated Parties:  (a) commencing or continuing in any manner any action or other proceeding of any kind on account of or in connection with or with respect to any such Claims, Interests, or Causes of Action; (b) enforcing, attaching, collecting, or recovering by any manner or means any judgment, award, decree, or order against such Entities on account of or in connection with or with respect to any such Claims, Interests, or Causes of Action; (c) creating, perfecting, or enforcing any Lien or**

50

encumbrance of any kind against such Entities or the property or the Estates of such Entities on account of or in connection with or with respect to any such Claims, Interests, or Causes of Action; (d) asserting any right of setoff, subrogation, or recoupment of any kind against any obligation due from such Entities or against the property of such Entities on account of or in connection with or with respect to any such Claims, Interests, or Causes of Action unless such Entity has either (1) timely Filed a Proof of Claim asserting a right of setoff or recoupment, or (2) timely asserted such setoff or recoupment right in a document Filed with the Bankruptcy Court explicitly preserving such setoff or recoupment, and notwithstanding an indication of a Claim or Interest or otherwise that such Entity asserts, has, or intends to preserve any right of setoff or recoupment pursuant to applicable law or otherwise; and (e) commencing or continuing in any manner any action or other proceeding of any kind on account of or in connection with or with respect to any such Claims, Interests, or Causes of Action released or settled pursuant to the Plan.

F.      *Recoupment*

In no event shall any holder of Claims or Interests be entitled to recoup any Claim, right, or Cause of Action of the Debtors, unless such holder actually has performed such recoupment and provided notice thereof in writing to the Debtors on or before the Confirmation Date, notwithstanding any indication in any Proof of Claim or otherwise that such holder asserts, has, or intends to preserve any right of recoupment.

G.      *Reimbursement of Contribution*

If the Bankruptcy Court disallows a Claim for reimbursement or contribution of an Entity pursuant to section 502(e)(1)(B) of the Bankruptcy Code, then to the extent that such Claim is contingent as of the time of allowance or disallowance, such Claim shall be forever disallowed and expunged notwithstanding section 502(j) of the Bankruptcy Code, unless before the Confirmation Date:  (1) such Claim has been adjudicated as non-contingent; or (2) the holder of such Claim has Filed a non-contingent Proof of Claim on account of such Claim and a Final Order has been entered before the Confirmation Date determining such Claim as no longer contingent.

H.      *Special Provision Governing Fee Claims and Final Fee Applications*

For the avoidance of doubt, the provisions in **Article VIII** hereof shall not waive, affect, limit, restrict, or otherwise modify the right of any party in interest to object to any Fee Claim or final fee application Filed by any Professional in these Chapter 11 Cases.

## ARTICLE IX.
## CONDITIONS PRECEDENT TO CONFIRMATION
## AND CONSUMMATION OF THE PLAN

A.      *Conditions Precedent to the Confirmation*

It shall be a condition to Confirmation of the Plan that the following conditions shall have been satisfied (or waived pursuant to the provisions of **Article IX.C** hereof):

1.      The Bankruptcy Court shall have entered a Final Order approving the Disclosure Statement, which Final Order shall be in form and substance acceptable to the DIP Agent and the Prepetition Term Loan Administrative Agent;

2.      The Sale Agreement shall not have been terminated;

3.      The Bankruptcy Court shall have entered an Order approving the Sale Transaction which Order shall be in form and substance acceptable to the DIP Agent and the Prepetition Term Loan Administrative Agent;

4.      The Bankruptcy Court shall have entered the Confirmation Order, which order shall be in form and substance acceptable to the DIP Agent and the Prepetition Term Loan Administrative Agent; and

5.      [The Maturity Date for the DIP Credit Agreement (as defined in the DIP Order) shall not have occurred and the DIP Facility shall not have been terminated and shall remain in full force and effect.]

B.      *Conditions Precedent to the Effective Date*

It shall be a condition to Consummation of the Plan that the following conditions shall have been satisfied (or waived pursuant to the provisions of **Article IX.C** hereof):

1.      The Confirmation Order shall not have been stayed, rescinded, vacated, or reversed on appeal;

2.      The Sale Agreement shall not have been terminated, all the conditions precedent in the Sale Agreement shall have been satisfied or otherwise waived in accordance with its terms prior to the Effective Date, and the closing of the Sale Transaction shall have occurred contemporaneously with the occurrence of the Effective Date;

3.      [The Maturity Date for the DIP Credit Agreement (as defined in the DIP Order) shall not have occurred and the DIP Facility shall not have been terminated and shall remain in full force and effect immediately prior to the Effective Date;]

4.      The Debtors and the Purchaser shall have obtained all authorizations, consents, regulatory approvals, rulings, or documents that are necessary to implement and effectuate the Plan, none of which shall result in any set off, offset, or other impairment of the Tax Credit Priority Collateral;

5.      The final version of the Plan Supplement and all of the schedules, documents, and exhibits contained therein shall have been Filed in a manner consistent in all material respects with the Plan and shall be in form and substance acceptable to the DIP Agent and the Prepetition Term Loan Administrative Agent;

6.      The following litigation proceedings shall be settled or otherwise resolved to the DIP Agent's and the Prepetition Term Loan Administrative Agent's satisfaction:  (a) *Amended Motion of Bruce Webb and the Webb Family Trust (A) Seeking Authority and Standing to Pursue*

*Derivative Claims, if any, (B) Requesting an Extension of the Challenge Deadline, and (C) Requesting Conversion of Cases to Chapter 7, or, Alternatively, Appointment of Chapter 11 Trustee,* [Docket No. 283]; and (b) *Motion of Certain Royalty and Working Interest Owners for Entry of an Order (I) Determining nature of Certain Claims and (II) If Necessary, Granting Leave, Standing and Authority to Prosecute and, If Appropriate, Settle Certain Claims on Behalf of the Debtors' Estates,* [Docket No. 285]; and (c) *Deutsche Oel & Gas S.A. v. Energy Capital Partners Mezzanine Opportunities Fund A, LP, et al*, Index No. 656717/2019 filed November 12, 2019, in the Supreme Court of the State of New York, County of New York.

7.     [All Allowed Fee Claims approved by the Bankruptcy Court shall have been paid in full and amounts sufficient to pay all Fee Claims that become Allowed after the Effective Date, shall have been placed in the Professional Fee Escrow pending approval of the Fee Claims by the Bankruptcy Court.]

8.     The DIP Agent and the Prepetition Term Loan Administrative Agent shall have received a tax memorandum from Stoel Rives LLP in connection with the transactions contemplated by the Plan, in form and substance acceptable to the DIP Agent and the Prepetition Term Loan Administrative Agent;

9.     Contemporaneously with the occurrence of the Effective Date, the Purchaser shall have paid all Cure Claims associated with the Executory Contracts and Unexpired Leases on the Assumed Contracts and Leases List.

10.     The $6,000,000 letter of credit delivered to Alaska Pipeline Company pursuant to Section 12.1 of that certain Gas Supply Agreement, dated as of February 26, 2016, between Furie and Alaska Pipeline Company, shall be returned, undrawn, to the issuing bank thereof (Wells Fargo Bank, N.A.) and such Gas Supply Agreement shall be assumed by the Reorganized Debtors on the Effective Date; and

11.     All documents and agreements necessary to implement the Plan shall have (a) been tendered for delivery and (b) been effected or executed by all Entities party thereto, and all conditions precedent to the effectiveness of such documents and agreements shall have been satisfied or waived pursuant to the terms of such documents or agreements.

On the Effective Date, the Plan shall be deemed substantially consummated under sections 1101 and 1127(b) of the Bankruptcy Code.

C.     *Waiver of Conditions*

The conditions to Confirmation of the Plan and to the Effective Date of the Plan set forth in **Article IX.A** of the Plan may be waived by the Debtors (subject to the prior written consent of the DIP Agent and the Prepetition Term Loan Administrative Agent) without notice, leave, or Order of the Bankruptcy Court or any formal action other than proceedings to confirm or consummate the Plan.

D.    *Substantial Consummation*

"Substantial consummation" of the Plan, as defined in 11 U.S.C. § 1101(2), shall be deemed to occur on the Effective Date.

E.    *Effect of Non-Occurrence of Conditions to the Effective Date*

If the Effective Date does not occur, the Plan shall be null and void in all respects and nothing contained in the Plan or the Disclosure Statement shall: (1) constitute a waiver or release of any Claims or Causes of Action by or Claims against or Interests in the Debtors; (2) prejudice in any manner the rights of the Debtors, any holders of a Claim or Interest or any other Entity; or (3) constitute an admission, acknowledgment, offer, or undertaking by the Debtors, any holders, or any other Entity in any respect.

## ARTICLE X.
## MODIFICATION, REVOCATION, OR WITHDRAWAL OF THE PLAN

A.    *Modification and Amendments*

Subject to the limitations contained in the Plan, the Debtors or the Litigation Trust, as applicable, subject to the consent of the Prepetition Term Loan Administrative Agent, reserve the right to modify the Plan as to material terms and seek Confirmation consistent with the Bankruptcy Code and, as appropriate, not resolicit votes on such modified Plan; *provided* that no such modifications shall affect the treatment, rights, Claims, or defenses of the DIP Lenders or the Term Loan Lenders, without the prior written consent of the DIP Agent and the Prepetition Term Loan Administrative Agent, as applicable. Subject to certain restrictions and requirements set forth in section 1127 of the Bankruptcy Code and Bankruptcy Rule 3019 and those restrictions on modifications set forth in the Plan, the Debtors and the Litigation Trust, as applicable, subject to the consent of the Prepetition Term Loan Administrative Agent, expressly reserve their rights to alter, amend, or modify materially the Plan with respect to the Debtors, one or more times, after Confirmation, and, to the extent necessary, may initiate proceedings in the Bankruptcy Court to so alter, amend, or modify the Plan, or remedy any defect or omission, or reconcile any inconsistencies in the Plan, the Disclosure Statement, or the Confirmation Order, in such matters as may be necessary to carry out the purposes and intent of the Plan, as reasonably determined by the Debtors; *provided* that no such alteration, amendment, modification, remedy, or reconciliation shall affect the treatment, rights, Claims, or defenses of the DIP Lenders or the Term Loan Lenders, without the prior written consent of the DIP Agent and the Prepetition Term Loan Administrative Agent, as applicable. Any such modification or supplement shall be considered a modification of the Plan and shall be made in accordance with **Article X** hereof.

B.    *Effect of Confirmation on Modifications*

Entry of the Confirmation Order shall mean that all modifications or amendments to the Plan occurring after the solicitation thereof are approved pursuant to section 1127(a) of the Bankruptcy Code and do not require additional disclosure or resolicitation under Bankruptcy Rule 3019.

C.      *Revocation or Withdrawal of the Plan*

The Debtors reserve the right to revoke or withdraw the Plan prior to the Confirmation Date.  If the Debtors revoke or withdraw the Plan, or if Confirmation and Consummation does not occur, then:  (1) the Plan shall be null and void in all respects; (2) any settlement or compromise embodied in the Plan (including the fixing or limiting to an amount certain of any Claim or Interest or Class of Claims or Interests), assumption or rejection of Executory Contracts or Unexpired Leases effected by the Plan, and any document or agreement executed pursuant to the Plan, shall be deemed null and void; and (3) nothing contained in the Plan shall:  (i) constitute a waiver or release of any Causes of Action, Claims, or Interests; (ii) prejudice in any manner the rights of the Debtors or any other Entity, including the holders of Claims; or (iii) constitute an admission, acknowledgement, offer, or undertaking of any sort by the Debtors or any other Entity.

## ARTICLE XI.
## RETENTION OF JURISDICTION

Notwithstanding the entry of the Confirmation Order and the occurrence of the Effective Date, on and after the Effective Date, the Bankruptcy Court shall retain jurisdiction over the Chapter 11 Cases and all matters, arising out of, or related to, the Chapter 11 Cases and the Plan, including jurisdiction to:

1.      allow, disallow, determine, liquidate, classify, estimate, or establish the priority, Secured or unsecured status, or amount of any Claim or Interest, including the resolution of any request for payment of any Administrative Claim and the resolution of any and all objections to the Secured or unsecured status, priority, amount, or allowance of Claims or Interests;

2.      decide and resolve all matters related to the granting and denying, in whole or in part, any applications for allowance of compensation or reimbursement of expenses to Professionals authorized pursuant to the Bankruptcy Code or the Plan;

3.      resolve any matters related to:  (a) the assumption, assumption and assignment, or rejection of any Executory Contract or Unexpired Lease to which a Debtor is party or with respect to which a Debtor may be liable in any manner and to hear, determine, and, if necessary, liquidate, any Claims arising therefrom, including Claims related to the rejection of an Executory Contract or Unexpired Lease, Cure Claims pursuant to section 365 of the Bankruptcy Code, or any other matter related to such Executory Contract or Unexpired Lease; (b) any potential contractual obligation under any Executory Contract or Unexpired Lease that is assumed; (c) the Debtors or the Litigation Trust amending, modifying, or supplementing, after the Effective Date, pursuant to the Plan, any Executory Contracts or Unexpired Leases set forth on the list of Executory Contracts and Unexpired Leases to be assumed and assigned or rejected or otherwise; and (d) any dispute regarding whether a contract or lease is or was executory or expired;

4.      determine any other matters that may arise in connection with or relate to the Plan, the Disclosure Statement, the Confirmation Order, or any contract, instrument, release, indenture, or other agreement or document created in connection with the Plan or the Disclosure Statement;

5.      ensure that distributions to holders of Allowed Claims and Interests are accomplished pursuant to the provisions of the Plan;

6.      adjudicate, decide, or resolve any motions, adversary proceedings, contested or litigated matters, and any other matters, and grant or deny any applications involving or commenced by a Debtor, the Estates, or the Litigation Trust that may be pending on or after the Effective Date;

7.      adjudicate, decide, or resolve any and all matters related to Causes of Action;

8.      adjudicate, decide, or resolve any and all matters related to section 1141 of the Bankruptcy Code;

9.      enter and implement such Orders as may be necessary or appropriate to execute, implement, or consummate the provisions of the Plan and all contracts, instruments, releases, indentures, and other agreements or documents created in connection with the Plan or the Disclosure Statement;

10.     enforce the Order approving the Sale Transaction and enter and enforce any order for the sale of property pursuant to sections 363, 1123, or 1146(a) of the Bankruptcy Code;

11.     issue injunctions, enter and implement other orders, or take such other actions as may be necessary or appropriate to restrain interference by any Entity with Consummation or enforcement of the Plan;

12.     resolve any cases, controversies, suits, disputes, or causes of action that may arise in connection with the Consummation, interpretation, or enforcement of the Plan or any Entity's obligations incurred in connection with the Plan, including obligations of the Litigation Trust;

13.     resolve any cases, controversies, suits, disputes, or causes of action with respect to the settlements, compromises, releases, injunctions, exculpations, and other provisions contained in **Article VIII** hereof and enter such Orders as may be necessary or appropriate to implement such releases, injunctions, exculpations, and other provisions;

14.     resolve any cases, controversies, suits, disputes, or causes of action with respect to the repayment or return of distributions and the recovery of additional amounts owed by the holder of a Claim or Interest for amounts not timely repaid pursuant to **Article VI** hereof;

15.     enter and implement such Orders as are necessary or appropriate if the Confirmation Order is for any reason modified, stayed, reversed, revoked, or vacated;

16.     adjudicate any and all disputes arising from or relating to distributions under the Plan or any transactions contemplated therein;

17.     hear and determine disputes arising in connection with the interpretation, implementation, modification, or enforcement of the Plan, or the Confirmation Order, including disputes arising under agreements, documents, or instruments executed in connection with the Plan;

18.     hear and determine matters concerning state, local, and federal taxes in accordance with sections 346, 505, and 1146 of the Bankruptcy Code;

19.     hear and determine disputes arising in connection with the Sale Transaction, including the interpretation, implementation, modification, or the Sale Transaction Documents;

20.     enforce all Orders previously entered by the Bankruptcy Court;

21.     hear any other matter not inconsistent with the Bankruptcy Code;

22.     enforce the injunction, release, and exculpation provisions set forth in **Article VIII** hereof; and

23.     enter an Order concluding or closing the Chapter 11 Cases.

## ARTICLE XII.
## MISCELLANEOUS PROVISIONS

A.     *Immediate Binding Effect*

Subject to the terms hereof and notwithstanding Bankruptcy Rules 3020(e), 6004(h), or 7062 or otherwise, upon the occurrence of the Effective Date, the terms of the Plan, the Plan Supplement, and the Confirmation Order shall be immediately effective and enforceable and deemed binding upon the Debtors, the Debtors' Estates, the Reorganized Debtors, the Litigation Trust and any and all holders of Claims or Interests (regardless of whether such Claims or Interests are deemed to have accepted or rejected the Plan), all Entities that are parties to or are subject to the settlements, compromises, releases, or injunctions described in the Plan, each Entity acquiring property under the Plan or the Confirmation Order, and any and all non-Debtor parties to Executory Contracts and Unexpired Leases with the Debtors. All Claims and debts shall be as fixed, adjusted, or compromised, as applicable, pursuant to the Plan regardless of whether any holder of a Claim or debt has voted on the Plan.

B.     *Additional Documents*

On or before the Effective Date, the Debtors may file with the Bankruptcy Court such agreements and other documents as may be necessary or appropriate to effectuate and further evidence the terms and conditions of the Plan. The Debtors and all holders of Claims or Interests receiving distributions pursuant to the Plan and all other parties in interest shall, from time to time, prepare, execute, and deliver any agreements or documents and take any other actions as may be necessary or advisable to effectuate the provisions and intent of the Plan.

C.     *Reservation of Rights*

Prior to the Effective Date, neither the Plan, any statement or provision contained in the Plan, nor any action taken or not taken by any Debtor with respect to the Plan, the Disclosure Statement, the Confirmation Order, or the Plan Supplement shall be or shall be deemed to be an admission or waiver of any rights of any Debtor with respect to the holders of Claims or Interests.

D.    *Successors and Assigns*

The rights, benefits, and obligations of any Entity named or referred to in the Plan or the Confirmation Order shall be binding on, and shall inure to the benefit of any heir, executor, administrator, successor or assign, affiliate, officer, director, manager, agent, representative, attorney, beneficiaries, or guardian, if any, of each Entity.

E.    *Service of Documents*

Any pleading, notice, or other document required by the Plan to be served on or delivered to the Debtors shall be served on:

|  |  |
|---|---|
| the Debtors: | Furie Operating Alaska, LLC<br>Cornucopia Oil & Gas Company, LLC<br>Corsair Oil & Gas LLC<br>W. 188 Northern Lights Blvd, Suite 620<br>Anchorage, Alaska 99503<br>Attn.: Scott M. Pinsonnault, Interim COO<br>Email: Scott.Pinsonnault@ankura.com<br><br>With a copy to (which shall not constitute notice):<br><br>McDermott Will & Emery LLP<br>340 Madison Avenue<br>New York, New York<br>Attn.:  Timothy W. Walsh & Riley T. Orloff<br>Email: twwalsh@mwe.com; rorloff@mwe.com |
| the DIP Agent or<br>the Prepetition<br>Term Loan<br>Administrative<br>Agent | Kirkland & Ellis LLP<br>Chad J. Husnick<br>Benjamin M. Rhode<br>300 North LaSalle Street<br>Chicago, Illinois 60654<br>Telephone: (312) 862-2000<br>Facsimile: (312) 862-2200<br>Email:  chad.husnick@kirkland.com<br>            benjamin.rhode@kirkland.com |
| the Tax Credit Administrative Agent: | |
|  | Vinson & Elkins LLP<br>Bill Wallander<br>Bradley Foxman<br>2001 Ross Avenue, Suite 3900<br>Dallas, Texas 75201<br>Telephone: (214) 220-7700<br>Facsimile: (214) 220-7716 |

Email: bwallander@velaw.com
bfoxman@velaw.com

Any pleading, notice, or other document required by the Plan to be served on or delivered to the Litigation Trust or, after the Effective Date, the Debtors, shall be served on the Litigation Trust, as set forth in the Plan Supplement.

After the Effective Date, the Debtors or the Litigation Trust, as applicable, have authority to send a notice to Entities that to continue to receive documents pursuant to Bankruptcy Rule 2002, such Entity must file a renewed request to receive documents pursuant to Bankruptcy Rule 2002. After the Effective Date, the Debtors are authorized to limit the list of Entities receiving documents pursuant to Bankruptcy Rule 2002 to those Entities who have Filed such renewed request.

F.      *Term of Injunctions or Stays*

Unless otherwise provided in the Plan or in the Confirmation Order, all injunctions or stays in effect in the Chapter 11 Cases pursuant to sections 105 or 362 of the Bankruptcy Code or any order of the Bankruptcy Court, and extant on the Confirmation Date (excluding any injunctions or stays contained in the Plan or the Confirmation Order) shall remain in full force and effect until the Effective Date. All injunctions or stays contained in the Plan or the Confirmation Order shall remain in full force and effect in accordance with their terms.

G.      *Entire Agreement*

Except as otherwise indicated, the Plan, the Confirmation Order, and the Plan Supplement supersede all previous and contemporaneous negotiations, promises, covenants, agreements, understandings, and representations on such subjects, all of which have become merged and integrated into the Plan.

H.      *Exhibits*

All exhibits and documents attached hereto or included in the Plan Supplement are incorporated into and are a part of the Plan as if set forth in full in the Plan. After the exhibits and documents are Filed, copies of such exhibits and documents shall be available upon written request to the Debtors' counsel at the address above or by downloading such exhibits and documents from the Debtors' restructuring website at https://cases.primeclerk.com/furieoperatingalaska/ or the Bankruptcy Court's website at http://www.deb.uscourts.gov. To the extent any exhibit or document is inconsistent with the terms of the Plan, unless otherwise ordered by the Court, the non-exhibit or non-document portion of the Plan shall control.

I.      *Nonseverability of Plan Provisions*

If, prior to Confirmation, any term or provision of the Plan is held by the Bankruptcy Court to be invalid, void, or unenforceable, the Bankruptcy Court shall not alter or interpret such term or provision to make it valid or enforceable; *provided* that at the request of the Debtors with the reasonable consent of the DIP Agent and Prepetition Term Loan Administrative Agent, in each case solely and to the extent their respective rights are affected by such request, the Bankruptcy

Court shall have the power to alter and interpret such term or provision to make it valid or enforceable to the maximum extent practicable, consistent with the original purpose of the term or provision held to be invalid, void, or unenforceable, and such terms or provision shall then be applicable as altered or interpreted *provided* that any such alteration or interpretation shall be acceptable to the Debtors and, solely as and to the extent their respective rights are affected by such alteration, the DIP Agent and the Prepetition Term Loan Administrative Agent.  The Confirmation Order shall constitute a judicial determination and shall provide that each term and provision of the Plan, as it may have been altered or interpreted in accordance with the foregoing, is: (1) valid and enforceable pursuant to its terms; (2) integral to the Plan and may not be deleted or modified without the consent of the Debtors; and (3) nonseverable and mutually dependent.

J.      *Waiver or Estoppel*

Each holder of a Claim or an Interest shall be deemed to have waived any right to assert any argument, including the right to argue that its Claim or Interest should be Allowed in a certain amount, in a certain priority, Secured or not subordinated by virtue of an agreement made with the Debtors or their counsel, or any other Entity, if such agreement was not disclosed in the Plan, the Disclosure Statement, or papers Filed with the Bankruptcy Court before the Confirmation Date.

K.      *Enforcement of the Confirmation Order*

On and after the Effective Date, the Debtors, the Purchaser, the Reorganized Debtors, and the Litigation Trust, as applicable, shall be entitled to enforce the terms of the Confirmation Order and the Plan.

L.      *Votes Solicited in Good Faith*

Upon entry of the Confirmation Order, the Debtors will be deemed to have solicited votes on the Plan in good faith and in compliance with the Bankruptcy Code, and pursuant to section 1125(e) of the Bankruptcy Code, the Debtors and each of their respective Affiliates, agents, representatives, members, principals, shareholders, officers, directors, employees, advisors, and attorneys will be deemed to have participated in good faith and in compliance with the Bankruptcy Code in the offer, issuance, sale, and purchase of Securities offered and sold under the Plan and any previous plan, and, therefore, neither any of such parties or individuals will have any liability for the violation of any applicable law, rule, or regulation governing the solicitation of votes on the Plan or the offer, issuance, sale, or purchase of the Securities offered and sold under the Plan and any previous plan.

*[Remainder of Page Intentionally Left Blank]*

Dated:  December 11, 2019

Respectfully submitted,

Furie Operating Alaska, LLC
Cornucopia Oil & Gas Company, LLC
Corsair Oil & Gas LLC

By:    */s/ Scott M. Pinsonnault*
Name: Scott M. Pinsonnault
Title:  Interim Chief Operating Officer

**EXHIBIT A**

<u>Sale Agreement</u>

[To be added]

**EXHIBIT B**

<u>New Tax Credit Side Letter</u>