## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re: | Chapter 11 |
| FURIE OPERATING ALASKA, LLC, *et al.*,[1] | Case No. 19-11781 (LSS) |
| Debtors. | (Jointly Administered) |
| | **Re: Docket Nos. 14, 185, 565, 571 & 625** |

## SECOND ORDER (A) AUTHORIZING THE DEBTORS TO ENTER INTO THAT CERTAIN ACQUISITION BY FORECLOSURE AGREEMENT WITH KACHEMAK EXPLORATION, LLC, (B) AUTHORIZING THE PARTIES TO PERFORM THEIR OBLIGATIONS IN CONNECTION THEREWITH AND (C) GRANTING RELATED RELIEF

Upon the motion (the "**Motion**")[2] filed on August 9, 2019 [Docket No. 14] of the debtors and debtors in possession (the "**Debtors**") in the above-captioned chapter 11 cases (these "**Chapter 11 Cases**"), for, *inter alia*, entry of an order, pursuant to sections 105(a), 363, 365, 503 and 507 of the Bankruptcy Code, Bankruptcy Rules 2002, 6004, and 6006(a), and Local Rules 2002-1, 6004-1, and 9013-1, (I)(A) approving bid procedures for the sale of the Debtors' assets, (B) approving stalking horse bid protections, (C) scheduling an auction for, and hearing to approve, the sale of the Debtors' assets, (D) approving the form and manner of notice thereof, (E) approving contract assumption and assignment procedures, and (F) granting related relief and (II)(A) approving the sale of the Debtors' assets free and clear of liens, claims, interests and encumbrances, (B) authorizing the assumption and assignment of executory contracts and unexpired leases and (C) granting related relief; and this Court (as defined below) having entered an order on September 26, 2019 [Docket No. 185], (the "**Bidding Procedures Order**") approving

---

[1] The Debtors, together with the last four digits of each Debtor's federal tax identification number, are: Furie Operating Alaska, LLC (8721); Cornucopia Oil & Gas Company, LLC (9914); and Corsair Oil & Gas LLC (8012). The location of the Debtors' corporate headquarters and the service address for all Debtors is 188 W. Northern Lights Blvd. Suite 620, Anchorage, Alaska 99503

the Bidding Procedures in connection with the Sale of all or substantially all of the Debtors' Assets and attached as **Exhibit 1** to the Bidding Procedures Order (the "**Bidding Procedures**"), including, among other things, the proposed form of notice of the Sale Hearing; and this Court having held a hearing on February 21, 2020 and having entered the *Order Authorizing the Debtors to Enter Into That Certain Acquisition by Foreclosure Agreement with Kachemak Exploration LLC* [Docket No. 565] on February 21, 2020 (the "**First Order**") and the Court having jurisdiction to consider the matters raised in the Motion pursuant to 28 U.S.C. § 1334 and the *Amended Standing Order of Reference from the United States District Court for the District of Delaware*, dated February 29, 2012; and the Court having authority to hear the matters raised in the Motion pursuant to 28 U.S.C. § 157; and venue being proper before this Court pursuant to 28 U.S.C. §§ 1408 and 1409; and this order (the "**Second Order**") constituting a final order within the meaning of 28 U.S.C. § 158(a); and consideration of the Motion and the requested relief being a core proceeding that the Court can determine pursuant to 28 U.S.C. § 157(b)(2)(A), (M), and (O); and due and proper notice of the Motion and opportunity for a hearing on the Motion having been given to the parties listed therein, and it appearing that no other or further notice need be provided; and the Court having reviewed and considered the Motion; and the Court having held a hearing to consider the relief set forth herein on [March 4, 2020] (the "**Hearing**"), at which time all interested parties were offered an opportunity to be heard regarding (i) the Motion, (ii) that certain Acquisition by Foreclosure Agreement dated February 17, 2020, between and among Cornucopia Oil & Gas Company, LLC, Corsair Oil & Gas LLC and Furie Operating Alaska, LLC, as sellers (the "**Sellers**"), and the Acquirer [2] (together with all exhibits, schedules, annexes thereto and all other Definitive

---

[2] Capitalized terms used herein and not otherwise defined have the meanings ascribed to them in the Bidding Procedures Order or the Acquisition by Foreclosure Agreement, as each such term has been defined, *infra*, as applicable.

Documents, the "**Acquisition by Foreclosure Agreement**," or the "**AFA**"), and the transactions

(the "**Transaction**") contemplated by the Acquisition by Foreclosure Agreement; and the Court

having found that the relief requested herein is in the best interests of the Debtors, their creditors,

their estates, and other parties in interest; and the Court having reviewed and considered any

objections to the relief set forth herein (collectively, the "**Objections**")[3]; and any such Objections

having been withdrawn or overruled for the reasons set forth on the record at the Hearing; and

based upon (i) the *Declaration of Scott M. Pinsonnault in Support of Entry of an Order (A)*

*Declaring the Acquirer as the Successful Bidder, (B) Authorizing the Debtors to Enter Into That*

*Certain Acquisition Agreement With the Successful Bidder, (C) Authorizing the Parties to Perform*

*Their Obligations in Connection Therewith; and (D) Granting Related Relief* [Docket No. 540]

(the "**Pinsonnault Declaration**"), (ii) the *Declaration of Lucas Hohnstein in Support of Entry of*

*an Order (A) Declaring the Acquirer as the Successful Bidder, (B) Authorizing the Debtors to*

*Enter Into That Certain Acquisition Agreement With the Successful Bidder, (C) Authorizing the*

*Parties to Perform Their Obligations in Connection Therewith; and (D) Granting Related Relief*

[Docket No. 541], (iii) the *Declaration of David W. Elder in Support of the Proposed Second Order*

*(A) Authorizing the Debtors to Enter Into That Certain Acquisition by Foreclosure Agreement With*

*Kachemak Exploration, LLC, (B) Authorizing the Parties to Perform Their Obligations in*

*Connection Therewith, and (C) Granting Related Relief* [Docket No. 595], and (iv) the evidence

proffered or adduced at the Hearing, and the arguments of Counsel made on the record at the

---

[3] Such Objections include, *inter alia*, objections, joinders or responses filed by (i) *Certain Royalty and Working Interest Owners* [Docket No. 229]; (ii) *Alaska Pipeline Company* [Docket No. 297]; (iii) *Clear Creek Independent School Distri*ct [Docket No. 363]; (iv) *Melody Lenders* [Docket No. 393]; (v) *Certain Overriding Royalty Interest Owners* [Docket No. 433], (vi) *Notice of Alternative Offer* filed by Hex LLC [Docket No. 553] and any other objection related to the AFA, including any exhibit attached thereto, the Transaction, the Bidding Procedures, the Bidding Procedures Order, or this Second Order.

Hearing; and upon all of the proceedings had before the Court; and after due deliberation and sufficient cause appearing therefor,

**Background**

A.      The findings and conclusions set forth herein constitute the Court's findings of fact and conclusions of law pursuant to Bankruptcy Rule 7052, made applicable to this proceeding pursuant to Bankruptcy Rule 9014.  To the extent that any of the following findings of fact constitute conclusions of law, or to the extent that any of the following conclusions of law constitute findings of fact, they are adopted as such.

B.      On August 9, 2019 (the "**Petition Date**"), each of the Debtors filed a voluntary petition for relief under chapter 11 of the Bankruptcy Code in the United States Bankruptcy Court for the District of Delaware (this "**Court**") commencing these Chapter 11 Cases.

C.      These Chapter 11 Cases are procedurally consolidated and jointly administered pursuant to Bankruptcy Rule 1015(b).

D.      The Debtors continue to operate their business and manage their properties as debtors in possession pursuant to Bankruptcy Code sections 1107(a) and 1108.

E.      No trustee, examiner, or other committee has been appointed in these Chapter 11 Cases.

F.      As part of the Debtors' efforts to realize the highest and best value for their businesses, the Court entered the Bidding Procedures Order that established Bidding Procedures for a sale or other transaction involving the Debtors' businesses and scheduled various dates relating to the Auction.  Pursuant to the Bidding Procedures Order, the Debtors established December 2, 2019[4] as the deadline for the submission of bids, December 5, 2019 as the date for

---

[4] As extended to December 4, 2019 by that certain *Notice of Extended Deadline to Submit Qualified Bids* [Docket No. 339].

the Auction, and December 12, 2019[5] as the original date on which the Court would hold the Hearing to approve the Successful Bidder.

**Debtors' Marketing and Sale Process**

G.    The Debtors' marketing and sales process with respect to the Assets afforded a full, fair, and reasonable opportunity for any person or entity to make a higher or otherwise better offer to purchase the Assets.  The Debtors and their professionals conducted a thorough marketing and sale process with respect to the Assets in a fair, good faith, and non-collusive manner reasonably calculated to produce the highest or otherwise best offer for the Assets in accordance with, and have otherwise complied in all respects with, the Bidding Procedures and the Bidding Procedures Order.  Based upon the record of these proceedings, all creditors and other parties in interest and all prospective purchasers have been afforded a reasonable and fair opportunity to bid for the Assets, and more specifically, the Equity Interests.

H.    The solicitation of bids and the Auction were conducted fairly and in good faith, without collusion, and in accordance with the Bidding Procedures Order.

I.    Following the Auction, the Debtors selected HEX, L.L.C. ("**HEX**") as the Successful Bidder with a Bid for $15,000,010.00 (the "**HEX Purchase Price**") as set forth in the *Notice of Auction Results* [Docket No. 377] dated December 6, 2019 (the "**Initial Auction Notice**").  The Debtors assert that HEX failed to meet the conditions of its Bid, including without limitation, the requirement to provide a Good Faith Deposit in the amount of 10% of the HEX Purchase Price and evidence of committed financing by January 10, 2020.

---

[5] As adjourned to January 13, 2020 by that certain *Notice of Adjournment of Sale Hearing* [Docket 429]; as adjourned again to January 27, 2020 by that certain *Notice of Adjournment of Omnibus Hearing* [Docket No. 458]; as cancelled by that certain *Notice of Second Amended Agenda* [Docket No. 492]; as rescheduled for February 11, 2020. See that certain *Notice of Agenda of Matters Scheduled for Hearing* [Docket No. 515]; and, as adjourned to February 20, 2020, *see Notice of Amended Agenda of Matters Scheduled for Hearing* [Docket No. 525], and March 4, 2020, *see Notice of (I) Proposed Sale Approval Order and (II) Assumption and Assignment of Executory Contracts or Unexpired Leases and Cure Amount* [Docket No. 571].

J.        After several weeks of negotiations with HEX to try to reach acceptable documentation with respect to the HEX Bid, the Debtors determined, in the exercise of their fiduciary duties, that HEX was no longer a Qualified Bidder and that HEX was in default with respect to its Bid.

K.        As set forth in the Pinsonnault Declaration, the Debtors notified HEX of certain defaults under its Bid on December 27, 2019 and January 29, 2020.

L.        On February 17, 2020, the Acquirer by and through its shareholders Melody Capital Partners FDB Credit Fund, LLC, Melody Capital Partners Onshore Credit Fund, L.P., Melody Capital Partners Offshore Credit Mini-Master Fund, L.P., Melody Special Situations Offshore Credit Mini-Master Fund, L.P. and any of their affiliated or other entities managed by Melody Capital Partners, LP (collectively, the "**Melody Lenders**", and together with Melody Capital Partners, L.P., "**Melody**") and GFR Holdings, LLC, Vanco Oil & Gas Corp and their respective affiliates (collectively, "**GFR**" and together with Melody, the "**Shareholders**") submitted to the Debtors an executed AFA subject to the conditions set forth therein, including, without limitation, (i) entry of this Second Order and (ii) approval and implementation of the various settlements and stipulations appended thereto as Exhibits C through K (collectively, the "**Settlements & Stipulations**").

M.        The Debtors' board of managers, in consultation with the Debtors' management and professional advisors, reviewed the AFA and determined that the AFA maximizes value, provides greater consideration for the Debtors' estates, including on account of the Settlements & Stipulations, and a necessary path toward consummation of a chapter 11 plan, and that it would be in the best interests of the Debtors and their estates to designate the Acquirer as the Successful Bidder.

N.     As set forth in the Pinsonnault Declaration, on February 18, 2020 the Debtors notified HEX of the Debtors' decision to declare a default under the HEX Bid and pursue an alternate transaction, and thereafter amended the Initial Auction Notice to designate the Acquirer as the Successful Bidder for the Equity Interests in accordance with the Bidding Procedures Order [Docket No. 528] (the "**Amended Auction Notice**").

O.     On February 20, 2020 HEX filed that certain *Notice of Alternative Offer* [Docket No. 553] (the "**HEX Offer**").

P.     On February 20, 2020 this Court held a hearing to consider, *inter alia*, the Motion, the Amended Auction Notice and the HEX Offer. The Court, after affording all parties an opportunity to be heard, and after considering the testimony and evidence presented, entered the First Order on February 21, 2020, thus authorizing the Debtors to enter into the AFA with the Acquirer.

Q.     The AFA submitted by the Acquirer constitutes the highest or otherwise best offer for the Equity Interests, and the Debtors' determination that the AFA, including each of the Settlements & Stipulations set forth therein maximizes value for the benefit of the Debtors' estates and constitutes the highest or otherwise best offer for the Equity Interests, constitutes a valid and sound exercise of the Debtors' business judgment (exercised in consultation with the Prepetition Tax Credit Administrative Agent as the Consultation Party).

R.     The AFA provides fair and reasonable terms for the acquisition of the Equity Interests, and reasonable opportunity has been given to any interested party to make a higher or otherwise better offer for the Equity Interests.  Approval of the Motion and the AFA, and, subject to the occurrence of the Effective Date of the Plan, the prompt consummation of the Transaction contemplated thereby through the Plan, will maximize the value of each of the Debtors' estates

and are in the best interests of the Debtors, their chapter 11 estates, their creditors, and other parties in interest.

S.      The Debtors, the Acquirer and the Acquirer's Shareholders, and each of the parties who have signed the Settlements and Stipulations, as applicable, negotiated and finalized in good faith and at arm's length the AFA, including without limitation the Plan Term Sheet and each of the Settlements and Stipulations, as applicable, to consummate the Transaction through the Plan in accordance with the terms of the Plan Term Sheet and the other exhibits to the AFA.

**Hearings**

T.      The Court conducted a hearing on February 20, 2020 at which time the Court considered the evidence and testimony presented, and the statements and argument of counsel in support of granting the relief requested in the Motion and authorized the Debtors' entry into the AFA.

U.      The Court conducted the Hearing on March 4, 2020 at which time the Court considered (i) the evidence and testimony presented, and the statements and argument of counsel in support of granting the relief requested in the Motion and (ii) final approval of the Debtors' entry into the AFA.

V.      Any objections to the Motion or the relief requested herein that have not been adjourned, withdrawn, or resolved are overruled in all respects on the merits.

**Sound Business Purpose**

W.      The Debtors have demonstrated good, sufficient, and sound business purposes and justifications for entry into the AFA in accordance with the requirements of section 363(b) of the Bankruptcy Code.

X.    Approval of the Debtors' entry into the AFA pursuant to section 363 of the Bankruptcy Code is necessary and appropriate to preserve the value of the Debtors' businesses.

Y.    The proposed Transaction consummated pursuant to the Plan, upon the terms and conditions set forth in the AFA, is the best alternative available to the Debtors for recovering value for the benefit of the Debtors' estates.  The Transaction contemplated by the AFA maximizes the value of the Equity Interests because the Equity Interests are being acquired as part of a going concern business, and the continuity and remaining goodwill value associated with the Equity Interests are being preserved.

Z.    Neither the AFA, including without limitation, the Plan Term Sheet and the Settlements and Stipulations, nor the Transaction contemplated thereunder constitutes a *sub rosa* chapter 11 plan.  The AFA and the Transaction is expressly subject to entry of an order approving the solicitation of votes on the Plan and an order confirming the Plan.  Notwithstanding any terms of the Acquisition Foreclosure Agreement, or any of its exhibits, including the Plan Term Sheet, nothing in this Order approves any provision of any chapter 11 plan, and the rights of all parties in interest in these cases to object to the confirmation of the plan contemplated under the Plan Term Sheet, or to any provision included in such plan, or to any other plan that may be proposed in these cases, is fully reserved.

**Fair Purchase Price**

AA.    The total consideration to be provided by the Acquirer under the AFA is the highest or otherwise best offer received by the Debtors and constitutes (i) fair value, (ii) fair, full, and adequate consideration, (iii) reasonably equivalent value, and (iv) reasonable market value for the Equity Interests for purposes of the Bankruptcy Code, the Uniform Fraudulent Transfer Act, the

Uniform Fraudulent Conveyance Act, and any other applicable laws of the United States, any state, territory, or possession thereof or the District of Columbia.

BB.    The terms of the AFA and the Transaction contemplated therein are fair and reasonable under the circumstances of the Debtors' businesses and these Chapter 11 Cases.

**Notice of the Motion**

CC.    As evidenced by the affidavits of service, notices and publication previously filed with this Court [Docket Nos. 434, 449, 569, 577, 584, 612], and based upon representations of counsel at the Hearing, notice (the "**Notice**") was adequate and sufficient under the circumstances and provided sufficient notice of the Motion, the Bidding Procedures Order, the Auction, the Hearing, the AFA, the First Order, this Second Order, and the proposed Transaction. Notice was provided in accordance with sections 102(1) and 363 of the Bankruptcy Code, Bankruptcy Rules 2002, 9007, 9008, and 9014, and Local Rules 2002-1 and 6004, including to: (i) the U.S. Trustee; (ii) all entities known to have expressed an interest in a transaction with respect to the purchase of the Equity Interests; (iii) counsel to the DIP Agent; (iv) counsel to the Prepetition Agents; (v) counsel to the Melody Lenders; (vi) counsel to the McGinty Lender; (vii) the entities listed on the Consolidated List of Creditors Holding the 30 Largest Unsecured Claims; (viii) the Contract Counterparties; (ix) HEX; (x) all counterparties to the Potentially Assumed Contracts[6] and (xi) all parties who have requested notice under Bankruptcy Rule 2002. The Debtors have complied with all obligations to provide notice of the Motion, the Bidding Procedures Order, the Auction, the Sale Hearing, the AFA, this Second Order, and the proposed Transaction, each as required by the Bidding Procedures Order. The aforementioned notices are

---

[6] For the avoidance of doubt, the counterparties to the Potentially Assumed Contracts includes those counterparties listed on Exhibit A to the *Notice of Assumption and Assignment of Executory Contracts or Unexpired Leases and Cure Amount* [Docket No. 206], as amended [Docket No. 207, 253].

good, sufficient, and appropriate under the circumstances, and no other or further notice of the Motion, the Bidding Procedures Order, the Auction, the Hearing, the AFA, this Second Order, or the proposed Transaction is or shall be required.

DD.    A reasonable opportunity to object and be heard with respect to the AFA, the Transaction, the Motion, and the relief requested herein, including but not limited to the assumption and/or assumption and assignment of the Potentially Assumed Contracts and the amounts of the Cure Claims, has been afforded to all interested parties, including the Notice Parties and the Contract Counterparties.

**No Fraudulent Intent**

EE.    The terms and conditions set forth in the AFA and all ancillary documents filed therewith or described therein are fair and reasonable under the circumstances and were not entered into with the intent to nor for the purpose of, nor do they have the effect of, hindering, delaying or defrauding the Debtors or their creditors under any applicable laws.  None of the Debtors or the Acquirer is entering into the AFA, the ancillary documents filed therewith or described therein or proposing to consummate the Transaction, fraudulently or for the purpose of statutory or common law fraudulent conveyance or fraudulent transfer claims, whether under the Bankruptcy Code or under the laws of the United States, any state, territory, possession thereof or the District of Columbia or any other applicable jurisdiction.

FF.    The Debtors, their management and their boards of directors or equivalent governing bodies and the Acquirer, and its Shareholders, management, board of directors or equivalent governing body, officers, directors, employees, agents, members, managers and representatives actively participated in the process and respectively acted in good faith.  The AFA between the Acquirer and the Sellers was negotiated and entered into based upon arm's-length

bargaining, with representation by counsel and other advisors, without collusion or fraud, without reference to any agreement among bidders, and in good faith as that term is used in sections 363(m) and 364(e) of the Bankruptcy Code.  The Acquirer is entering into the AFA in good faith and is a good faith purchaser within the meaning of section 363(m) of the Bankruptcy Code and the relevant law interpreting such provision, and is therefore entitled to the full protection of section 363(m) and 363(e) of the Bankruptcy Code with respect to its entry into the AFA and the Transaction. Neither the Sellers nor the Acquirer have engaged in any conduct that would cause or permit the AFA or the proposed Transaction to be avoided or that would give rise to money damages pursuant to section 363(n) of the Bankruptcy Code. The Acquirer has not violated section 363(n) of the Bankruptcy Code via any action or inaction.

GG.    None of the Acquirer or any Shareholder is an "insider" of any Debtor, as that term is defined in section 101(31) of the Bankruptcy Code, and nothing herein, the AFA or any other Definitive Document (nor any step or transaction contemplated thereby or hereby), shall cause any Shareholder to be treated as or deemed an "insider", as that term is defined in section 101(31) of the Bankruptcy Code, prior to the Effective Date of the Plan. The Debtors, DIP Agent, the Prepetition Term Loan Administrative Agent, and the Prepetition Tax Credit Administrative Agent agree that no Shareholder shall be deemed an insider of the Debtors for purposes of determining whether it may vote on any chapter 11 plan.  No common identity of directors, officers, members, managers or controlling stockholders exists between the Acquirer or the Shareholders and the Debtors.  No Shareholder is a director, officer, or person in control of, or in partnership with, any Debtor.

**Corporate or Limited Liability Company Authority**

HH.    Upon entry of this Second Order, the Debtors have full corporate or other power and authority to enter into the AFA.

II.    Upon entry of this Second Order and subject to confirmation of the Plan, the Debtors have (i) full corporate or other power and authority to perform all of their obligations under the AFA, (ii) all of the corporate and other power and authority necessary to consummate the Transaction contemplated by the AFA, and (iii) all of the corporate and other power and authority necessary to consummate the Settlements and Stipulations and take all actions necessary to authorize, approve, execute, and deliver the AFA and to consummate the Transaction contemplated by the AFA.  No consents or approvals, other than the occurrence of the Effective Date of the Plan and those expressly provided for herein, in the AFA, the Plan Term Sheet, or the Plan are required for the Debtors to consummate the Transaction. The Acquirer is entitled to exercise all rights it has under the AFA or in connection with the Transaction including, without limitation, any right to terminate the AFA or any Definitive Document, and any right to enforce or seek remedies in connection therewith or with any breach.

**Statutory Predicates**

JJ.    The statutory authorization for the relief granted herein is found in section 363 of the Bankruptcy Code, Bankruptcy Rules 2002, 6004, and 9014, and Local Bankruptcy Rules 2002-1 and 6004-1.

**Retention of Jurisdiction**

KK.    It is necessary and appropriate for the Court to retain jurisdiction to, *inter alia*, interpret and enforce the terms and provisions of the First Order, this Second Order and the AFA, and to adjudicate, if necessary, disputes or claims relating thereto.

**IT IS HEREBY ORDERED, ADJUDGED, AND DECREED AS FOLLOWS:**

1.      The relief described herein is granted.

2.      All objections relating to the Debtors' entry into the AFA or entry of this Second Order have either been resolved as set forth herein or in the AFA or are hereby overruled.

3.      Kachemak Exploration LLC is hereby approved as the Acquirer under the AFA.

4.      In addition to the authority granted in the First Order, the Debtors are hereby authorized, but not directed, to enter into the AFA with the Acquirer and, subject to the occurrence of the Effective Date of the Plan, to transfer the Equity Interests to the Acquirer upon and subject to the terms and conditions set forth in any chapter 11 plan confirmed by this Court.

5.      Subject to the occurrence of the Effective Date of the Plan, each of the Debtors is hereby authorized and directed to perform, consummate, and implement the AFA together with all additional instruments and documents that may be reasonably necessary or desirable to implement the Transaction, and to take any and all further actions as may be necessary or appropriate to the performance of its obligations as contemplated by the AFA, including without limitation the Plan Term Sheet and the Settlements and Stipulations, this Second Order, or to perform its obligations under the AFA or any related agreements.

6.      The Escrow Letter is hereby approved.  Each of the Debtors, and the Acquirer are hereby authorized to enter into and perform, consummate, and implement the Escrow Letter, together with all additional instruments and documents that may be reasonably necessary or desirable to implement such letter and to take any and all further actions as may be necessary or appropriate to the performance of its obligations as contemplated thereby, or to perform its obligations thereunder or any related agreements.

7.      The Debtors are authorized and directed to disburse or return, as applicable, and only in accordance with the AFA, the Bid Procedures Order, the Escrow Agreement and the Escrow Letter, the Good Faith Deposit submitted by the Acquirer.

8.      The Amended Seaport Engagement Letter is hereby approved.

9.      The terms and provisions of the AFA and all related documents necessary to consummate the Transaction, together with the terms and provisions of this Second Order, shall be binding in all respects upon the Debtors, their estates, their creditors, and all parties in interest, including any and all successors and assigns (including, without limitation, any trustee or examiner appointed under the Bankruptcy Code); *provided, however*, that the terms and provisions of the AFA and all such related documents shall only be binding on the Prepetition Tax Credit Administrative Agent to the extent set forth in a written document executed by the Prepetition Tax Credit Administrative Agent in its discretion.  The Acquirer shall be entitled to enforce the terms of the AFA and all related documents necessary to consummate the Transaction without the need for any further order of this Court, except as set forth therein, and the automatic stay is hereby vacated and deemed lifted with respect to any such enforcement by Acquirer (including, without limitation, the sending of any notice or the termination and enforcement of the AFA or any related document or agreement in accordance with its terms).

10.     Subject to Paragraph 12 of this Second Order, the Cure Claims set forth in the Potential Assumption and Assignment Notice shall constitute the only amounts due to the Contract Counterparties under Potentially Assumed Contracts as of the date hereof, and no other defaults exist and no other amounts are due on account of any facts occurring prior to the date hereof.

11.     Subject to the Effective Date of the Plan and the Settlements and Stipulations, entry of this Second Order shall resolve (i) the objections located at Docket No. 229 and Docket No.

417 (the "**RWIO Objections**") filed by Giza Holdings, LLC, Taylor Minerals, LLC, Allen Lawrence Berry, the 2007 Allen Lawrence Berry Trust, and Danny Davis (the "**RWIOs**") and (ii) the objections located at Docket No. 297 and Docket No. 414 (the "**APC Objections**" and, together with the RWIO Objections, the "**Cure Objections**") filed by Alaska Pipeline Company ("**APC**" and, together with the RWIOs, the "**Objectors**") relating to the proposed assumption and/or assumption and assignment of the Potentially Assumed Contracts to which the Objectors are a party.

12.     Good and sufficient notice of the Potentially Assumed Contracts and the Cure Claims set forth in the Potential Assumption and Assignment Notice has been provided to each such Counterparty.  From and after the date hereof, each Counterparty to the Potentially Assumed Contracts is forever barred, estopped, and permanently enjoined from (a) declaring a default by the Debtors or the Acquirer under any such Potentially Assumed Contract based on acts or occurrences arising prior to or existing as of the date hereof, (b) raising or asserting against the Debtors or the Acquirer, or the property of either of them, any assignment fee, default, breach, or claim of pecuniary loss, or condition to assignment, arising under or related to any of the Potentially Assumed Contracts based on acts or occurrences arising prior to or existing as of the date hereof, (c) taking any other action against the Debtors or the Acquirer as a result of any Debtor's financial condition, bankruptcy, or failure to perform any of its obligations under the relevant Potentially Assumed Contract based on acts or occurrences arising prior to or existing as of the date hereof, (d) objecting to the assumption and/or assignment of such Potentially Assumed Contract for purposes of section 365(e)(2)(A)(ii) of the Bankruptcy Code if such party failed to timely object to the assumption or assignment of such Potentially Assumed Contract, or asserting monetary or non-monetary defaults existing as of the date hereof, or (e) objecting to or on the basis

of any adequate assurance within the meaning of sections 365(b)(l)(A) and 365(f)(2) of the Bankruptcy Code on account of any default under any of the Potentially Assumed Contracts based on acts or occurrences arising prior to or existing as of the date hereof.

13.     From the date of the entry of this Second Order, the Debtors (with the consent of the Acquirer) may settle objections to the assumption and/or assumption and assignment of any Potentially Assumed Contract, including to proposed Cure Claims, without any further notice to or action by any party or order of the Court (including by paying any agreed Cure Claims with the consent of the Acquirer), *provided that,* the Debtors shall seek Court approval on notice to assume the current Alaska Pipeline Company contract on terms and conditions set forth in the settlement agreement annexed as Exhibit F to the AFA and such other terms as are acceptable to the Prepetition Term Loan Administrative Agent, DIP Agent, Acquirer, Melody and GFR.

14.     Nothing in this Second Order, the Motion, the Bidding Procedures Order, any Applicable Assumption and Assignment Notice, or any other notice or document is or shall be deemed an admission by the Debtors that any contract is an executory contract or must be assumed and/or assigned pursuant to the AFA or in order to consummate the Transaction.

15.     The assumption and/or assumption and assignment of the Potentially Assumed Contracts will not be effectuated and no Cure Claim, if any, shall be due if the Effective Date of the Plan does not occur and/or Closing does not occur and the AFA is terminated.  Notwithstanding anything to the contrary, the Acquirer may elect to assume or reject any executory contract or unexpired lease from the list of Potentially Assumed Contracts and/or may remove any contract or lease designated as a Key Contract under the AFA from the list of Key Contracts to be assumed or assumed and assigned, as applicable, in which case neither the Acquirer nor the Debtors nor the Reorganized Debtors shall have any obligation to assume or assume and assign such contract or

lease, and no Cure Claim shall be due or payable by the Acquirer, the Debtors or the Reorganized Debtors.

16.    The Debtors are hereby authorized to (a) take such corporate action as may be necessary to implement the provisions of the AFA and any other document executed by the Debtors in connection therewith and (b) execute and file any necessary document with any appropriate secretary of state.

17.    Notwithstanding anything to the contrary in the First Order, this Second Order, the AFA or the Definitive Documents, upon the effective date of a plan effectuating the Transaction described in the AFA, (i) with respect to any claim for fees, costs, or expenses accrued on or after February 1, 2020 and prior to May 29, 2020, each professional shall not be entitled to assert any such claim against the Debtors, the Reorganized Debtors, or the Acquirer in excess of amounts budgeted for such professional in the New Budget and (ii) each professional waives its right to assert any such claim against the Reorganized Debtors or the Acquirer; *provided that* without limiting the Acquirers' right to terminate the AFA for, among other things, and without limitation, failure to comply with the New Budget or the occurrence of the Outside Date, if the AFA or DIP Forbearance Agreement are not terminated, the Acquirer, the DIP Agent and the Debtors agree to work in good faith to attempt to negotiate a revised budget for professional fees in the event of (a) material litigation (other than the resolution of certain claims contemplated as Conditions Precedent under the AFA) or (b) the effective date of a plan of reorganization does not occur on or before May 29, 2020, for the period on and after May 29, 2020.

18.    The Court retains jurisdiction, even after the closing of the Chapter 11 Cases (to the greatest extent allowed by applicable law), with respect to all matters arising from or related

to the enforcement of this Second Order, including, without limitation, the authority to do the following:

(a)    interpret, implement, and enforce the terms and provisions of this Second Order, the AFA, and any other agreement executed in connection therewith;

(b)    resolve any disputes arising under or related to the AFA or the Second Order; and

(c)    adjudicate any and all remaining issues concerning the Debtors' right and authority to assume and/or assume and assign Potentially Assumed Contracts to the Reorganized Debtors or the Acquirer and resolve any objections to Cure Claims or any other objections by non-Debtor counterparties to any additional contracts or leases that the Acquirer may elect, in accordance with the AFA and the Bidding Procedures Order, to become Potentially Assumed Contracts and determine the Acquirer's rights and obligations with respect to such assignment and the existence of any default under any Potentially Assumed Contract; *provided that*, for the avoidance of doubt, any jurisdiction retained under this subsection (c) shall be non-exclusive.

19.    The provisions of this Second Order are non-severable and mutually dependent.

20.    Other than the professionals retained by the Debtors pursuant to orders of this Court, as modified by the terms of the AFA, including without limitation, the Amended Seaport Engagement Letter, the DIP Forbearance Agreement and the New Budget, no brokers were involved in the negotiation of the AFA, and no brokers' commissions shall be due to any person or entity in connection with the Transaction. The Acquirer is not obligated to pay any fee or commission or like payment to any broker, finder, or financial advisor as a result of the consummation of the Transaction.

21.     Nothing in this Second Order or the AFA releases, nullifies, precludes or enjoins the enforcement of any valid police or regulatory liability to a governmental unit to which the Acquirer may be subject to as the post-sale owner or operator of any Asset after the date of entry of this Second Order.  Nothing in this Second Order or the AFA authorizes the transfer or assignment of any governmental (a) license, (b) permit, (c) registration, (d) authorization, or (e) approval, or the discontinuation of any obligation thereunder, without compliance with all applicable legal requirements and approvals under police or regulatory law.  Nothing in this Second Order divests any tribunal of any jurisdiction it may have under police or regulatory law to interpret this Second Order or to adjudicate any defense asserted under this Second Order.

22.     The AFA and any related agreements, documents, or instruments may be modified, amended, or supplemented by the parties thereto, with the consent of the Acquirer, Melody, GFR, the DIP Agent and the Prepetition Term Loan Administrative Agent, in accordance with the terms thereof and, without further order of the Court, so long as any such modification, amendment, or supplement does not have an adverse effect in any material respect on the Debtors' estates.  All modifications, amendments, and supplements to the AFA and any related agreements, documents, or instruments shall be filed with the Court and served on the U.S. Trustee.

23.     The failure specifically to include any particular provisions of the AFA in the First Order or this Second Order shall not diminish or impair the efficacy of such provision, it being the intent of the Court that the AFA and each and every provision, term, and condition thereof be authorized and approved in its entirety, unless otherwise expressly set forth herein.

24.     Notwithstanding anything to the contrary contained herein, nothing in the AFA or this Second Order shall impact any rights, property, interests, claims or defenses that may exist under applicable nonbankruptcy law solely with respect to any valid overriding royalty interests

in the Oil and Gas Leases operated by the Debtors (and/or successors and assigns) belonging to ProAK, LLC, Northern Lights Royalties, LP, Northern Lights Royalties II, LP, Northern Lights Royalties III, LP, Northern Lights Royalties IV, LP and Shawn Bartholomae (collectively, the "ProAK Group"), and all such rights, property, interests, claims and defenses, if any, are retained and preserved by the ProAK Group. Notwithstanding the foregoing, the rights, property, interests, claims or defenses that may exist under applicable nonbankruptcy law in this paragraph do not include the ability to challenge this Second Order or the Transaction approved thereby.

25.     Notwithstanding anything to the contrary herein or in the AFA, (i) consummation of the Transaction is subject to the approval, confirmation, and occurrence of the Effective Date of the Plan, and (ii) except to the extent that the Prepetition Tax Credit Administrative Agent agrees otherwise in a written document signed by the Prepetition Tax Credit Administrative Agent in its discretion, all rights of the Prepetition Tax Credit Administrative Agent are reserved, including, without limitation, the right to object to the Plan, any treatment of the Prepetition Tax Credit Agreement Administrative Agent's debt, or the consummation of the Transaction on any grounds.

26.     Nothing in this Order prejudices HEX regarding the Debtors' allegation that HEX is in default with respect to its Bid, constitutes a finding that HEX is in default, or constitutes a finding that HEX has no defenses or counterclaims to any such allegation, and nothing in this Order shall be used against HEX with respect to its claim to the return of its deposit provided in connection with such Bid. All of the Debtors' rights and HEX's rights with respect to the foregoing are expressly reserved.

27.     To the extent that there is any inconsistency between this Second Order and the AFA, the terms of this Second Order shall govern.

28.    For avoidance of doubt this Second Order shall supplement and not supersede the First Order and all of the terms of the First Order are fully incorporated herein.

Dated: March 6th, 2020
Wilmington, Delaware

LAURIE SELBER SILVERSTEIN
UNITED STATES BANKRUPTCY JUDGE