**Exhibit D**

Organizational Documents for Reorganized Debtors

## **Exhibit D-1**

Fifth Amended and Restated Limited Liability Company Operating Agreement
for Furie Operating Alaska, LLC

[See attached.]

## FIFTH AMENDED AND RESTATED
## LIMITED LIABILITY COMPANY AGREEMENT
## OF
## FURIE OPERATING ALASKA, LLC

This FIFTH AMENDED AND RESTATED LIMITED LIABILITY COMPANY AGREEMENT (the "Agreement") of FURIE OPERATING ALASKA, LLC (the "Company"), a Delaware limited liability company organized under the Delaware Limited Liability Company Act 6 Del. C. § 18-101, et seq. (as amended from time to time, the "Act"), is effective as of _____, 2020 (the "Agreement Date").

## RECITALS

A.      The Company was formed as a Texas limited liability company pursuant to those certain articles of organization filed in the office of the Secretary of State of the State of Texas on December 15, 1999, in accordance with the Texas Business Organizations Code (as amended from time to time, the "TBOC").

B.      The Company was converted to a Delaware limited liability company in accordance with the TBOC and the Act (the "Conversion") and was formed as a Delaware limited liability company pursuant to that certain certificate of formation filed in the office of the Secretary of State of the State of Delaware on the January 25, 2018 (as amended or amended and restated from time to time, the "Certificate").

C.      In connection with the Conversion and filing of the Certificate, CORNUCOPIA OIL & GAS COMPANY, LLC ("Cornucopia"), amended and restated that certain Third Amended and Restated Company Agreement of the Company, dated as of December 10, 2017, which amendment and restatement was effected by that certain Fourth Amended and Restated Limited Liability Company Agreement of the Company, effective as of January 25, 2018 (as amended, the "Previous Agreement").

D.      On August 9, 2020, the Company and certain of its affiliates filed petitions for relief under chapter 11 of title 11 of the United States Code (the "Bankruptcy Code"), with the bankruptcy cases of the Company and certain of its affiliates currently pending in the United States Bankruptcy Court for the District of Delaware and being jointly administered under the caption *In re Furie Operating Alaska, LLC*, No. 19-11781 (LSS) (the "Bankruptcy Case").

E.      Under the terms of that certain Acquisition by Foreclosure Agreement, dated April 19, 2020 (the "AFA"), between, among others, HEX L.L.C. ("HEX") and the Company and that certain Second Amended Joint Plan of Reorganization for the Debtors Under Chapter 11 of the Bankruptcy Code, dated May 6, 2020 (the "Plan"), which was filed in the Bankruptcy Case, the Company proposed to reinstate the equity interests previously issued to Cornucopia on the terms and conditions set forth in the AFA and Plan.

F.      On the date hereof, the Company has reinstated 100% of its issued and outstanding limited liability company interests to Cornucopia in accordance with the AFA and Plan.

1

G.     Cornucopia desires to amend and restate the terms and conditions of the Previous Agreement in their entirety on the terms set forth in this Agreement.

<u>AGREEMENT</u>

In consideration of the covenants and promises contained herein and for other good and valuable consideration, the receipt and adequacy of which are hereby acknowledged, the parties hereto agree as follows:

1.     <u>Agreement</u>.  This Agreement shall be considered the "Limited Liability Company Agreement" of the Company within the meaning of § 18-101(7) of the Act.  To the extent this Agreement is inconsistent in any respect with the Act, this Agreement shall control to the extent permitted by applicable law.

2.     <u>Member</u>.  Cornucopia is the sole member of the Company (the "Member").

3.     <u>Purpose</u>.  The purpose of the Company is to engage in all lawful businesses or activities in which a limited liability company may be engaged under applicable law (including, without limitation, the Act).

4.     <u>Name</u>.  The name of the Company is "Furie Operating Alaska, LLC".

5.     <u>Registered Agent and Principal Office</u>.  The registered office and registered agent of the Company in the State of Delaware shall be as the Member may designate from time to time.  The Company may have such other offices as the Member may designate from time to time.  The mailing address of the Company shall be 188 W. Northern Lights Blvd., Ste. 620, Anchorage, AK 99503 (the "<u>Principal Office</u>").

6.     <u>Term of Company</u>.  The Company shall continue in existence in perpetuity unless its business and affairs are earlier wound up following dissolution at such time as this Agreement may specify.

7.     <u>Management of Company</u>.  The Member shall have full, exclusive and complete power to manage and control the business and affairs of the Company and shall have all of the rights and powers provided to a member of a member-managed limited liability company by law, including the power and authority to execute instruments and documents, to mortgage or dispose of any real property held in the name of the Company, and to take any other actions on behalf of the Company, whether or not such actions are for carrying on the business of the Company in its usual way.

8.     <u>Officers</u>.  The Member may appoint officers of the Company (each an "<u>Officer</u>"), from time to time, with such other titles as the Member may select, including the titles of Chairman, Chief Executive Officer, President, Vice President, Treasurer and Secretary, to act on behalf of the Company.  An Officer shall have such power and authority as the Member may delegate to any such person and need not be a Member of the Company.

9.     <u>Execution of Documents</u>.  Any Officer is authorized, but only and always acting jointly with any one other Officer or any person granted a power of attorney by the Member for

2

such purpose, to sign, execute, acknowledge and deliver, in the name of the Company, deeds, mortgages, bonds, contracts and other documents, instruments and papers, except in cases where the signing and execution thereof shall be expressly delegated by the Member, or by this Agreement, to a certain Officer or agent of the Company.

10.    <u>Banking Resolution.</u>  The Member shall open all banking accounts as the Member deems necessary and enter into any deposit agreements as are required by the financial institution at which such accounts are opened.  The Member and such other persons or entities designated in writing by the Member shall have signing authority with respect to such bank accounts.  Funds deposited into such accounts shall be used only for the business of the Company.

11.    <u>Indemnification of the Member.</u>

(a)    To the fullest extent permitted by applicable law, the Member and any and all of the Member's affiliates (each, an "<u>Indemnitee</u>"), shall be entitled to indemnification from the Company for any loss, damage or claim incurred by such Indemnitee by reason of any act or omission performed or omitted by such Indemnitee in good faith on behalf of the Company and in a manner reasonably believed to be within the scope of the authority conferred on such Indemnitee by this Agreement, except that no Indemnitee shall be entitled to be indemnified in respect of any loss, damage or claim incurred by such Indemnitee by reason of such Indemnitee's gross negligence, fraud or willful misconduct with respect to such acts or omissions; provided, however, that any indemnity under this subsection (a) by the Company shall be provided out of and to the extent of Company assets only, and the Member shall not have personal liability on account thereof.

(b)    To the fullest extent permitted by applicable law, expenses (including legal fees) incurred by an Indemnitee in defending any threatened or pending claim, demand, action, suit or proceeding shall, from time to time, be advanced by the Company prior to the final disposition of such claim, demand, action, suit or proceeding upon receipt by the Company of an undertaking by or on behalf of the Indemnitee to repay such amount if it shall be determined that the Indemnitee is not entitled to be indemnified as authorized in this Section 11.

(c)    For purposes of the definition of "Indemnitee" used above, "affiliate" means a person or entity who, with respect to the Member: (a) directly or indirectly controls, is controlled by or is under common control with the Member; (b) owns or controls 10 percent or more of the outstanding voting securities of the Member; (c) is an officer, director, shareholder, partner or member of the Member; (d) if the Member is an officer, director, shareholder, partner or member of any entity, the entity for which the Member acts in any such capacity; or (e) is an Officer.

12.    <u>Liability.</u>  No Indemnitee shall be personally liable, responsible, accountable in damages or otherwise to the Company for any act or omission performed or omitted by such Indemnitee in connection with the Company or its business.  The Member's liability for the debts and obligations of the Company shall be limited as set forth in the Act and other applicable law.

13.    <u>Reimbursable Expenses.</u>  The Company will reimburse the Member for all actual out-of-pocket third-party expenses incurred in connection with the carrying out of the duties set forth in this Agreement.

14.    <u>Records.</u>  The Member shall keep or cause to be kept at the Principal Office of the Company the following: (a) a written record of the full name and business, residence or mailing address of the Member; (b) a copy of the initial Certificate of Formation and all amendments thereto; (c) copies of all written limited liability company agreements and all amendments to such agreements, including any prior written limited liability company agreements no longer in effect; (d) copies of any written and signed promises by the Member to make capital contributions to the Company; (e) copies of the Company's federal, state and local income tax returns and reports, if any, for the three most recent years; (f) copies of any prepared financial statements of the Company for the three most recent years; and (g) minutes of every meeting as well as any written consents or actions taken without a meeting.

15.    <u>Dissolution.</u>  The Company shall be dissolved upon the election of the Member.  A withdrawal event with respect to the Member shall not dissolve the Company, unless any assignees of the Member's interest do not elect to continue the Company and admit a member within 90 days of such withdrawal event.

16.    <u>Filing Upon Dissolution.</u>  As soon as possible following the dissolution of the Company, the Member shall execute and file all notices and other documents required under the Act and any other applicable law.

17.    <u>Liquidation.</u>  Upon dissolution of the Company, it shall be wound up and liquidated as rapidly as business circumstances permit, the Member shall act as the liquidating trustee, and the assets of the Company shall be liquidated and the proceeds thereof shall be paid (to the extent permitted by applicable law) in the following order: (a) first, to creditors, including the Member if the Member is a creditor, in the order and priority required by applicable law; (b) second, to a reserve for contingent liabilities to be distributed at the time and in the manner as the liquidating trustee determines in its sole discretion; and (c) third, to the Member.

18.    <u>Severability.</u>  If any provision of this Agreement shall be conclusively determined by a court of competent jurisdiction to be invalid or unenforceable to any extent, the remainder of this Agreement shall not be affected thereby.

19.    <u>Binding Effect.</u>  Except as otherwise provided herein, this Agreement shall inure to benefit of and be binding upon the Member and its respective successor sand assigns.

20.    <u>Titles and Captions.</u>  All article, section and paragraph titles and captions contained in this Agreement are for convenience only and are not a part of the context hereof.

21.    <u>Pronouns and Plurals.</u>  All pronouns and any variations thereof are deemed to refer to the masculine, feminine, neuter, singular or plural as the identity of the appropriate person may require.

DM_US 163757064-6.091621.0014

22.    <u>No Third-Party Rights.</u>  Except as expressly provided herein, including but not limited to <u>Section 28</u>, this Agreement is intended to create enforceable rights between the parties hereto only, and creates no rights in, or obligations to, any other persons.

23.    <u>Amendments.</u>  This Agreement may not be amended except by a written document executed by the Member and the Company.

24.    <u>Creditors.</u>  Except as expressly provided herein, including but not limited to <u>Section 28</u>, none of the provisions of this Agreement shall be for the benefit of or enforceable by any creditors of the Company.

25.    <u>Entire Agreement.</u>  The Agreement constitutes the entire agreement of the parties hereto with respect to the subject matter hereof and supersedes any and all prior and contemporaneous contracts, understandings, negotiations and agreements with respect to the Company and the subject matter hereof, whether oral or written.

26.    <u>UCC Article 8 Opt-In.</u>  The Company hereby irrevocably elects that all limited liability company interests (expressed in common units) in the Company (the "<u>Ownership Interests</u>") shall be securities governed by Article 8 of the Uniform Commercial Code as in effect in the State of Delaware or any other applicable jurisdiction.  Each certificate evidencing Ownership Interests shall bear the following legend: "THIS CERTIFICATE EVIDENCES AN INTEREST IN FURIE OPERATING ALASKA, LLC AND SHALL BE A SECURITY GOVERNED BY ARTICLE 8 OF THE UNIFORM COMMERCIAL CODE AS IN EFFECT IN THE STATE OF DELAWARE AND, TO THE EXTENT PERMITTED BY APPLICABLE LAW, ARTICLE 8 OF THE UNIFORM COMMERCIAL CODE OF EACH OTHER APPLICABLE JURISDICTION."  No amendment to this section shall be effective until all outstanding Ownership Interest certificates have been surrendered to the Company for cancellation.  Any such certificates shall be recorded in a register thereof maintained by the Company.

27.    <u>Certificated Interests.</u>  The Ownership Interests shall be represented by certificates substantially in the form attached hereto as <u>Exhibit A</u>.

28.    <u>Transferability.</u>  Notwithstanding anything contained herein to the contrary, each member of the Company shall be permitted to pledge or hypothecate any or all of its Ownership Interests, including all interests, economic rights, control rights and status rights as a member, to any lender to the Company or an affiliate of the Company or any agent acting on such lender's behalf, and any transfer of such Ownership Interests pursuant to any such lender's (or agent's) exercise of remedies in connection with any such pledge or hypothecation shall be permitted under this Agreement with no further action or approval required hereunder.  Notwithstanding anything contained herein to the contrary, upon a default under the financing giving rise to any pledge or hypothecation of Ownership Interests, the lender (or agent) shall have the right, as set forth in the applicable pledge or hypothecation agreement, and without further approval of any member and without becoming a member, to exercise the membership/partnership voting rights of the member granting such pledge or hypothecation.  Notwithstanding anything contained herein to the contrary, and without complying with any other procedures set forth in this Agreement, upon the exercise of remedies in connection with a pledge or hypothecation, (a) the lender (or agent) or transferee of

5

such lender (or agent), as the case may be, upon its election to do so, shall become a member under this Agreement and shall succeed to all of the rights and powers, including the right to participate in the management of the business and affairs of the Company, and shall be bound by all of the obligations, of a member under this Agreement without taking any further action on the part of such lender (or agent) or transferee, as the case may be, and (b) following such exercise of remedies, the pledging member shall cease to be a member and shall have no further rights or powers under this Agreement. The execution and delivery of this Agreement by a member shall constitute any necessary approval of such member under the Act to the foregoing provisions of this Section 28. This Section 28 may not be amended or modified so long as any of the Ownership Interests are subject to a pledge or hypothecation without the pledgee's (or the transferee of such pledgee's) prior written consent. Each recipient of a pledge or hypothecation of the Ownership Interests are intended to be express and intended beneficiaries of this Section 28.

29.    No Partition Action. Neither the Member nor any former Member shall have any right to maintain any action for partition with respect to the property of the Company.

30.    Governing Law. The validity and enforceability of this Agreement shall be governed by and construed in accordance with the laws of the State of Delaware without regard to otherwise governing principles of conflicts of law.

31.    Counterparts. This Agreement may be executed in any number of counterparts, any of which may be delivered via facsimile or PDF, each of which will be deemed to be an original and all of which will constitute one agreement, binding on all parties hereto.

[*Signature Page Follows*]

IN WITNESS WHEREOF, the parties hereto have duly executed this Agreement as of the Agreement Date.

**MEMBER:**

**CORNUCOPIA OIL & GAS COMPANY, LLC**

By: _____
Name:
Its:    Authorized Signatory

*[Signature Page to the Fifth A&R LLC Agreement of Furie Operating Alaska, LLC]*

**<u>EXHIBIT A</u>**

[*See attached.*]

Certificate No. _____

### FURIE OPERATING ALASKA, LLC
### a Delaware Limited Liability Company
Membership Interest Certificate

This certifies that **CORNUCOPIA OIL & GAS COMPANY, LLC** is the owner of *One Hundred (100)* fully paid common units of Furie Operating Alaska, LLC (the "Company"), to the extent and as described in the LLC Agreement (as defined below), in the capacity of the Member of the Company.

THIS CERTIFICATE EVIDENCES AN INTEREST IN FURIE OPERATING ALASKA, LLC AND SHALL BE A SECURITY GOVERNED BY ARTICLE 8 OF THE UNIFORM COMMERCIAL CODE AS IN EFFECT IN THE STATE OF DELAWARE AND, TO THE EXTENT PERMITTED BY APPLICABLE LAW, ARTICLE 8 OF THE UNIFORM COMMERCIAL CODE OF EACH OTHER APPLICABLE JURISDICTION.

This Certificate shall be governed by and constructed in accordance with the laws of the State of Delaware without regard to otherwise governing principles of conflicts of law.

IN WITNESS WHEREOF, the said Company has caused this Certificate to be signed by its duly authorized officer this _____, 20_____.

### FURIE OPERATING ALASKA, LLC

By: _____
Name:
Its:     Authorized Signatory

**CAPITALIZED TERMS USED AND NOT OTHERWISE DEFINED HEREIN ARE USED AS DEFINED IN THAT CERTAIN FIFTH AMENDED AND RESTATED LIMITED LIABILITY COMPANY AGREEMENT OF THE COMPANY, DATED AS OF _____, 2020 (AS THE SAME MAY BE AMENDED OR RESTATED FROM TIME TO TIME, THE "LLC AGREEMENT").**

**THE OWNERSHIP INTERESTS REPRESENTED BY THIS CERTIFICATE HAVE NOT BEEN REGISTERED UNDER THE SECURITIES ACT OF 1933, AS AMENDED (THE "ACT"), OR THE SECURITIES LAWS OF ANY STATE AND MAY NOT BE SOLD OR TRANSFERRED IN THE ABSENCE OF AN EFFECTIVE REGISTRATION STATEMENT UNDER THE ACT AND SAID LAWS OR AN EXEMPTION FROM THE REGISTRATION REQUIREMENTS THEREOF.**

**THE OWNERSHIP INTERESTS REPRESENTED HEREBY ARE, AND THIS CERTIFICATE SHALL IN ALL RESPECTS BE, SUBJECT TO RESTRICTIONS ON TRANSFER AND CERTAIN OTHER AGREEMENTS SET FORTH IN THE LLC AGREEMENT. A COPY OF SUCH AGREEMENT SHALL BE FURNISHED WITHOUT CHARGE TO THE HOLDER HEREOF UPON WRITTEN REQUEST.**

## **Exhibit D-2**

Fifth Amended and Restated Limited Liability Company Operating Agreement
for Cornucopia Oil & Gas Company, LLC


[See attached.]

# FIFTH AMENDED AND RESTATED
## LIMITED LIABILITY COMPANY AGREEMENT
### OF
## CORNUCOPIA OIL & GAS COMPANY, LLC

This FIFTH AMENDED AND RESTATED LIMITED LIABILITY COMPANY AGREEMENT (the "Agreement") of CORNUCOPIA OIL & GAS COMPANY, LLC (the "Company"), a Delaware limited liability company organized under the Delaware Limited Liability Company Act 6 Del. C. § 18-101, et seq. (as amended from time to time, the "Act"), is effective as of _____, 2020 (the "Agreement Date").

## RECITALS

A.     The Company was formed as a Texas limited liability company pursuant to those certain articles of organization filed in the office of the Secretary of State of the State of Texas on July 14, 2006, in accordance with the Texas Business Organizations Code (as amended from time to time, the "TBOC").

B.     The Company was converted to a Delaware limited liability company in accordance with the TBOC and the Act (the "Conversion") and was formed as a Delaware limited liability company pursuant to that certain certificate of formation filed in the office of the Secretary of State of the State of Delaware on January 25, 2018 (as amended or amended and restated from time to time, the "Certificate").

C.     In connection with the Conversion and filing of the Certificate, BRUTUS AG (F/K/A DEUTSCHE OEL & GAS AG), the prior member of the Company (the "Prior Member"), amended and restated that certain Third Amended and Restated Company Agreement of the Company, dated as of December 10, 2017, which amendment and restatement was effected by that certain Fourth Amended and Restated Limited Liability Company Agreement of the Company, dated as of January 25, 2018 (as amended, the "Previous Agreement").

D.     On August 9, 2020, the Company and certain of its affiliates filed petitions for relief under chapter 11 of title 11 of the United States Code (the "Bankruptcy Code"), with the bankruptcy cases of the Company and certain of its affiliates currently pending in the United States Bankruptcy Court for the District of Delaware and being jointly administered under the caption *In re Furie Operating Alaska, LLC*, No. 19-11781 (LSS) (the "Bankruptcy Case").

E.     Under the terms of that certain Acquisition by Foreclosure Agreement, dated April 19, 2020 (the "AFA"), between, among others, HEX L.L.C. ("HEX") and the Company and that certain Second Amended Joint Plan of Reorganization for the Debtors Under Chapter 11 of the Bankruptcy Code, dated May 6, 2020 (the "Plan"), which was filed in the Bankruptcy Case, the Company proposed to cancel its existing equity interests previously issued to the Prior Member and issue new equity interests to HEX or its designated affiliate on the terms and conditions set forth in the AFA and Plan.

F.     On the date hereof, the Company has issued 100% of its newly issued and outstanding limited liability company interests to HEX Cook Inlet LLC ("HEX Cook Inlet") in accordance with the AFA and Plan (the "New Equity Issuance").

1

G.      In connection with the New Equity Issuance, and the transactions contemplated under the AFA and Plan, HEX Cook Inlet desires to amend and restate the terms and conditions of the Previous Agreement in their entirety on the terms set forth in this Agreement.

<u>AGREEMENT</u>

In consideration of the covenants and promises contained herein and for other good and valuable consideration, the receipt and adequacy of which are hereby acknowledged, the parties hereto agree as follows:

1.      <u>Agreement.</u>  This Agreement shall be considered the "Limited Liability Company Agreement" of the Company within the meaning of § 18-101(7) of the Act.  To the extent this Agreement is inconsistent in any respect with the Act, this Agreement shall control to the extent permitted by applicable law.

2.      <u>Member.</u>  HEX Cook Inlet is the sole member of the Company (the "<u>Member</u>").

3.      <u>Purpose.</u>  The purpose of the Company is to engage in all lawful businesses or activities in which a limited liability company may be engaged under applicable law (including, without limitation, the Act).

4.      <u>Name.</u>  The name of the Company is "Cornucopia Oil & Gas Company, LLC".

5.      <u>Registered Agent and Principal Office.</u>  The registered office and registered agent of the Company in the State of Delaware shall be as the Member may designate from time to time.  The Company may have such other offices as the Member may designate from time to time.  The mailing address of the Company shall be 188 W. Northern Lights Blvd., Ste. 620, Anchorage, AK 99503 (the "<u>Principal Office</u>").

6.      <u>Term of Company.</u>  The Company shall continue in existence in perpetuity unless its business and affairs are earlier wound up following dissolution at such time as this Agreement may specify.

7.      <u>Management of Company.</u>  The Member shall have full, exclusive and complete power to manage and control the business and affairs of the Company and shall have all of the rights and powers provided to a member of a member-managed limited liability company by law, including the power and authority to execute instruments and documents, to mortgage or dispose of any real property held in the name of the Company, and to take any other actions on behalf of the Company, whether or not such actions are for carrying on the business of the Company in its usual way.

8.      <u>Officers.</u>  The Member may appoint officers of the Company (each an "<u>Officer</u>"), from time to time, with such other titles as the Member may select, including the titles of Chairman, Chief Executive Officer, President, Vice President, Treasurer and Secretary, to act on behalf of the Company.  An Officer shall have such power and authority as the Member may delegate to any such person and need not be a Member of the Company.

2

9.      <u>Execution of Documents.</u>  Any Officer is authorized, but only and always acting jointly with any one other Officer or any person granted a power of attorney by the Member for such purpose, to sign, execute, acknowledge and deliver, in the name of the Company, deeds, mortgages, bonds, contracts and other documents, instruments and papers, except in cases where the signing and execution thereof shall be expressly delegated by the Member, or by this Agreement, to a certain Officer or agent of the Company.

10.     <u>Banking Resolution.</u>  The Member shall open all banking accounts as the Member deems necessary and enter into any deposit agreements as are required by the financial institution at which such accounts are opened.  The Member and such other persons or entities designated in writing by the Member shall have signing authority with respect to such bank accounts.  Funds deposited into such accounts shall be used only for the business of the Company.

11.     <u>Indemnification of the Member.</u>

(a)     To the fullest extent permitted by applicable law, the Member and any and all of the Member's affiliates (each, an "<u>Indemnitee</u>"), shall be entitled to indemnification from the Company for any loss, damage or claim incurred by such Indemnitee by reason of any act or omission performed or omitted by such Indemnitee in good faith on behalf of the Company and in a manner reasonably believed to be within the scope of the authority conferred on such Indemnitee by this Agreement, except that no lndemnitee shall be entitled to be indemnified in respect of any loss, damage or claim incurred by such Indemnitee by reason of such Indemnitee's gross negligence, fraud or willful misconduct with respect to such acts or omissions; provided, however, that any indemnity under this subsection (a) by the Company shall be provided out of and to the extent of Company assets only, and the Member shall not have personal liability on account thereof.

(b)     To the fullest extent permitted by applicable law, expenses (including legal fees) incurred by an Indemnitee in defending any threatened or pending claim, demand, action, suit or proceeding shall, from time to time, be advanced by the Company prior to the final disposition of such claim, demand, action, suit or proceeding upon receipt by the Company of an undertaking by or on behalf of the Indemnitee to repay such amount if it shall be determined that the Indemnitee is not entitled to be indemnified as authorized in this Section 11.

(c)     For purposes of the definition of "Indemnitee" used above, "affiliate" means a person or entity who, with respect to the Member: (a) directly or indirectly controls, is controlled by or is under common control with the Member; (b) owns or controls 10 percent or more of the outstanding voting securities of the Member; (c) is an officer, director, shareholder, partner or member of the Member; (d) if the Member is an officer, director, shareholder, partner or member of any entity, the entity for which the Member acts in any such capacity; or (e) is an Officer.

12.     <u>Liability.</u>  No Indemnitee shall be personally liable, responsible, accountable in damages or otherwise to the Company for any act or omission performed or omitted by such Indemnitee in connection with the Company or its business.  The Member's liability for the debts and obligations of the Company shall be limited as set forth in the Act and other applicable law.

13.    <u>Reimbursable Expenses.</u>  The Company will reimburse the Member for all actual out-of-pocket third-party expenses incurred in connection with the carrying out of the duties set forth in this Agreement.

14.    <u>Records.</u>  The Member shall keep or cause to be kept at the Principal Office of the Company the following: (a) a written record of the full name and business, residence or mailing address of the Member; (b) a copy of the initial Certificate of Formation and all amendments thereto; (c) copies of all written limited liability company agreements and all amendments to such agreements, including any prior written limited liability company agreements no longer in effect; (d) copies of any written and signed promises by the Member to make capital contributions to the Company; (e) copies of the Company's federal, state and local income tax returns and reports, if any, for the three most recent years; (f) copies of any prepared financial statements of the Company for the three most recent years; and (g) minutes of every meeting as well as any written consents or actions taken without a meeting.

15.    <u>Dissolution.</u>  The Company shall be dissolved upon the election of the Member.  A withdrawal event with respect to the Member shall not dissolve the Company, unless any assignees of the Member's interest do not elect to continue the Company and admit a member within 90 days of such withdrawal event.

16.    <u>Filing Upon Dissolution.</u>  As soon as possible following the dissolution of the Company, the Member shall execute and file all notices and other documents required under the Act and any other applicable law.

17.    <u>Liquidation.</u>  Upon dissolution of the Company, it shall be wound up and liquidated as rapidly as business circumstances permit, the Member shall act as the liquidating trustee, and the assets of the Company shall be liquidated and the proceeds thereof shall be paid (to the extent permitted by applicable law) in the following order: (a) first, to creditors, including the Member if the Member is a creditor, in the order and priority required by applicable law; (b) second, to a reserve for contingent liabilities to be distributed at the time and in the manner as the liquidating trustee determines in its sole discretion; and (c) third, to the Member.

18.    <u>Severability.</u>  If any provision of this Agreement shall be conclusively determined by a court of competent jurisdiction to be invalid or unenforceable to any extent, the remainder of this Agreement shall not be affected thereby.

19.    <u>Binding Effect.</u>  Except as otherwise provided herein, this Agreement shall inure to benefit of and be binding upon the Member and its respective successor sand assigns.

20.    <u>Titles and Captions.</u>  All article, section and paragraph titles and captions contained in this Agreement are for convenience only and are not a part of the context hereof.

21.    <u>Pronouns and Plurals.</u>  All pronouns and any variations thereof are deemed to refer to the masculine, feminine, neuter, singular or plural as the identity of the appropriate person may require.

4

22.    <u>No Third-Party Rights.</u>  Except as expressly provided herein, including but not limited to <u>Section 28</u>, this Agreement is intended to create enforceable rights between the parties hereto only, and creates no rights in, or obligations to, any other persons.

23.    <u>Amendments.</u>  This Agreement may not be amended except by a written document executed by the Member and the Company.

24.    <u>Creditors.</u>  Except as expressly provided herein, including but not limited to <u>Section 28</u>, none of the provisions of this Agreement shall be for the benefit of or enforceable by any creditors of the Company.

25.    <u>Entire Agreement.</u>  The Agreement constitutes the entire agreement of the parties hereto with respect to the subject matter hereof and supersedes any and all prior and contemporaneous contracts, understandings, negotiations and agreements with respect to the Company and the subject matter hereof, whether oral or written.

26.    <u>UCC Article 8 Opt-In.</u>  The Company hereby irrevocably elects that all limited liability company interests (expressed in common units) in the Company (the "<u>Ownership Interests</u>") shall be securities governed by Article 8 of the Uniform Commercial Code as in effect in the State of Delaware or any other applicable jurisdiction.  Each certificate evidencing Ownership Interests shall bear the following legend: "THIS CERTIFICATE EVIDENCES AN INTEREST IN CORNUCOPIA OIL & GAS COMPANY, LLC AND SHALL BE A SECURITY GOVERNED BY ARTICLE 8 OF THE UNIFORM COMMERCIAL CODE AS IN EFFECT IN THE STATE OF DELAWARE AND, TO THE EXTENT PERMITTED BY APPLICABLE LAW, ARTICLE 8 OF THE UNIFORM COMMERCIAL CODE OF EACH OTHER APPLICABLE JURISDICTION."  No amendment to this section shall be effective until all outstanding Ownership Interest certificates have been surrendered to the Company for cancellation.  Any such certificates shall be recorded in a register thereof maintained by the Company.

27.    <u>Certificated Interests.</u>  The Ownership Interests shall be represented by certificates substantially in the form attached hereto as <u>Exhibit A</u>.

28.    <u>Transferability</u>.  Notwithstanding anything contained herein to the contrary, each member of the Company shall be permitted to pledge or hypothecate any or all of its Ownership Interests, including all interests, economic rights, control rights and status rights as a member, to any lender to the Company or an affiliate of the Company or any agent acting on such lender's behalf, and any transfer of such Ownership Interests pursuant to any such lender's (or agent's) exercise of remedies in connection with any such pledge or hypothecation shall be permitted under this Agreement with no further action or approval required hereunder.  Notwithstanding anything contained herein to the contrary, upon a default under the financing giving rise to any pledge or hypothecation of Ownership Interests, the lender (or agent) shall have the right, as set forth in the applicable pledge or hypothecation agreement, and without further approval of any member and without becoming a member, to exercise the membership/partnership voting rights of the member granting such pledge or hypothecation.  Notwithstanding anything contained herein to the contrary, and without complying with any other procedures set forth in this Agreement, upon the exercise of remedies in connection with a pledge or hypothecation, (a) the lender (or agent) or transferee of

5

such lender (or agent), as the case may be, upon its election to do so, shall become a member under this Agreement and shall succeed to all of the rights and powers, including the right to participate in the management of the business and affairs of the Company, and shall be bound by all of the obligations, of a member under this Agreement without taking any further action on the part of such lender (or agent) or transferee, as the case may be, and (b) following such exercise of remedies, the pledging member shall cease to be a member and shall have no further rights or powers under this Agreement.  The execution and delivery of this Agreement by a member shall constitute any necessary approval of such member under the Act to the foregoing provisions of this <u>Section 28</u>.  This <u>Section 28</u> may not be amended or modified so long as any of the Ownership Interests are subject to a pledge or hypothecation without the pledgee's (or the transferee of such pledgee's) prior written consent.  Each recipient of a pledge or hypothecation of the Ownership Interests are intended to be express and intended beneficiaries of this <u>Section 28</u>.

29.    <u>No Partition Action.</u>  Neither the Member nor any former Member shall have any right to maintain any action for partition with respect to the property of the Company.

30.    <u>Governing Law.</u>  The validity and enforceability of this Agreement shall be governed by and construed in accordance with the laws of the State of Delaware without regard to otherwise governing principles of conflicts of law.

31.    <u>Counterparts.</u>  This Agreement may be executed in any number of counterparts, any of which may be delivered via facsimile or PDF, each of which will be deemed to be an original and all of which will constitute one agreement, binding on all parties hereto.

*[Signature Page Follows]*

DM_US 163757063-7.091621.0014

IN WITNESS WHEREOF, the parties hereto have duly executed this Agreement as of the Agreement Date.

**MEMBER:**

**HEX COOK INLET LLC**


By: _____
Name:  John Hendrix
Title:   Authorized Signatory

# **EXHIBIT A**

[*See attached.*]

Certificate No. ____

## CORNUCOPIA OIL & GAS COMPANY, LLC
### a Delaware Limited Liability Company
Membership Interest Certificate

This certifies that **HEX COOK INLET LLC** is the owner of *One Hundred (100)* fully paid common units of Cornucopia Oil & Gas Company, LLC (the "<u>Company</u>"), to the extent and as described in the LLC Agreement (as defined below), in the capacity of the Member of the Company.

THIS CERTIFICATE EVIDENCES AN INTEREST IN CORNUCOPIA OIL & GAS COMPANY, LLC AND SHALL BE A SECURITY GOVERNED BY ARTICLE 8 OF THE UNIFORM COMMERCIAL CODE AS IN EFFECT IN THE STATE OF DELAWARE AND, TO THE EXTENT PERMITTED BY APPLICABLE LAW, ARTICLE 8 OF THE UNIFORM COMMERCIAL CODE OF EACH OTHER APPLICABLE JURISDICTION.

This Certificate shall be governed by and constructed in accordance with the laws of the State of Delaware without regard to otherwise governing principles of conflicts of law.

IN WITNESS WHEREOF, the said Company has caused this Certificate to be signed by its duly authorized officer this _____, 2020.

**CORNUCOPIA OIL & GAS COMPANY, LLC**

By: _____
Name: _____
Title: _____

**CAPITALIZED TERMS USED AND NOT OTHERWISE DEFINED HEREIN ARE USED AS DEFINED IN THAT CERTAIN FIFTH AMENDED AND RESTATED LIMITED LIABILITY COMPANY AGREEMENT OF THE COMPANY, DATED AS OF _____, 2020 (AS THE SAME MAY BE AMENDED OR RESTATED FROM TIME TO TIME, THE "<u>LLC AGREEMENT</u>").**

**THE OWNERSHIP INTERESTS REPRESENTED BY THIS CERTIFICATE HAVE NOT BEEN REGISTERED UNDER THE SECURITIES ACT OF 1933, AS AMENDED (THE "<u>ACT</u>"), OR THE SECURITIES LAWS OF ANY STATE AND MAY NOT BE SOLD OR TRANSFERRED IN THE ABSENCE OF AN EFFECTIVE REGISTRATION STATEMENT UNDER THE ACT AND SAID LAWS OR AN EXEMPTION FROM THE REGISTRATION REQUIREMENTS THEREOF.**

**THE OWNERSHIP INTERESTS REPRESENTED HEREBY ARE, AND THIS CERTIFICATE SHALL IN ALL RESPECTS BE, SUBJECT TO RESTRICTIONS ON TRANSFER AND CERTAIN OTHER AGREEMENTS SET FORTH IN THE LLC AGREEMENT. A COPY OF SUCH AGREEMENT SHALL BE FURNISHED WITHOUT CHARGE TO THE HOLDER HEREOF UPON WRITTEN REQUEST.**

**Exhibit D-3**

Third Amended and Restated Limited Liability Company Operating Agreement
for Corsair Oil & Gas LLC

[See attached.]

# THIRD AMENDED AND RESTATED
# LIMITED LIABILITY COMPANY AGREEMENT
## OF
# CORSAIR OIL & GAS LLC

This THIRD AMENDED AND RESTATED LIMITED LIABILITY COMPANY AGREEMENT (the "Agreement") of CORSAIR OIL & GAS LLC (the "Company"), a Delaware limited liability company organized under the Delaware Limited Liability Company Act 6 Del. C. § 18-101, et seq. (as amended from time to time, the "Act"), is effective as of _____, 2020 (the "Agreement Date").

## RECITALS

A.    The Company was formed as a Texas limited liability company pursuant to that certain certificate of formation filed in the office of the Secretary of State of the State of Texas on June 26, 2014, in accordance with the Texas Business Organizations Code (as amended from time to time, the "TBOC").

B.    The Company was converted to a Delaware limited liability company in accordance with the TBOC and the Act (the "Conversion") and was formed as a Delaware limited liability company pursuant to that certain certificate of formation filed in the office of the Secretary of State of the State of Delaware on January 25, 2018 (as amended or amended and restated from time to time, the "Certificate").

C.    In connection with the Conversion and filing of the Certificate, BRUTUS AG (F/K/A DEUTSCHE OEL & GAS AG), the prior member of the Company (the "Prior Member"), amended and restated that certain First Amended and Restated Company Agreement of the Company, dated as of January 4, 2018, which amendment and restatement was effected by that certain Second Amended and Restated Limited Liability Company Agreement of the Company, dated as of January 25, 2018 (as amended, the "Previous Agreement").

D.    On August 9, 2020, the Company and certain of its affiliates filed petitions for relief under chapter 11 of title 11 of the United States Code (the "Bankruptcy Code"), with the bankruptcy cases of the Company and certain of its affiliates currently pending in the United States Bankruptcy Court for the District of Delaware and being jointly administered under the caption *In re Furie Operating Alaska, LLC*, No. 19-11781 (LSS) (the "Bankruptcy Case").

E.    Under the terms of that certain Acquisition by Foreclosure Agreement, dated April 19, 2020 (the "AFA"), between, among others, HEX L.L.C. ("HEX") and the Company and that certain Second Amended Joint Plan of Reorganization for the Debtors Under Chapter 11 of the Bankruptcy Code, dated May 6, 2020 (the "Plan"), which was filed in the Bankruptcy Case, the Company proposed to cancel its existing equity interests previously issued to the Prior Member and issue new equity interests to HEX or its designated affiliate on the terms and conditions set forth in the AFA and Plan.

F.    On the date hereof, the Company has issued 100% of its newly issued and outstanding limited liability company interests to HEX Cook Inlet LLC ("HEX Cook Inlet") in accordance with the AFA and Plan (the "New Equity Issuance").

1

G.    In connection with the New Equity Issuance, and the transactions contemplated under the AFA and Plan, HEX Cook Inlet desires to amend and restate the terms and conditions of the Previous Agreement in their entirety on the terms set forth in this Agreement.

<u>AGREEMENT</u>

In consideration of the covenants and promises contained herein and for other good and valuable consideration, the receipt and adequacy of which are hereby acknowledged, the parties hereto agree as follows:

1.    <u>Agreement.</u>  This Agreement shall be considered the "Limited Liability Company Agreement" of the Company within the meaning of § 18-101(7) of the Act.  To the extent this Agreement is inconsistent in any respect with the Act, this Agreement shall control to the extent permitted by applicable law.

2.    <u>Member.</u>  HEX Cook Inlet is the sole member of the Company (the "<u>Member</u>").

3.    <u>Purpose.</u>  The purpose of the Company is to engage in all lawful businesses or activities in which a limited liability company may be engaged under applicable law (including, without limitation, the Act).

4.    <u>Name.</u>  The name of the Company is "Corsair Oil & Gas LLC".

5.    <u>Registered Agent and Principal Office.</u>  The registered office and registered agent of the Company in the State of Delaware shall be as the Member may designate from time to time.  The Company may have such other offices as the Member may designate from time to time.  The mailing address of the Company shall be 188 W. Northern Lights Blvd., Ste. 620, Anchorage, AK 99503 (the "<u>Principal Office</u>").

6.    <u>Term of Company.</u>  The Company shall continue in existence in perpetuity unless its business and affairs are earlier wound up following dissolution at such time as this Agreement may specify.

7.    <u>Management of Company.</u>  The Member shall have full, exclusive and complete power to manage and control the business and affairs of the Company and shall have all of the rights and powers provided to a member of a member-managed limited liability company by law, including the power and authority to execute instruments and documents, to mortgage or dispose of any real property held in the name of the Company, and to take any other actions on behalf of the Company, whether or not such actions are for carrying on the business of the Company in its usual way.

8.    <u>Officers.</u>  The Member may appoint officers of the Company (each an "<u>Officer</u>"), from time to time, with such other titles as the Member may select, including the titles of Chairman, Chief Executive Officer, President, Vice President, Treasurer and Secretary, to act on behalf of the Company.  An Officer shall have such power and authority as the Member may delegate to any such person and need not be a Member of the Company.

2

9.    <u>Execution of Documents.</u>  Any Officer is authorized, but only and always acting jointly with any one other Officer or any person granted a power of attorney by the Member for such purpose, to sign, execute, acknowledge and deliver, in the name of the Company, deeds, mortgages, bonds, contracts and other documents, instruments and papers, except in cases where the signing and execution thereof shall be expressly delegated by the Member, or by this Agreement, to a certain Officer or agent of the Company.

10.    <u>Banking Resolution.</u>  The Member shall open all banking accounts as the Member deems necessary and enter into any deposit agreements as are required by the financial institution at which such accounts are opened.  The Member and such other persons or entities designated in writing by the Member shall have signing authority with respect to such bank accounts.  Funds deposited into such accounts shall be used only for the business of the Company.

11.    <u>Indemnification of the Member.</u>

(a)    To the fullest extent permitted by applicable law, the Member and any and all of the Member's affiliates (each, an "<u>Indemnitee</u>"), shall be entitled to indemnification from the Company for any loss, damage or claim incurred by such Indemnitee by reason of any act or omission performed or omitted by such Indemnitee in good faith on behalf of the Company and in a manner reasonably believed to be within the scope of the authority conferred on such Indemnitee by this Agreement, except that no lndemnitee shall be entitled to be indemnified in respect of any loss, damage or claim incurred by such Indemnitee by reason of such Indemnitee's gross negligence, fraud or willful misconduct with respect to such acts or omissions; provided, however, that any indemnity under this subsection (a) by the Company shall be provided out of and to the extent of Company assets only, and the Member shall not have personal liability on account thereof.

(b)    To the fullest extent permitted by applicable law, expenses (including legal fees) incurred by an Indemnitee in defending any threatened or pending claim, demand, action, suit or proceeding shall, from time to time, be advanced by the Company prior to the final disposition of such claim, demand, action, suit or proceeding upon receipt by the Company of an undertaking by or on behalf of the Indemnitee to repay such amount if it shall be determined that the Indemnitee is not entitled to be indemnified as authorized in this Section 11.

(c)    For purposes of the definition of "Indemnitee" used above, "affiliate" means a person or entity who, with respect to the Member: (a) directly or indirectly controls, is controlled by or is under common control with the Member; (b) owns or controls 10 percent or more of the outstanding voting securities of the Member; (c) is an officer, director, shareholder, partner or member of the Member; (d) if the Member is an officer, director, shareholder, partner or member of any entity, the entity for which the Member acts in any such capacity; or (e) is an Officer.

12.    <u>Liability.</u>  No Indemnitee shall be personally liable, responsible, accountable in damages or otherwise to the Company for any act or omission performed or omitted by such Indemnitee in connection with the Company or its business.  The Member's liability for the debts and obligations of the Company shall be limited as set forth in the Act and other applicable law.

DM_US 163757065-7.091621.0014

13.    <u>Reimbursable Expenses.</u>  The Company will reimburse the Member for all actual out-of-pocket third-party expenses incurred in connection with the carrying out of the duties set forth in this Agreement.

14.    <u>Records.</u>  The Member shall keep or cause to be kept at the Principal Office of the Company the following: (a) a written record of the full name and business, residence or mailing address of the Member; (b) a copy of the initial Certificate of Formation and all amendments thereto; (c) copies of all written limited liability company agreements and all amendments to such agreements, including any prior written limited liability company agreements no longer in effect; (d) copies of any written and signed promises by the Member to make capital contributions to the Company; (e) copies of the Company's federal, state and local income tax returns and reports, if any, for the three most recent years; (f) copies of any prepared financial statements of the Company for the three most recent years; and (g) minutes of every meeting as well as any written consents or actions taken without a meeting.

15.    <u>Dissolution.</u>  The Company shall be dissolved upon the election of the Member.  A withdrawal event with respect to the Member shall not dissolve the Company, unless any assignees of the Member's interest do not elect to continue the Company and admit a member within 90 days of such withdrawal event.

16.    <u>Filing Upon Dissolution.</u>  As soon as possible following the dissolution of the Company, the Member shall execute and file all notices and other documents required under the Act and any other applicable law.

17.    <u>Liquidation.</u>  Upon dissolution of the Company, it shall be wound up and liquidated as rapidly as business circumstances permit, the Member shall act as the liquidating trustee, and the assets of the Company shall be liquidated and the proceeds thereof shall be paid (to the extent permitted by applicable law) in the following order: (a) first, to creditors, including the Member if the Member is a creditor, in the order and priority required by applicable law; (b) second, to a reserve for contingent liabilities to be distributed at the time and in the manner as the liquidating trustee determines in its sole discretion; and (c) third, to the Member.

18.    <u>Governing Law.</u>  This validity and enforceability of this Agreement shall be governed by and construed in accordance with the laws of the State of Delaware, without regard to its conflicts of laws.

19.    <u>Severability.</u>  If any provision of this Agreement shall be conclusively determined by a court of competent jurisdiction to be invalid or unenforceable to any extent, the remainder of this Agreement shall not be affected thereby.

20.    <u>Binding Effect.</u>  Except as otherwise provided herein, this Agreement shall inure to benefit of and be binding upon the Member and its respective successor sand assigns.

21.    <u>Titles and Captions.</u>  All article, section and paragraph titles and captions contained in this Agreement are for convenience only and are not a part of the context hereof.

4

22.     <u>Pronouns and Plurals.</u>  All pronouns and any variations thereof are deemed to refer to the masculine, feminine, neuter, singular or plural as the identity of the appropriate person may require.

23.     <u>No Third-Party Rights.</u>  Except as expressly provided herein, including but not limited to <u>Section 29</u>, this Agreement is intended to create enforceable rights between the parties hereto only, and creates no rights in, or obligations to, any other persons.

24.     <u>Amendments.</u>  This Agreement may not be amended except by a written document executed by the Member and the Company.

25.     <u>Creditors.</u>  Except as expressly provided herein, including but not limited to <u>Section 29</u>, none of the provisions of this Agreement shall be for the benefit of or enforceable by any creditors of the Company.

26.     <u>Entire Agreement.</u>  The Agreement constitutes the entire agreement of the parties hereto with respect to the subject matter hereof and supersedes any and all prior and contemporaneous contracts, understandings, negotiations and agreements with respect to the Company and the subject matter hereof, whether oral or written.

27.     <u>UCC Article 8 Opt-In.</u>  The Company hereby irrevocably elects that all limited liability company interests (expressed in common units) in the Company (the "<u>Ownership Interests</u>") shall be securities governed by Article 8 of the Uniform Commercial Code as in effect in the State of Delaware or any other applicable jurisdiction.  Each certificate evidencing Ownership Interests shall bear the following legend: "THIS CERTIFICATE EVIDENCES AN INTEREST IN CORSAIR OIL & GAS LLC AND SHALL BE A SECURITY GOVERNED BY ARTICLE 8 OF THE UNIFORM COMMERCIAL CODE AS IN EFFECT IN THE STATE OF DELAWARE AND, TO THE EXTENT PERMITTED BY APPLICABLE LAW, ARTICLE 8 OF THE UNIFORM COMMERCIAL CODE OF EACH OTHER APPLICABLE JURISDICTION." No amendment to this section shall be effective until all outstanding Ownership Interest certificates have been surrendered to the Company for cancellation.  Any such certificates shall be recorded in a register thereof maintained by the Company.

28.     <u>Certificated Interests.</u>  The Ownership Interests shall be represented by certificates substantially in the form attached hereto as <u>Exhibit A</u>.

29.     <u>Transferability.</u>  Notwithstanding anything contained herein to the contrary, each member of the Company shall be permitted to pledge or hypothecate any or all of its Ownership Interests, including all interests, economic rights, control rights and status rights as a member, to any lender to the Company or an affiliate of the Company or any agent acting on such lender's behalf, and any transfer of such Ownership Interests pursuant to any such lender's (or agent's) exercise of remedies in connection with any such pledge or hypothecation shall be permitted under this Agreement with no further action or approval required hereunder.  Notwithstanding anything contained herein to the contrary, upon a default under the financing giving rise to any pledge or hypothecation of Ownership Interests, the lender (or agent) shall have the right, as set forth in the applicable pledge or hypothecation agreement, and without further approval of any member and without becoming a member, to exercise the membership/partnership voting rights of the member

5

granting such pledge or hypothecation.  Notwithstanding anything contained herein to the contrary, and without complying with any other procedures set forth in this Agreement, upon the exercise of remedies in connection with a pledge or hypothecation, (a) the lender (or agent) or transferee of such lender (or agent), as the case may be, upon its election to do so, shall become a member under this Agreement and shall succeed to all of the rights and powers, including the right to participate in the management of the business and affairs of the Company, and shall be bound by all of the obligations, of a member under this Agreement without taking any further action on the part of such lender (or agent) or transferee, as the case may be, and (b) following such exercise of remedies, the pledging member shall cease to be a member and shall have no further rights or powers under this Agreement.  The execution and delivery of this Agreement by a member shall constitute any necessary approval of such member under the Act to the foregoing provisions of this <u>Section 29</u>.  This <u>Section 29</u> may not be amended or modified so long as any of the Ownership Interests are subject to a pledge or hypothecation without the pledgee's (or the transferee of such pledgee's) prior written consent.  Each recipient of a pledge or hypothecation of the Ownership Interests are intended to be express and intended beneficiaries of this <u>Section 29</u>.

30.    <u>No Partition Action.</u>  Neither the Member nor any former Member shall have any right to maintain any action for partition with respect to the property of the Company.

31.    <u>Counterparts.</u>  This Agreement may be executed in any number of counterparts, any of which may be delivered via facsimile or PDF, each of which will be deemed to be an original and all of which will constitute one agreement, binding on all parties hereto.

*[Signature Page Follows]*

6

IN WITNESS WHEREOF, the parties hereto have duly executed this Agreement as of the Agreement Date.

**MEMBER:**

**HEX COOK INLET LLC**


By: _____
Name:  John Hendrix
Title:    Authorized Signatory

## **EXHIBIT A**

[*See attached.*]

Certificate No. _____

## CORSAIR OIL & GAS LLC
### a Delaware Limited Liability Company
Membership Interest Certificate

This certifies that **HEX COOK INLET LLC** is the owner of *One Hundred (100)* fully paid common units of Corsair Oil & Gas LLC (the "Company"), to the extent and as described in the LLC Agreement (as defined below), in the capacity of the Member of the Company.

THIS CERTIFICATE EVIDENCES AN INTEREST IN CORSAIR OIL & GAS LLC AND SHALL BE A SECURITY GOVERNED BY ARTICLE 8 OF THE UNIFORM COMMERCIAL CODE AS IN EFFECT IN THE STATE OF DELAWARE AND, TO THE EXTENT PERMITTED BY APPLICABLE LAW, ARTICLE 8 OF THE UNIFORM COMMERCIAL CODE OF EACH OTHER APPLICABLE JURISDICTION.

This Certificate shall be governed by and constructed in accordance with the laws of the State of Delaware without regard to otherwise governing principles of conflicts of law.

IN WITNESS WHEREOF, the said Company has caused this Certificate to be signed by its duly authorized officer this _____, 2020.

### CORSAIR OIL & GAS LLC

By: _____
Name: _____
Title: _____

**CAPITALIZED TERMS USED AND NOT OTHERWISE DEFINED HEREIN ARE USED AS DEFINED IN THAT CERTAIN THIRD AMENDED AND RESTATED LIMITED LIABILITY COMPANY AGREEMENT OF THE COMPANY, DATED AS OF _____, 2020 (AS THE SAME MAY BE AMENDED OR RESTATED FROM TIME TO TIME, THE "LLC AGREEMENT").**

**THE OWNERSHIP INTERESTS REPRESENTED BY THIS CERTIFICATE HAVE NOT BEEN REGISTERED UNDER THE SECURITIES ACT OF 1933, AS AMENDED (THE "ACT"), OR THE SECURITIES LAWS OF ANY STATE AND MAY NOT BE SOLD OR TRANSFERRED IN THE ABSENCE OF AN EFFECTIVE REGISTRATION STATEMENT UNDER THE ACT AND SAID LAWS OR AN EXEMPTION FROM THE REGISTRATION REQUIREMENTS THEREOF.**

**THE OWNERSHIP INTERESTS REPRESENTED HEREBY ARE, AND THIS CERTIFICATE SHALL IN ALL RESPECTS BE, SUBJECT TO RESTRICTIONS ON TRANSFER AND CERTAIN OTHER AGREEMENTS SET FORTH IN THE LLC AGREEMENT. A COPY OF SUCH AGREEMENT SHALL BE FURNISHED WITHOUT CHARGE TO THE HOLDER HEREOF UPON WRITTEN REQUEST.**